IN THE CIRCUIT COURT OF THE
17th JUDICIAL CIRCUIT IN AND
FOR BROWARD COUNTY, FLORIDA

CASE NO:

DONALD SPADARO, as limited guardian
for ANTHONY CARAVELLA,

11 - 1 4 8 9 4

           Plaintiff,

v.

CITY OF MIRAMAR, a municipality;
GEORGE H. PIERSON, JR., WILLIAM
MANTESTA, and WILLIAM FREDERICK
GUESS, individually and in their official
capacities as former police officers for the
CITY OF MIRAMAR; AL LAMBERTI,
in his official capacity as the Sheriff of Broward
County; KENNETH C. JENNE, II, individually
and in his official capacity as the former Sheriff
of Broward County; ANTHONY FANTIGRASSI,
individually and in his official capacity as a former
deputy sheriff for the Broward County Sheriff's office,



           Defendants.

_____/

## COMPLAINT

    Plaintiff, ANTHONY CARAVELLA, sues Defendants, jointly and

severally, and alleges:

## JURISDICTION

1.    This is an action for damages in excess of fifteen thousand

($15,000.00) dollars, arising out of one or more violations of State and Federal

laws, detailed below.

2.    This action is brought pursuant to 42 U.S.C. §§1983, 1988, 18 U.S.C. §§1961,1962, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, §772, Florida Statutes, and the tort law of Florida. Jurisdiction is founded on 28 U.S.C. §1331, 1343, 42 U.S.C. §1988, the constitutional provisions mentioned above, and under the tort law of Florida.

3.    In connection with the acts, practices and violations alleged below, the Defendants have each, either directly or indirectly, violated the Plaintiff's constitutional rights.

4.    This action is also instituted pursuant to Florida Statute §772, Civil Remedies for Criminal Practices and/or 18 U.S.C. §1964 Civil Remedies, paragraph (c).

5.    All conditions precedent under Florida law for the filing of this lawsuit have been satisfied.  (Exhibit A).

6.    The Plaintiff seeks an award of damages for permanent, physical, mental and emotional injuries, loss of earning capacity, loss of enjoyment of life, punitive damages, court costs and attorney fees.

**PARTIES**

7.    The Plaintiff ANTHONY CARAVELLA, at all times material hereto, has been a United States citizen.

8.    Defendant CITY OF MIRAMAR is a municipality located in

2

Broward County, Florida and is responsible, through its officers, employees, servants, and agents, for enforcing the regulations of the Defendant CITY OF MIRAMAR and for ensuring that its officers, employees, servants, and agents obey the laws of the State of Florida and the United States.

9.      Defendant GEORGE H. PIERSON, JR., at all times material to this complaint, was a duly appointed police officer with the City of Miramar Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward County.  Defendant PIERSON is being sued in his individual and official capacities.

10.      Defendant WILLIAM MANTESTA, at all times material to this complaint, was a duly appointed police officer with the City of Miramar Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward County.  Defendant MANTESTA is being sued in his individual and official capacities.

11.      Defendant WILLIAM FREDERICK GUESS, at all times material to this complaint, was a duly appointed police officer with the City of Miramar Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward County.  Defendant GUESS is being sued in his individual and official capacities.

12.     Defendant AL LAMBERTI is the Sheriff of Broward County. Said Defendant is responsible, as Sheriff, for the conduct of the deputies in his employ and ensuring that his deputies, employees, servants and agents obey the laws of the State of Florida and the United States. Defendant LAMBERTI is being sued in his official capacity.

13.     Defendant KENNETH C. JENNE II was the Sheriff of Broward County from January, 1998 to September, 2007. During his tenure, said Defendant was responsible for the conduct of the deputies in his employ and ensuring that his deputies, employees, servants and agents obey the laws of the State of Florida and the United States. Defendant JENNE is being sued in his individual and official capacities.

14.   Defendant ANTHONY FANTIGRASSI, at all times material to this complaint, was a duly appointed deputy sheriff with the Broward County Sheriff's Office, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward County. Defendant FANTIGRASSI is being sued in his individual and official capacities.

15.   Defendants PIERSON, MANTESTA, and GUESS violated the Plaintiff ANTHONY CARAVELLA's constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. It is further alleged that these violations were committed as a result of the deliberate indifference, and the policies and customs, of Defendant CITY OF MIRAMAR.

4

16.   Defendant FANTIGRASSI violated the Plaintiff ANTHONY CARAVELLA's constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. It is further alleged that these violations were committed as a result of the deliberate indifference, and the policies and customs, of Defendants JENNE and LAMBERTI.

17.   Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE, are each persons under Florida Statute §1.01 and/or 18 U.S.C. §1961 (3).

18.   The Broward County Sheriff's Office is an enterprise within the meaning of §772.102(3), Florida Statutes and/or 18 U.S.C. §1961(4). The activities of said enterprise affects interstate commerce.

19.   The City of Miramar Police Department is an enterprise within the meaning of §772.102(3), Florida Statutes and/or 18 U.S.C. §1961(4). The activities of said enterprise affects interstate commerce.

20.   The relationship between Defendants PIERSON, MANTESTA, and GUESS constitutes an enterprise under Florida Statute §772.102(3) and/or 18 U.S.C. §1961(4).

21.   The relationship between Defendants FANTIGRASSI and JENNE constitutes an enterprise under Florida Statute §772.102(3) and/or 18 U.S.C. §1961(4).

22.   Defendants PIERSON, MANTESTA, and GUESS have engaged in a pattern of conspiracy and criminal activities and/or racketeering activities in violation of §772.103, Florida Statutes and/or 18 U.S.C. §1962, et. seq..

23.    Defendants FANTIGRASSI and JENNE have engaged in a pattern of conspiracy and criminal activities and/or racketeering activities in violation of §772.103, Florida Statutes and/or 18 U.S.C. §1962, et. seq..

24.    The relationship between Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE constitutes an association-in-fact enterprise under §772.102(3), Florida Statutes and/or 18 U.S.C. §1961(4).

25.    Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI, and JENNE have engaged in activities or a pattern or practice of conspiracy constituting criminal and/or racketeering activities in violation of §772.103, Florida Statutes and/or 18 U.S.C. §1962, et. seq.

26.    At all times material hereto, and in all of their acts described herein, Defendants were acting under color of State law and color of their authority as public officials and public employees.

## ALLEGATIONS OF FACT

### A.    The murder of Ada Jankowski

27.    On the morning of  November 5, 1983, the body of Ada Jankowski was found on the grounds in an area northeast of the main building of the Miramar Elementary School.

28.    Ms. Jankowski had been brutally raped and murdered.

29.    Ms. Jankowski was last seen in the early morning hours of November 5th at the Miramar Lounge.  She was originally seen with her husband, John

6

Jankowski, until he left after arguing with his wife. Ms. Jankowski was last seen leaving the Lounge with Anthony Martinez at 3:00 a.m..

30.    Ms. Jankowski suffered extensive injuries to her face and head, multiple stab wounds to the face, neck, abdomen, chest, back, buttocks, arms, legs and around the vagina and rectum.  She had been strangled with a piece of wire, which was the main cause of death.

31.    Physical evidence was collected from the crime scene and at the Broward County Medical Examiner's office.

32.    Ada Jankowski was 58 years old, 104 pounds and five feet two inches tall.

33.    On November 5, 1983, Defendants GUESS, MANTESTA and PIERSON, as well as other members of the City of Miramar Police Department, were at the crime scene.  At that time, Cyril Cozier, had been observed in the area wearing a bloody shirt.

34.    On November 5, 1983, Mr. Cozier was questioned and his bloody shirt was collected by Defendant PIERSON of the City of Miramar Police Department.  Mr. Cozier was observed to have injuries consistent with having recently been in an altercation.   Defendant PIERSON placed Cozier's shirt into an evidence bag and took it to the police station.

35.    On November 5, 1983, Defendant PIERSON personally pulled all the hairs off of Cozier's shirt and placed the hairs in envelopes, which he sealed and marked.  At the time of this procedure, no evidence from the Jankowski homicide

was present in the room.

36.   On November 5, 1983, Defendant PIERSON place the Cozier shirt in a separate evidence bag, sealing and marking it.  No evidence obtained from the Miramar Elementary School crime scene nor the Broward County Medical Examiner was present during this procedure.

37.   On November 8, 1983, all evidence obtained from the crime scene and the medical examiner's office, concerning the death of Ada Jankowski and the Cozier evidence, was submitted to the Broward County Sheriff's Office laboratory for analysis and, from there, the sealed envelopes containing hairs and fibers were sent directly to the FBI.

38.   All the processing of the evidence by the BSO lab had been completed by November 23, 1983.  On that same day, it was picked up by two Miramar police officers and turned over to Lieutenant Merritt for storage in the Miramar Police Department property room.

39.   On November 5th and again on November 11th, 1983, Anthony Martinez, the seventeen year old juvenile last seen leaving the Lounge with Ms. Jankowski, was questioned by Defendants GUESS and PIERSON.  After Martinez denied any involvement in the rape/murder, Mr. Martinez's mother thereafter refused to allow any further questioning of her son and refused to allow her son to provide any hair or blood samples.

40.   On November 17, 1983, twelve days after the murder of Ada Jankowski, Defendants PIERSON and GUESS learned that, in Davie, only six

miles away from the Jankowski crime scene, an assailant had broken into the car of a waitress, hiding in the back seat of the vehicle. As she got into the car and started to drive, the assailant put a thin wire around her neck, threatening to kill her if she did not follow his instructions. The victim was able to get away from her assailant pulling the wire from his hands. A composite of that suspect was made and attached to the Jankowski case file.

41.     On December 13, 1983, a young Miramar woman was abducted at knife point from the parking lot directly across the street from the Miramar Lounge and forced to drive to Melbourne, where her attacker attempted to rape her. A composite of that suspect was attached to the Jankowski case file.

42.     The murder was widely discussed by the residents in the neighborhood and it was reported to police that a number of juveniles bragged that they had information or knew who had committed the crime. These juveniles included Dale Patton and Ray Stephen Chappell, aka Animal.

43.     Prior to November 5, 1983, Defendants GUESS, MANTESTA and PIERSON knew ANTHONY CARAVELLA, a fifteen year old boy, who lived with his mother and siblings in the City of Miramar.

44.     The Plaintiff had previously been used by Defendants GUESS and PIERSON as an informant regarding criminal activities in the Miramar neighborhood.

45.     Defendant MANTESTA would manipulate the Plaintiff to admit to burglaries that he had not committed, in order to close cases by exceptional

clearance.

46.   On November 16th, PIERSON and GUESS took the Plaintiff for a drive around the area of Miramar Elementary school. ANTHONY CARAVELLA provided them with the names of juveniles who could be found after hours on the grounds of the Elementary school.

47.   On November 25, 1983, PIERSON and GUESS distributed a Criminal Activity Information flyer on Anthony Martinez, bearing his name, photograph, description and address, requesting any officer arresting Martinez to contact PIERSON or GUESS immediately.

48.   On December 28, 1983, Defendant GUESS requested assistance from the Broward State Attorney's Office concerning the investigation into the Ada Jankowski murder, providing the agency with a summary which included the names of potential suspects, i.e., Anthony Martinez, Cyril Cozier, John Jankowski, the victim's husband, Thomas Ganiear, Zinnie Miguez, Jorge Santiago, Joe Martinez, and Barry Gibb. ANTHONY CARAVELLA was not on the list.

**B.**   **An Innocent Boy**

49.   On December 28, 1983, the same day that GUESS had requested guidance from the State Attorney's Office, Defendant MANTESTA went to juvenile court to obtain a pick up order for the Plaintiff's arrest for purportedly failing to appear in court on an alleged charge of a bicycle theft.

50.   At about 11:00 p.m., on December 28, 1983, Defendants  PIERSON

10

and MANTESTA, as well as two to three other Miramar police officers went to the home of Dawn Simone, a school friend of ANTHONY CARAVELLA, for the purpose of arresting him for the alleged bicycle theft charge.

51.   At the time, ANTHONY CARAVELLA was a fifteen year old boy, of limited intelligence, understanding and judgment, testing in the mildly mentally challenged range with an I.Q. score of 67. This was obvious and was known or should have been known by Defendants PIERSON, GUESS and MANTESTA.

52.   While at the Simone home, Defendants MANTESTA and PIERSON were extremely angry and aggressive with the Plaintiff, yelling and screaming at him, and pushing him around. MANTESTA shoved him against a wall. They asked Dawn's mother for a phone book. They then took the Plaintiff into the garage where, from behind closed doors, Dawn thought she heard the sounds of them beating ANTHONY with the phone book.

53.   The Plaintiff was handcuffed and placed in the back of a patrol car. Dawn Simone was also arrested for attempting to hide CARAVELLA. She was placed in the back of the police vehicle with the Plaintiff.

54.   On the way to the station, Defendants PIERSON and MANTESTA informed the Plaintiff that they wanted a confession from him. Telling him to point out homes that he had robbed, the Plaintiff randomly pointed out houses, then said he had robbed the home of Defendant PIERSON's mother.

55.   Upon arriving at the police station, Defendant PIERSON immediately took the Plaintiff into an interrogation room to question him concerning the

11

Jankowski murder. Dawn Simone heard officers screaming at the Plaintiff, and the sound of blows. The next day, it was observed by an Assistant Public Defender that the Plaintiff's lips were blue and bleeding.

56. Mr. CARAVELLA's mother was not present at the interrogation, and she had not been called. The Plaintiff was not Mirandized and the interrogation was not recorded.

57. Defendants PIERSON and MANTESTA told the Plaintiff that he could see Dawn privately and they would allow her to go home in return for CARAVELLA giving them a statement about the Jankowski homicide. The Plaintiff, in an attempt to protect his friend Dawn, agreed to tell the Defendants whatever they wanted to hear.

58. Thereafter, PIERSON and MANTESTA interrogated the mentally deficient juvenile, without his mother or an attorney present, without Mirandizing him, and without turning on the tape recorder.

59. On December 29, 1983, having improperly coached him with crime scene details concerning the circumstances of the Jankowski murder, Defendants PIERSON and MANTESTA then contacted the Plaintiff's mother, and thereafter, Mirandized him and took the first recorded statement of the Plaintiff. (Composite Exhibit B).

60. Due to CARAVELLA's youth, lack of education and intellectual limitations which were well known to both PIERSON and MANTESTA, he could be easily led and manipulated. It was for this reason, and because of their past

success in getting the Plaintiff to confess to crimes that he had not committed, that PIERSON and MANTESTA selected CARAVELLA to close the Jankowski investigation.

61.  Due to CARAVELLA's youth and mental disabilities, PIERSON and MANTESTA had to lead and prompt CARAVELLA with the desired answers. They prompted him with crime scene details, suggesting to him that the victim had an English accent, had been hit over the head with a chair, strangled with wire, stabbed with a steak knife, and that her clothes had only been partially pulled off, with her bra pulled up above her breasts.

62.  Even after almost four hours of this highly coercive interrogation of the fifteen year old boy, Defendants PIERSON and MANTESTA failed to elicit a "confession" from the Plaintiff.  Instead, Plaintiff gave them a garbled version of the facts they had provided to him.

63.  On December 30, 1983, based upon false information provided by Defendants PIERSON and MANTESTA, they obtained a court order which allowed the Defendants to continue with their interrogation and have the Plaintiff submit to a polygraph examination at the Broward County Sheriff's office.

64.  On December 30, 1983, the Plaintiff was taken by Defendants PIERSON, GUESS and MANTESTA to the Broward County Sheriff's office, where Defendant FANTIGRASSI was to perform the polygraph.

