UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-61607-CIV-COHN/SELTZER

DONALD R. SPADARO, as Limited
Guardian for ANTHONY CARAVELLA,

      Plaintiff,

v.

CITY OF MIRAMAR, etc., et al.,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon Defendants City of Miramar, George Pierson ("Pierson"), William Mantesta ("Mantesta"), and William Guess' ("Guess") (collectively "City Defendants") Motion to Dismiss Amended Complaint [DE 38] ("City Motion") and Defendants Broward County Sheriff's Office ("BSO"), Al Lamberti ("Lamberti")[1], Kenneth C. Jenne, II ("Jenne"), and Anthony Fantigrassi's ("Fantigrassi") (collectively "BSO Defendants") Motion to Dismiss Plaintiff's Amended Complaint [DE 41] ("BSO Motion") (collectively "Motions to Dismiss"). The Court has carefully reviewed the Motions to Dismiss, Plaintiff's Response to the City Defendants' Motion to Dismiss [DE 46] ("City Response"), Plaintiff's Response to the BSO Defendants' Motion to Dismiss [DE 50] ("BSO Response"), and the City Defendants' Reply [DE 54][2] ("City

---

[1]      Defendant Lamberti is being sued only in his official capacity as Sheriff of Broward County. All other individual defendants are being sued in both their individual and official capacities.

[2]      The BSO Defendants have adopted the City Defendants' Reply. See DE 56.

Reply"), the record in the case, and is otherwise fully advised in the premises.[3]

## I. BACKGROUND

This case stems from the November 1983 rape and murder of Ada Jankowski and the subsequent arrest and conviction of Plaintiff Anthony Caravella ("Caravella") for this crime.  On the morning of November 5, 1983, Ms. Jankowski's body was found on the grounds of the Miramar Elementary School.  See Amended Complaint [DE 34] ("Am. Compl.") ¶ 27.  She had been raped, strangled, and stabbed.  Id. ¶¶ 28, 30. Defendants Guess, Mantesta, and Pierson participated in the investigation of the crime scene.  Id. ¶ 33.

At the time of the Jankowski murder, Caravella was fifteen years old and lived with his mother and siblings in Miramar.  Id. ¶ 43.  He had previously served as an informant for Defendants Guess and Pierson regarding criminal activities in his Miramar neighborhood.  Id. ¶ 44.  His I.Q. score was only 67, placing him in the mildly mentally challenged range.  Id. ¶ 51.  On December 28, 1983, Defendant Mantesta obtained a warrant from juvenile court to arrest Caravella for failure to appear in court on a bicycle theft charge.  Id. ¶ 49.  That evening, Defendants Pierson and Mantesta went to the home of Caravella's friend, Dawn Simone, to arrest him.  Id. ¶ 50.  The officers were extremely aggressive with Caravella and also arrested his friend, Ms. Simone, for

---

[3]      Caravella also filed a motion seeking leave to file a surreply to the City Defendants' Reply.  See DE 58.  The grounds stated for allowing Caravella to file a surreply are that Caravella recently received DNA testing reports which he contends "contradicts the Defendant's argument that ANTHONY CARAVELLA had not been fully exonerated by DNA evidence."  DE 58 at 2.  Defendants opposed this motion.  See DE 59, 60.  Because the Court has addressed Defendants' Motions to Dismiss without considering Defendants' factual arguments that Caravella was not exonerated, the Court will deny as moot Caravella's motion for leave to file a surreply.

attempting to hide him.  Id. ¶¶ 52-53.  At the police station, Caravella was immediately taken into an interrogation room and questioned about the Jankowski murder.  Id. ¶ 55. He was not read his Miranda rights, the interrogation was not recorded, and his mother was neither called nor present.  Id. ¶ 56.  Defendants Pierson and Mantesta encouraged Caravella to give them a statement about the Jankowski murder by promising him that they would let his friend Ms. Simone go home in exchange for his statement.  Id. ¶ 57.  Before eliciting his statement, however, they prompted him with numerous details about the victim and crime.  Id. ¶ 61.

On December 30, 1983, Defendants obtained a court order which allowed Defendant Fantigrassi of the BSO to perform a polygraph examination on Caravella.  Id. ¶¶ 63-64.  Despite Caravella's repeated denial of any involvement in the crime, after over four hours of questioning Caravella alone, Fantigrassi informed Caravella's mother that he had confessed to participating in the murder and that the results of the polygraph confirmed that he was being truthful.  Id. ¶¶ 67-68.  After the polygraph, Defendants Pierson, Mantesta, and Guess brought Caravella to the crime scene and prompted him with additional details about the crime before taking a second, taped statement from him.  Id. ¶¶ 70-71.  Despite Defendants' prompting, many of Caravella's statements about the victim and crime were inaccurate.  Id. ¶ 72.  On January 3, 1984, Defendants Mantesta and Pierson had Plaintiff sign a rights waiver form, and after interrogating him throughout the day, obtained a third taped statement from him regarding the murder.  Id. ¶ 78.  The next day, Caravella was taken back to the crime scene and persuaded to change his story to say he acted alone.  Id. ¶ 80.  That same day, Caravella gave a fourth taped statement regarding the murder.  Id. ¶ 81.  Shortly

3

after, however, Caravella made an additional taped statement with his mother present where he denied committing the murder.  Id. ¶ 83.

Hair and fiber evidence collected from the crime scene linked Cyril Cozier, an individual observed near the crime scene wearing a bloody shirt, to the murder victim. Id. ¶¶ 33, 85-86.  Caravella alleges Defendants Pierson, Mantesta, Guess, and Fantigrassi "all conspired in fabricating and falsifying evidence in the form of false police reports, false taped statements . . . and by giving false testimony under oath in order to knowingly frame CARAVELLA, an innocent boy, for this crime."  Id. ¶ 84.  He also alleges that Defendants Pierson, Mantesta, Guess, and Fantigrassi "[w]ithheld and/or concealed other evidence from the criminal courts, the prosecutors, Plaintiff's counsel and the public, that would have negated the fabricated evidence" they created. Id. ¶ 94(b).  As a result of their actions, Caravella was convicted on August 2, 1984, of the rape and murder of Ada Jankowski and sentenced to life in prison.  Id. ¶ 102.  He was only 16 years old at the time.  Id. ¶ 103.

Caravella alleges that Defendant Jenne, BSO Sheriff from January 1998 to September 2007, failed to provide proper oversight of the BSO.  Id. ¶¶ 113, 140.  He also alleges that Defendant Jenne concealed criminal conduct of his sheriffs, including Defendant Fantigrassi, despite evidence that would exonerate Caravella.  Id. ¶¶ 130, 132.  Likewise, Defendant Lamberti, BSO Sheriff from September 2007 through the present, is accused of overseeing a pattern or practice of misconduct within the BSO. Id. ¶¶ 140-41.  According to Caravella, Defendant City of Miramar has overseen a pattern and practice of misconduct amongst members of the Miramar Police Department.  Id. ¶ 146.

4

In April 2001, Assistant Public Defendant Diane Cuddihy contacted the State Attorney's Office to request DNA testing of evidence collected in Caravella's case.  Id. ¶ 106.  DNA testing conducted over eight years later, in August 27, 2009, conclusively established that Caravella was not the donor of sperm found on the victim's body.  Id. ¶ 109.  These test results were later confirmed by another laboratory.  Id. ¶ 111. Thereafter, on March 25, 2010, the state court vacated and set aside Caravella's judgment and sentence.  Id. ¶ 112.

On June 28, 2011, Donald R. Spadaro, Esq., as limited guardian for Caravella, filed suit against Defendants City of Miramar, Pierson, Mantesta, Guess, BSO, Lamberti, Jenne, and Fantigrassi in the Seventeenth Judicial Circuit Court in and for Broward County, alleging that the acts or practices of the Defendants had violated Caravella's constitutional rights.  Complaint [DE 1-3] ¶ 3.  The City Defendants removed to this Court on July 19, 2011.  Notice of Removal [DE 1].  On August 26, 2011, Caravella filed his Amended Complaint.  The Amended Complaint brings claims against the various Defendants for intentional infliction of emotional distress (Counts I-III, VIII), violations of 42 U.S.C. § 1983 (Counts IV, VII, IX, X, XII), conspiracy (Count V), negligent hiring and supervision (Counts VI, XI), and violations of both the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO"), and the equivalent Florida statute, Fla. Stat. § 772.103 (Counts XIII-XV).  Defendants have now filed motions to dismiss.

## II. DISCUSSION

### A. Legal Standard.

Under Fed. R. Civ. P. 12(b)(6), a court shall grant a motion to dismiss where,

based upon a dispositive issue of law, the factual allegations of the complaint cannot support the asserted cause of action.  Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006).  Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor.  Twombly, 550 U.S. at 555.  A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations.  Id.  Accordingly, a well pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'"  Id. at 556.

## B. Statute of Limitations.

Both the City and BSO Defendants contend that Caravella's claims are barred by the applicable statute of limitations.  City Motion at 7-14; BSO Motion at 5-7.  The City Defendants argue that Caravella's claims are time barred because the last act alleged by Caravella occurred in 1984 and Caravella has not plead any facts that warrant equitable tolling.  City Motion at 7, 13.   In his Amended Complaint, Caravella alleges that the applicable statute of limitations on each of his claims has been tolled because the Defendants fraudulently concealed their misconduct.  Am. Compl. ¶ 153.  Caravella also disputes Defendants' claims that the statute of limitations has expired on his claims.  City Response at 5-13; BSO Response at 3-4.  Generally, whether a claim is

6

barred by the statute of limitations should be raised as an affirmative defense in the answer rather than in a motion to dismiss.  Cabral v. City of Miami Beach, 76 So. 3d 324, 326 (Fla. Dist. Ct. App. 2011).  However, if facts on the face of the pleadings show that the statute of limitations bars the action, the defense can be raised by motion to dismiss.  Id.; see also Tello v. Dean Witter Reynolds, Inc., 410 F.3d 1275, 1288 (11th Cir.2005) (noting that the granting of a motion to dismiss on statute of limitations grounds is appropriate if it is apparent from the face of the complaint that the claim is time-barred).  Thus, the Court will individually address Defendants' statute of limitations arguments for each claim to determine whether dismissal is appropriate based on the face of the Amended Complaint.

### 1. The Statute of Limitations Has Not Expired on Caravella's Claims for Intentional Infliction of Emotional Distress.

The BSO Defendants argue that Caravella's intentional infliction of emotional distress claims accrued when he actually suffered the emotional distress, i.e. when he was incarcerated in 1984.  BSO Motion at 6.  Similarly, the City Defendants argue that Caravella's intentional infliction of emotional distress claims are time barred because Caravella knew "at the time of the investigation in 1983 and certainly by his criminal trial in 1984 that the officer's statements were false and that the officers were acting wrongly in allegedly coercing him to confess to them crimes he now implicitly claims he did not commit."  City Motion at 7-8.[4]   Caravella disputes that his intentional infliction of

---

[4]       To the extent the City Defendants rely upon an unpublished opinion from the Middle District of Florida, Tillman v. Beary, No. 6:09-cv-1667-Orl-31DAB, 2011 WL 740459, at *4 (M.D. Fla. Feb. 24, 2011), to support their position that the statute of limitations has expired on Caravella's intentional infliction of emotional distress claims, the Court is unpersuaded.  City Motion at 9; City Reply at 2.  There is no indication,

emotional distress claims accrued at the time of his incarceration, arguing that the continuing torts doctrine is recognized in Florida, meaning that the limitations period only begins to run when the tortious conduct ceases.  City Response at 6.  Additionally, he argues that the doctrines of delayed discovery and equitable estoppel would also apply to this case to prevent the statute of limitations from running.  Id.