65.  Defendant FANTIGRASSI had, at the time, become well known as one of the detectives who had successfully obtained a confession from another

mentally challenged man, Jerry Frank Townsend, for a number of high profile rape/homicides in Broward County. FANTIGRASSI's tactics and interrogation techniques, done in conspiracy with other law enforcement officers, had resulted in a conviction and life sentence for this unfortunate man. In June, 2001, Mr. Townsend was exonerated by DNA evidence and released after twenty-two (22) years of being wrongfully incarcerated for crimes which he did not commit.

66.     Defendants PIERSON, GUESS and MANTESTA provided FANTIGRASSI with a copy of the Plaintiff's coached statement, as well as the details of the Jankowski crime scene. Thereafter, Defendant FANTIGRASSI took ANTHONY CARAVELLA, alone, into a separate room, attaching the polygraph equipment to him and questioning him concerning the details of the Jankowski murder.

67.     The Plaintiff denied any involvement in the crime. The interrogation by Defendant FANTIGRASSI continued for over four hours. FANTIGRASSI was unable to elicit any confession from the Plaintiff.

68.     Thereafter, Defendant FANTIGRASSI had a meeting with Defendants PIERSON, MANTESTA and GUESS. Following this meeting, FANTIGRASSI met with the Plaintiff's mother, telling her that her son had confessed to participating in the killing of Ada Jankowski, and that the results of the polygraph showed that he was being truthful. These were lies by Defendant FANTIGRASSI.

69.     Neither a recording of this alleged confession nor the alleged

polygraph test printout were ever provided to the Plaintiff.

70.    Although the court order required Defendants PIERSON, GUESS and MANTESTA to take the Plaintiff back to juvenile detention after the polygraph, PIERSON and GUESS took ANTHONY CARAVELLA to the crime scene, without his mother's knowledge or permission.  PIERSON and GUESS led the Plaintiff to the spot where the body had been found and questioned him further. They also drove him to the Miramar Lounge and showed him the route from the bar to the crime scene. The questioning at the crime scene was not recorded.

71.    Having prompted the Plaintiff with more information, PIERSON and GUESS then took him to the Miramar police station, where they took a second taped statement from CARAVELLA, wherein he incriminated himself as well as three others. (Composite Exhibit B).

72.    Although Defendant GUESS attempted to get the Plaintiff to say that the victim had been strangled, CARAVELLA said that she was not.  Despite Defendants GUESS and PIERSON's prompting about the victim's appearance and age, the Plaintiff stated that Ms. Jankowski was a muscular six feet tall, not old, and without any noticeable accent.  All of the statements were incorrect.

73.    Also arrested that night by Defendants PIERSON and GUESS was Stephen Chappell, as another possible suspect of the Jankowski murder.

74.    Chappell had no alibi for the night of the murder and admitted that he had told people in the neighborhood that he knew who had committed the crime, but claimed he was just bragging.  Chappell was allegedly interrogated and

submitted to a polygraph examination by Defendant FANTIGRASSI, who determined that he was being truthful when he denied any involvement in the murder. Neither a tape of the interrogation nor the polygraph test printout of Chappell has ever been provided to the Plaintiff, his defense attorney, the prosecution or the courts.

75.     Based solely on FANTIGRASSI's verbal report that Chappell had passed the polygraph test, all investigation of Chappell as a possible suspect ceased immediately. A couple of hours later, PIERSON and Merritt "unarrested" Chappell.

76.     Defendant FANTIGRASSI then falsely claimed that he had rechecked CARAVELLA's polygraph test and found that the areas implicating Chappell in the murder in fact showed deception, but that CARAVELLA was being truthful as to his own involvement and that of the other two perpetrators, "Don" and an unnamed blond boy.

77.     Thereafter, PIERSON, MANTESTA and GUESS went to juvenile detention, intent on interrogating the Plaintiff again. They attempted without success to contact his mother. Despite this, and an invocation preventing Plaintiff from talking to the police further, they had the Plaintiff brought to them so they could ask the fifteen year old mentally deficient boy to waive his Miranda rights.

78.     On January 3, 1984, at 9:37 a.m., Defendants MANTESTA and PIERSON had the Plaintiff sign a rights waiver form. Throughout the rest of the day the Plaintiff was interrogated without the benefit of a tape recorder. It was not

16

until 4:01, p.m. that a third taped statement was taken of the Plaintiff. (Composite Exhibit B).   Despite the coaching, Plaintiff again was only able to provide a garbled version of his second statement, which again got most of the facts wrong.

79.     On January 4, 1984, Defendants  PIERSON and MANTESTA, at a detention hearing regarding the alleged bicycle theft, used the opportunity to persuade the judge to issue an order releasing CARAVELLA to their custody for further questioning regarding the Jankowski homicide.

80.     On that same morning, the Plaintiff was again taken to the crime scene by Defendants MANTESTA and PIERSON.  They interrogated him in the car and at the crime scene for several hours, none of which was tape recorded, and persuaded CARAVELLA to change his story and say that he acted alone.

81.     On January 4, 1984, a fourth tape recorded statement was taken at the police station.  (Composite Exhibit B). Again, despite the coaching, the Plaintiff was unable to remember or repeat much of what they had told him and again got many of the material details completely wrong.  In response,  Defendants PIERSON and MANTESTA fabricated an autopsy form by making marks that suggested stab wounds, which marks they alleged had been made by the Plaintiff.

82.     Following these fabrications, Defendant FANTIGRASSI, in this written report, falsely stated that the Plaintiff was deceptive when he said he did not have sex with the victim, truthful when he admitted beating and stabbing her, but inconclusive when he said that Steve, Don and the other boy also beat and stabbed her.

83.   After completing his fourth taped statement, the Plaintiff told Defendants PIERSON and MANTESTA that he wanted to make another taped statement with his mother present. When his mother returned and the tape recorder was started, the Plaintiff stated that he had not committed the murder. The recording was never provided to the Plaintiff, his defense counsel, the prosecution or the courts.

84.   Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI knew that the Plaintiff had not murdered Ada Jankowski. Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI all conspired in fabricating and falsifying evidence in the form of false police reports, false taped statements of CARAVELLA, and by giving false testimony under oath in order to knowingly frame CARAVELLA, an innocent boy, for this crime.

85.   On January 30, 1984, the hair and fiber evidence, originally sent to the Broward Sheriff's crime laboratory and, from there to the FBI crime lab, were returned. The results showed that head and pubic hair from the victim were on the shirt of Cyril Cozier.

86.   On February 15, 1984, a second submission of head and pubic hair samples from Cozier and CARAVELLA were sent to the FBI for analysis. The result showed that the Plaintiff was excluded as the donor of any of the hairs taken from the victim's clothing. However, the analysis showed that Cozier's head hair was found on the victim's clothing.

87.   On April 24, 1984, there was a third submission of hairs, fibers and

particles sent to the FBI from the crime scene, victim's clothing, and various suspects' clothing. Neither PIERSON, MANTESTA nor GUESS ever filed a supplementary report as to the results of this third analysis. Further, the FBI reports regarding the third submission of hair, fibers and particles was withheld, concealed or destroyed to impair its availability in the criminal proceedings against the Plaintiff.

88.     Defendant MANTESTA falsely claimed in a report that the Plaintiff had telephoned him from the jail while awaiting trial and told him his fourth statement was truthful. MANTESTA further claimed that he tape recorded this conversation. No other evidence exists that any such tape recording ever existed or that any such telephone conversation ever took place.

89.     During the court proceedings, Defendants PIERSON and MANTESTA, contrary to the evidence, falsely claimed that the evidence obtained from Cozier's shirt had been contaminated with evidence from the victim.

90.     As a result of the conspiracy to fabricate and present false evidence, tamper with witnesses, and lie under oath by Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI, the Plaintiff was wrongfully convicted of murder and sentenced to life in prison.

91.     At all material times, the interrogation tactics engaged in by Defendants GUESS, PIERSON, MANTESTA, and FANTIGRASSI were in violation of state and federal law, as well as against accepted police practices within the United States.

92.     Based upon the coerced statements taken by Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI, as well as false statements, false affidavits and false reports given by said Defendants within the criminal courts, to the prosecutors, Plaintiff's counsel, and the public, the Plaintiff was charged by indictment with the rape and murder of Ada Jankowski.

93.     From December 28, 1983 to January 4, 1984, Defendants PIERSON, GUESS and MANTESTA engaged in and/or joined in a conspiracy with FANTIGRASSI, to coerce, by intimidation and deception, the Plaintiff CARAVELLA, a mentally challenged child, into making self-incriminating statements to a crime they knew or should have known he did not commit.

94.     Defendants PIERSON and MANTESTA, GUESS, in concert with FANTIGRASSI, engaged in the following misconduct:

(A) Took the mentally challenged Plaintiff to the crime scene and then coached him with information and detailed facts of the crimes in order to fabricate evidence by making and presenting a tape recorded document to a criminal proceeding, knowing it to be false and misleading.

(B) Withheld and/or concealed other evidence from the criminal courts, the prosecutors, Plaintiff's counsel and the public, that would have negated the fabricated evidence created by said Defendants.

(C) Intentionally and/or incompetently failed to investigate or consider other evidence which would have negated the fabricated evidence created by said Defendants.

95.     In furtherance of this conspiracy to fabricate evidence, Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI repeatedly filed false affidavits and false reports and made false material statements under oath in official proceedings that related to the prosecution of the Plaintiff for a capital felony.

96.     Said federal and state law, as well as accepted police practices at the time of the Plaintiff's arrest, and at the time of trial and post trial, provided "fair warning" to Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI that their conduct was improper, incompetent, illegal and in violation of the Plaintiff's constitutional and state rights.

97.     Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI conspired to convict the Plaintiff of a crime that they knew he did not commit.  In securing a conviction against the Plaintiff, Defendants obtained both financial and promotional benefits which they would not have obtained had they not arrested and participated in the criminal conviction of the Plaintiff.

98.     Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI had no probable cause to arrest the Plaintiff or to cause his prosecution.

99.     It was only as a result of the intentional misconduct and/or incompetence of Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI that the Plaintiff was wrongfully arrested, indicted, prosecuted, convicted and incarcerated for twenty-five years.  Said arrest and prosecution would have failed had said Defendants provided the truth to the criminal courts, the prosecutors and the public concerning their conduct and fabrication.

100.   The wrongful actions of the Defendants  PIERSON, MANTESTA, GUESS, and FANTIGRASSI constitute false arrest, illegal detention, malicious prosecution, intentional infliction of emotional distress and unlawful search and seizure under the laws of the State of Florida.  Defendants' actions also constitute criminal and/or racketeering activities in violation of §772.103, Florida Statutes and/or 18 U.S.C. §1962, et. seq.

101.   Throughout his highly publicized trial, the Plaintiff, a 15 year old boy, was portrayed in the media as a rapist murderer.

**C.   <u>The Long Road to Freedom</u>**

102.   On or about August 2, 1984, the Plaintiff was found guilty of the murder of Ada Jankowski.  On September 20, 1984, the Plaintiff was sentenced to life in prison.

103.   As a result of being falsely charged and convicted, the Plaintiff, a 16 year old mentally challenged boy, was subjected to constant media publicity which caused him unwarranted embarrassment, humiliation, and he was placed in constant fear for his life, suffering both mental and physical abuses during his twenty-five years of incarceration.

104.   Throughout his incarceration, Plaintiff was classified as a maximum security and/or close custody prisoner requiring that any activity or movement by the Plaintiff could only be done while handcuffed and that all activities outside of his cell be extremely limited.

105.   As a result of his conviction, Plaintiff was classified as a sex

22

offender.

106.   In April, 2001, Assistant Public Defender Diane Cuddihy of the Broward County Public Defender's Office contacted the State Attorney's Office to request DNA testing in the Plaintiff's case.

107.   On October 18, 2001, a report from the Broward County Sheriff's Office Crime Lab stated that they were unable to obtain a DNA profile from the slides or swabs submitted.

108.   On October 28, 2002, while reviewing the state's file in Plaintiff's criminal case, Assistant State Attorney Carolyn McCann discovered an audio tape recorded a phone conversation of January 17, 1984, wherein Jorge Delgado admitted to Miramar Police Detective MANTESTA that he was involved in the Jankowski homicide.  Said audio tape had never provided to the defense during the criminal trial.

109.   In 2009, Assistant Public Defender Cuddihy and Assistant State Attorney McCann stipulated to DNA testing being done by Dr. Edward Blake of Forensic Science Associates.  The August 27, 2009 report from Forensic Science Associates found that the DNA evidence conclusively excluded ANTHONY CARAVELLA as the sperm donor.  The report also found that an unidentified female DNA had likely been introduced to the DNA evidence during the processing at the Broward County Florida crime lab in 2001.

110.   On or about September 10, 2009, the Broward State Attorney's office agreed to the temporary release of the Plaintiff from custody, requiring him to

wear a GPS ankle monitor, pending the results of further DNA testing of the evidence by Bode Technology.

111.   On November 23, 2009, Bode Technology, the testing facility selected by the Broward County State Attorney's Office, provided their report, confirming Dr. Blake's results.

112.   On March 25, 2010, the Criminal Court vacated  and set aside the Defendant's judgments and sentence. (Exhibit C).

**D.**     **Pattern of Criminal Acts and/or Racketeering Activities**

113.  Defendant JENNE, and other unnamed sheriffs, have failed to provide proper oversight of the Broward County Sheriff's Office, failed to rein in and/or follow the requirements of the United States Constitution and/or stop Defendant FANTIGRASSI, and other Broward County deputy sheriffs, who, as a continuous group, have caused false charges to be made against innocent persons, who have authored false reports about innocent persons, who have lied to prosecutors and on the witness stand to instigate and support false charges, thereby causing convictions on those charges, and who have done so as to Plaintiff, thereby making Defendants liable to Plaintiff.

114.  In violation of §§914.22 and 918.13, Florida Statutes, and/or 18 U.S.C. §1512(b)(3), Obstruction of Justice, which constitutes conduct proscribed by and in violation of Florida Statute §772.102(1)(a) and (b) and/or 18 U.S.C. §1961, Defendant JENNE has interfered with the due administration of justice, improperly terminated felony investigations, and secured indictments and verdicts

based on false testimony and false evidence.

(A)  Said Defendant withheld, concealed and/or destroyed evidence and records pertaining to the illegal conduct of his agents against Plaintiff and others.

(B) Said Defendant withheld or acted so as to make it foreseeable that others would withhold records, documents, or other evidence from official proceedings pertaining to the illegal conduct of their agents against Plaintiff and others.

(C) His conduct hindered, prevented and/or delayed the communication of a federal offense, thereby causing additional and separate injuries to the business and/or property of the Plaintiff, and others.

(D) His conduct knowingly hindered, prevented and/or delayed the communication to a law enforcement officer or judge of the United States of information relating to the violation of 18 U.S.C. §242, a Federal offense, thereby causing additional and separate injuries to the Plaintiff, and others.

(E) His conduct resulted in the continuing and ongoing injuries to Plaintiff.

115.  Defendants PIERSON, MANTESTA, GUESS, JENNE, and FANTIGRASSI conspired to commit and/or solicit another person to commit crimes chargeable by indictment or information as listed in various sections of the United States Code listed in 18 U.S.C. §1961(1) and/or §772.102, Florida Statutes.

116.  Defendants JENNE and FANTIGRASSI had an interest in and/or

acquired and/or maintained control over the Broward County Sheriff's Office (hereinafter referred to as "the enterprise") through a pattern of criminal and/or racketeering activities, as set forth herein, in violation of 18 U.S.C. §1962(b) and/or §772.103(2), Florida Statutes.