Florida law provides a four year statute of limitations for intentional infliction of emotional distress claims.  Fla Stat. § 95.11(3)(o).  In Florida, a cause of action accrues "when the last element constituting the cause of action occurs."  Fla. Stat. § 95.031(1). Based on the allegations of the Amended Complaint, the Court finds that the doctrine of equitable estoppel is likely inapplicable.  The doctrine of equitable estoppel "*presupposes that the plaintiff knows of the facts underlying the cause of action* but delayed filing suit because of the defendant's conduct."  Black Diamond Props., Inc. v. Haines, 69 So. 3d 1090, 1093 (Fla. Dist. Ct. App. 2011) (internal quotations and citations omitted) (emphasis in original).  "Stated another way, *[e]quitable estoppel arises where the parties recognize the basis for suit*, but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed."  Id. Paragraph 153 of the Amended Complaint states:

> The applicable statutes of limitation are tolled because the Defendants CITY OF MIRAMAR, GUESS, PIERSON, MANTESTA, FANTIGRASSI, JENNE, and LAMBERTI fraudulently concealed their misconduct.  As a result of said Defendants' misconduct, Plaintiff was unable to discover the wrongfulness of said misconduct until independent DNA testing exonerated the Plaintiff of all charges brought against him by the Defendants.

_____

from the court's cursory discussion of the statute of limitations whether Tillman, like Caravella, alleged that the doctrines of continuing torts, equitable estoppel, or delayed discovery prevented expiration of the statute of limitations.

Am. Compl. ¶ 153.  Because Caravella's argument that the statute of limitations has not expired is premised upon his lack of knowledge regarding his basis to sue due to Defendants' intentional concealment of their misconduct, the doctrine of equitable discovery does not apply.  See Haines, 69 So. 3d at 1094 (holding that the doctrine of equitable estoppel did not apply where plaintiffs did not allege that they knew they had a cause of action, but failed to comply with the statute of limitations because they relied on fraudulent misrepresentations of defendants which lead them to delay filing suit).

Likewise, the delayed discovery doctrine is inapplicable to Caravella's case. The "'delayed discovery' doctrine generally provides that a cause of action does not accrue until the plaintiff either knows or reasonably should know of the tortious act giving rise to the cause of action."  Patten v. Winderman, 965 So. 2d 1222, 1224 (Fla. Dist. Ct. App. 2007).  However, the Florida Supreme Court has held that the delayed discovery doctrine applies only to cases involving fraud, products liability, professional malpractice, medical malpractice, or intentional torts based on abuse.  Davis v. Monahan, 832 So. 2d 708, 709 -10 (Fla. 2002) (refusing to extend doctrine of delayed discovery to claims for breach of fiduciary duty, conversion, civil conspiracy, and unjust enrichment); see Fla. Stat. §§ 95.031; 95.11.  Thus, it would be improper, as a matter of Florida law, to apply the delayed discovery doctrine to Caravella's claims for intentional infliction of emotional distress.

Florida recognizes the continuing torts doctrine.  Pearson v. Ford Motor Co., 694 So. 2d 61, 68 (Fla. Dist. Ct. App. 1997).  Under this doctrine, the limitations period runs to the date the tortious conduct ceases.  Id.  If the plaintiff has alleged some continuing

conduct on the part of the defendants, a jury must decide whether a continuing tort has occurred.  Id. (holding that the jury must decide whether a continuing tort occurred where the plaintiff alleged that the defendant continued to make false representations). A continuing tort is "established by continual tortious *acts*, not by continual harmful effects from an original, completed act."  Suarez v. City of Tampa, 987 So. 2d 681, 686 (Fla. Dist. Ct. App. 2008) (internal citations and quotations omitted).  "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort."  Id.  Thus, in order for the doctrine of continuing torts to apply, Caravella needs to allege continuous, tortious acts by the Defendants which would allow a jury to conclude that a continuing tort has occurred.

Here, the Amended Complaint specifically alleges that from November 1983 onward, Defendants Pierson, Mantesta, Guess, and Fantigrassi "had available detailed reports and evidence which would have excluded the Plaintiff as the murderer of Ada Jankowski" and that this evidence was ignored or withheld from Caravella, his counsel, and the courts.  Am. Compl. ¶ 128.  Each intentional infliction of emotional distress count incorporates this paragraph by reference.  Id. ¶¶ 158, 162, 167, 208.  Taking this allegation in the light most favorable to Caravella, the Court finds that he has sufficiently alleged continuing, tortious acts by Defendants Pierson, Mantesta, Guess, and Fantigrassi.  Accordingly, the Court declines to find that the statute of limitations has expired on Caravella's intentional infliction of emotional distress claims at this time because the Amended Complaint has sufficient allegations to allow application of the

doctrine of continuing torts.[5]

## 2. The Statute of Limitations Has Not Expired on Caravella's Claims for Negligent Hiring Supervision, and Retention.

The City Defendants argue that Caravella's claim for negligent hiring,

supervision, and retention against Defendant City of Miramar is time barred because he

"knew or should have known about such negligence at time of trial."  City Motion at 8.

Likewise, the BSO Defendants contend that the statute of limitations has expired on

Caravella's identical claim against Defendant Lamberti because the cause of action

accrued at the time of his incarceration.  BSO Motion at 6.  In response, Caravella

points to the Eleventh Circuit's decision in Rowe v. City of Fort Lauderdale, 279 F.3d

1271 (11th Cir. 2002), where the court held that, under Florida law, a claim for negligent

hiring, supervision, and retention does not accrue until a plaintiff first obtains relief from

his conviction.  City Response at 5-6.  The City Defendants urge this Court to find that

Rowe is an incorrect interpretation of Florida law.  City Reply at 3-5.

Florida law provides a four year statute of limitations for any claim based on

negligence.  Fla Stat. § 95.11(3)(a).  Caravella argues that the Court must follow the

---

[5]      In addition, courts in at least one other circuit have found that an intentional infliction of emotional distress claim based on wrongful incarceration does not accrue until the state criminal proceeding has been successfully terminated in the plaintiff's favor.  See Parish v. City of Elkhart, 614 F.3d 677, 683-84 (7th Cir. 2010) (finding that plaintiff's claim for intentional infliction of emotional distress based upon wrongful conviction did not accrue until plaintiff was exonerated because wrongful conviction was the crux of the claim); Gvozden v. Mill Run Tours, Inc., No. 10-CV-4595, 2011 WL 1118704, at *10 (N.D. Ill. Mar. 28, 2011) (intentional infliction of emotional distress claim not time barred because it was "inextricably intertwined" with malicious prosecution claim); Hobley v. Burge, No. 03 C 3678, 2004 WL 1243929, at *9 (N.D. Ill. June 3, 2004) (finding that intentional infliction of emotional distress claim did not accrue until plaintiff received a pardon).

Eleventh Circuit's holding in Rowe and find that his claims for negligent hiring, supervision, and retention did not accrue until his sentence was vacated.  Defendants, on the other hand, urge this Court to reject the Eleventh Circuit's interpretation of Florida law.  See City Reply at 4-5.[6]  The Court declines to do so.  The Eleventh Circuit's reasoned application of the Steele holding to negligent hiring, supervision, and retention claims makes logical sense: a plaintiff should not be required to bring claims against those who have incarcerated him until he has won his release because "if a still-incarcerated convict sued claiming that negligent training and supervision by government agencies allowed social workers and prosecutors to secure his wrongful conviction, Florida law would deem 'the criminal defendant's own actions ... to be the proximate cause of the injury.'"  Rowe, 279 F.3d at 1287 (quoting Steele, 747 So. 2d at 933).  Thus, the Court finds that the statute of limitations does not bar Caravella's claims for negligent hiring, supervision, and retention.

_____

[6]      In Rowe, the Eleventh Circuit applied the Florida Supreme Court's holding in Steele v. Kehoe, 747 So. 2d 931, 933 (Fla. 1999), which held that a plaintiff's legal malpractice claims against criminal defense attorneys accrue only after post conviction relief has been obtained, to negligent hiring, supervision, and retention claims.  The Steele holding was based on the following public policy considerations: "(1) without obtaining relief from the conviction or sentence, the criminal defendant's own actions must be presumed to be the proximate cause of the injury; (2) monetary remedies are inadequate to redress the harm to incarcerated criminal defendants; (3) appellate, postconviction, and habeas corpus remedies are available to address ineffective assistance of counsel; (4) requiring appellate or postconviction relief prerequisite to a malpractice claim will preserve judicial economy by avoiding the relitigation of supposedly settled matters; and (5) relief from the conviction or sentence provides a bright line for determining when the statute of limitations runs on the malpractice action."  747 So. 2d at 933.

<u>3. Caravella's Section 1983 Claims Cannot be Dismissed Based on the Expiration of
the Statute of Limitations.</u>

The City Defendants contend that Caravella's section 1983 claim against the City
of Miramar is barred by the statute of limitations because his "injuries should have been
well-known to him at the time of his arrest and certainly by the conclusion of his criminal
trial in 1984." City Motion at 10.[3]  The BSO Defendants similarly argue that Caravella's
section 1983 claims against Defendants Fantigrassi, Jenne, and Lamberti accrued at
the time of Caravella's imprisonment in 1984.  BSO Motion at 5.  In opposition,
Caravella states that his section 1983 claims against the City of Miramar, Fantigrassi,
Jenne, and Lamberti are claims for malicious prosecution which did not accrue until his
sentence was vacated on March 25, 2010.  City Response at 8-9; BSO Response at 4.

The statute of limitations for section 1983 actions is the same as the statute of
limitations for personal injury torts in the state in which the cause of action arose.
<u>Wallace v. Kato</u>, 549 U.S. 384, 387 (2007).  Here, Florida law provides a four year
statute of limitations.  Fla Stat. § 95.11(3).  Caravella's section 1983 claim against
Fantigrassi (Count IX), like his section 1983 claim against Defendants Pierson,
Mantesta, and Guess is based on malicious prosecution.  <u>See</u> Am. Compl. ¶¶ 213-220.
As the Supreme Court held in <u>Heck v. Humphrey</u>, "[j]ust as a cause of action for
malicious prosecution does not accrue until the criminal proceedings have terminated in
the plaintiff's favor, . . . so also a § 1983 cause of action for damages attributable to an
unconstitutional conviction or  sentence does not accrue until the conviction or

---

[3]    The City Defendants do not contend that the section 1983 claim against
Defendants Pierson, Mantesta, and Guess is time barred because that claim is based
on malicious prosecution.  City Motion at 9 n.9.

sentence has been invalidated." 512 U.S. 477, 489-90 (1994). Thus, the statute of limitations did not begin to run on Caravella's section 1983 claim against Fantigrassi until Caravella's conviction was vacated on March 25, 2010.

The statute of limitations for the section 1983 claims against Lamberti, Jenne, and the City of Miramar[4] is four years.  As discussed in subsection 1 above, the Amended Complaint has sufficient allegations to conclude that the doctrine of continuing torts might apply to Caravella's case. See Am. Compl. ¶ 128 (alleging that from 1983 onward Defendants, including the City of Miramar, Jenne, and Lambert had detailed reports and evidence that excluded Caravella as Ms. Jankowski's murderer). Accordingly, at this stage in the proceeding, the court declines to find that the statute of limitations bars Caravella's section 1983 claims.