117. Defendants JENNE and FANTIGRASSI, being associated with said enterprise, conducted and/or participated in said enterprise's affairs through a pattern of criminal and/or racketeering activities, in violation of 18 U.S.C. §1962 (c) and/or §772.103 (3), Florida Statutes.

118. Defendants JENNE and FANTIGRASSI, in violation of §772.103(4), Florida Statutes and/or 18 U.S.C. §1962(d), conspired to violate subsections (2) and (3) of §772.103, Florida Statutes and/or (b) and (c) of 18 U.S.C. §1962, in furtherance of the affairs of the enterprise.

119. Defendant JENNE managed and conducted the affairs of the enterprise, aided and abetted the proscribed conduct of his employees, conspired to conceal and cover up such conduct and deliberately perpetuated the continuous pattern of criminal and/or racketeering activities and ongoing obstruction of justice, which directly caused injuries to multiple victims including Plaintiff, thus facilitating and furthering the affairs of the enterprise in violation of §772.103(4), Florida Statutes and/or 18 U.S.C. §1962(d).

120. Defendant JENNE, and other unnamed sheriffs, have joined in and participated in maintaining and continuing the pattern of criminal conduct of the enterprise from 1979 to the present day.

121. The wrongful actions of Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE constitute criminal and/or racketeering activities in violation of §772.103, Florida Statutes and/or 18 U.S.C. §1962, et. seq.

122. Individually and in collaboration with Defendant FANTIGRASSI, Defendants PIERSON, MANTESTA and GUESS, in violation of §918.13 and §914.22, Florida Statutes and/or 18 U.S.C. §1512(b)(3), Obstruction of Justice, fabricated evidence, concealed exculpatory evidence, tampered with witnesses, made and presented false reports and documents, lied on sworn affidavits, and coerced a false confession by intimidation and deception from the Plaintiff, who they knew was a mentally challenged person.  As a direct result of these illegal actions by these Defendants, Plaintiff was maliciously prosecuted, and falsely imprisoned for twenty-five years for a rape and murder he did not commit.

(A)  In violation of §914.22, Florida Statutes, Defendants FANTIGRASSI, PIERSON, MANTESTA and GUESS conspired with each other to deliberately and knowingly engage in misleading conduct towards other persons with the intent to cause said other persons to withhold testimony and/or testify untruthfully in an official investigation and/or proceeding.

(B) From December 28, 1983 to January 4, 1984, Defendants PIERSON, MANTESTA and GUESS repeatedly took the Plaintiff to the crime scene, along the route from the Miramar Lounge and around the surrounding neighborhood, for the purpose of creating the false appearance to other persons

that, when Plaintiff was giving his statements, he had some knowledge of the exact location and details of the murder after said Defendants had coached him with detailed information known only to themselves and the actual killer.

(C) Defendants PIERSON and MANTESTA, through deliberately misleading conduct, persuaded the medical examiner to reverse his prior findings and testify untruthfully in an official proceeding as to the principal cause of death and weapons involved in the homicide.

(D) Defendant MANTESTA received a telephone call from an individual claiming to be involved in the Jankowski homicide. MANTESTA abruptly ended the telephone conversation, went to the person's home and, by intimidation, threats or misleading conducted, induced the person to withhold his testimony from the official investigation and/or proceeding.

(E) Defendant FANTIGRASSI, by engaging in knowingly misleading conduct, tricked Plaintiff's mother into falsely believing that Plaintiff had admitted to him that he had committed the crime, which caused her to repeat this falsehood when she testified under oath in an official proceeding.

(F)  Said conduct of Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI, in violation of 18 U.S.C. §1512(b)(3), knowingly hindered, prevented and/or delayed the communication to a law enforcement officer or judge of the United States of information relating to the violation of 18 U.S.C. §242, a Federal offense.

123. From December 28, 1983 to January 4, 1984, Defendants

FANTIGRASSI, PIERSON, MANTESTA and GUESS repeatedly prompted Plaintiff, a highly suggestible person, with details of the crime and repeatedly corrected Plaintiff when he made statements inconsistent with the crime, for the purpose of fabricating a tape recorded confession that they knew to be false.

124.  From December 28, 1983 to January 4, 1984, Defendants FANTIGRASSI, PIERSON, MANTESTA and GUESS  also showed Plaintiff photographs of the crime scene and had discussions with Plaintiff to organize the facts in Plaintiff's mind prior to taking his tape recorded statements.

A.   Thus, in violation of §918.13, Florida Statutes, Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI to make and present tape recorded documents to prosecutors for a criminal trial, which they knew or in reckless disregard for the truth, should have known to be false.

B.  Also in violation of §918.13, Florida Statutes, Defendants PIERSON and MANTESTA fabricated and altered a false document in the form of an autopsy human form outline, on which they themselves marked the location of the victim's stab wounds.  Said Defendants presented said fabricated evidence in the criminal proceeding against Plaintiff, knowing it to be false.

125.  Defendant JENNE has joined in and participated in maintaining and continuing the pattern of criminal and/or racketeering conduct of the enterprise during his tenure as the Sheriff of Broward County, Florida.

126.  In or around July, 1984, Defendant PIERSON, along with Defendants

FANTIGRASSI, MANTESTA and GUESS presented said fabricated tape recorded documents to prosecutors as evidence at a criminal trial which resulted in the wrongful imprisonment of Plaintiff for a period of twenty-five years.

127. From December 28, 1983 until the close of trial on or about August 3, 1984 and afterwards, Defendants FANTIGRASSI, PIERSON, MANTESTA and GUESS had access to numerous items of other evidence, much of which they knew excluded Plaintiff as the perpetrator of the crime for which his confession was coerced.

A. In violation of §§914.22 and 918.13, Florida Statutes, and/or 18 U.S.C. §1512(b)(3) Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI withheld said evidence with the purpose of preventing its availability in a criminal proceeding and to hinder, delay or prevent information related to Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI underlying criminal and federal offenses against Plaintiff being communicated to a judge or law enforcement agency of Florida or the United States.

128. From November, 1983 onward, Defendants CITY OF MIRAMAR, PIERSON, MANTESTA, GUESS, FANTIGRASSI, JENNE and LAMBERTI, had available detailed reports and evidence which would have excluded the Plaintiff as the murderer of Ada Jankowski. The evidence was either ignored or withheld from the Plaintiff, his counsel and the courts.

129. From December 28, 1983 through July 31, 1984, Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI,

as part of a common plan, to close this unsolved case file of a rape/murder by arranging to fabricate, tamper with and present documentary evidence in the form of tape recorded statements to prosecutors for the purpose of implicating Plaintiff in a criminal trial for a capital felony when they knew that, not only was there no physical evidence to connect Plaintiff to the crime and that there was other evidence which could exclude him from said crime.

130.   Defendant JENNE, and other unnamed sheriffs, engaged in or joined in the conspiracy to conceal the criminal conduct of their agents, including Defendant FANTIGRASSI, aided and abetted the concealment of criminal conduct, aided and abetted the furtherance of the criminal conduct, failed to report the criminal conduct of Defendant FANTIGRASSI and other deputies, and, in violation of 18 U.S.C. §1512(3)(b) and §918.13 and §914.22, Florida Statutes, withheld, concealed and/or destroyed evidence and records pertaining to said illegal conduct against Plaintiff and others, obstructed justice, obstructed a criminal investigation, evaded criminal and/or civil prosecution and liability, and prevented the communication and investigation into violations of 18 U.S.C. §242, Federal offenses in furtherance of the racketeering and/or criminal conspiracy and enterprise.

131.   In furtherance of the affairs of the enterprise and as part of the conspiracy to cover up the illegal acts and federal offenses of Defendant FANTIGRASSI, and other deputies, from December, 2000 and onwards, in violation of §914.22, Florida Statutes, and 18 U.S.C. §1512(b)(3), Defendant

JENNE continued to participate in the ongoing obstruction of justice by intentionally failing to investigate the criminal actions of his agents, by withholding, concealing and/or destroying evidence and records pertaining to said illegal conduct against Plaintiff and others, in order to hinder, delay or prevent the communication of said information to another law enforcement agency or judge of the state or of the United States and, instead of taking any disciplinary action whatsoever, had promoted Defendant FANTIGRASSI, and other deputies.

132.   During the tenure of Defendant JENNE, said Defendant had access to information that demonstrated the innocence of the Plaintiff.

133.   Despite evidence of coercive and illegal tactics utilized by deputy sheriffs, such as Defendant FANTIGRASSI, Defendant JENNE's response was to promote them, rather than discipline them, and, in particular, even after the proof of coerced false confessions, evidence tampering and false convictions in a number of cases, Defendant JENNE allowed Defendant FANTIGRASSI to maintain control over the originals of the very evidence and records pertaining to the false arrests and convictions of Jerry Frank Townsend, Frank Lee Smith, Timothy Brown, and others.

134.   As additional evidence of the continuing pattern and practice of the criminal and/or racketeering activity of the enterprise, Defendants JENNE and LAMBERTI have deliberately maintained a written policy for "multiple case clearance," also maintained by Sheriffs Butterworth, Brescher, and Navarro, which is a virtual blueprint for coercing false confessions.  The policy includes specific

32

details prescribing taking the suspect to various crime scene locations, prior to taking a confession, to ensure that accurate information about the location, modus operandi, date and time of the crime, and other information "that only the suspect would know" is obtained.

135.   Additionally, Defendant JENNE had created a quota system for arrests and provided bonuses and other incentives for his agents to encourage "multiple case clearance" of cases.

136.   Thus, Defendant JENNE committed predicate acts in violation of 18 U.S.C. §1512(b)(3) and/or §914.22, Florida Statutes which were the proximate cause of Plaintiff's ongoing and continuing injuries to business or property from December, 2000 onwards.

137.   Instead of fulfilling his responsibilities as sheriff, Defendant JENNE has managed, controlled and participated in the affairs of the enterprise through a pattern of criminal and/or racketeering activities for the purpose of personal unlawful financial gain and other benefits and rewards.  (Exhibit D).

138.   Throughout the tenure of Defendant JENNE, and other unnamed sheriffs of Broward County, they have engaged in or joined in the conspiracy to conceal the criminal conduct of their agents, aided and abetted the concealment and furtherance of the criminal conduct, failed to report the criminal conduct of their agents, obstructed justice, obstructed criminal investigations, evaded criminal and/or civil prosecution and liability, in furtherance of the racketeering and/or criminal conspiracy and enterprise.

E.     **Defendant LAMBERTI- Pattern and Practice of
       Misconduct by the Broward County Sheriff's Office**

139.    Defendant LAMBERTI, being sued in his official capacity, is synonymous with the Broward County Sheriff's Office.

140.    At all times material hereto, the following persons held the office of Sheriff of Broward County: Edward Stack (1969-1979); Robert A. Butterworth (1979-1982); George A. Brescher (1983-1985); Nick Navarro (1985-1993); Ronald Cochran (1993-September 1997); Susan E. McCampbell (September 1997-December, 1997); Kenneth C. Jenne, II (January, 1998 to September 2007); Al Lamberti (September, 2007 to the present.

141.    Throughout the tenure of the above listed Sheriffs, there has existed a history of pattern and/or practice of misconduct as evidenced by, but not limited to, the following:

(A) Members of the Broward Sheriff's office knew that they would benefit in the form of promotions, merits, public applause, as well as, expansion of the Sheriff's Office by the prosecution of the Plaintiff and others.

(B) Members of the Broward Sheriff's office continued to target mentally challenged individuals as demonstrated by, but not limited to, the prosecution of the Plaintiff, Jerry Frank Townsend, Frank Lee Smith and Timothy Brown .

(C) There exists a pattern by deputy sheriffs of the Broward County Sheriff's Office of obtaining coerced and false confessions. These include but are not limited to the Plaintiff, Jerry Frank Townsend, Frank Lee Smith, Timothy

Brown, John Wood, Peter Dallas.

(D)  Members of the Broward Sheriff's office intentionally and/or incompetently investigated certain capital crimes, resulting in the false arrest and malicious prosecution of innocent people such as, but not limited to, the Plaintiff, Jerry Frank Townsend, Frank Lee Smith, Carl Stephen Rosati, Peter Roussonicolos, Peter Dallas, and/or Timothy Brown.

(E) Members of the Broward Sheriff's office were intentionally and/or incompetently trained and/or, supervised and/or disciplined which was the moving force behind individual officers violating the constitutional rights of citizens.  Notice of such misconduct was provided to by at least two federal cases, Goad v. Navarro, U.S. District Court Case No. 86-6563-CIV-ROETTGER and Hill v. Navarro, U.S. District Court Case No. 86-6388-CIV-ZLOCH.

(F) Members of the Broward Sheriff's office intentionally and/or incompetently covered up the misconduct and/or incompetence by destroying and/or having destroyed records pertaining to investigations into police misconduct, as well as criminal investigations.

(G) Despite notice of findings of inadequate and/or incompetent training and/or supervision and/or discipline, no checks and balances to hold deputy sheriffs accountable for their misconduct were instituted by the Broward County Sheriff's office.

(H)  There exists a de facto policy within the Broward County Sheriff's Office of covering up police misconduct by failing to properly

investigate alleged misconduct, and/or by conducting investigations that were intentionally incompetent and/or by fabricating evidence to justify the misconduct. Said policy spans the tenure of all Sheriffs listed herein.

142.   Defendant LAMBERTI's failure to properly train, supervise and discipline deputy sheriffs under his command was the proximate cause of the deprivation of rights suffered by the Plaintiff ANTHONY CARAVELLA.

143.   Defendant LAMBERTI had a duty to train, supervise, control or otherwise ensure that Defendant FANTIGRASSI, and other unnamed deputy sheriffs, did not violate the constitutional rights of persons such as the Plaintiff.

144.   Defendant LAMBERTI abdicated his policymaking and oversight responsibilities, thereby allowing the incident involving the Plaintiff to occur.

**F.   Defendant CITY OF MIRAMAR- Pattern and Practice of Misconduct by members of the City of Miramar Police Department**

145.   At all times material hereto, the following persons held the office of Chief of Police for the CITY OF MIRAMAR: Ben Galante (1979-1983); Ed Werder (1983-1985); Roy McLaren (1985-1989); Ben Galante (1989-1993); George Atkinson (1993-1999); Gwendolyn Boyd (1999-2000); Steven Frazer (interim) (April, 2000-July, 2000); Mel Standley (2000-2009); Keith Dunn (2009 to the present).

146.   Throughout the tenure of the above listed Police Chiefs, Defendant CITY OF MIRAMAR has engaged in a pattern and/or practice of misconduct, corruption and cover up as evidenced by, but not limited to, the following:

(A).   There existed at all times material hereto a de facto policy within the CITY OF MIRAMAR of covering up police misconduct by failing to properly investigate alleged misconduct, and/or by conducting investigations that were intentionally incompetent and/or by fabricating evidence to justify the misconduct.  Said policy spans the tenure of all Police Chiefs listed herein.

(B).   Throughout his twenty-five years of incarceration, evidence of Plaintiff's innocence has been withheld and/or destroyed and/or lost.

(C).   To date, physical evidence which would determine the actual culprit of the Jankowski rape/homicide has been not been tested against potential suspects such as Anthony Martinez, John Jankowski, Ray Steven Chappell and Cyril Cozier.

(D).   Said Defendant covered up police misconduct by doing intentionally incompetent investigations into misconduct, as well as incompetent investigations into criminal activities as demonstrated, but not limited to the Ada Jankowski rape/homicide.

(E).   There exists a pattern and practice of engaging in false arrests, imprisonment, false prosecution, excessive use of force, as evidenced by, but not limited to, incidents involving the Plaintiff, Ian Kissoonial, Chiquita Hammonds, Cornelius Green and Macquerita Quire.