### 4. Caravella's Section 1983 Conspiracy Claim is Not Time Barred.

The BSO Defendants argue that Caravella's section 1983 conspiracy claim against Defendants Pierson, Mantesta, Guess, and Fantigrassi accrued on January 4, 1984 and is time bared. City Motion at 10. The BSO Defendants similarly argue that all

---

[4]    Caravella argues that his section 1983 claims against the City of Miramar, Jenne, and Lamberti are actually claims for malicious prosecution which did not accrue until after his conviction was vacated. City Response at 8-9; BSO Response at 4. The City disputes that the section 1983 claim against the City of Miramar is for malicious prosecution because this count asserts a claim against the City for a pattern and practice of "illegal false arrests, detentions and/or prosecutions." City Reply at 6 (quoting Am. Compl. ¶ 202). The Court similarly reads the claims against these defendants as section 1983 claims for failure to train, supervise, or discipline. It is thus unclear, to the Court, at this time, whether these claims would fall under Heck's purview. Nonetheless, because the Court finds, that another doctrine, namely the continuing torts doctrine, may apply to Caravella's case, the parties are free to make more precise arguments regarding when the statute of limitations accrued on these section 1983 claims in any future dispositive motions.

Caravella's section 1983 claims accrued after Caravella's incarceration in 1984.  BSO
Motion at 5.  The Court disagrees.  Defendants read the Amended Complaint too
narrowly.  The Amended Complaint alleges that Defendants conspired to maliciously
prosecute and wrongfully imprison Caravella.  City Response at 7 (citing Am. Compl. ¶¶
90, 93-95, 99, 262, 268, 276).  Because a claim for malicious prosecution does not
accrue until after a sentence has been vacated, a conspiracy to maliciously prosecute
also does not accrue until the sentence is vacated.  See Rowe v. City of Fort
Lauderdale, 8 F. Supp. 2d 1369, 1375 (S.D. Fla. 1998) (finding that pursuant to Heck §
1983 conspiracy claims based on malicious prosecution did not accrue until sentence
was vacated); see also Venegas v. Wagner, 704 F.2d 1144, 1146 (9th Cir. 1983)
(holding that statute of limitations on conspiracy premised on wrongful conviction and
incarceration did not run until conviction was overturned); Hobley, 2004 WL 1243929, at
*8 (finding that because false arrest and due process claim for the deprivation of his
right to a fair trial was timely, the claim based on the conspiracy to deprive him of those
rights was also timely); Newsome v. James, 968 F. Supp. 1318, 1325 (N.D. Ill. 1997)
(finding that section 1983 conspiracy based on malicious prosecution did not accrue
until malicious prosecution claim accrued).

### 5. The RICO Claims Cannot Be Dismissed Based on the Expiration of the Statute of Limitations.

Finally, Defendants contend that Caravella's claims under the state and federal
RICO statutes are time barred.  The BSO Defendants argue that Caravella suffered
damage from the alleged RICO violations no later than 1984.  BSO Motion at 7.  The
City Defendants posit that Caravella's RICO claims accrued in 1984 because Caravella

15

knew his injuries as soon as he was incarcerated for a crime he claims he did not commit.  City Motion at 12.  Caravalla disputes this, pointing to Paragraph 153 of the Amended Complaint, where he alleges that Defendants City of Miramar, Guess, Pierson, Mantesta, Fantigrassi, Jenne, and Lamberti fraudulently concealed their misconduct, preventing him from discovering the wrongfulness of their conduct until he was independently exonerated by DNA testing.  City Response at 9 (citing Am. Compl. ¶ 153).

Additionally, Caravella contends that because his RICO claims against the Defendants "stem from Defendants' illegal actions causing the malicious prosecution against him, and his continued wrongful detention as a result of their actions," he could not have brought suit until his conviction was invalidated.  City Response at 10.  Thus, pursuant to the rule articulated in Heck, Caravella claims he had no right to sue for injury to his business or property until all criminal charges against him had been dismissed.  Id. at 11.  Caravella also argues that the statute of limitations did not expire on his RICO claims because, under the separate accrual rule, he suffered a continuing series of separately accruing injuries.  Id.  Finally, Caravella argues that equitable tolling of the statute of limitations is appropriate, where as here, Defendants have fraudulently concealed evidence and records relating to their illegal conduct.  Id. at 13.

The statute of limitations for federal RICO claims is four years.  Rotella v. Wood, 528 U.S. 549, 553 (2000).  The equivalent Florida act provides a five year statute of limitations.  Fla. Stat. § 772.17.  Unless tolled, the statute of limitations for RICO actions runs from the date the plaintiff knew he was injured.  Pac. Harbor Capital, Inc. v. Barnett Bank, N.A., 252 F.3d 1246, 1251 (11th Cir. 2001).  The Eleventh Circuit has not

addressed the applicability of <u>Heck</u> to civil RICO claims.  <u>Harrison v. Grand Jurors</u>, No.

3:05CV348/MCR/MD, 2006 WL 354218, at *2 (N.D. Fla. Feb. 13, 2006) (finding that

<u>Heck</u> applies equally to civil RICO actions where the RICO claim collaterally attacks a

criminal judgment).[5]  However, because the Court is unable–for other reasons–to

determine at this stage in the case whether the statute of limitations has expired on

Caravella's RICO claims, the Court need not consider whether <u>Heck</u> should be

extended to RICO claims.

     The Court also is not persuaded that the separate accrual rule applies to

Caravella's case.  In <u>Pilkington v. United Airlines</u>, 112 F.3d 1532 (11th Cir. 1997), the

Eleventh Circuit examined whether the statute of limitations had expired for RICO

claims of a group of pilots who alleged that they endured continuous, illegal harassment

from other pilots because they had worked during a May 1985 strike and that the

harassment continued through the date of the appeal.  112 F.3d at 1534.  The plaintiffs

argued that the statute of limitations had not expired on their RICO claims because,

under the separate accrual rule, each time the plaintiffs suffered injury from the

harassment, a new RICO cause of action accrued.  <u>Id.</u> at 1536.  The Eleventh Circuit,

however, found that "the injuries suffered by the plaintiffs were not new and

independent injuries, but rather, a single, continuous course of injury-specifically,

ongoing emotional and physical distress designed to force the plaintiffs to either leave

their employment or to lower job performance." <u>Id.</u> at 1537.   Accordingly, the court

---

[5]    Clearly, there is a lack of consensus among district courts whether <u>Heck</u> applies to RICO claims.  Both Caravella and Defendants have cited numerous cases which support their opposing arguments.  <u>Compare</u> City Response at 11 n.1 <u>with</u> City Reply at 7-8.

found that the statute of limitations had expired on the plaintiffs' RICO claims.  Id.

Here, Caravella has alleged that he suffered "irreparable damages and personal injury" stemming from the 25 year period he was wrongfully incarcerated.  Am. Compl. ¶¶ 263, 269, 277.  However, the Amended Complaint contains no allegations from which the Court can conclude that he suffered new and independent injuries from the Defendants' conduct.  Rather, Caravella appears to have suffered one continuous injury, i.e. his 25 year wrongful incarceration.  Accordingly, as currently plead, the separate accrual rule would not prevent the statute of limitations from expiring on Caravella's RICO claims.

Nonetheless, because the Court finds that equitable tolling may apply to Caravella's RICO claims, the Court declines to find that the statute of limitations has expired at this time.  Equitable tolling is a doctrine under which a plaintiff may sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances.  Ellis v. Gen. Motors Acceptance Corp., 160 F.3d 703, 706 (11th Cir. 1998).  Equitable tolling should be read into every federal statute of limitations unless Congress has explicitly provided otherwise.  Id.  Florida law also recognizes that a statute of limitations may be equitably tolled based on the defendant's fraudulent concealment.  Grossman v. Greenberg, 619 So. 2d 406, 408 (Fla. Dist. Ct. App. 1993) (finding that statute of limitations was tolled where defendant has engaged in fraudulent concealment).[6]

_____

[6]     In their reply, the City Defendants assert that Florida does not recognize equitable tolling for state causes of actions.  City Reply at 9 n.7.  However, the City Defendants rely on a case from the Middle District of Florida rather than a Florida state court case for this proposition.  The doctrine of equitable tolling is generally applied

Here, Caravella has alleged in his Amended Complaint that the statute of limitations should be equitably tolled because Defendants City of Miramar, Guess, Pierson, Mantesta, Fantigrassi, Jenne, and Lamberti fraudulently concealed their misconduct.  Am. Compl. ¶ 153.  This allegation is incorporated by reference into each of the RICO counts.  Id. ¶¶ 251, 265, 271.  Dismissal of a complaint pursuant to Rule 12(b)(6) on statute of limitations grounds is proper only if it is "apparent from the face of the complaint" that the claim is time barred.  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845  (11th Cir. 2004) (internal quotations and citations omitted).  Because Caravella has plead that the doctrine of equitable tolling applies to his case, and determining the applicability of this doctrine necessarily implicates factual issues which cannot be resolved on a motion to dismiss, the Court declines to find that Caravella's state and federal RICO claims are time barred at this time.  See State Farm Mut. Auto. Ins. Co. v. Kugler, No. 11–80051, 2011 WL 4389915, at *13 (S.D. Fla. Sept. 21, 2011) (declining to grant motion to dismiss based on statute of limitations grounds for RICO claims when plaintiff alleged that doctrine of equitable tolling applied).

### C. The Motion to Vacate is Irrelevant for the Purposes of These Motions to Dismiss.

Caravella and the Defendants spend considerable energy arguing whether the

---

when a party has been "misled or lulled into inaction, has in some extraordinary way been prevented from asserting his rights, or has timely asserted his rights mistakenly in the wrong forum."  Seavor v. Dep't of Fin. Servs., 32 So. 3d 722, 723 n.1 (Fla. Dist Ct. App. 2010) (quoting Machules v. Dep't of Admin., 523 So. 2d 1132, 1134 (Fla. 1988)).

Motion to Vacate and Set Aside the Defendant's Judgments and Sentence and to Dismiss the Indictment filed by the State Attorney in the Seventeenth Judicial Circuit ("Motion to Vacate") can be considered by the Court when ruling upon the Motions to Dismiss.  City Motion at 1 n.1; BSO Motion at 2 n.1; City Response at 1-3; City Reply at 1-2.  The Motion to Vacate was originally attached to Caravella's Complaint as Exhibit C.  On August 18, 2011, Caravella sought leave to file an Amended Complaint which removed the Motion to Vacate because this exhibit had been inadvertently attached to the Complaint.  See DE 25.  Defendants opposed Caravella's request, arguing that they should be allowed to rely on the factual record contained within the Motion to Vacate in their Motions to Dismiss.  See DE 31, 32.  The Court granted the motion for leave to file an amended complaint and noted that "[t]he Court may consider the Motion to Vacate when ruling on Defendants' motions to dismiss."  See DE 33.  Because Caravella has disputed the contents of the Motion to Vacate, the Court will re-address whether and to what extent the Motion to Vacate can be considered by the Court when ruling upon Defendants' Motions to Dismiss.

Caravella argues that the Court should not consider the Motion to Vacate for any purpose because it is not central to his claims and he disputes its contents.  City Response at 2.  By contrast, the City Defendants contend that Caravella cannot dispute the authenticity of the Motion to Vacate and that the Motion to Vacate provides a proper basis to dismiss the Amended Complaint.  City Reply at 2.  In essence, Defendants ask the Court to dismiss Caravella's Amended Complaint because the contents of the Motion to Vacate are inconsistent with the allegations in the Amended Complaint.  For the reasons discussed below, the Court declines to do so.