(F).   Despite knowledge and acknowledgment of the misconduct within the Miramar Police Department, Defendant CITY OF MIRAMAR has, to date, failed to properly correct the obvious deficiencies which caused the injuries

to the Plaintiff and the above listed individuals, thereby allowing said misconduct to be repeated, and causing and allowing further injuries to be inflicted on unknowing and innocent citizens.

(G). Said Defendant had a number of homicides which remained unsolved through the incompetent or negligent investigation by its police officers. Since it has long been the custom or practice of Defendant CITY OF MIRAMAR to tolerate condone and cover up such constitutional violations by its police officers, which custom continues to this day, Defendants GUESS, PIERSON and MANTESTA knew they could falsely arrest and frame Plaintiff ANTHONY CARAVELLA with tape recordings of coerced false confessions and conceal exculpatory evidence, without fear of disciplinary action.

(H). Said Defendant knew or should have known that their officers would benefit in the form of promotions, merits and public applause by the prosecution of the Plaintiff.

147. Defendant CITY OF MIRAMAR's failure to properly train and/or supervise and/or discipline officers of the Miramar Police Department was the proximate cause of the deprivation of rights suffered by the Plaintiff ANTHONY CARAVELLA.

148. Defendant CITY OF MIRAMAR had a duty to train, supervise, control or otherwise ensure that Defendants GUESS, PIERSON, MANTESTA, and other unnamed police officers, did not violate the constitutional rights of persons such as the Plaintiff.

149. Defendant CITY OF MIRAMAR abdicated its policymaking and oversight responsibilities, thereby making the incident involving the Plaintiff foreseeable.

### G.   **Damages to Plaintiff**

150. The above acts and omissions of each of the Defendants constitute a course of conduct and failure to act amounting to deliberate indifference to the rights, health, safety and welfare of the Plaintiff and those similarly situated, resulting in the deprivation of the Plaintiff's constitutional rights under state and federal law.

151. The actions of the Defendants violated the clearly established and well settled federal constitutional right of the Plaintiff to be free from unreasonable seizure of his person.

152. At no time during the events described herein had the Plaintiff committed any of the cited criminal offenses for which he was charged.

153. The applicable statutes of limitation are tolled because the Defendants CITY OF MIRAMAR, GUESS, PIERSON, MANTESTA, FANTIGRASSI, JENNE and LAMBERTI fraudulently concealed their misconduct. As a result of said Defendants' misconduct, Plaintiff was unable to discover the wrongfulness of said misconduct until independent DNA testing exonerated the Plaintiff of all charges brought against him by the Defendants.

154. Pursuant to federal law, the applicable statute of limitations for a civil rights claim does not begin to run until March 25, 2010, when all criminal

charges against the Plaintiff were dismissed by the criminal courts. (Exhibit C).

155.  Plaintiff suffered irreparable damages and personal injury in the deprivation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, having been wrongfully tried for a capital felony and having been wrongfully incarcerated for a period of twenty five  years as a foreseeable result of the continuing pattern and practice of illegal activities as set forth herein.

156.  Plaintiff was also injured in his business and property in the form of lost employment, employment opportunities, wages and other compensation, as well as actual physical harm, as a direct result of this continuing pattern and practice of illegal activities as set forth herein.

157.  As a direct and proximate result of the acts of Defendants CITY OF MIRAMAR and/or GUESS and/or PIERSON and/or MANTESTA and/or FANTIGRASSI and/or JENNE and/or LAMBERTI, the Plaintiff ANTHONY CARAVELLA suffered the following injuries and damages:

    a.   Violation of his constitutional rights under the  Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

    b.   Loss of his physical liberty;

    c.   Loss of earning capacity;

    d.   Permanent physical and emotional injuries, humiliation and embarrassment and damage to his  reputation, all of which continue to this day and  are likely to continue into the future, and which  require the expenditure of money for treatment.

## COUNT I
## STATE TORT CLAIM AGAINST DEFENDANT PIERSON
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

158. The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-9, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147, and 150-157.

159. Defendant PIERSON's conduct was extreme and outrageous, and was intentional and/or done recklessly.

160. The above-mentioned acts were beyond the bounds of human decency, let alone the confines of the law, and were virtually certain to and did in fact result in emotional distress to the Plaintiff ANTHONY CARAVELLA.

161. As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A) At all times relevant hereto, Defendant PIERSON was acting outside the scope of his authority, and in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, rendering him individually liable.

(B) Plaintiff has provided Defendants and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28 and has satisfied all conditions precedent to maintaining this action. (Exhibit A).

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands compensatory and punitive damages against Defendant PIERSON, costs and trial by jury on all issues so triable by right.

41

## COUNT II
## STATE TORT CLAIM AGAINST DEFENDANT MANTESTA
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

162. The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-8, 10, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147, and 150-157.

163. Defendant MANTESTA's conduct was extreme and outrageous and was intentional and/or done recklessly.

164. The above-mentioned acts were beyond the bounds of human decency, let alone the confines of the law, and were virtually certain to and did in fact result in emotional distress to the Plaintiff ANTHONY CARAVELLA.

165. As a result of Defendant MANTESTA's conduct, Plaintiff experienced and continues to experience severe emotional distress resulting in bodily harm.

166. As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A) At all times relevant hereto, Defendant MANTESTA was acting outside the scope of his authority, and in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, rendering him individually liable.

(B) Plaintiff has provided Defendants and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28 and has satisfied

42

all conditions precedent to maintaining this action.  (Exhibit A).

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands compensatory and punitive damages against Defendant MANTESTA, costs and trial by jury on all issues so triable by right.

**COUNT III**
**STATE TORT CLAIM AGAINST DEFENDANT GUESS**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

167.  The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-8, 11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147 and 150-157.

168.  Defendant GUESS's conduct was extreme and outrageous and was intentional and/or done recklessly.

169.  The above-mentioned acts were beyond the bounds of  human decency, let alone the confines of the law, and were virtually certain to and did in fact result in emotional distress to the Plaintiff ANTHONY CARAVELLA.

170.  As a result of Defendant GUESS's conduct, Plaintiff experienced and continues to experience severe emotional distress resulting in bodily harm.

171. As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A) At all times relevant hereto, Defendant GUESS was acting outside the scope of his authority, and in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, rendering him individually liable.

(B)  Plaintiff has provided Defendants and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28 and has satisfied all conditions precedent to maintaining this action.  (Exhibit A).

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands compensatory and punitive damages against Defendant GUESS, costs and trial by jury on all issues so triable by right.

**COUNT IV**
**42 U.S.C. §1983 CLAIM AGAINST DEFENDANTS**
**PIERSON, MANTESTA, GUESS**

172.  The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147,150-157, 159-161, 163-166 and 168-171.

173.   While Defendants PIERSON, MANTESTA, and GUESS were acting under color of state and federal law as police officers for the CITY OF MIRAMAR, they  subjected the Plaintiff to the deprivation of rights and privileges secured to him under Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

174.  The actions and conduct of Defendants PIERSON, MANTESTA and GUESS violated the rights of the Plaintiff to due process of law under the Fifth Amendment, to a fair trial under the Sixth Amendment, and to be free from unreasonable detention, search and seizure under the Fourth Amendment to the United States Constitution.

175.  Defendants PIERSON, MANTESTA and GUESS caused the prosecution to be continued against the Plaintiff when they knew or should have known that said prosecution was without probable cause.  The matters known to them prior to and at the time they continued the prosecution would not have warranted a reasonable law enforcement officer to believe the Plaintiff had committed the alleged crimes.

176.  Defendants PIERSON, MANTESTA and GUESS instituted and continued the interrogation of the Plaintiff when they knew or should have known that the Plaintiff did not understand his constitutional rights and that their coercive and illegal interrogation tactics would induce the Plaintiff to make false statements.  No prosecution would have occurred but for the actions of these Defendants.

177.  The prosecution was instigated and continued as a result of Defendants PIERSON, MANTESTA and GUESS intentional acts of providing false information, false sworn affidavits, false documents, false reports and false evidence to the criminal courts, the prosecutors, Plaintiff's criminal defense counsel, and the public, thereby knowingly or recklessly disregarding the rights of the Plaintiff.

178.  As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

179.  42 U.S.C. §1983 provides a remedy for violation of these rights.

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA, demands compensatory and punitive damages against Defendants PIERSON, MANTESTA and GUESS, attorney fees, costs and trial by jury for all issues so triable by right.

**COUNT V**
**CONSPIRACY CLAIM AGAINST DEFENDANTS**
**PIERSON, MANTESTA, GUESS AND FANTIGRASSI**
**TO VIOLATE PLAINTIFF'S CONSTITUTIONAL RIGHTS**

180. The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-11, 14-17, 20-113, 115, 121-124, 126-129, 141, 143, 147, and 150-157.

181.  In addition to the acts alleged above, Defendants PIERSON, MANTESTA, and GUESS conspired together and with other unnamed police officers under the control and supervision of Defendant CITY OF MIRAMAR, along with Defendant FANTIGRASSI, of the Broward County Sheriff's office, for the purpose of depriving the Plaintiff of equal protection under the law, due process of law, the right to privacy, the right to be free from unlawful search and seizure.

182.   The above stated actions by the Defendants were overt actions in furtherance of the conspiracy to deprive the Plaintiff of his constitutional rights.

183.  Each of the Defendants understood, accepted, and either explicitly or implicitly knew that his overt actions would result in the deprivation of the Plaintiff's rights as alleged herein.

184.  As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and

emotional injuries, and loss of enjoyment of life as heretofore alleged.

185. 42 U.S.C. §1983 provides a remedy for violation of these rights.

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands compensatory and punitive damages against Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI, attorney fees, costs and trial by jury for all issues so triable by right.

## COUNT VI
## STATE TORT CLAIM AGAINST DEFENDANT CITY OF MIRAMAR

186. The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 145-157, 159-161, 163-166, 168-171, 173-179 and 181-185.

187. At all times material hereto, Defendant CITY OF MIRAMAR acted by and through his agents, employees and/or police officers.

188. At all times material hereto, individuals employed by the CITY OF MIRAMAR acted within the course and scope of their employment with said Defendant.

189. Defendant CITY OF MIRAMAR has a common law duty to protect others from the result of the negligent hiring, supervision and/or retention of its police officers, whose negligent or intentional acts, due to their positions as police officers, can foreseeably cause injuries to third parties.

190. Defendant CITY knew or should have known that Defendants

47

PIERSON, MANTESTA and GUESS were unfit to be hired and/or retained as a police officers.

191. Having negligently selected and hired PIERSON, MANTESTA and GUESS, it was unreasonable for the Defendant CITY to have failed to adequately supervise and/or discipline them.

192. It was foreseeable that Defendants would use their position, employed as police officers by Defendant CITY, to injure a third person.

193. The Plaintiff was placed in the zone of risk created by Defendant CITY's negligence in hiring and/or supervising and/or retention of Defendants PIERSON, MANTESTA and GUESS.

194. As a direct and proximate result of the negligence of the agents, employees and/or officers of Defendant CITY OF MIRAMAR, the Plaintiff ANTHONY CARAVELLA sustained injuries, for which said Defendant is vicariously liable as a matter of law.

195. As a direct and proximate result of Defendant CITY's negligent hiring and/or supervision and/or retention of Defendants PIERSON, MANTESTA, and GUESS Plaintiff ANTHONY CARAVELLA sustained injuries for which Defendant CITY is liable as a matter of law.

196. As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A) At all times relevant hereto, Defendants PIERSON, MANTESTA and GUESS were acting within the scope of their authority and acting as agents of

48

Defendant CITY OF MIRAMAR, pursuant to §768.28 and §30.07, Florida Statutes, rendering Defendant CITY OF MIRAMAR liable in its official capacity.

(B)  Plaintiff has provided Defendants and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28, and has satisfied all conditions precedent to maintaining this action. (Exhibit A).

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands compensatory damages against Defendant CITY OF MIRAMAR, costs and trial by jury on all issues so triable by right.

## COUNT VII
## 42 U.S.C. §1983 CLAIM AGAINST DEFENDANT CITY OF MIRAMAR

197.  The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 145-157, 159-161, 163-166, 168-171, 173-179 and 181-185.

198.  At all times material hereto, Defendant CITY OF MIRAMAR, through its officers and agents, was charged with the responsibility of hiring, screening, training, supervising, disciplining and controlling officers of the City of Miramar Police Department.

199.  At all times material hereto, Defendant CITY OF MIRAMAR, through its officers and agents, was deliberately indifferent in that the department either expressly or impliedly acknowledged and assented to the failure to train and/or supervise and/or control and/or otherwise screen employees of the Miramar

Police Department including, but not limited to, Defendants PIERSON, MANTESTA, and GUESS for dangerous propensities, lack of training and/or skill or other characteristics making said officers unfit to perform their duties.

200.  At all times material hereto, Defendant CITY OF MIRAMAR, through its officers and agents, was deliberately indifferent to the rights of the public, including the Plaintiff, in that it failed to determine whether members of the City of Miramar Police Department, including Defendants PIERSON, MANTESTA, and GUESS, posed a threat to the public as a result of their propensity to commit unlawful acts.

201.  At all times material hereto, Defendant CITY OF MIRAMAR, through its deliberate indifference, failed to ensure that the police officers of the City of Miramar Police Department did not violate the constitutional and statutory rights of citizens of the State of Florida, including the Plaintiff, while said officers were acting under color of state law for the City of Miramar Police Department.

202.  At all times material hereto, Defendant CITY OF MIRAMAR permitted and tolerated the above described acts and thereby caused a pattern and practice of unjustified, unreasonable and illegal false arrests, detentions and/or prosecutions by police officers of the Miramar Police Department against members of the public, including Plaintiff, which violated their Fourth, Fifth, Sixth and Fourteenth Amendment rights.  Although such acts were improper, police officers involved were not prosecuted, and/or disciplined and/or subjected to retraining, and some of said incidents were, in fact, covered up with official

claims that their acts were justified and proper. As a result, police officers, including Defendants PIERSON, MANTESTA and GUESS, were encouraged to believe that members of the public could be subjected to illegal arrests, detentions and/or prosecutions, and that said illegal arrests, detentions and/or prosecutions would be permitted by Defendant CITY OF MIRAMAR.

203. Defendant CITY OF MIRAMAR, through its officers or agents, has maintained a long-standing, widespread history of failure to properly hire and/or train and/or supervise and/or discipline its officers for, among other things, unlawful detentions and/or arrests and/or prosecutions, even though they had notice of such unlawful conduct by employees.

204. The foregoing acts, omissions, policies or customs of Defendant CITY OF MIRAMAR caused officers, including Defendants PIERSON, MANTESTA, GUESS, to believe that acts such as unlawful seizures and/or detentions, and/or arrests and/or prosecutions, among other things, would not be properly investigated, with the foreseeable result that officers, including Defendants PIERSON, MANTESTA and GUESS, were more likely to make unlawful seizures and/or detentions and/or arrests and/or prosecutions and/or commit criminal acts.

205. The Plaintiff ANTHONY CARAVELLA has been a victim of said abuses of lawful authority, and said illegal acts were the foreseeable result of the previously described acts, omissions, policies or customs of said Defendant.

206. As a direct and proximate cause of the acts described above, the

Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

207.  42 U.S.C. §1983 provides a remedy for violation of these rights.

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands compensatory damages against Defendant CITY OF MIRAMAR, attorney fees, costs and trial by jury on all issues so triable by right.