20

Generally, when ruling upon a motion to dismiss, a district court may consider an extrinsic document if it is (1) central to the plaintiff's claim; and (2) its authenticity is not challenged.  <u>SFM Holdings, Ltd. v. Banc of Am. Sec., LLC</u>, 600 F.3d 1334, 1337 (11th Cir. 2010).  But, a court should not take judicial notice of the accuracy of factual allegations in the documents of other courts.  <u>Fireman v. Travelers Cas. & Sur. Co. of Am.</u>, No. 10-81564-CIV, 2011 WL 4527405, at *4 (S.D. Fla. Sept. 21, 2011) (citing <u>United States v. Jones</u>, 29 F.3d 1549, 1553 (11th Cir. 1994) and <u>Thompson v. Fla. Bar</u>, 526 F. Supp. 2d 1265, 1274 n.11 (S.D. Fla. 2007)).  A court may only take judicial notice of state court allegations to establish that the allegations were made.  <u>Id.</u> (finding that while the fact that plaintiffs made certain allegations in another action may be evidence that the allegations were made, they did not establish the issues dispositively for the purposes of a motion to dismiss).

Here, Defendants ask the Court to accept as true facts that the state prosecutor included in the Motion to Vacate.[7]  The law is clear, however, that the Court cannot do this.  The Court may only consider the Motion to Vacate for the limited purpose of establishing what statements the prosecutor made to the state court when seeking to vacate Caravella's sentence.  Accordingly, the Court will not consider statements within the Motion to Vacate to disprove the factual allegations of the Amended Complaint.[8]

---

[7]     What Defendants are asking the Court to do is even more of a stretch because the Order granting the Motion to Vacate does not make any findings of fact. <u>See</u> Am. Compl. at Ex. C.

[8]     Even if the Court could treat the factual statements in the Motion to Vacate as true, they do not necessarily conflict with the allegations of the Amended Complaint.  For example, the City Defendants' statement that "these new DNA results do not exonerate the Plaintiff–in fact, they are fully consistent with his confessions,

**D. Caravella Has Stated a Claim for Intentional Infliction of Emotional Distress (Counts I, II, III, and VIII).**

The City Defendants argue that Caravella's claims for intentional infliction of emotional distress against Defendants Pierson, Mantesta, and Guess (Counts I-III) should be dismissed pursuant to Rule 12(b)(6) because "Plaintiff's allegations that Officers Pierson, Mantesta, and Guess coerced confessions from the Plaintiff and false statements cannot, as a matter of law, be deemed sufficiently 'outrageous' to state a cause of action for intentional infliction of emotional distress."  City Motion at 14.  The BSO Defendants contend that the intentional infliction of emotional distress claim against Fantigrassi (Count VIII) should be dismissed because (1) Fantigrassi is immune from suit on this claim; (2) Fantigrassi owed no duty to perform the polygraph in a non-negligent manner; (3) Fantigrassi's alleged conduct does not rise to the level of extreme and outrageous conduct; and (4) Fantigrassi's conduct did not cause Caravella emotional distress.  BSO Motion at 10-11.  For the reasons discussed below, the Court finds that Caravella has stated a claim for intentional infliction of emotional distress against Defendants Pierson, Mantesta, Guess, and Fantigrassi.

To state a claim for intentional infliction of emotional distress under Florida law, a plaintiff must allege:(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe.  <u>Liberty Mut. Ins. Co. v. Steadman</u>, 968 So. 2d 592, 594 (Fla. Dist. Ct. App.

---

where he stated that, although he did rape the victim, he did not ejaculate" ignores the fact that the thrust of the Amended Complaint is that Defendants Mantesta, Pierson, Guess, and Fantigrassi repeatedly coerced false confessions from a mentally deficient 15 year old boy.  <u>See</u> City Motion at 2.

2007) (citing Dependable Life Ins. Co. v. Harris, 510 So. 2d 985, 986 (Fla. Dist. Ct. App. 1987)).  Intentional infliction of emotional distress claims require behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."  Id. (internal citations and quotations omitted).  Courts evaluate conduct objectively "to determine whether it is atrocious, and utterly intolerable in a civilized community."  Id. at 595 (internal citations and quotations omitted).  "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact."  Id. (citations omitted).

Here, the Court finds that Caravella has alleged all the elements of an intentional infliction of emotional distress claim.  Caravella's allegations that Defendants Pierson, Mantesta, Guess, and Fantigrassi fabricated evidence against a fifteen year old boy with mental deficiencies, and  "conspired to convict [him] of a crime they knew he did not commit" constitutes extreme and outrageous conduct by these Defendants.  Am. Compl. ¶¶ 95, 97; see Diaz-Martinez v. Miami-Dade Cnty., No. 07-20914-CIV, 2009 WL 2970468, at *14 (S.D. Fla. Sept. 10, 2009) (finding that plaintiff had sufficiently alleged extreme and outrageous conduct where defendants' conduct during photo array was alleged to have lead to plaintiff's false imprisonment for over 20 years).  Additionally, the Amended Complaint adequately alleges that this conduct caused Caravella emotional distress because it states that he suffered "[p]ermanent physical and emotional injuries, humiliation and embarrassment and damage to his reputation" as a result of the Defendants' actions.  Am. Compl. ¶ 157(d).

Defendant Fantigrassi also claims that he has immunity against Caravella's

23

intentional infliction of emotional distress claim.  BSO Motion at 10.  The Court

disagrees.  The cases cited by the BSO defendants for this proposition are inapplicable

to this case.  As Caravella points out in his response, both Cassell v. India, 964 So. 2d

190 (Fla. Dist. Ct. App. 2007), and Stephens v. Geoghegan, 702 So. 2d 517 (Fla. Dist.

Ct. App. 1997), involved whether a communication made by a police officer within the

scope of his official duties entitled him to absolute immunity from a defamation claim.

See BSO Response at 6.[9]  Thus, both cases, which are the sole support the BSO

Defendants provide for this argument, fail to establish that Fantigrassi is entitled to

absolute immunity on Caravella's intentional infliction of emotional distress claim which

is premised on allegations that Fantigrassi participated in a conspiracy to wrongfully

convict Caravella of a crime he did not commit.  See, e.g., Am. Compl. ¶¶ 95, 97.

Finally, the Court finds the BSO Defendants' argument that "Fantigrassi owed no

duty to perform the polygraph in a non-negligent manner" unpersuasive.  See BSO

Motion at 10.  As Caravella points out, nowhere in the Amended Complaint does

Caravella allege that Fantigrassi performed the polygraph in a negligent manner.  See

BSO Response at 6.  Instead, the Amended Complaint is replete with allegations that

Fantigrassi participated in a conspiracy to convict Caravella for a murder that he did not

---

[9]        In Cassell, the court found that absolute immunity applied to the
intentional infliction of emotional distress claim, but only because "[t]his claim is simply
a recast of the defamation claim."  964 So. 2d at 196.  Similarly in Stephens, the court
held that the "defendants' writings and comments, for which they are immune from suit
for defamation, are likewise protected against a retooling of the claim couched in terms
of intentional infliction of emotional distress."  702 So. 2d at 525.

commit.  Fantigrassi is alleged to have intentionally fabricated the results of the polygraph investigation.  Accordingly, whether Fantigrassi had a duty to perform the polygraph in a non-negligent manner has no bearing on whether Caravella has stated a claim for *intentional* infliction of emotional distress.

### E.  Caravella has Stated a Claim for Negligent Hiring, Supervision, and/or Retention (Counts VI and XI).

The City Defendants have moved to dismiss Caravella's state law claim for negligent hiring, supervision, and/or retention against the City of Miramar (Count VI) on the basis that the method and manners in which the City conducted its hiring, retention and supervision is discretionary and not subject to the waiver of the City's sovereign immunity.  City Motion at 15.  The City Defendants further contend that this claim should be dismissed because the Amended Complaint lacks the elements or factual allegations necessary to constitute negligent hiring, supervision and/or retention.  Id. at 16.  The BSO Defendants also move to dismiss the negligent hiring, supervision, and/or retention claim against Defendant Lamberti (Count XI) because Fantigrassi was not negligent and no action by any BSO employee caused Caravella any damage.  BSO Motion at 15.

Florida recognizes a cause of action for negligent hiring, supervision and/or retention.  Green v. RJ Behar & Co., Inc., No. 09-62044-CIV, 2010 WL 1839262, at *3 (S.D. Fla. May 6, 2010).  Negligent hiring and retention theories of liability permit an injured plaintiff to recover damages against an employer for the acts of an employee committed outside the scope and course of employment.  Garcia v. Duffy, 492 So. 2d.

435, 438 (Fla. Dist. Ct. App. 1986).  Under these liability theories, an employer may be held responsible for an employee's willful torts if the employer knew or should have known that the employee was a threat to others.  Magill v. Bartlett Towing, Inc., 35 So. 3d 1017, 1020 (Fla. Dist. Ct. App. 2010) (citing Williams v. Feather Sound, Inc., 38 So. 2d 1238 (Fla. Dist. Ct. App. 1980)).

To evaluate a negligence claim against a governmental entity for the purposes of a motion to dismiss, the Court performs a two-step analysis.  Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001); Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla.1989).  First, the Court analyzes whether the plaintiff has alleged circumstances that would subject a private citizen to liability under Florida law.  Lewis, 260 F.3d at 1262; Kaisner, 543 So. 2d at 734.  To state a claim for negligent hiring, supervision and/or retention, a plaintiff must establish that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees.  Magill, 35 So. 3d at 1020.  For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that was reasonably foreseeable to the employer. Id.  Accordingly, to state a claim, the plaintiff must "allege facts that would establish some relationship or nexus between the plaintiff and the tortfeasor's employment from which a legal duty would flow from the defendant-employer to that particular plaintiff." Id. at 1021.  The plaintiff must then establish that the defendant-employer breached that duty and that the breach caused him damage.  Hemmings v. Jenne, No. 10-61126-CIV, 2010 WL 4005333, at *5 (S.D. Fla. Oct. 12, 2010).

Here, the Court finds that Caravella has alleged all the elements necessary to

26

state negligent hiring, supervision, and/or retention claims against the City of Miramar

and Lamberti.[10]  First, the Amended Complaint alleges that Defendants City of Miramar

and Lamberti owed Caravella a duty and that Caravella was within the  "zone of risk"

created by their negligent hiring, retention, and supervision policies.   Am. Compl. ¶¶

189, 193, 233, 236.  Next, the Amended Complaint alleges that it was "foreseeable"

that Defendants would use their positions as law enforcement officers to injure third

parties.  Id. ¶¶ 192, 235.  Finally, the Amended Complaint alleges that as a result of the

City of Miramar and Lamberti's actions with regards to the hiring, retention, and

supervision of Defendants Pierson, Guess, Mantesta, and Fantigrassi, Caravella

suffered physical, mental, and emotional injuries.  Id. ¶¶ 194-96; 237-39.  Reading the

Amended Complaint in the light most favorable to Caravella, the Court concludes that

he has alleged enough to survive a motion to dismiss on these claims.[11]

---

[10]    Kroll v. Lamberti, No. 09-60228-CIV, 2010 WL 3119204, at *5 (S.D. Fla. Aug. 6, 2010), a case cited by the City Defendants for the proposition that negligent hiring and supervision claims should be dismissed "where there was no record evidence to indicate that defendant knew or should have known his deputies were a threat to others," is inapposite because that negligent hiring and supervision claim was dismissed on summary judgment, not a motion to dismiss.  See City Motion at 16-17.