## COUNT VIII
## STATE TORT CLAIM AGAINST DEFENDANT FANTIGRASSI
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

208.  The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-7, 14, 16-17, 21, 23-112, 115-118, 121-124, 126-129, 131-4, 141-3, and 150-157.

209.  Defendant FANTIGRASSI's conduct was extreme and outrageous and was intentional and/or done recklessly.

210. The above-mentioned acts were beyond the bounds of human decency, let alone the confines of the law, and were virtually certain to and did in fact result in emotional distress to the Plaintiff ANTHONY CARAVELLA.

211.  As a result of Defendant FANTIGRASSI's conduct, Plaintiff experienced and continues to experience severe emotional distress resulting in bodily harm.

212.  As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A) At all times relevant hereto, Defendant FANTIGRASSI was acting

outside the scope of his authority, and in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, rendering him individually liable.

(B)  Plaintiff has provided Defendants and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28 and has satisfied all conditions precedent to maintaining this action.  (Exhibit A).

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands compensatory and punitive damages against Defendant FANTIGRASSI, costs and trial by jury on all issues so triable by right.

**COUNT IX**
**42 U.S.C. §1983 CLAIM AGAINST DEFENDANT**
**FANTIGRASSI**

213.  The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-7, 14, 16-17, 21, 23-112, 115-118, 121-124, 126-129, 131-4, 138, 141-3, 150-157 and 209-212.

214. While Defendant FANTIGRASSI was acting under color of state and federal law as a deputy sheriff for the Broward County Sheriff's Office/Defendant LAMBERTI, he subjected the Plaintiff to the deprivation of rights and privileges secured to him under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

215.  The actions and conduct of Defendant FANTIGRASSI violated the rights of the Plaintiff to due process of law under the Fifth Amendment, to a fair trial under the Sixth Amendment, and to be free from unreasonable detention,

search and seizure under the Fourth Amendment to the United States Constitution.

216. Defendant FANTIGRASSI caused the prosecution to be continued against the Plaintiff when he knew or should have known that said prosecution was without probable cause. The matters known to him prior to and at the time he continued the prosecution would not have warranted a reasonable law enforcement officer to believe the Plaintiff had committed the alleged crimes.

217. Defendant FANTIGRASSI instituted and continued the interrogation of the Plaintiff when he knew or should have known that the Plaintiff did not understand his constitutional rights and that his coercive and illegal interrogation tactics would induce the Plaintiff to make false statements.

218. Defendant FANTIGRASSI acted under color of state law and with malice in aiding and abetting the continuation of the prosecution. Said prosecution was only able to continue as a result of his intentional acts providing false information, false sworn affidavits, false documents, false reports and false evidence to the criminal courts, the prosecutors, Plaintiff's criminal defense counsel, and the public.

219. As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

220. 42 U.S.C. §1983 provides a remedy for violation of these rights.


**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA, demands

compensatory and punitive damages against Defendant FANTIGRASSI attorney fees, costs and trial by jury for all issues so triable by right.

## COUNT X
## 42 U.S.C. §1983 CLAIM AGAINST DEFENDANT JENNE

221.  The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-7, 13-14, 16-18, 21-138, 140-141, 150-157, 181-185, 209-212, and 214-220.

222.  At all times material hereto, Defendant JENNE was responsible for adopting and implementing the rules and regulations in regard to hiring, screening, training, supervising, controlling, disciplining and assigning deputies and/or employees to their duties within the Broward County Sheriff's Office.

223.  Defendant JENNE was deliberately indifferent to his duties in that he either expressly or impliedly acknowledged and assented to the failure to train, supervise, control or otherwise screen employees of the Broward County Sheriff's Office including, but not limited to, Defendant FANTIGRASSI, for dangerous propensities, lack of training and/or skill or other characteristics making said officers and employees unfit to perform their duties.

224.  Defendant JENNE knew or should have known of the history of widespread abuses existing with respect to the hiring and/or training and/or supervision within the Broward County Sheriff's Office.

225.  The conduct of Defendant JENNE in his failure to properly screen, select, train, supervise and/or discipline his deputy sheriffs and/or agents and/or employees, was deliberately indifferent to the constitutional rights of all persons,

including the Plaintiff ANTHONY CARAVELLA.

226.  Defendant JENNE abdicated his policymaking and oversight responsibilities, thereby allowing the deputy sheriffs and/or agents and/or employees to ignore the requirements of law and the policies of the Broward County Sheriff's Office.

227.  The above acts and omissions of Defendant JENNE constitute a course of conduct and failure to act amounting to deliberate indifference to the rights, health, safety and welfare of the Plaintiff and those similarly situated, resulting in the deprivation of the Plaintiff's constitutional rights under state and federal law.

228.  As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

229.  42 U.S.C. §1983 provides a remedy for violation of these rights.

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands compensatory and punitive damages against Defendant JENNE, attorneys fees, costs and trial by jury for all issues so triable by right.

## COUNT XI
## STATE TORT CLAIM AGAINST DEFENDANT LAMBERTI

230.  The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-7, 12-14, 16-18, 21-141, 150-157.

231.  At all times material hereto, Defendant LAMBERTI acted by and

through his agents, employees and/or deputy sheriffs.

232. At all times material hereto, individuals employed by Defendant LAMBERTI acted within the course and scope of their employment with said Defendant.

233. Defendant LAMBERTI has a common law duty to protect others from the result of the negligent hiring, supervision and/or retention of its police officers, whose negligent or intentional acts, due to their positions as police officers, can foreseeably cause injuries to third parties.

234. Defendant LAMBERTI knew or should have known that Defendant FANTIGRASSI was unfit to be hired as a deputy sheriff.

235. It was foreseeable that Defendant FANTIGRASSI would use his position, employed as a deputy sheriff by Defendant LAMBERTI, to injure a third person.

236. The Plaintiff was placed in the zone of risk created by Defendant LAMBERTI's negligence in hiring and/or supervising and/or retaining Defendant FANTIGRASSI.

237. As a direct and proximate result of the negligence of the agents, employees and/or deputy sheriffs of Defendant LAMBERTI, the Plaintiff ANTHONY CARAVELLA sustained injuries, for which said Defendant is vicariously liable as a matter of law.

238. As a direct and proximate result of Defendant LAMBERTI's negligent hiring and/or supervision and/or retention of Defendant FANTIGRASSI, Plaintiff ANTHONY CARAVELLA sustained injuries for which Defendant CITY

57

is liable as a matter of law.

239.  As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A) At all times relevant hereto, Defendant FANTIGRASSI was acting within the scope of his authority and acting as agent of Defendant LAMBERTI, pursuant to §768.28 and §30.07, Florida Statutes, rendering Defendant LAMBERTI liable in his official capacity.

(B) Plaintiff has provided Defendant and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28 and has satisfied all conditions precedent to maintaining this action. (Exhibit A).

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands compensatory damages against Defendant LAMBERTI, costs and trial by jury on all issues so triable by right.

## <u>COUNT XII</u>
## <u>42 U.S.C. §1983 CLAIM AGAINST DEFENDANT LAMBERTI</u>

240.  The Plaintiff ANTHONY CARAVELLA realleges paragraphs 1-7, 12, 14, 16-8, 27-112, 113-124, 126-131, 134, 139-144, 150-157, 214-220, 222-229 and 231-239.

241.  At all times material hereto, Defendant LAMBERTI, as Sheriff for Broward County, was charged with the responsibility of hiring, screening, training, supervising, disciplining and controlling officers of the Broward County Sheriff's Office.

242.  At all times material hereto, Defendant LAMBERTI was deliberately indifferent in that he either expressly or impliedly acknowledged and assented to the failure to train and/or supervise and/or control and/or otherwise screen employees of the Broward County Sheriff's Office including, but not limited to, Defendant FANTIGRASSI, for dangerous propensities, lack of training and/or skill or other characteristics making said deputy sheriffs unfit to perform their duties.

243.  At all times material hereto, Defendant LAMBERTI was deliberately indifferent to the rights of the public, including the Plaintiff, in that he failed to determine whether members of the Broward Sheriff's Office, including Defendant FANTIGRASSI,  posed a threat to the public as a result of their propensity to commit unlawful acts.

244.  At all times material hereto, Defendant LAMBERTI, through his deliberate indifference, failed to ensure that deputy sheriffs of Broward County Sheriff's Office did not violate the constitutional and statutory rights of citizens of the State of Florida, including the Plaintiff, while said deputy sheriffs were acting under color of state law for the Broward County Sheriff's Office.

245.  At all times material hereto, Defendant LAMBERTI permitted and tolerated the above described acts and thereby caused a pattern and practice of unjustified, unreasonable and illegal false arrests, detentions and/or prosecutions by deputy sheriffs of the Broward County Sheriff's Office against members of the public, including Plaintiff, which violated their Fourth, Fifth, Sixth and Fourteenth

Amendment rights.  Although such acts were improper, deputy sheriffs involved were not prosecuted, and/or disciplined and/or subjected to retraining, and some of said incidents were, in fact, covered up with official claims that their acts were justified and proper.  As a result, Broward County deputy sheriffs, including Defendant FANTIGRASSI, were encouraged to believe that members of the public could be subjected to illegal arrests, detentions and/or prosecutions, and that said illegal arrests, detentions and/or prosecutions would be permitted by Defendant LAMBERTI.

246.  Defendant LAMBERTI has maintained a system of review of incidents of abuse of lawful authority such as illegal and unlawful detentions and/or arrests and/or prosecutions, among other things, by deputy sheriffs, and complaints thereof, which has failed to identify the unlawful seizures by deputy sheriffs, and has failed to subject deputy sheriffs who employed such acts to appropriate discipline, and/or closer supervision and/or retraining, to the extent that it has become the de facto policy and custom of the Broward County Sheriff's Office to tolerate such acts by its deputy sheriffs.

247.  The foregoing acts, omissions, policies or customs of Defendant LAMBERTI caused deputy sheriffs, including Defendant FANTIGRASSI, to believe that acts such as unlawful seizures and/or detentions, and/or arrests and/or prosecutions, among other things, would not be properly investigated, with the foreseeable result that deputy sheriffs, including Defendant FANTIGRASSI, were more likely to make unlawful seizures and/or detentions and/or arrests and/or

prosecutions.

248.  The Plaintiff ANTHONY CARAVELLA has been a victim of said abuses of lawful authority, and said illegal acts were the foreseeable result of the previously described acts, omissions, policies or customs of said Defendant.

249.  As a direct and proximate cause of the acts described above, the Plaintiff ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

250.  42 U.S.C. §1983 provides a remedy for violation of these rights.

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands compensatory damages against Defendant LAMBERTI, attorney fees, costs and trial by jury for all issues so triable by right.

**COUNT XIII**
**VIOLATION OF §772.103(4), F.S. and/or 18 U.S.C. §1962(d)**
**CLAIM AGAINST DEFENDANTS PIERSON, MANTESTA,**
**GUESS, FANTIGRASSI AND JENNE**

251.  The Plaintiff ANTHONY CARAVELLA, as to Defendant PIERSON, realleges paragraphs1-9, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147, and 150-157; as to Defendant MANTESTA realleges paragraphs 1-8, 10, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147, and 150-157; as to Defendant GUESS, realleges paragraphs 1-8, 11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147 and 150-157; as to Defendant FANTIGRASSI realleges paragraphs 1-7, 14, 16-18, 21, 23-112, 115-118, 121-124, 126-129, 131-4, 141-3, and 150-157; as to Defendant JENNE realleges paragraphs 1-7, 13-14, 16-18, 21-

61

138, 140-141, 150-157.

252. Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE are persons under §1.01, F.S. and/or 18 U.S.C. §1961(3).

253. The Broward Sheriff's Office and the Miramar Police Department are enterprises within the meaning of §772.102(3), Florida Statutes, and/or 18 U.S.C. §1961(4). The relationship between Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE constitutes an enterprise under §772.102(3), Florida Statutes, and/or 18 U.S.C. §1961(4), and the above-named persons have engaged in a pattern of conspiracy and criminal activities in violation of §772.103 et. seq, F.S..

254. The relationship between Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE constitutes an association-in-fact enterprise under §772.102(3), F.S. and/or 18 U.S.C. §1961(4) and the above named persons have engaged in a pattern of conspiracy and racketeering and/or criminal activities in violation of §772.103, F.S. and/or 18 U.S.C. §1962, et. seq.

255. In violation of §772.103(4), F.S. and/or 18 U.S.C. §1962 (d), Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI in an agreement, the objective of which was in substantive violation of §772.103(2) and (3), F.S. and/or 18 U.S.C. §1962(b) and ©, with an awareness of the essential nature and scope of the enterprise and with an intent to participate in it.

256. Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI

agreed to enter into a conspiracy to violate the provision of §772.103(2) and (3), F.S. and/or 18 U.S.C. §1962(b) and (c) as described herein.  As evidence of this agreement, Defendants conspired to fabricate, tamper with, and conceal evidence, and tamper  with witnesses, in furtherance of this conspiracy in violation of §914.22 and §918.13, F.S. and/or 18 U.S.C. 1512(b)(3),  for the purpose of corruptly influencing the due administration of justice and knowingly hindering, delaying, or preventing the communication to a law enforcement officer or judge of the State of Florida and/or the United States of information relating to the commission of a criminal offense and/or a Federal offense in violation of 18 U.S.C. §242.

257.  In furtherance of this conspiracy to fabricate and tamper with evidence, Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI to knowingly make and present false sworn affidavits, false documents, false reports and other false evidence which caused the indictment against the Plaintiff to be entered on January 11, 1984, in Broward County, Florida.

(A)  Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI knew that Plaintiff was a mentally challenged juvenile and therefore not intellectually capable of understanding his Miranda rights or the consequences of abandoning such rights, yet they falsely testified under oath in the prosecution of a capital felony that they did not know Plaintiff was mentally challenged.  These false statements were part of a plan to ensure that the Plaintiff's

tape recorded statement, in the form of a coerced false confession, and the only evidence against him, would be admissible in court.

(B) Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI further falsely testified that Plaintiff had made a free and deliberate choice to waive his rights and make said statement, when in fact they knew that said confession was coerced by intimidation and deception and therefore inadmissible.

(C) Defendants MANTESTA, GUESS, PIERSON and FANTIGRASSI repeatedly interrogated Plaintiff and/or took him to the crime scene while further interrogating him, mentally and physically wearing Plaintiff down.

(D) On January 11, 1984 and from May 14, 1984 to July 16, 1984 and from July 25, 1984 to August 3, 1984, Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI further gave false testimony as to alleged material facts and statements allegedly made by Plaintiff.

(E) On January 11, 1984 and from May 14, 1984 to July 16, 1984 and from July 25, 1984 to August 3, 1984, Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI conspired to continue to make false statements under oath when they knew or should have known that Plaintiff was not the perpetrator of the crimes for which he was charged.

258. Defendant JENNE conspired to violate provisions of §772.103(2) and (3), F.S. and/or 18 U.S.C. §1962 et seq. by interfering with the due administration

of justice, improperly terminating felony investigations, securing indictments and verdicts based on false testimony and false evidence, and, in violation of §914.22 and §918.13, F.S. and/or 18 U.S.C. §1512(b)(3), withholding, concealing or destroying evidence and records pertaining to the illegal conduct of his agents that was also in violation of 18 U.S.C. §242, against Plaintiff and others, thereby hindering, delaying, or preventing the communication to a law enforcement officer or judge of the State of Florida and/or the United States of information relating to the commission of a criminal and/or a Federal offense and causing additional and separate injuries to the Plaintiff and others, in violation of §772.103(2) and (3) and/or 18 U.S.C. §1962 (b) and (c).