[11]    The BSO Defendants' arguments that Count XI against Lamberti should be dismissed because Fantigrassi was not negligent and no action by any BSO employee caused Caravella any damage, are not grounds to grant their motion to dismiss.  See BSO Motion at 15.  As Caravella points out in his response, he does not contend that Fantigrassi was negligent.  BSO Response at 11.  Instead, the Amended Complaint is replete with allegations regarding Fantigrassi's intentional, illegal, and unconstitutional conduct towards Caravella.  See id. (citing sections of the Amended Complaint).  Thus, whether Fantigrassi was negligent is irrelevant for the purposes of this motion to dismiss.  Additionally, at this stage in the proceedings, the Court must accept the allegations of the complaint as true.  Because the Court finds that Caravella has alleged that the actions of BSO employees caused him damage, the BSO Defendants are not entitled to a dismissal of Count XI on this ground.

27

Second, the Court analyzes whether the plaintiff has alleged actions that are governmentally discretionary in nature and thereby barred by the discretionary act exception to the government's waiver of sovereign immunity.  Lewis, 260 F.3d at 1262-63.  In the instant case, the Court is unable to determine at this time whether sovereign immunity bars Caravella's negligent hiring, supervision, and/or retention claims.  As this Court held in Hemmings, "[d]epending on the facts, . . . hiring, retention, and supervision decisions could be operational."  2010 WL 400533, at *7.  Without any information regarding whether the City of Miramar or Sheriff Lamberti's decisions related to hiring, retention, or supervision were discretionary or operational, the Court declines to dismiss these claims at this time.

## F. Caravella States Claims Under 42 U.S.C. § 1983 (Counts IV, VII, IX, X, and XII).

In his Amended Complaint, Caravella brings claims for malicious prosecution under 42 U.S.C. § 1983 against Defendants Pierson, Mantesta, Guess, and Fantigrassi.  Am. Compl. at Counts IV, IX.  He also brings a section 1983 claim against Defendant City of Miramar under a theory of municipal liability.  Id. at Count VII.  Finally, Caravella brings section 1983 claims against Broward County Sheriffs Jenne individually and in his official capacity as Broward County Sheriff and Lamberti in his official capacity as Broward County Sheriff.  Id. at Counts X, XII.  The Court will address Defendants' Motions to Dismiss on each type of section 1983 claim individually below.

### 1. Malicious Prosecution Claims against Defendants Pierson, Mantesta, Guess, and Fantigrassi (Counts IV and IX).

The City Defendants contend that Caravella's section 1983 malicious

28

prosecution claim against Defendants Pierson, Mantesta, and Guess (Count IV) must be dismissed because they are entitled to qualified immunity.  City Motion at 17-19. Additionally, the City Defendants argue that they are entitled to dismiss this claim pursuant to Rule 12(b)(6) because Caravella cannot establish all the elements of malicious prosecution.  Id. at 19.  The BSO Defendants dispute that a malicious prosecution claim is proper against Fantigrassi (Count IX) when "this crime was investigated by Miramar detectives, who also made the arrest."  BSO Motion at 11. They also contend that Fantigrassi is entitled to qualified immunity for any allegations that he lied regarding the results of Caravella's polygraph examination.  Id. at 12.  In opposition, Caravella disputes that any of these Defendants are entitled to qualified immunity.  City Response at 15-19; BSO Response at 7-8.

Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (internal citations and quotations omitted). Qualified immunity is intended "to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  Id.  Once an official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to overcome the privilege of qualified immunity. See Case v. Eslinger, 555 F.3d 1317, 1325-26 (11th Cir. 2009). To do so, the plaintiff must prove: (1) that the defendant violated a constitutional right and

(2) that this right was clearly established at the time.  See id.  Qualified immunity may

be raised and addressed on a motion to dismiss.  Snider v. Jefferson State Cmty. Coll.,

344 F.3d 1325, 1327 (11th Cir. 2003).  A motion to dismiss will be granted on qualified

immunity grounds if "the complaint fails to allege the violation of a clearly established

constitutional right."  Id. (internal citations and quotations omitted).

To plead a claim for malicious prosecution under section 1983, a plaintiff must

establish (1) the elements of the common law tort of malicious prosecution and (2) a

violation of his fourth amendment right to be free from unreasonable seizures.

Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004).  Under Florida law, a

malicious prosecution plaintiff must show that (1) an original judicial proceeding was

commenced or continued against him; (2) the defendants involved were the legal cause

of the proceeding; (3) the termination of the original proceeding constituted a bona fide

termination of that proceeding in the plaintiff's favor; (4) there was an absence of

probable cause for the original proceeding; (5) there was malice on the part of the

defendants; and (6) the plaintiff suffered damages as a result of the original proceeding.

Id. (citing Durkin v. Davis, 814 So.2d 1246, 1248 (Fla. Dist. Ct. App. 2002)).

Here, the allegations contained within the Amended Complaint do not support

that Defendants were acting within the scope of their discretionary duties and are

entitled to qualified immunity.  Caravella alleges, among other things, that Defendants

knowingly fabricated evidence, filed false police reports, and conspired to convict him of

a crime they knew he did not commit.  See, e.g., Am. Compl. ¶ 122.  In Holloman ex rel.

Holloman v. Harland, cited by Caravella, the Eleventh Circuit held that "[e]mployment by

a local, county, state, or federal government is not a *carte blanche* invitation to push the envelope and tackle matters far beyond one's job description or achieve one's official goals through unauthorized means.  Pursuing a job-related goal through means that fall outside the range of discretion that comes with an employee's job is not protected by qualified immunity."  370 F.3d 1252, 1267 (11th Cir. 2004).  Accordingly, if Caravella's allegations regarding Defendants' willful and illegal conduct are true, such conduct would fall outside the scope of Defendants' discretionary duties and they would not be entitled to qualified immunity.

Even assuming that Defendants' actions, as alleged in the Amended Complaint, were discretionary, dismissal on the grounds of qualified immunity would be improper at this time because Caravella has alleged that Defendants violated a clearly established constitutional right.  Specifically, Caravella has alleged that Defendants' malicious prosecution of him violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments.  Am. Compl. ¶¶ 173-74; 214-15; City Response at 16.  The Eleventh Circuit has held that an arrest without probable cause[12] is an unreasonable seizure that violates the Fourth Amendment.  Grider, 618 F.3d at 1256.  In 1983, it was clearly

_____

[12]     Probable cause is defined as "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."  Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010) (quoting Gerstein v. Pugh, 420 U.S. 103, 111 (1975)) (internal quotation marks omitted).  To receive qualified immunity, an officer need only have "arguable probable cause."  Id.  Arguable probable cause exists when "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff."  Id.  (internal citations and quotations omitted).  Whether arguable probable cause exists "depends on the elements of the alleged crime and the operative fact pattern."  Id.

established, and a law enforcement officer should have been aware, that an unlawful

seizure was a violation of the Fourth Amendment.  See, e.g., Dale v. Bartels, 732 F.2d

278, 285 (2d Cir. 1984).  It was also well-established that a defendant's conviction could

not be based on an involuntary confession, Malley v. Hogan, 378 U.S. 1, 6 (1964) ("We

hold today that the Fifth Amendment's exception from compulsory self-incrimination is

also protected by the Fourteenth Amendment against abridgment by the States."), and

that use of fabricated evidence and perjured testimony violated due process.  Mooney

v. Holohan, 294 U.S. 103, 112-13 (1935).[10]

   The Court also rejects the BSO Defendants' argument that Fantigrassi's actions

did not cause Caravella any constitutional injury.  BSO Motion at 13.  The BSO

Defendants argue that Caravella "was arrested, tried and convicted based on his

confessions to the Miramar detectives and his mother."  Id.  They ignore that Caravella

has alleged that Fantigrassi "withheld or concealed exculpatory evidence and provided

false reports, information and testimony to the criminal courts, the prosecutors,

Plaintiff's criminal defense counsel, and the public."  BSO Response at 8 (citing Am.

Compl.).  Accordingly, the Court cannot conclude that Fantigrassi did not cause

Caravella constitutional injury at this time.

---

[10]    In Sparado v. Boone, a similar case where a plaintiff brought a civil suit
after he was exonerated for a crime he did not commit, the Eleventh Circuit affirmed the
lower court's denial of defendants' motion to dismiss the plaintiff's 1983 malicious
prosecution claim on the grounds that the malicious prosecution and Fifth Amendment
claims were not clearly established law in 1979 when the plaintiff alleged that he was
coerced into confessing, or in 1982 when he entered a guilty plea for murder, resulting
in his incarceration.  212 Fed. Appx. 831, 832 (11th Cir. 2006).

Finally, because the Court finds that Caravella has plead all the necessary elements of a malicious prosecution claim under section 1983, Defendants motion to dismiss for failure to state a claim will be denied.  Defendants Pierson, Mantesta, and Guess contend that Caravella cannot establish that (1) they were the legal cause of the prosecution of Caravella, (2) there was an absence of probable cause for the prosecution, or (3) that they acted with malice.  City Motion at 19.  At this stage, however, the Court must assume that all facts alleged in the Amended Complaint are true and draw all reasonable inferences from those facts in the plaintiff's favor.  See Twombly, 550 U.S. at 555.  Caravella's Amended Complaint is replete with factual allegations that Defendants lacked probable cause both to start and to continue the prosecution against him.  See, e.g., Am. Compl. ¶¶ 93-99, 175, 216.  Caravella's allegations are sufficient to survive Defendants' Motions to Dismiss, even given the heightened pleading standard the Eleventh Circuit applies to civil rights claims involving the defense of qualified immunity. See Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003); Blackshear v. City of Miami Beach, 799 F. Supp. 2d 1338, 1347 (S.D. Fla. 2011) ("Moreover, where the legitimacy of relevant evidence is disputed, . . ., the question of whether there is an absence of probable cause is inappropriate at [the motion to dismiss] stage in the litigation"); Delvalle v. Smith, No. 11–61196–CIV, 2011 WL 6778802, at *3 (S.D. Fla. Dec. 27, 2011) (denying motion to dismiss malicious prosecution claim where plaintiff alleged that defendant lacked probable cause relating to DUI charge).

The City Defendants' argument that they were not the legal cause of Caravella's

prosecution because the grand jury and the State Attorney's Office were responsible for his prosecution is similarly unavailing.  The Eleventh Circuit has held that a plaintiff establishes a section 1983 malicious prosecution claim where the police officer responsible for the plaintiff's arrest allegedly fabricated evidence against him.  <u>Williams v. Miami-Dade Police Dep't</u>, 297 Fed. Appx. 941, 947 (11th Cir. 2008).  Thus, a plaintiff's section 1983 claim based upon the defendant's alleged fabrication of evidence, which resulted in the prosecutor being presented with false and misleading evidence, satisfies the requirement that the defendant was the legal cause of the original prosecution.  <u>Id.</u>  Because Caravella has alleged that Defendants knowingly fabricated evidence, filed false police reports, and conspired to convict him of a crime they knew he did not commit, he has adequately alleged that Defendants were the legal cause of his prosecution.  <u>See, e.g.,</u> Am. Compl. ¶ 122.[11]

The Court also finds that Caravella has adequately alleged that Defendants acted with malice.  The section 1983 claim against Defendant Fantigrassi specifically alleges that he acted with malice.  Am. Compl. ¶ 218.  Moreover, malice may be inferred from an absence of probable cause.  <u>Brown v. Benefield</u>, 757 F. Supp. 2d 1165, 1181 (M.D. Ala. 2010).  Because the Court has already established that Caravella has adequately plead that Defendants Pierson, Guess, Mantesta, and Fantigrassi acted without probable cause, it is reasonable for the Court to infer that the

---

[11]     As discussed in Section C, *supra*, the City Defendants' reliance on Caravella's alleged confessions to his mother, referenced in the Motion to Vacate, to argue that Caravella cannot establish probable cause is misplaced.  <u>See</u> City Motion at 21.

prosecution was malicious.  See id.