259.   Defendant JENNE conspired to violate provisions of §772.103, et seq., F.S. and/or 18 U.S.C. §1962 et seq. by aiding and abetting the proscribed conduct of his employees, conspired to conceal and cover up such conduct, and failed to report the criminal conduct of his employees, in violation of §914.22, F.S. and/or 18 U.S.C. 1512(b)(3) and deliberately perpetuated the continuous pattern of racketeering and/or criminal activities and ongoing obstruction of justice, which directly caused injuries to multiple victims including Plaintiff, thus facilitating and furthering the affairs of the enterprise in violation of §772.103(4), F.S. and/or 18 U.S.C. §1962(d).

260.  Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI, in concert with each other and with the intent to conceal and defraud, conspired and came to a meeting of the minds whereby they would conceal the wrongdoing of

said Defendants' conduct against Plaintiff.

261.  As detailed more fully herein, Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE, for the purpose of financial gain and expansion of the City of Miramar Police Department and the Broward County Sheriff's Office, have engaged in a conspiracy to further and facilitate the affairs of the enterprise conducted through a pattern of racketeering and/or criminal activity, of which the Plaintiff is but one victim, which have a common theme with similar purposes, results, and/or methods of commission, the continuity of which is evidenced herein and threatens to continue into the future.

262.  Defendants have joined in and participated in maintaining and continuing the ongoing pattern of criminal conduct of the enterprise from 1983 to the present day.

263.  Plaintiff suffered irreparable damages and personal injury in the deprivation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, having been wrongfully tried for a capital felony and having been wrongfully incarcerated for a period of twenty-five years as a direct result of the continuing pattern and practice of illegal activities as listed above.

264.  Plaintiff was injured in his business and property in the form of lost employment, employment opportunities, wages and other compensation, as well as personal injuries and actual physical harm, as a direct result of the predicate acts involved in this continuing pattern and practice of illegal activities as listed above and by reason of the above violation of §772.103(4), F.S. and/or 18 U.S.C.

§1962(d).

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands

judgment against Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI

and JENNE, individually, jointly and severally, in an amount that is adjudged as

fair and reasonable, treble damages, plus costs, disbursements, reasonable

attorney's fees, interest, and whatever other relief the Court deems just and

equitable and trial by jury for all issues so triable by right.

**COUNT XIV**
**VIOLATION OF §772.103(2), F.S. and/or 18 U.S.C. §1962(b) CLAIM**
**AGAINST DEFENDANTS PIERSON, MANTESTA, GUESS AND**
**FANTIGRASSI**

265.  The Plaintiff ANTHONY CARAVELLA, as to Defendant

PIERSON realleges paragraphs1-9, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-

129, 147, and 150-157; as to Defendant MANTESTA realleges paragraphs 1-8,

10, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147, and 150-157; as to

Defendant GUESS, realleges paragraphs 1-8,  11, 15, 17, 19-20, 22, 24-112, 115,

121-124, 126-129, 147 and 150-157; as to Defendant FANTIGRASSI realleges

paragraphs 1-7, 14, 16-18, 21, 23-112, 115-118, 121-124, 126-129, 131-4, 141-3,

and 150-157.

266.  In violation of §772.103(2), F.S. and/or  18 U.S.C. §1962(b),

Defendants PIERSON, MANTESTA and GUESS conspired with Defendant

FANTIGRASSI to maintain an interest in and/or control of an enterprise through a

pattern of racketeering and/or  criminal activity, the activities of which enterprise

67

affect interstate commerce.

267.  In violation of 18 U.S.C. §1512(b)(3) and/or §914.22 and §918.13, F.S.,  relating to tampering with witnesses and evidence and/or the obstruction of justice from December 28, 1983 through the end of trial on or about August 3, 1984, Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI, utilizing the state and interstate telephone system in furtherance of a continuing pattern and practice of racketeering and/or criminal activities with the purpose of concealing their deliberate violation of Plaintiff's  constitutional rights, an offense under 18 U.S.C. §242, and to corruptly obstruct the due administration of justice and defraud the legal system.

268.  In violation of §772.103(2), F.S. and/or 18 U.S.C. §1512, relating to the obstruction of justice, from December 28, 1983 through the end of trial on or about August 3, 1984, Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI, to corruptly and deliberately frame and convict Plaintiff for a crime he did not commit.

(A) From December 28, 1983 to September 20, 1984, in violation of §918.13, F.S.,  Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI conspired with each other and/or the above named persons to fabricate, tamper with and conceal evidence as detailed herein for the purpose of concealing exculpatory evidence and presenting false evidence, false reports and false affidavits to the prosecutors, the courts and the public.

(B) From December 28, 1983 to September 20, 1984, in violation of

68

§914.22, F.S., said Defendants knowingly engaged in misleading conduct towards other persons to induce them to testify untruthfully in an official proceeding and to prevent the communication of information relating to the commission of an offense to a judge of the State of Florida.

(C) From January 11, 1984 to July 16, 1984 and from July 25, 1984 to August 3, 1984, in furtherance of this conspiracy to fabricate and tamper with evidence, Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI conspired with each other and/or the above named persons to make false statements under oath in an official proceeding relating to the prosecution of a capital felony, as detailed herein, for the purpose of corruptly influencing the due administration of justice.

(D) From December 28, 1983 to the present day, in violation of 18 U.S.C. §1512(b)(3), said Defendants have knowingly hindered, delayed, or prevented the communication to a law enforcement officer or judge of the United States of information relating to the commission of a Federal offense in violation of 18 U.S.C. §242.

269.   Plaintiff suffered irreparable damages and personal injury in the deprivation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, having been wrongfully tried for a capital felony and having been wrongfully incarcerated for a period of twenty-five years as a direct result of the continuing pattern and practice of illegal activities as listed above.

270.   Plaintiff was injured in his business and property in the form of lost

employment, employment opportunities, wages and other compensation, as well as personal injuries and actual physical harm, as a direct result of the predicate acts involved in this continuing pattern and practice of illegal activities as listed above and by reason of the above violation of Florida Statute §772.103(2) and 18 U.S.C. §1962(b).

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands judgment against Defendants, individually, jointly and severally, in an amount that is adjudged as fair and reasonable, treble damages, plus costs, disbursements, reasonable attorney's fees, interest, and whatever other relief the Court deems just and equitable and trial by jury for all issues so triable by right..

### COUNT XV
### VIOLATION OF §772.103(3), F.S. and/or 18 U.S.C. §1962(c)
### CLAIM AGAINST DEFENDANTS PIERSON, MANTESTA, GUESS, FANTIGRASSI AND JENNE

271.  The Plaintiff ANTHONY CARAVELLA, as to Defendants The Plaintiff ANTHONY CARAVELLA, as to Defendant PIERSON realleges paragraphs1-9, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147, and 150-157; as to Defendant MANTESTA realleges paragraphs 1-8, 10, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147, and 150-157; as to Defendant GUESS realleges paragraphs 1-8,  11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147 and 150-157; as to Defendant FANTIGRASSI realleges paragraphs 1-7, 14, 16-18, 21, 23-112, 115-118, 121-124, 126-129, 131-4, 141-3,  and 150-157; as to Defendant JENNE realleges paragraphs 1-7, 13-14, 16-18, 21-138, 140-141, 150-

157.

272.  The relationship between Defendants PIERSON, MANTESTA and GUESS, FANTIGRASSI, and JENNE constitutes an association-in-fact enterprise under §772.102(3), F.S., 18 U.S.C. §1961(4) and the above named persons have engaged in a pattern of conspiracy and racketeering and/or criminal activities in violation of §772.103, F.S. and 18 U.S.C. §1962, et. seq.

273. In violation of §772.103(3), F.S. and  18 U.S.C. §1962(c), Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI to participate in the affairs of an enterprise through a pattern of racketeering and/or criminal activity and predicate acts as herein described.  The persons named above aided and abetted each other, conducted and participated directly or indirectly in the conduct and affairs of the enterprise and/or associated themselves with the enterprise through a pattern of racketeering and/or criminal activity by the predicate acts listed herein.  Those specific acts included racketeering and conspiracy, and were of an ongoing nature continuing into the future.

274.  Defendant JENNE was part of the conspiracy and the enterprise at all times material herein.

275.  As detailed more fully herein, in violation of §772.103(3), Florida Statutes and/or 18 U.S.C. §1962(c) Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI, and JENNE, for the purpose of financial gain and expansion of the City of Miramar Police Department, and the Broward County Sheriff's Office,

71

have committed various proscribed acts of obstruction of justice and engaged in a pattern of racketeering and/or criminal activity, of which the Plaintiff is but one victim, which have a common theme with similar purposes, results, and/or methods of commission, the continuity of which is evidenced herein and threatens to continue into the future.

276. Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE have joined in and participated in maintaining and continuing the pattern of criminal conduct of the enterprise from 1983 to the present day.

277. Plaintiff suffered irreparable damages and personal injury in the deprivation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, having been wrongfully tried for a capital felony and having been wrongfully incarcerated for a period of twenty-five years as a direct result of the continuing pattern and practice of illegal activities as listed above.

278. Plaintiff was injured in his business and property in the form of lost employment, employment opportunities, wages and other compensation, as well as personal injuries and actual physical harm, as a direct result of the predicate acts involved in this continuing pattern and practice of illegal activities as listed above and by reason of the above violation of §772.103(3), F.S. and/or 18 U.S.C. §1962(c).

**WHEREFORE**, the Plaintiff ANTHONY CARAVELLA demands judgment against Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI , and JENNE, individually, jointly and severally, in an amount that is adjudged as

fair and reasonable, treble damages, plus costs, disbursements, reasonable attorney's fees, interest, and whatever other relief the Court deems just and equitable and trial by jury for all issues so triable by right.

DATED this _____ day of June, 2011.


HEYER & ASSOCIATES, P.A.
Attorneys for Plaintiff
1311 SE 4th Avenue
Fort Lauderdale, FL 33316
(954) 522-4922 / (561) 833-1068
Fax: (954) 522-4955

BY: _____
    BARBARA A. HEYER
    BAR NO.  346691

# HEYER & ASSOCIATES, P.A.

### Attorneys at Law

Barbara A. Heyer

1311 S.E. 4th Avenue
Fort Lauderdale, Florida 33316

Broward: (954) 522-4922
Palm Beach: (561) 833-1068
Fax: (954) 522-4955
email: civilrtslaw@hotmail.com

May 28, 2010

Chief Keith F. Dunn
Miramar Police Department
3064 North Commerce Parkway
Miramar, FL 33025

    RE:  Anthony Caravella

Dear Chief Dunn:

    Pursuant to Florida Statutes, Chapter 768.28, notice is hereby given of our intent to bring a lawsuit on behalf of Anthony Caravella for damages suffered as a result of his wrongful arrest on or about December 30, 1983 by members of your police department and his subsequent wrongful incarceration and conviction.

    This notice applies to the City, the officials of the City, and the appropriate police officers of the City's Police Department.

    The following documents, now being the subject of litigation, may not be destroyed, pursuant to Florida law:

1. Complaints of police misconduct.
2. Investigations of possible police misconduct.
3. Letters of intent to sue based on claims of police misconduct.
4. Documents reflecting settlements or releases relating to allegations of police misconduct.
5. Disciplinary measures imposed against members of your police department.
6. Personnel files of members of your police department.
7. Any investigations, tapes and/or police reports concerning the arrest of Anthony Caravella and/or the murder of Ada Jankowski on or about November 5, 1983.

    In addition, pursuant to §119, Fla.Stat., I am requesting that the following materials be made available for my review:



*Heyer & Associates, ı .A.*

Page -2-

1. Any logbooks, lists, or other materials in your possession or control reflecting complaints of police misconduct.  These materials shall include complaints, whether investigated or not, and whether filed by civilians or internally, covering the period of 1983 to the present.

2. All policy and procedure manuals in effect during the years 1982, 1983, and 1984.

3. All documents reflecting the incident at issue. These materials shall include, but are not limited to, all statements, photographs, reports, videotapes, audiotapes, e-mails, witness lists, lists of persons interviewed, supervisory and self evaluations reports, whether in paper or electronic format.

4. All documentation reflecting the follow-up investigation of the incident at issue.  These materials shall include, but are not limited to, all reports or other materials prepared in anticipation of, or as a result of, any such investigation including all statements, photographs, reports, videotapes, audiotapes, e-mails, witness lists, lists of persons interviewed, whether in paper or electronic format.

5. The personnel and internal affairs files of all police officers who were involved in the arrest of Anthony Caravella and investigation into the death of Ada Jankowksi.  These files shall include those of supervisory personnel as well as the actual participants in the incident at issue.

Please have these materials available for my review on Tuesday, June 22, 2010 at 10:00 AM. Kindly have your office contact mine to confirm this appointment, as well as the location for reviewing these records.  Thank you.

Very truly yours,

Barbara A. Heyer

BAH/phr
cc:       Insurance Commissioner, State of Florida

Via Certified Mail – Return Receipt Requested

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

7009 2250 0000 9846 2923

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ $0.44 | 0251 |
| Certified Fee | $2.80 | 05 |
| Return Receipt Fee (Endorsement Required) | $2.30 | Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $5.54 | 05/28/2010 |

Sent To  Chief Dunn Miramar PD
Street, Apt. No.; or PO Box No.  3064 N. Commerce Pkwy
City, State, ZIP+4  Miramar FL 33025

PS Form 3800, August 2006         See Reverse for Instructions

---

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Chief Dunn
Miramar Police Dept.
3064 N. Commerce Pkwy
Miramar, FL 33025

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X Bonnie Borgmann          ☐ Agent
                           ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Bonnie Borgmann                   5/29/10

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from service label)    7009 2250 0000 9846 2923

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

# H*E*YER & ASSOCIATES, P.A.
## Attorneys at Law

Barbara A. Heyer

1311 S.E. 4th Avenue
Fort Lauderdale, Florida 33316

Broward: (954) 522-4922
Palm Beach: (561) 833-1068
Fax: (954) 522-4955
email: civilrtslaw@hotmail.com

May 28, 2010

Sheriff Al Lamberti
Broward Sheriff's Office
2601 W. Broward Boulevard          Certified Mail
Fort Lauderdale, FL  33315         Return Receipt Requested

          RE:  Anthony Caravella

Dear Sheriff Lamberti:

     Pursuant to Florida Statutes, Chapter 768.28, notice is
hereby given of our intent to bring a lawsuit on behalf of
Anthony Caravella for damages suffered as a result of his
wrongful arrest on or about December 30, 1983 and subsequent
wrongful incarceration and conviction.

     This notice applies to the officials of the Broward County
Sheriff's Office, and the appropriate deputy sheriffs of the
Broward County Sheriff's Office.

     The following documents, now being the subject of
litigation, may not be destroyed, pursuant to Florida law:

     1.   Complaints of police misconduct.
     2.   Investigations of possible police misconduct.
     3.   Letters of intent to sue based on claims of police
          misconduct.
     4.   Documents reflecting settlements or releases relating
          to allegations of police misconduct.
     5.   Disciplinary measures imposed against members of your
          police department.
     6.   Personnel files of members of your police department.
     7.   Any investigations, tapes and/or police reports
          concerning the arrest of Anthony Caravella and/or the
          murder of Ada Jankowski on or about November 5, 1983.

     In addition, pursuant to §119, Fla.Stat., I am requesting
that the following materials be made available for my review:

*Heyer & Associates, P.A.*

Page -2-

1. Any logbooks, lists, or other materials in your possession or control reflecting complaints of police misconduct. These materials shall include complaints, whether investigated or not, and whether filed by civilians or internally, covering the period of 1983 to the present.