### 2. 42 U.S.C. § 1983 Claim against City of Miramar (Count VII).

The City Defendants contend that Caravella's section 1983 claim against the City of Miramar should be dismissed because he "makes no allegations whatsoever that the City knew of a need to train, supervise or control Officers Pierson, Mantesta and Guess and that the City made a deliberate choice not to do so."  City Motion at 24.  The City Defendants also argue that this count should be dismissed because Caravella fails to allege that "the alleged constitutional violations by Officers Pierson, Mantesta, and Guess were so pervasive as to be the functional equivalent of a formal policy."  Id. at 25.

A municipality cannot be held liable under section 1983 for the acts of its employees on a theory of respondeat superior.  Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997) (citing Monnell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).  To impose section 1983 liability on a municipality, a plaintiff must identify a municipal policy or custom that caused his injuries.  Gomez v. Lozano, 759 F. Supp. 2d 1335, 1338 (S.D. Fla. 2011).  A court may hold the municipality liable only if its custom or policy caused the municipal "employees to violate a citizen's constitutional rights." Id. (quoting Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)).  To establish section 1983 liability against a municipality based on custom, "a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."  Griffin v. City of Opa-Locka, 261 F.3d 1295, 1308 (11th Cir. 2001)

(internal citations and quotations omitted).  A municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy "if the municipality tacitly authorizes these actions or displays deliberate indifference" towards the misconduct.  Id.  However, "municipal liability may be imposed for a single decision by municipal *policymakers* under appropriate circumstances."  Scala, 116 F.3d at 1399 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)).  Thus, a municipality may be liable "for constitutional deprivations resulting from governmental custom, even where such custom has not received formal approval through official decision-making channels."  Hornstein v. Miami-Dade Cnty., No. 0521521CIV-HUCK, 2005 WL 3890636, at *3 (S.D. Fla. Sept. 9, 2005).

Inadequate police training may create liability for a municipality if the inadequate training arises from deliberate indifference to those with whom the police interact.  Gomez, 759 F. Supp. 2d at 1338.  To establish deliberate indifference, a plaintiff must show a pattern of improper training and that the municipality was aware of its training program's deficiencies.  Id. (citing Skop v. City of Atlanta, 485 F.3d 1130, 1145 (11th Cir. 2007)).  A municipality may similarly be liable under section 1983 for failure to supervise.  Diaz-Martinez, 2009 WL 2970468, at *12.

The Amended Complaint, despite the City Defendants' arguments to the contrary, specifically alleges that a custom of police misconduct existed and that the City of Miramar was aware of this misconduct.  For example, paragraph 146(e) alleges that "[t]here exists a pattern and practice of engaging in false arrests, imprisonment, false prosecution, excessive use of force, as evidenced by, but not limited to, incidents

36

involving the Plaintiff, Ian Kissoonial, Chiquita Hammonds, Cornelius Green and Macquerita Quire.  Am. Compl. ¶ 146(e).  Moreover, the Amended Complaint states that the City of Miramar had knowledge of this misconduct based on injuries suffered by the individuals listed in the preceding subsection.  Id. ¶ 146(f).  Caravella additionally alleges that the City of Miramar condoned or tolerated constitutional violations by its police department because of the "number of homicides which remained unsolved through the incompetent or negligent investigation by its police officers."  Id. ¶ 146(g).  Taking these allegations in the light most favorable to Caravella, the Court finds that Caravella has stated a claim against the City of Miramar pursuant to Section 1983 for failure to properly hire, train, supervise, and/or discipline its police officers.

### 3. 42 U.S.C. § 1983 Claim against Defendant Jenne (Count X).

The BSO Defendants seek to dismiss the section 1983 claim brought against Defendant Jenne in both his official and individual capacities.  BSO Motion at 14-15.  First, the BSO Defendants argue that the claim against Jenne in his individual capacity must be dismissed because "the Complaint contains no allegations Jenne had personal participation in the alleged wrongdoing or that there was a causal connection between his acts and Caravella's alleged damages."  Id. at 14.  Second, the BSO Defendants argue that no official capacity claim can be brought against Jenne because he has not been Sheriff since 2007.  Id.  Third, they contend that a section 1983 action cannot lie against Jenne based on an allegation that the BSO had a policy of coercing confessions decades after Caravella was arrested and investigated for a murder by Miramar detectives.  Id. at 15.  In opposition, Caravella cites to a number of paragraphs

37

from the Amended Complaint in which he alleges that Jenne personally participated in causing damage to Caravella by concealing and covering up illegal and unconstitutional conduct on the part of his agents.  BSO Response at 9.

Where a section 1983 plaintiff sues government employees (such as police officers) in their official capacities, the suit is in actuality against the governmental entity that the individuals represent.  Farred v. Hicks, 915 F.2d 1530, 1532  (11th Cir. 1990) (citing Kentucky v. Graham, 473 U.S. 159, 165-66 (1985); Brandon v. Holt, 469 U.S. 464, 471-72 (1985)).  Because Defendant Jenne ceased to be Broward County Sheriff in 2007, the Court agrees that Jenne can no longer be sued in his official capacity.  See Williams v. Goldsmith, 4 F. Supp. 2d 1112, 1122 (M.D. Ala. 1998) (finding that it was improper to allow official capacity claims to proceed against individuals who were no longer representatives of the entity).  Accordingly, the Court will dismiss the allegations against Defendant Jenne in his official capacity only.  To the extent the allegations against Jenne in his official capacity are not already encompassed in his claim against Defendant Lamberti (Count XII), Caravella may re-plead his official capacity allegations against Jenne as to a proper defendant.[12]

Supervisory liability under section 1983 is appropriate "either when the

---

[12]     Federal Rule of Civil Procedure 25(d) provides that "[a]n action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is automatically substituted as a party."  Fed. R. Civ. P. 25(d).  Here, because Jenne's tenure as Sheriff ended before Caravella filed his Complaint and because he has already brought a claim against the current BSO sheriff, Lamberti, the Court requires Caravella to re-plead any additional section 1983 allegations against the BSO not already encompassed in his claim against Lamberti.

supervisor personally participates in the alleged constitutional violation or when there is

a causal connection between actions of the supervising official and the alleged

constitutional violation."  Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010)

(internal quotations and citations omitted). A plaintiff may establish a causal connection

by alleging facts "which support an inference that the supervisor directed the

subordinates to act unlawfully or knew that the subordinates would act unlawfully and

failed to stop them from doing so."  Id.  The Court finds Caravella has stated a section

1983 claim against Jenne in his individual capacity.  The Amended Complaint contains

numerous allegations that Defendant Jenne "had access to information" that

demonstrated Caravella's innocence.  Am. Compl. ¶ 132.  It further alleges that after

Jenne learned of the improper tactics employed by sheriffs such as Fantigrassi, he

allowed him "to maintain control over the originals of the very evidence and records

pertaining to the false arrests and convictions."  Id. ¶ 133.  Caravella also contends that

Jenne maintained a policy of "multiple case clearance" and had a quota system for

arrests.  Id. ¶¶ 134-35.  Taken together, these factual allegations state a section 1983

claim against Jenne.

Finally, to the extent the BSO Defendants argue that this count should be

dismissed because the investigation and prosecution of Caravella "was not their case",

the Court finds this argument unavailing.  See BSO Motion at 15.  At the motion to

dismiss stage, the Court must take all allegations in the Amended Complaint as true.

Twombly, 550 U.S. at 555.  Caravella has alleged that BSO Defendant Fantigrassi

participated in a conspiracy to fabricate evidence and convict Caravella of a crime he

knew Caravella did not commit.  Am. Compl. ¶¶ 96-97.  He has also alleged that

because of errors committed in the Broward County Sheriff's Crime Laboratory in 2001,

DNA evidence that exonerated Caravella was not obtained until 2009, eight years after

DNA evidence was originally submitted to a laboratory for testing.  Am. Compl. ¶¶ 106-

107, 109.  Accordingly, the BSO Defendants unsupported factual argument that this

"was not <u>their</u> case" cannot serve as a basis to dismiss Count X.

### 4. 42 U.S.C. § 1983 Claim against Defendant Lamberti (Count XII).

The BSO Defendants also move to dismiss the section 1983 claim brought

against Defendant Lamberti in his official capacity.  BSO Motion at 16-18.  The BSO

Defendants reiterate that dismissal of this claim is proper because City of Miramar

detectives, not the BSO, investigated the Jankowski murder.  Id. at 16.[13]  The BSO

Defendants also dispute that Caravella's constitutional rights were violated because of

a BSO custom or policy.  Id. at 18.  Caravella disagrees with the BSO Defendants'

arguments that this claim should be dismissed because it was a City of Miramar case.

BSO Response at 12.  Additionally, Caravella points to numerous factual allegations in

the Amended Complaint which establish the existence of an unconstitutional BSO

policy or custom.  Id. at 13-15.

The standard for municipal liability is set forth in Subsection F.2 above.  The

Court finds that Caravella has stated a section 1983 claim against Defendant Lamberti.

---

[13]    For the same reasons discussed in Subsection F.3 above, the Court finds
the BSO Defendants' argument that the section 1983 claim against Lamberti should be
dismissed because this was a City of Miramar case an insufficient basis for dismissal at
this stage.

The Amended Complaint specifically alleges that Defendant Fantigrassi employed the same illegal techniques utilized against Caravella on another man, Jerry Frank Townsend, who was also wrongfully convicted and incarcerated, until he was exonerated by DNA testing.  Am. Compl. ¶ 65.  The Amended Complaint further alleges that the same coercive and illegal tactics were utilized in false arrests and convictions of Frank Lee Smith, Timothy Brown, and others and that the BSO maintained a written policy for "multiple case clearance, . . . which is a virtual blueprint for coercing false confessions."  Id. ¶¶ 133-34; see also ¶ 141 (listing other instances where the BSO targeted mentally challenged individuals, obtained coerced and false confessions, and incompetently investigated capital crimes).  Finally, Caravella specifically alleges that the BSO had notice of the misconduct of its officers from two federal cases.  Id. ¶ 141.  Taken together these factual allegations adequately allege an unconstitutional custom or practice.  Accordingly, the BSO Defendants motion to dismiss the section 1983 claim against Defendant Lamberti for failure to train, supervise, and/or discipline will be denied.

### G. Caravella States a Claim for Conspiracy Pursuant to 42 U.S.C. § 1983 (Count V)

The City Defendants seek to dismiss Caravella's section 1983 conspiracy claim against Defendants Pierson, Mantesta, and Guess because Caravella "does not plead that Officers Pierson, Mantesta, and Guess reached any specific type of agreement to violate the Plaintiff's rights, much less than any facts about such an agreement."  City Motion at 23.  The BSO Defendants seek to dismiss the conspiracy count against Defendant Fantigrassi because Caravella has not plead the required elements for a

conspiracy pursuant to 42 U.S.C. § 1985.  BSO Motion at 8.  The BSO Defendants also

argue that Caravella has failed to allege "particular facts to support a conspiracy claim."

Id. at 9.

       To state a section 1983 claim for conspiracy, a plaintiff must allege a conspiracy

that resulted in the actual denial of some underlying constitutional rights.  Grider, 618

F.3d at 1260.  The plaintiff must show that the parties "reached an understanding to

deny the plaintiff his or her rights."  Id. (quoting Bendiburg v. Dempsey, 909 F.2d 463,

468 (11th Cir. 1990)).  Additionally, the plaintiff must establish that the conspiratorial

acts impinge upon the federal right.  Bendiburg, 909 F.2d at 468.  To avoid dismissal on

a motion to dismiss, the plaintiff must make particularized allegations that a conspiracy

exists.  Hansel v. All Gone Towing Co., 132 Fed. Appx. 308, 309 (11th Cir. 2005) (citing

GJR Invs., Inc. v. Cnty. of Escambia,132 F.3d 1359, 1370 (11th Cir. 1998)).  Vague and

conclusory allegations suggesting a section 1983 conspiracy are insufficient to

withstand a motion to dismiss.  Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir.