2. All policy and procedure manuals in effect during the years 1982, 1983, and 1984.

3. All documents reflecting the incident at issue. These materials shall include, but are not limited to, all statements, photographs, reports, videotapes, audiotapes, e-mails, witness lists, lists of persons interviewed, supervisory and self evaluations reports, whether in paper or electronic format.

4. All documentation reflecting the follow-up investigation of the incident at issue. These materials shall include, but are not limited to, all reports or other materials prepared in anticipation of, or as a result of, any such investigation including all statements, photographs, reports, videotapes, audiotapes, e-mails, witness lists, lists of persons interviewed, whether in paper or electronic format.

5. The personnel and internal affairs files of all police officers who were involved in the arrest of Anthony Caravella and investigation into the death of Ada Jankowksi. These files shall include those of supervisory personnel as well as the actual participants in the incident at issue.

Please have these materials available for my review on Wednesday, June 23, 2010 at 10:00 AM. Kindly have your office contact mine to confirm this appointment, as well as the location for reviewing these records.

Should you wish to discuss this matter, do not hesitate to contact me. Thank you.

Very truly yours,

Barbara A. Heyer

BAH/phr

cc:       Insurance Commissioner, State of Florida



**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**OFFICIAL USE**

| Postage | $ | $0.44 |
| Certified Fee | | $2.80 |
| Return Receipt Fee (Endorsement Required) | | $2.30 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $5.54 |

05/28/2010

Sent To  Sheriff Lamberti
Street, Apt. No.; or PO Box No.  2601 W Broward Blvd
City, State, ZIP+4  Ft Laud FL 33315

PS Form 3800, August 2006                    See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Sheriff Lamberti
2601 W Broward Blvd
Ft Lauderdale
33315

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by ( Printed Name )

BROWARD SHERIFF'S OFFICE
PSB - MAILROOM

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number
(Transfer from service label)
7009 0080 0001 6203 8633

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

# HEYER & ASSOCIATES, P.A.

### Attorneys at Law

Barbara A. Heyer

1311 S.E. 4th Avenue
Fort Lauderdale, Florida 33316

Broward: (954) 522-4922
Palm Beach: (561) 833-1068
Fax: (954) 522-4955
email: civilrtslaw@hotmail.com

May 28, 2010

Insurance Commissioner
The Capitol
PL 11
Tallahassee, FL    32301

RE:  Anthony Caravella v. Miramar Police Department, etal.
Anthony Caravella v. Broward Sheriff's Office, etal.

To the Department of Insurance:

Pursuant to Florida Statutes, the attached letters
directed to Chief Keith Dunn of the Miramar Police Department
and Sheriff Al Lamberti of the Broward Sheriff's Office are
being sent to your office to provide notice of our intent to
file a lawsuit on behalf of Anthony Caravella.

Very truly yours,

Barbara A. Heyer

BAH/phr

Enc

Certified Mail No. 70092250000098462862
Return Receipt Requested



**U.S. Postal Service™**
## CERTIFIED MAIL™ RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

# OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.61 | 0251 |
| Certified Fee | | $2.80 | |
| Return Receipt Fee (Endorsement Required) | | $2.30 | |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $5.71 | 05/28/20 |

Sent To _Dept of Insuran_
Street, Apt. No.; or PO Box No. _The Capitol_
City, State, ZIP+4 _Tallahassee FL 32301_

PS Form 3800, August 2006          See Reverse for Instructions

7009 2250 0000 9846 2862

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

_Insurance Comm._
_The Capitol_
_Tallahassee FL_
_32301_

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
DEPARTMENT OF FINANCIAL SERVICES   ☐ Agent
MAIL SERVICES SECTION   ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number   7009 2250 0000 9846 2862
(Transfer from service label)

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

STATE OF FLORIDA,            :            CASE NO.: 84-339CF10A
     Plaintiff,

                          :            JUDGE THOMAS LYNCH, IV

v.                              **Filed in Open Court**

ANTHONY CARAVELLA,     :        **Howard C. Forman, Clerk**
     Defendant.                       **On** MAR 2 5 2010
                               **By** _____

### STATE'S MOTION TO VACATE AND SET ASIDE THE DEFENDANT'S JUDGEMENTS AND SENTENCE AND TO DISMISS THE INDICTMENT

     **COMES NOW**, the State of Florida, by and through the undersigned Assistant State Attorney, and pursuant to Florida Rule of Criminal Procedure 3.850 moves this Honorable Court to vacate and set aside the judgments and sentence of Anthony Caravella for his convictions under the Indictment, and as grounds therefore, states as follows:

     1.  Bode Technology Group (Bode) has issued a report eliminating Anthony Caravella as the source of the DNA collected from the victim's body in 1983.  This DNA was collected from the victim's body by a forensic pathologist from the Broward County Medical Examiner's Office, post mortem.  DNA testing was not available in 1983, when Ada Jankowski was found murdered, or in 1984 when Anthony Caravella was indicted, tried and convicted for sexual battery and first degree murder of Ada Jankowski.

     2.  The victim, 58 year-old Ada Jankowski was found murdered on November 5, 1983. An autopsy revealed that she had been stabbed 29 times, beaten and strangled.  According to the Medical Examiner, the cause of death was strangulation and multiple stab wounds.  Almost two months after Ada Jankowski's body was found, Anthony Caravella became a suspect in her murder when he was taken into custody by police on December 28, 1983 on an unrelated juvenile



matter, and told police that he was a witness to her murder.  He was indicted by the Grand Jury on January 11, 1984, for sexual battery and first degree murder.

3.  When this case was tried in 1984 the evidence against Anthony Caravella included his own four voluntary statements to police admitting his role in the sexual battery and brutal murder of Ada Jankowski.  Those statements were the subject of a pre-trial motion to suppress. Special Assistant Public Defender T. Don Tenbrook, on behalf of Anthony Caravella, argued that Anthony Caravella had not knowingly and intelligently waived his Fifth Amendment right to silence or his Sixth Amendment right to counsel when he gave his statements to police.  Judge Arthur Franza conducted a three-day evidentiary hearing on the motion to suppress that can be found in the Record on Appeal at pages 1 thru 583.  The Record on Appeal was previously submitted to the Court on January 18, 2005 as Exhibit I to the State's Response to the Defendant's Motion for Post-Conviction Relief.

4.  Neither defense counsel, nor Anthony Caravella claimed that Anthony Caravella was coerced, beaten, or told what to say by police as grounds for the motion to suppress. Testimony regarding Anthony Caravella's full scale IQ of 67 was introduced by the defense because it related to "...the issue of intelligence and for the purpose of a motion to suppress." R499. Defense counsel also informed the Court "I am not arguing insanity in this case, obviously." R499. Anthony Caravella's competency to stand trial was never raised as an issue.

5.  The defense presented testimony from then Assistant Public Defender Robin Siegel, at the hearing on the motion to suppress. R501-543. APD Siegel represented Anthony Caravella on two unrelated juvenile matters: loitering and prowling, and a burglary and grand theft. R503-504. Testimony at the hearing on the motion to suppress established that APD Siegel was appointed by Juvenile Court Judge Scott to advise Anthony Caravella regarding his speaking

with police after he gave his first statement to police in the presence of his mother. In his first statement to police, Anthony Caravella claimed he was a witness to the murder, and not a participant. R519. APD Siegel testified that she had advised Anthony Caravella not to talk to police again or take a polygraph examination. R 510-511. Anthony Caravella ignored this legal advice, waived his rights, gave a second statement to police in the presence of his mother, and eventually submitted to a polygraph examination. It was after this second statement that Anthony Caravella became a suspect in the Ada Jankowski murder. Anthony Caravella also gave a third statement to police. Police unsuccessfully tried to contact his mother before taking the third statement. This third statement was suppressed by Judge Franza because Anthony Caravella's mother was not present when it was taken. R587. APD Siegel further testified that she again advised Anthony Caravella not to speak to police prior to him giving his fourth statement. R 524-527. Anthony Caravella again ignored this legal advice, waived his rights, and gave a statement to police in the presence of his mother. It was in this fourth statement that Anthony Caravella told police that he had acted alone in committing the crimes. He confessed to the sexual battery and the murder. Upon questioning from police, Anthony Caravella denied ejaculating during the sexual battery.

6.    Judge Franza denied the motion to suppress as it related to statements one, two, and four, ruling the statements admissible. R583-590. Judge Franza stated on the record "...Mr. Caravella, I think you have the competent mentality to know what you are doing and what you are saying." R584. Judge Franza found that Anthony Caravella was advised of his rights, waived his rights, and gave voluntary statements to police, noting "He may not be academically smart; but I think this boy can get along in the streets pretty good." R589. Judge Franza specifically found as to statement number four:

3

"At any rate, I think his own desires were paramount. He wanted to talk to the police. He wanted to talk himself out of it. When he realized he couldn't, he told police about statement number four.

Now, what were the police to do, while they were asking him to point out the buildings, and he said, 'There was nobody else, it was just me'? What would a reasonably prudent police officer do? Say, 'Please, son, don't confess the murder to me'?

That's what they were out to get, a solving of the murder. Should they have stuffed his mouth with his own socks to keep him from talking? I think not. It was a good extension of police work. I see nothing wrong with it. I don't think it violated any of his due process rights. Accordingly, I find that the statement to be freely and voluntarily made."

R 589-590. Anthony Caravella's first, second and fourth statements to police were presented by the State as evidence at his trial.

7. Anthony Caravella also told his mother on several occasions that he had committed the murder. Anthony Caravella made these statements to his mother while he was alone with her at the police station, and also over the telephone. Mrs. Lorraine Dees recounted her son's admissions to her regarding the murder in her statement to police on January 2, 1984, before the Grand Jury on January 11, 1984, and in her deposition taken by defense counsel on March 16, 1984. Mrs. Dees also testified as to the admissions at the trial, and was declared an adverse and hostile witness by Judge Franza after she gave testimony that was inconsistent with her prior statements in which she provided circumstantial evidence of Anthony Caravella's guilt. R1432. Mrs. Dees admitted at trial that the night before this case was presented to the Grand Jury, Anthony Caravella told her over the telephone that he had committed the murder of Ada Jankowski. R1452-1454. She characterized Anthony Caravella's statements to police as "head games." R1452.

8. In addition to Anthony Caravella's voluntary statements to police admitting to his role in the crimes, and the testimony of his mother regarding statements that Anthony Caravella made

to her admitting to the murder, the State presented evidence at trial relating to the hours leading up to the murder, the discovery of the Ada Jankowski's body, the injuries to her body, and the evidence found at the crime scene.

9.   Police reports, witness statements and depositions establish that as the crime scene was being processed on the morning of November 5, 1983, Anthony Caravella, then 15 years old, was visiting the home of the Hetzel's.   The Hetzel's house was diagonal to the field where the body was discovered.   According to members of the Hetzel family, Anthony Caravella walked over to the crime scene to see what was going on and then returned to the Hetzel's house. Anthony Caravella was also at the Hetzel's house when the discovery of the victim's green purse in the Hetzel's yard was discussed.   Records indicate that Caravella was present when Mrs. Hetzel discussed the "scream" she heard when leaving her house at approximately 2:45 a.m. on November 5th, to drive to the flea market. Alita Hetzel testified at trial as to hearing the "scream" as she left her home to drive to the flea market. R1555-1557.

10.   The defense presented at trial was that Cyril Cozier had committed the murder, and that a spot of blood found on Cozier's shirt was from the victim.   The defense rested without presenting any evidence.

11.   A jury of twelve unanimously found Anthony Caravella guilty as charged.   He was sentenced to life for the murder, and his sentence on the sexual battery conviction was withheld. R2106.

12.   Anthony Caravella appealed his convictions and sentence to the Florida Fourth District Court of Appeal.   He raised 10 issues on appeal, and challenged Judge Franza's ruling on the motion to suppress, as well as the sufficiency of the evidence.   The Initial Brief filed on behalf of Anthony Caravella and the State's Answer Brief were previously submitted to the Court

on January 18, 2005 as Exhibits 2 and 3 to the State's Response to the Defendant's Motion for Post- Conviction Relief.

13. Anthony Caravella's convictions and sentence of life were per curiam affirmed without written opinion by the Fourth District Court of Appeal. Caravella v. State, 485 So. 2d 833 (Fla. 4th DCA 1986).

14. DNA testing was first pursued in this case in 2001, when Assistant Public Defender Diane Cuddihy, as counsel for Anthony Caravella, and the undersigned Assistant State Attorney, on behalf of the State of Florida, entered into a stipulation, agreeing that DNA testing would be performed on specific items of evidence. The 2001 DNA testing focused, in part, on the spot of blood on Cyril Cozier's shirt, as well as evidence collected from the victim post mortem. At the 1984 trial, the defense argued that blood found on Cozier's shirt was from the victim. Cyril Cozier testified at trial that on November 5, 1983 he went to the Miramar Elementary School with his son at approximately 8:00a.m. – 8:30a.m., so that his son could participate in a parade. R1209-1214. Cozier had testified at trial that the blood on his shirt was due to an injury to his hand a few days before. R1218. The BSO crime lab conducted PCR DNA analysis on Cozier's shirt, as well as on evidence collected by the medical examiner, including the vaginal, oral and rectal swabs, and vaginal, oral, and rectal slides produced from the corresponding swabs. In a report dated October 18, 2001, the BSO lab found that the blood on Cozier's shirt was his own. This finding was consistent with Cozier's trial testimony. R1218. The BSO crime lab also wrote in their report that no DNA profile was obtained from the slides or swabs.

15. In 2009, APD Cuddihy and the undersigned Assistant State Attorney entered into another stipulation to conduct DNA testing. Forensic Science Associates (FSA) conducted DNA testing on the remaining partial vaginal swabs, consuming them in the process. In a report dated

August 27, 2009, FSA concluded that Anthony Caravella had been eliminated as the source of the spermatozoa from the combined partial vaginal swabs. The report stated that the source of the sperm fraction from the combined partial vaginal swabs was unknown, and characterized the source as "Unknown Male # 1." The report also stated that the epithelial cells, or non-sperm fraction, from the combined partial vaginal swabs, contained a DNA mixture from at least three individuals: two females and one male. The FSA report stated that the DNA mixture contained DNA from Ada Jankowski, "Unknown Male #1" and "other unidentified female(s)."

16. Based upon the DNA report by FSA eliminating Anthony Caravella as the source of the DNA on the vaginal swabs, the State agreed to Anthony Caravella's immediate temporary monitored release pending further post-conviction litigation and the review of the FSA DNA results by an accredited laboratory.

17. Bode Technology Group, which is recognized as an accredited laboratory, conducted a review of the DNA report issued by FSA. On November 23, 2009, Bode issued a report based on the scientific reports, data, and standard operating procedures provided by BSO and FSA regarding their respective DNA testing of the evidence in this case. Though critical of the analysis parameters employed by FSA, Bode confirmed FSA's finding that Anthony Caravella was eliminated as the source of the male DNA profile found in the sperm fraction obtained from the vaginal swabs. As to the DNA mixture from the epithelial cells, or non-sperm fraction, Bode could not eliminate Anthony Caravella as one of the contributors to the DNA mixture and recommended further Y-STR DNA testing.

18. Pursuant to yet another stipulation entered into by APD Cuddihy and the undersigned Assistant State Attorney, further DNA testing was conducted on the extracts from the vaginal swabs. Numerous other items of physical evidence which had never before been tested for DNA,

including articles of the victim's clothing, and a knife found at the crime scene were submitted for DNA testing. In a report dated February 23, 2010, Bode found no detectable levels of DNA present on these items of physical evidence, and did not recommend further DNA testing. DNA evidence that may have previously been present on these items had completely deteriorated so that they could not be tested for DNA.