1984).  The Court agrees with Caravella that the conspiracy claim alleged in the

Amended Complaint is brought pursuant to section 1983, not section 1985.  See BSO

Response at 5.   Accordingly, the BSO Defendants' arguments that this count should be

dismissed because "there are no allegations Caravella belonged to a discreet class, or

that Fantigrassi entered a conspiracy to deprive him of his equal protection rights based

on that class" are without merit.  See BSO Motion at 8.

       The Court also finds that the Amended Complaint adequately alleges that

Defendants Pierson, Mantesta, Guess, and Fantigrassi reached an agreement to

deprive Caravella of his constitutional rights.  To prove conspiracy under section 1983, a plaintiff must (1) prove the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) prove an actionable wrong to support the conspiracy.  Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla., 956 F.2d 1112, 1122 (11th Cir.1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication ... ." Id.  Here, the Amended Complaint specifically alleges that all four Defendants met after Fantigrassi administered the polygraph to Caravella.  Am. Compl. ¶ 68.  Thereafter, Fantigrassi informed Caravella's mother that her son had confessed to murdering Ms. Jankowski and the polygraph indicated that he was being truthful.  Id.  The Amended Complaint thus includes sufficient factual allegations from which the Court can conclude that a meeting of the minds occurred. The Amended Complaint also alleges that this conspiracy was designed to deprive Caravella of his constitutional rights.  Paragraph 129, for example, provides that:

> From December 28, 1983 through July 31, 1984, Defendants PIERSON, MANTESTA, and GUESS conspired with Defendant FANTIGRASSI, as part of a common plan, to close this unsolved case file of a rape/murder by arranging to fabricate, tamper with and present documentary evidence in the form of tape recorded statements to prosecutors for the purpose of implicating Plaintiff in a criminal trial for a capital felony when they knew that, not only was there no physical evidence to connect Plaintiff to the crime and that there was no other evidence which could exclude him from said crime.

Am. Compl. ¶ 129.

The Court rejects Defendants' arguments that the conspiracy claim should be dismissed for failure to plead specific facts supporting the conspiracy.  The Amended Complaint is replete with specific factual allegations regarding a conspiracy between

Defendants Pierson, Guess, Mantesta, and Fantigrassi.  For example, the Amended

Complaint alleges that Defendants Pierson and Mantesta specifically selected

Caravella "to close the Jankowski investigation."  Am. Compl. ¶ 60.[14]  It also alleges that

Defendants Pierson, Mantesta, and Guess provided Defendant Fantigrassi with a copy

of Caravella's coached statement before he conducted the polygraph examination and

that after the polygraph was over, the four Defendants met.  Id. ¶¶ 66-67.  Additionally,

the Amended Complaint states that based on Defendant Fantigrassi's representation

that another possible suspect, Stephen Chappell, had passed a polygraph examination,

all investigation of him ceased.  Id. ¶ 74.  Specific factual details, such as the ones

detailed above, are not vague and conclusory allegations, but rather support a

conspiracy claim.  Rehberg v. Paulk, No. 1:07–CV–22 (WLS), 2009 WL 7772286, at *7

(M.D. Ga. Mar. 31, 2009) ("Contrary to Defendants' contention, Plaintiff's conspiracy

count (Count X) is well pleaded and satisfies the heightened pleading requirement of

the Eleventh Circuit. Count X of Plaintiff's Complaint 'repeats and incorporates the

allegations of paragraphs 1 through 60' of Plaintiff's Complaint. Paragraphs 1 through

60 set forth detailed allegations of the wrongful conduct Plaintiff alleges and Count X of

Plaintiff's Complaint explicitly alleges that the facts described in paragraphs 1 through

60 establish that Defendants Paulk, Burke, and Hodges acted in 'concert' and

'engag[ed] in a conspiracy.'").  Accordingly, the Court finds that Caravella's section

1983 conspiracy count states a claim.

---

[14]     Count V incorporates a number of paragraphs of the Amended Complaint
by reference, including paragraphs 20-113.

## H. Civil RICO (Counts XIII-XV)

Caravella brings RICO claims pursuant to 18 U.S.C. § 1962 (b)-(d) and Fla Stat.

§ 772.103 (2)-(4) against Defendants Pierson, Mantesta, Guess, Fantigrassi, and

Jenne.[15]  The City Defendants argue that Caravella's RICO claims should be dismissed

because he fails "to sufficiently plead facts supporting such claims."  City Motion at 26.

Specifically, the City Defendants contend that the Amended Complaint contains

insufficient allegations of an enterprise, insufficient allegations of a pattern of

racketeering activity, and Caravella's alleged injuries do not support a federal RICO

claim.  Id. at 27-28.  The BSO Defendants likewise move to dismiss the RICO claims

against Jenne because Caravella does not allege that Jenne participated in his arrest

and conviction.  BSO Motion at 18.  Dismissal of the RICO claims is also warranted,

according to the BSO Defendants, because Fantigrassi and Jenne's actions did not

cause damage to Caravella, the Amended Complaint fails to adequately allege an

enterprise, and because, to the extent Caravella alleges that the BSO is an enterprise,

his claims are implausible.  Id. at 19-20.

In response, Caravella contends that he has adequately alleged that the BSO

and the City of Miramar are enterprises under the federal and state RICO acts.  City

Response at 23-24; BSO Response at 16.  He also argues that there are adequate

allegations that Fantigrassi and Jenne's conduct caused injury to Caravella, BSO

Response at 17, and that he has alleged a threat of continued racketeering activity.

---

[15]     Count XIV, a claim brought pursuant to 18 U.S.C. § 1962(b) and Fla. Stat.
§ 772.103(2) is against Defendants Pierson, Mantesta, Guess, and Fantigrassi only.

City Response at 25.  Finally, Caravella contends that the injuries he suffered from his wrongful conviction and incarceration were injuries to business or property.  Id. at 27-30.  In any event, Caravella points out that the Florida RICO statute does not limit damages to "injury to business or property."  Id. at 27.

### 1. RICO Claims Generally.

To successfully bring a RICO claim[16], a plaintiff must establish a RICO enterprise

---

[16]  Here, Plaintiff brings RICO claims under 18 U.S.C. § 1962 (b)-(d) and Fla Stat. § 772.103 (2)-(4).  The federal RICO statute, 18 U.S.C. § 1962 provides:

...

(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Fla. Stat. § 772.103 similarly provides that:

It is unlawful for any person:
. . .

(2) Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(3) Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

and a "pattern of racketeering activity." <u>Jackson v. BellSouth Telecomms.</u>, 372 F.3d 1250, 1264 (11th Cir. 2004).  A RICO enterprise exists "where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." <u>Id.</u> (quoting <u>United States v. Hewes</u>, 729 F.2d 1302, 1311 (11th Cir.1984)).  To successfully allege a pattern of racketeering activity, a plaintiff must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature.  <u>Id</u>; 18 U.S.C. § 1961(5).  "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." <u>Am. Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting  <u>H.J. Inc. v. Nw. Bell Tel. Co.</u>, 492 U.S. 229, 242 (1989)).  To bring a civil claim under the federal statute, a plaintiff also must establish that he suffered injury to his "business or property" due to a violation of a substantive RICO provision.  <u>Williams v. Mohawk Indus., Inc.</u>, 465 F.3d 1277, 1282 (11th Cir. 2006).

"A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." <u>Cigna Corp.</u>, 605

---

(4) To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

F.3d at 1293 (quoting Republic of Pan. v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 950 (11th Cir.1997)). A plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy "may be inferred from the conduct of the participants."  Id. (quoting Republic of Pan., 119 F.3d at 950).

Florida's RICO law "is informed by case law interpreting the federal RICO statute ... on which Chapter 772 is patterned." Jackson, 372 F.3d at 1263 (quoting Jones v. Childers, 18 F.3d 899, 910 (11th Cir.1994) (internal citation omitted)). Because "Florida courts often look to the Federal RICO decisions for guidance in interpreting and applying the act[,] Fla. Software Sys., Inc. v. Columbia/HCA Healthcare Corp., 46 F. Supp. 2d 1276, 1284 (M.D. Fla.1999), the analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims."  Jackson, 372 F.3d at 1263-64 (internal quotation marks omitted); see also All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc., 135 F.3d 740, 745 (11th Cir.1998) ("Florida's RICO statutes have consistently been interpreted using federal RICO claim cases."); Bortell v. White Mountains Ins. Grp., Ltd., 2 So. 3d 1041, 1047 (Fla. Dist. Ct. App. 2009) ("Because the Florida RICO Act is patterned after the federal act, Florida looks to federal authorities in construing its own RICO statute.").  The Court will address Defendants' various arguments to dismiss the RICO counts individually below.

## 2. Caravella has Adequately Alleged an Enterprise.

Title 18 U.S.C. § 1961(4) defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  The Florida RICO

statute similarly defines "enterprise" as "any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and the term includes illicit as well as licit enterprises and governmental, as well as other, entities."  Fla. Stat. § 772.102(3).  Here, Caravella contends that he has adequately alleged that the City of Miramar Police Department and the BSO are enterprises under these definitions.  City Response at 23.  Caravella also argues that an association-in-fact enterprise existed between Defendants Pierson, Mantesta, Guess, and Fantigrassi (later joined by Defendant Jenne).  Id. at 24.

The Court agrees with Caravella that he has adequately alleged a RICO enterprise.  As Caravella notes, there is ample support for the notion that a police department or sheriff's office may constitute a RICO enterprise.  See, e.g., United States v. Casamayor, 837 F.2d 1509, 1511 (11th Cir. 1988) (noting that a RICO enterprise was comprised of Key West Police officers, narcotics traffickers and a Key West attorney); United States v. Brown, 555 F.2d 407, 416 (5th Cir. 1977)[17] (city police department held RICO enterprise); see also City Response at 24 n.5 (citing additional cases).  Here,  Caravella has alleged that the BSO and the City of Miramar Police Department are enterprises under the RICO statute.  Am. Compl. ¶¶ 17-18.

The City Defendants also challenge that Caravella has established an association-in-fact enterprise between Defendants Pierson, Mantesta, Guess, and

---

[17]     The decisions of the former United States Court of Appeals for the Fifth Circuit decided before September 30, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Pritchard, 661 F.2d 1206, 1207 (11th Cir. 1981).