19. On March 24, 2010 Bode issued a report that Y-STR DNA testing on the remaining extracts taken from the vaginal swabs eliminated Anthony Caravella as the source of the male DNA found on the vaginal swabs.

20. Although Anthony Caravella gave voluntary statements to police, confessing his role in the sexual battery and murder of the victim, and made statements to his mother, that he had committed the murder, Anthony Caravella specifically denied to police that he ejaculated during the sexual battery. This fact, along with the deterioration of key evidence, could possibly explain why Anthony Caravella's DNA was not found during recent DNA testing.

21. However, evidence of Anthony Caravella's guilt was provided in large part by Anthony Caravella, himself. Three of his statements to police, along with his statements to his mother admitting to the murder, were used as evidence against him at trial. Anthony Caravella's statements to police, as well as to his own mother, were the most compelling evidence of his guilt. Anthony Caravella provided the police with evidence in this case, and that evidence pointed to Anthony Caravella. Why Anthony Caravella would confess to the sexual battery and murder of Ada Jankowski, if he did not do it, is unknown. Two of the four statements Anthony Caravella gave to police were given after he was specifically advised by an Assistant Public Defender not to speak to police about this murder. If Anthony Caravella was playing "head games" with the police - and his mother – when he confessed to the crimes, the fact remains that

recent DNA testing has eliminated him as the source of DNA found on the vaginal swabs collected from the victim's body. This new DNA evidence cannot be ignored.

22.  The recent DNA results are considered newly discovered evidence under Florida law. The law requires that Anthony Caravella's convictions and sentence be vacated, and that he be granted a new trial.

23.  In consideration of the law, and the evidence as it now stands, the State of Florida, in the interests of justice, and in consideration of the fact that Anthony Caravella was incarcerated for over 25 years will not seek a new trial against Anthony Caravella.

24. The State moves this Court to dismiss the Indictment.

**WHEREFORE**, the State respectfully requests that this Honorable Court vacate and set aside the judgments and sentence of Anthony Caravella for his convictions of sexual battery and murder of Ada Jankowski, and that the Indictment be dismissed.

Respectfully submitted,

MICHAEL J. SATZ
State Attorney

CAROLYN V. McCANN
Assistant State Attorney
Bar No. 380393
Broward County Courthouse
201 SE 6th Street, Suite 660A
Ft. Lauderdale, Florida 33301

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true copy of the foregoing has been furnished to: Diane Cuddihy, Esquire, Office of the Public Defender, Broward County Courthouse, 201 SE 6th Street, 3rd Floor, North Wing, Fort Lauderdale, Florida 33301 this 25th day of March, 2010.

OF COUNSEL

10

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT,
IN AND FOR BROWARD COUNTY, FLORIDA

**STATE OF FLORIDA,**
    Plaintiff,

v.

**ANTHONY CARAVELLA,**
    Defendant.

              :          **Case No. 84-339CF10A**

              :          **JUDGE THOMAS LYNCH, IV**

**Filed in Open Court**
**Howard C. Forman, Clerk**
**On** MAR 2 5 2010
**By** _____

## ORDER ON STATE'S MOTION TO VACATE AND SET ASIDE THE DEFENDANT'S JUDGMENT AND SENTENCE AND TO DISMISS INDICTMENT

    **THIS CAUSE** having come before the Court upon the State's Motion to Vacate and Set Aside the Defendant's Judgment and Sentence and to Dismiss Indictment, and the Court having considered same, it is hereby,

    **ORDERED AND ADJUDGED** that the State's Motion is **Granted.**

    **DONE AND ORDERED** this 25 day of March, 2010, in Chambers, at the Broward County Courthouse, 201 Southeast Sixth Street, Fort Lauderdale, Florida.

                                  _____
                                  **THOMAS LYNCH, IV**
                                  **CIRCUIT COURT JUDGE**

cc:
Carolyn McCann, Esquire
Assistant State Attorney

Diane Cuddihy, Esquire
Assistant Public Defender

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
07-60209 CR-DIMITROULEAS
CASE NO.

MAGISTRATE JUDGE
SELTZER

UNITED STATES OF AMERICA

v.

KENNETH C. JENNE,

Defendant.

_____/

Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida
By _____
Deputy Clerk
Date NOV 30 2007

## PLEA AGREEMENT

The United States of America, by and through the undersigned Assistant United States

Attorneys, and Kenneth C. Jenne (hereinafter referred to as the "defendant"), enter into the following

agreement:

1.  The defendant agrees to plead guilty to the four-count Information, which charges the

defendant with one count of conspiracy to commit mail fraud, in violation of Title 18, United States

Code, Section 371, and three counts of filing a false tax return, in violation of Title 26, United States

Code, Section 7206(1).

2.  The defendant is aware that the sentence for these offenses will be imposed by the court

considering the Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing

Guidelines"). The defendant acknowledges and understands that the court will compute an advisory

sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by

the court relying in part on the results of a Pre-Sentence Investigation by the court's probation

office, which investigation will commence after the guilty plea has been entered. The defendant is

also aware that, under certain circumstances, the court may depart from the advisory sentencing

guideline range that it has computed, and may raise or lower that advisory sentence under the


PLAINTIFF'S
EXHIBIT

Sentencing Guidelines. The defendant is further aware and understands that the court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose that sentence; the court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory sentence. Knowing these facts, the defendant understands and acknowledges that the court has the authority to impose any sentence within and up to the combined statutory maximums authorized by law for the offenses identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that, on the conspiracy to commit mail fraud count, the court may impose a term of imprisonment of up to five years, followed by a term of supervised release of up to three years. On each of the false tax return counts, the court may impose a term of imprisonment of up to three years, followed by a term of supervised release of up to one year. On each of the four counts, in addition to the terms of imprisonment and supervised release, the court may impose a fine of up to $250,000.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph two of this agreement, a special assessment in the amount of $400 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

5. The Office of the United States Attorney for the Southern District of Florida, (hereinafter "Office"), reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement,

this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The United States agrees that it will recommend at sentencing that the court reduce by three (3) levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(b) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. The United States, however, will not be required to make this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The United States and the defendant agree that, although not binding on the probation office or the court, they will jointly recommend that the court make the following findings and conclusions as to the sentence to be imposed:

a. Grouping: That, under § 3D1.2, the three false tax return counts are grouped together and the conspiracy to commit mail fraud count is grouped separately.

b. Advisory sentencing range on the false tax return counts: That the applicable guideline to be used in calculating the defendant's advisory sentencing range on the false tax return counts is U.S.S.G. § 2T1.1; that under § 2T1.1(a)(1), the Base Offense Level is 14, because the tax loss was between $30,000 and $80,000; that under § 2T1.1(b)(1), two levels are added because the defendant failed to report income exceeding $10,000 in any year from criminal activity; and that

3

under § 3E1.1(b), three levels are subtracted for acceptance of responsibility (contingent on the satisfaction of the conditions enumerated above in paragraph 6); all resulting in a total offense level of 13.

     c. Advisory sentencing range on the conspiracy to commit mail fraud count: That, pursuant to U.S.S.G. § 2X1.1, the applicable guideline to be used in calculating the defendant's advisory sentencing range on the conspiracy to commit mail fraud count is § 2B1.1; that under § 2B1.1(a)(1), the Base Offense Level is 7; that under § 2B1.1(b)(1)(C), four levels are added because the loss was between $10,000 and $30,000; that under § 3B1.3, two levels are added because of the defendant's abuse of his position of public trust; and that under § 3E1.1(b), two levels are subtracted for acceptance of responsibility (contingent on the satisfaction of the conditions enumerated above in paragraph 6); all resulting in a total offense level of 11.

     d. Combined offense level: That, under § 3D1.4, the combined offense level is 15. Assuming that the defendant is determined to have a criminal history category of I, a total offense level of 15 results in an applicable advisory guideline range for the defendant of 18 to 24 months.

     e. Ability to seek variance from advisory guideline range: That the defendant retains his right to seek a downward variance from the applicable advisory guideline range and understands and acknowledges that the government retains its right to seek an upward variance from the applicable advisory guideline range.

     8. The defendant is aware that the sentence has not yet been determined by the court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise and is not binding on the government, the

probation office or the court. The defendant understands further that any recommendation that the government makes to the court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the court and the court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the court's decision not to accept a sentencing recommendation made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

9. The defendant agrees that he will truthfully and accurately prepare and file any amended and/or delinquent personal federal income tax returns that are required by law for the calendar years 1998 through and including 2006. The defendant understands that he will be liable for any and all taxes, interests and penalties, determined to be due and owing, and he agrees to make all reasonable efforts to pay these taxes, interest and penalties as soon as is reasonably possible. In addition, the defendant agrees to meet with the Internal Revenue Service as soon as is practicable after entry of his guilty plea, and to cooperate with the Internal Revenue Service in determining the tax due and owing for the calendar years 1998 through 2006. The defendant understands and agrees that this cooperation shall include providing to the Internal Revenue Service any and all documentation within the defendant's possession or control which is needed by the Internal Revenue Service to make these determinations. This Office and the defendant further agree and understand that this plea agreement is not intended to limit the means by which the Internal Revenue Service determines the taxes, interest and penalties due from the defendant.

10. The defendant confirms that he is guilty of the offenses to which he is pleading guilty, that his decision to plead guilty is the decision that he has made, and that nobody has forced

5

threatened, or coerced him into pleading guilty. The defendant affirms that he has discussed this matter thoroughly with his attorneys. The defendant further affirms that his discussions with his attorneys have included discussion of possible defenses that he may raise if the case were to go to trial, as well as possible issues and arguments that he may raise at sentencing. The defendant additionally affirms that he is satisfied with the representation provided by his attorneys. The defendant accordingly affirms that he is entering into this agreement knowingly, voluntarily, and intelligently, and with the benefit of full, complete, and effective assistance by his attorneys.

11.   The defendant is aware that Title 18, United States Code, Section 3742 affords the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Section 3742 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or a variance from the guideline range that the court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b). However, if the United States appeals the defendant's sentence pursuant to Section 3742(b), the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that he has discussed the appeal waiver set forth in this agreement with his attorney. The defendant further agrees, together with the United States, to request that the district court enter a specific finding that the defendant's waiver of his/her right to appeal the sentence to be imposed in this case was knowing and voluntary.

12. This is the entire agreement and understanding between the United States and the defendant. There are no other agreements, promises, representations, or understandings.

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

Date: 9/3/07

By: _____
MICHAEL PATRICK SULLIVAN
ASSISTANT UNITED STATES ATTORNEY

Date: 9/3/07

By: _____
MATTHEW S. AXELROD
ASSISTANT UNITED STATES ATTORNEY

Date: 8/31/07

By: _____
J. DAVID BOGENSCHUTZ
ATTORNEY FOR DEFENDANT

Date: 8/31/07

By: _____
THOMAS E. SCOTT
ATTORNEY FOR DEFENDANT

Date: 8/31/07

By: _____
KENNETH C. JENNE
DEFENDANT

7

USDC FLSD 245B (Rev 12/03) - Judgment in a Criminal Case                                                Page 1 of 6

# United States District Court

## Southern District of Florida
### FT. LAUDERDALE DIVISION

UNITED STATES OF AMERICA

v.

KENNETH C. JENNE

JUDGMENT IN A CRIMINAL CASE

Case Number: 07-60209-CR-DIMITROULEAS

USM Number: 77434-004

Counsel For Defendant: David Bogenschutz, Esq.
Counsel For The United States: M. Patrick Sullivan, Matthew Axelrod

Court Reporter: Robert Ryckoff

The defendant pleaded guilty to Count(s) 1-4 of the Information.
The defendant is adjudicated guilty of the following offense(s):

| TITLE/SECTION NUMBER | NATURE OF OFFENSE | OFFENSE ENDED | COUNT |
|---|---|---|---|
| 18 USC 371 | Conspiracy to Commit Mail Fraud | July 2005 | 1 |
| 26 USC 7206(1) | Filing False Tax Return | April 2005 | 2-4 |

The defendant is sentenced as provided in the following pages of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of any material changes in economic circumstances.

Date of Imposition of Sentence:
11/16/2007

WILLIAM P. DIMITROULEAS
United States District Judge

November 16 ,2007

Certified to be a true and correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida

By _____
Deputy Clerk

Date NOV 30 2007

USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case

DEFENDANT: KENNETH C. JENNE
CASE NUMBER: 07-60209-CR-DIMITROULEAS

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **One (1) Year and One (1) Day** .

The Court makes the following recommendations to the Bureau of Prisons:

That the defendant be designated to FCI Miami.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

_____

_____

_____

_____

Defendant delivered on _____ to _____

at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By:_____
Deputy U.S. Marshal

USDC FLSD 245B (Rev 12/03) - Judgment in a Criminal Case

DEFENDANT: KENNETH C. JENNE
CASE NUMBER: 07-60209-CR-DIMITROULEAS

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 1 year on each Count to run concurrent.

The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

**The defendant shall not possess a firearm, destructive device, or any other dangerous weapon.**

If this judgment imposes a fine or a restitution obligation, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1. The defendant shall not leave the judicial district without the permission of the court or probation officer;
2. The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
3. The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4. The defendant shall support his or her dependents and meet other family responsibilities;
5. The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6. The defendant shall notify the probation officer at least ten (10) days prior to any change in residence or employment;
7. The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;
8. The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9. The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10. The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
11. The defendant shall notify the probation officer within seventy-two (72) hours of being arrested or questioned by a law enforcement officer;
12. The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13. As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

USDC FLSD 245B (Rev 12/03) - Judgment in a Criminal Case

Page 4 of 6

DEFENDANT: KENNETH C. JENNE
CASE NUMBER: 07-60209-CR-DIMITROULEAS

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall also comply with the following additional conditions of supervised release:

The defendant shall provide complete access to financial information, including disclosure of all business and personal finances, to the U.S. Probation Officer.

The defendant shall maintain full-time, legitimate employment and not be unemployed for a term of more than 30 days unless excused for schooling, training or other acceptable reasons. Further, the defendant shall provide documentation including, but not limited to pay stubs, contractual agreements, W-2 Wage and Earnings Statements, and other documentation requested by the U.S. Probation Officer.

The defendant shall cooperate fully with the Internal Revenue Service in determining and paying any tax liabilities. The defendant shall provide to the Internal Revenue Service all requested documents and information for purposes of any civil audits, examinations, collections, or other proceedings. It is further ordered that the defendant file accurate income tax returns and pay all taxes, interest, and penalties due and owing by him/her to the Internal Revenue Service.

USDC FLSD 245B (Rev 12/03) - Judgment in a Criminal Case

DEFENDANT: KENNETH C. JENNE
CASE NUMBER: 07-60209-CR-DIMITROULEAS

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the Schedule of Payments.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $400.00 | $3,000.00 | $ |

*Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18, United States Code, for offenses committed on or after September 13, 1994, but before April 23, 1996.

USDC FLSD 245B (Rev. 12/03) - Judgment in a Criminal Case

DEFENDANT: KENNETH C. JENNE
CASE NUMBER: 07-60209-CR-DIMITROULEAS

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

        During the term of supervised release.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

The assessment/fine/restitution is payable to the CLERK, UNITED STATES COURTS and is to be addressed to:

        U.S. CLERK'S OFFICE
        ATTN: FINANCIAL SECTION
        301 N. MIAMI AVENUE, ROOM 150
        MIAMI, FLORIDA 33128

The assessment/fine/restitution is payable immediately. The U.S. Bureau of Prisons, U.S. Probation Office and the U.S. Attorney's Office are responsible for the enforcement of this order.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) community restitution, (6) fine interest (7) penalties, and (8) costs, including cost of prosecution and court costs.