Fantigrassi.  They cite <u>Palm Beach County Environmental Coalition v. Florida</u> for the proposition that "merely alleging that the 'Defendants conspired with each other and with others...' does not allege an enterprise."  651 F. Supp. 2d 1328, 1349 (S.D. Fla. 2009).  "[T]he existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  <u>Mohawk Indus., Inc.</u>, 465 F.3d at 1284 (quotations omitted).  "[T]he definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities , however loose or informal, that furnishes a vehicle for the commission of two or more predicate acts."  <u>Id.</u>  In <u>Mohawk Industries</u>, the Eleventh Circuit declined, at the motion to dismiss stage, to find that the plaintiff had failed to allege an association-in-fact enterprise where the complaint specifically alleged a conspiracy between the defendant and third party recruiters to bring illegal workers into the country.  <u>Id.</u>  Similarly here, the Amended Complaint contains numerous allegations of a conspiracy between Defendants Pierson, Guess, Mantesta, and Fantigrassi to wrongfully convict Caravella.  <u>See, e.g.</u>, Am. Compl. ¶¶ 92-97.  On these facts, the Court finds that Caravella has adequately alleged an association-in-fact enterprise.[18]

_____

[18]      In their reply, the City Defendants argue that Caravella has failed to address his "failure to identify the specific roles for each of the City Officers in the enterprise, a requirement in a case involving multiple defendants."  City Reply at 16.  The City Defendants' reliance on <u>Kivisto v. Miller, Canfield, Paddock & Stone, PLC</u>, 413 Fed. Appx. 136, 139 (11th Cir. 2009), for this proposition is misplaced.  In <u>Kivisto</u>, the court was discussing the heightened pleading standard for RICO claims based on wire or mail fraud.  413 Fed. Appx. at 139 ("In a case involving multiple defendants, the complaint must not lump together all of the defendants, as the complaint should inform each defendant of the nature of his alleged participation in the *fraud*.") (emphasis added; internal quotation omitted).  Here, because the predicate acts alleged in the

<u>3. Whether Caravella has Adequately Alleged a Pattern of Racketeering Activity.</u>

The City Defendants contend that the RICO claims must be dismissed because Caravella has failed to allege a continuing pattern of racketeering activity on the part of Defendants Pierson, Mantesta, and Guess.  City Motion at 27-28.  Furthermore, they contend it would be impossible for Caravella to establish continuing racketeering activity on the part of any of these Defendants because they are no longer employees of the City of Miramar Police Department.  <u>Id.</u> at 28 n.19.

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. . . . Often a RICO action will be brought before continuity can be established in this way.  In such cases, liability depends on whether the threat of continuity is demonstrated.

<u>Jackson</u>, 372 F.3d at 1265 (quoting <u>H.J. Inc.</u>, 492 U.S. at 241-42).  Where RICO allegations concern only "a single scheme with a discrete goal," courts have refused to find a closed-ended pattern of racketeering.  <u>Id.</u> at 1267 (citing cases).  To establish open-ended continuity, a plaintiff must establish that the predicate acts were the enterprise's  "regular way of doing business" or threaten repetition in the future.  <u>Jackson</u>, 372 F.3d at 1265.

In his Response, Caravella argues that he has established an open-ended

---

Amended Complaint do not involve fraud, the heightened pleading standard discussed in <u>Kivisto</u> is inapplicable.

pattern of racketeering activity.  City Response at 26.[19]  Caravella also does not dispute

that Defendants Pierson, Guess, and Mantesta no longer work for the City of Miramar

Police Department.  Id. at 27.  He contends, however, that an open-ended pattern of

racketeering activity may be established because the enterprises, the BSO and City of

Miramar Police Department, "operate in a manner that poses a threat of long-term

racketeering activity."  Id.  Thus, Caravella states that he can establish a continuing

threat of racketeering activity even if Defendants Pierson, Guess, Mantesta,

Fantigrassi, and Jenne no longer work for the enterprises in question.  Id.  The City of

Miramar Police Department and the BSO, two of the enterprises alleged in the

Amended Complaint, are not named defendants to the RICO counts.  Additionally,

Caravella cites no case law to support his argument that an open-ended pattern of

racketeering activity can be established even when none of the defendants still works

for the alleged enterprise[20] and the Court is aware of none.[21]  Accordingly, the Court

---

[19]     The Court notes that Caravella has not argued that a closed-ended pattern of racketeering activity exists.

[20]     The sole case law Caravella cites to support his argument stands for the proposition that the members of an enterprise may shift over time.  This differs from the situation here, where the only members of the alleged enterprises named in the RICO counts no longer work for the enterprises.

[21]     The Court acknowledges that in Townsend v. City of Miami, Case No. 03-21072-CIV-JORDAN (S.D. Fla. Nov. 7, 2007) [DE 219], Judge Jordan held that where the plaintiff alleged that the City of Miami Police Department had a practice of obtaining coerced and false confessions to obstruct justice and listed multiple instances where individuals were falsely accused by City of Miami officers, a pattern of continuity sufficient to survive a motion to dismiss had been alleged.  Townsend, [DE 219] at 5. The Court cited Jones v. Childers, 18 F.3d 899, 912 (11th Cir. 1994), for the proposition that evidence of other instances of similar wrongful conduct established a pattern of continuity.  In Jones, however, the court noted that "'continuity' may be established by showing that the predicate acts are part of the way a *defendant* regularly conducts his

finds that Caravella has failed to allege an open-ended pattern of racketeering activity where none of the defendants named in the RICO claims still work for the alleged enterprises.  Thus, the Court will grant the Defendants' Motions to Dismiss the civil RICO counts.

4. Whether Caravella has Alleged a Compensable Injury Under the RICO Statutes.

The City Defendants additionally argue that Caravella's federal RICO claims should be dismissed because he has failed to allege an injury to business or property. City Motion at 28.[22]  According to the City Defendants, Caravella's alleged injuries due to lost employment and wages are personal injuries which are not compensable under the federal RICO statute.  Id.  The BSO Defendants make the same argument and additionally argue that Defendants Fantigrassi and Jenne did not cause Caravella any damage because Caravella was arrested, prosecuted, and convicted by City of Miramar police officers.  BSO Motion at 19.

The Court disagrees with the BSO Defendants' argument that Caravella has

business."  18 F.3d at 912 (emphasis added).  Here, the Defendants named in the RICO counts are no longer employees of the alleged enterprises.

Additionally, in Townsend police officer defendants James Boone and Kevin Roberson and former city manager defendants Howard V. Gary, Cesar H. Odio, and Donald Warshaw did not contend that the RICO claims should be dismissed because they were no longer employed by the City of Miami.  See Motion to Dismiss Counts V-VIII and/or Motion for Judgment on the Pleading [DE 185]; Former City Manager's Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings [DE 187].

[22]      In his opposition, Caravella argues that the Florida RICO statute, unlike its federal counterpart does not require an injury to business or property.  City Response at 27 (citing Fla. Stat. § 772.104(1)).  However, the City Defendants only argue that Caravella's claims brought pursuant to 18 U.S.C. § 1962 should be dismissed on this basis.  See City Motion at 28.

failed to allege that Defendants Fantigrassi and Jenne caused him damage.  As noted

in Caravella's response, the Amended Complaint alleges that Defendants Jenne and

Fantigrassi committed predicate acts in violation of state and federal statutes.  BSO

Response at 17.  For example, the Amended Complaint alleges that:

> Defendant JENNE, and other unnamed sheriffs, engaged in or joined in the
> conspiracy to conceal the criminal conduct of their agents, including Defendant
> FANTIGRASSI, aided and abetted the concealment of criminal conduct, aided
> and abetted the furtherance of the criminal conduct, failed to report the criminal
> conduct of Defendant FANTIGRASSI and other deputies, and, in violation of 18
> U.S.C. §1512(3)(b) and §918.13 and §914.22, Florida Statutes, withheld,
> concealed and/or destroyed evidence and records pertaining to said illegal
> conduct against Plaintiff and others, obstructed justice, obstructed a criminal
> investigation, evaded criminal and/or civil prosecution and liability, and prevented
> the communication and investigation into violations of 18 U.S.C. §242, Federal
> offenses in furtherance of the racketeering and/or criminal conspiracy and
> enterprise.

Am. Compl. ¶ 130.  Accordingly, the Court finds that Caravella has sufficiently alleged

that Defendants Jenne and Fantigrassi caused him damage.

Title 18 U.S.C. § 1964 limits those who may bring civil RICO actions to "[a]ny

person injured in his business or property."  18 U.S.C. § 1964(c).  Caravella contends

that he has alleged injury to business or property "in the form of lost employment and

employment opportunities and wages."  City Response at 28.  The City Defendants cite

a Judge Jordan opinion from Townsend v. City of Miami, Case No. 03-21072-CIV-

JORDAN (S.D. Fla. Nov. 7, 2007) [DE 219], for the proposition that injuries related to

lost employment and wages cannot be injuries to business or property.  City Reply at

17.  The Court agrees.

In Townsend, the Court dismissed with prejudice claims brought under the

54

federal civil RICO statute by a plaintiff exonerated by DNA testing after 22 years imprisonment because he had "not alleged an injury cognizable under the federal civil RICO statute." Townsend, DE 219 at 3. Relying upon Grogan v. Platt, 835 F.2d 844 (11th Cir. 1988), the Court found that the plaintiff's "claims for loss of employment and compensation are inseparable from his personal injury claims." Id. at 3-4. The Court dismissed the plaintiff's reliance on Mohawk Industries because in that case, the claims for loss of employment "derived from an injury to business or property–a scheme to depress salaries by hiring illegal immigrants–and not from personal injuries like" the plaintiff's. Id. at 3. Because Caravella seeks damages identical to those sought by the plaintiff in Townsend, the Court finds that he has also failed to allege an injury to business on property.[23] Accordingly, those portions of Counts XIII through XV based on the federal RICO statute are hereby dismissed with prejudice. Because the Court has additionally found that Defendants are entitled to dismissal of Caravella's RICO claims on the grounds that he has failed to sufficiently allege a continuing pattern of racketeering activity, the Court will dismiss Caravella's Florida RICO claims without prejudice and afford Caravella the opportunity to re-plead.

---

[23]    The Circuit Courts of Appeals are divided on this issue. In Evans v. City of Chicago, the Seventh Circuit similarly held that a plaintiff who alleged "the inability to seek or obtain employment opportunities arising out of false imprisonment or malicious prosecution tort claims" had failed to allege an injury to business or property. 434 F.3d 916, 929 (7th Cir. 2006). But, in Diaz v. Gates, the Ninth Circuit held that a RICO plaintiff may recover for lost employment opportunities suffered while falsely imprisoned. 420 F.3d 897, 900 (9th Cir. 2005).

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants City of Miramar, George Pierson, William Mantesta, and William

    Guess' Motion to Dismiss Amended Complaint [DE 38] and Defendants Broward

    County Sheriff's Office, Al Lamberti, Kenneth C. Jenne, II, and Anthony

    Fantigrassi's Motion to Dismiss Plaintiff's Amended Complaint [DE 41] are

    **GRANTED IN PART AND DENIED IN PART** as outlined below:

    a.   **GRANTED** in that Caravella's 42 U.S.C. § 1983 claim against Defendant

         Jenne in his official capacity (Count X) is **DISMISSED WITH PREJUDICE**;

    b.   Caravella may amend his complaint to incorporate any additional

         allegations brought against Jenne in his official capacity that are not

         already encompassed in his 42 U.S.C. § 1983 claim against Defendant

         Lamberti (Count XII) by no later than **March 26, 2012**;

    c.   **GRANTED** in that Caravella's claims brought pursuant to 18 U.S.C. §

         1962 (Counts XIII-XV) are **DISMISSED WITH PREJUDICE**;

    d.   Caravella's claims brought pursuant to Fla. Stat. § 772.103 (Counts XIII-

         XV) are **DISMISSED WITHOUT PREJUDICE**;

    e.   Caravella may amend his complaint to re-plead his allegations brought

         pursuant to Fla. Stat. § 772.103 by no later than **March 26, 2012**; and

    f.   **DENIED** in all other respects; and

2.  Plaintiff's Motion for Leave to File Reply to City Defendants' Reply Memorandum

in Support of Motion to Dismiss Amended Complaint [DE 58] is **DENIED AS**

**MOOT**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 29th ~~27~~ day of ~~March,~~ FEBRUARY 2012.

James I. Cohn

**JAMES I. COHN**
**United States District Judge**

Copies to counsel of record via CM/ECF.