UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-61607-CIV-COHN/SELTZER

DONALD SPADARO, as limited guardian
for ANTHONY CARAVELLA,

            Plaintiff,

v.

CITY OF MIRAMAR, a municipality;
GEORGE H. PIERSON, JR., WILLIAM
MANTESTA, and WILLIAM FREDERICK
GUESS, individually and in their official
capacities as former police officers for the
CITY OF MIRAMAR; AL LAMBERTI,
in his official capacity as the Sheriff of Broward
County; KENNETH C. JENNE, II, in his individual
capacity as the former Sheriff of Broward County;
ANTHONY FANTIGRASSI, individually and in his
official capacity as a former deputy sheriff for the
Broward County Sheriff's office,

            Defendants.

_____/

## THIRD AMENDED COMPLAINT

    Plaintiff, DONALD SPADARO, as Limited Guardian for ANTHONY

CARAVELLA, sues Defendants, jointly and severally, and alleges:

## JURISDICTION

1.    This is an action for damages in excess of fifteen thousand

($15,000.00) dollars, arising out of one or more violations of State and Federal

laws, detailed below.

2.      This action is brought pursuant to 42 U.S.C. §§1983, 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, §772, Florida Statutes, and the tort law of Florida.  Jurisdiction is founded on 28 U.S.C. §1331, 1343, 42 U.S.C. §1988, the constitutional provisions mentioned above, and under the tort law of Florida.

3.      In connection with the acts, practices and violations alleged below, the Defendants have each, either directly or indirectly, violated ANTHONY CARAVELLA's constitutional rights.

4.      This action is also instituted pursuant to Florida Statute §772, Civil Remedies for Criminal Practices.

5.      All conditions precedent under Florida law for the filing of this lawsuit have been satisfied.  (Exhibit A).

6.      The Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, seeks an award of damages for permanent, physical, mental and emotional injuries, loss of earning capacity, loss of enjoyment of life, punitive damages, court costs and attorney fees.

## PARTIES

7.      The Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, at all times material hereto, has been a United States citizen.

(A). On September 22, 2010, Donald R. Spadaro, Esq. was appointed Limited Guardian of the Property of the Ward-Anthony Joseph Caravella by the

2

Honorable Mark A. Speiser under File No: PR-C-10-0003868 (62J), Circuit Court of the 17th Judicial Circuit, In and For Broward County, Florida. (Composite Exhibit E). The Court having found that Anthony Joseph Caravella was a mentally incapacitated person, it gave the limited guardian Donard R. Spadaro, Esq., the power, among others, to sue and defend lawsuits on behalf of the Ward, Anthony Joseph Caravella. (Composite Exhibit E).

8.    Defendant CITY OF MIRAMAR is a municipality located in Broward County, Florida and is responsible, through its officers, employees, servants, and agents, for enforcing the regulations of the Defendant CITY OF MIRAMAR and for ensuring that its officers, employees, servants, and agents obey the laws of the State of Florida and the United States.

9.    Defendant GEORGE H. PIERSON, JR., at all times material to this complaint, was a duly appointed police officer with the City of Miramar Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward County. Defendant PIERSON is being sued in his individual and official capacities.

10.    Defendant WILLIAM MANTESTA, at all times material to this complaint, was a duly appointed police officer with the City of Miramar Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward County. Defendant MANTESTA is being sued in his individual and

3

official capacities.

11.     Defendant WILLIAM FREDERICK GUESS, at all times material to this complaint, was a duly appointed police officer with the City of Miramar Police Department, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward County.  Defendant GUESS is being sued in his individual and official capacities.

12.     Defendant AL LAMBERTI  is the Sheriff of Broward County. Said Defendant is responsible, as Sheriff, for the conduct of the deputies in his employ and ensuring that his deputies, employees, servants and agents obey the laws of the State of Florida and the United States.  Defendant LAMBERTI is being sued in his official capacity.

13.     Defendant KENNETH C. JENNE II was the Sheriff of Broward County from January, 1998 to September, 2007.  During his tenure, said Defendant was responsible for the conduct of the deputies in his employ and ensuring that his deputies, employees, servants and agents obey the laws of the State of Florida and the United States.  Defendant JENNE is being sued in his individual capacity.

14.  Defendant ANTHONY FANTIGRASSI, at all times material to this complaint, was a duly appointed deputy sheriff with the Broward County Sheriff's Office, acting under color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the State of Florida and/or Broward

County.  Defendant FANTIGRASSI is being sued in his individual and official capacities.

15.  Defendants PIERSON, MANTESTA, and GUESS violated ANTHONY CARAVELLA's constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  It is further alleged that these violations were committed as a result of the deliberate indifference, and the policies and customs, of Defendant CITY OF MIRAMAR.

16.  Defendant FANTIGRASSI violated ANTHONY CARAVELLA's constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.  It is further alleged that these violations were committed as a result of the deliberate indifference, and the policies and customs of Defendants JENNE and LAMBERTI.

17.  Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE, are each persons under Florida Statute §1.01.

18.  The Broward County Sheriff's Office is an enterprise within the meaning of §772.102(3), Florida Statutes.  The activities of said enterprise affects interstate commerce.

19.  The City of Miramar Police Department is an enterprise within the meaning of §772.102(3), Florida Statutes.  The activities of said enterprise affects interstate commerce.

20.  The relationship between Defendants PIERSON, MANTESTA, and GUESS constitutes an enterprise under Florida Statute §772.102(3) .

21.     The relationship between Defendants FANTIGRASSI and JENNE constitutes an enterprise under Florida Statute §772.102(3).

22.     Defendants PIERSON, MANTESTA, and GUESS have engaged in a pattern of conspiracy and criminal activities in violation of §772.103, Florida Statutes.

23.     Defendants FANTIGRASSI and JENNE have engaged in a pattern of conspiracy and criminal activities in violation of §772.103, Florida Statutes.

24.     The relationship between Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE constitutes an association-in-fact enterprise under §772.102(3), Florida Statutes.

25.     Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI, and JENNE have engaged in activities or a pattern or practice of conspiracy constituting criminal activities in violation of §772.103, Florida Statutes.

26.     At all times material hereto, and in all of their acts described herein, Defendants were acting under color of State law and color of their authority as public officials and public employees.

## ALLEGATIONS OF FACT

### A.     The murder of Ada Jankowski

27.     On the morning of  November 5, 1983, the body of Ada Jankowski was found on the grounds in an area northeast of the main building of the Miramar Elementary School.

6

28.     Ms. Jankowski had been brutally raped and murdered.

29.     Ms. Jankowski was last seen in the early morning hours of November 5th at the Miramar Lounge.  She was originally seen with her husband, John Jankowski, until he left after arguing with his wife. Ms. Jankowski was last seen leaving the Lounge with Anthony Martinez at 3:00 a.m..

30.     Ms. Jankowski suffered extensive injuries to her face and head, multiple stab wounds to the face, neck, abdomen, chest, back, buttocks, arms, legs and around the vagina and rectum.  She had been strangled with a piece of wire, which was the main cause of death.

31.     Physical evidence was collected from the crime scene and at the Broward County Medical Examiner's office.

32.     Ada Jankowski was 58 years old, 104 pounds and five feet two inches tall.

33.     On November 5, 1983, Defendants GUESS, MANTESTA and PIERSON, as well as other members of the City of Miramar Police Department, were at the crime scene.  At that time, Cyril Cozier, had been observed in the area wearing a bloody shirt.

34.     On November 5, 1983, Mr. Cozier was questioned and his bloody shirt was collected by Defendant PIERSON of the City of Miramar Police Department.  Mr. Cozier was observed to have injuries consistent with having recently been in an altercation.   Defendant PIERSON placed Cozier's shirt into an evidence bag and took it to the police station.

7

35.     On November 5, 1983, Defendant PIERSON personally pulled all the hairs off of Cozier's shirt and placed the hairs in envelopes, which he sealed and marked.  At the time of this procedure, no evidence from the Jankowski homicide was present in the room.

36.     On November 5, 1983, Defendant PIERSON place the Cozier shirt in a separate evidence bag, sealing and marking it.  No evidence obtained from the Miramar Elementary School crime scene nor the Broward County Medical Examiner was present during this procedure.

37.     On November 8, 1983, all evidence obtained from the crime scene and the medical examiner's office, concerning the death of Ada Jankowski and the Cozier evidence, was submitted to the Broward County Sheriff's Office laboratory for analysis and, from there, the sealed envelopes containing hairs and fibers were sent directly to the FBI.

38.     All the processing of the evidence by the BSO lab had been completed by November 23, 1983.  On that same day, it was picked up by two Miramar police officers and turned over to Lieutenant Merritt for storage in the Miramar Police Department property room.

39.     On November 5th and again on November 11th, 1983, Anthony Martinez, the seventeen year old juvenile last seen leaving the Lounge with Ms. Jankowski, was questioned by Defendants GUESS and PIERSON.  After Martinez denied any involvement in the rape/murder, Mr. Martinez's mother thereafter refused to allow any further questioning of her son and refused to allow her son to

provide any hair or blood samples.

40.     On November 17, 1983, twelve days after the murder of Ada Jankowski, Defendants PIERSON and GUESS learned that, in Davie, only six miles away from the Jankowski crime scene, an assailant had broken into the car of a waitress, hiding in the back seat of the vehicle.  As she got into the car and started to drive, the assailant put a thin wire around her neck, threatening to kill her if she did not follow his instructions.  The victim was able to get away from her assailant pulling the wire from his hands.  A composite of that suspect was made and attached to the Jankowski case file.

41.     On December 13, 1983, a young Miramar woman was abducted at knife point from the parking lot directly across the street from the Miramar Lounge and forced to drive to Melbourne, where her attacker attempted to rape her.  A composite of that suspect was attached to the Jankowski case file.

42.     The murder was widely discussed by the residents in the neighborhood and it was reported to police that a number of juveniles bragged that they had information or knew who had committed the crime.  These juveniles included Dale Patton and Ray Stephen Chappell, aka Animal.

43.     Prior to November 5, 1983, Defendants GUESS, MANTESTA and PIERSON knew ANTHONY CARAVELLA, a fifteen year old boy, who lived with his mother and siblings in the City of Miramar.

44.     ANTHONY CARAVELLA had previously been used by Defendants GUESS and PIERSON as an informant regarding criminal activities in the

Miramar neighborhood.

45. Defendant MANTESTA would manipulate ANTHONY CARAVELLA to admit to burglaries that he had not committed, in order to close cases by exceptional clearance.

46. On November 16th, PIERSON and GUESS took ANTHONY CARAVELLA for a  drive around the area of Miramar Elementary school. ANTHONY CARAVELLA provided them with the names of juveniles who could be found after hours on the grounds of the Elementary school.

47. On November 25, 1983, PIERSON and GUESS distributed a Criminal Activity Information flyer on Anthony Martinez, bearing his name, photograph, description and address, requesting any officer arresting Martinez to contact PIERSON or GUESS immediately.

48. On December 28, 1983, Defendant GUESS requested assistance from the Broward State Attorney's Office concerning the investigation into the Ada Jankowski murder, providing the agency with a summary which included the names of  potential suspects, i.e., Anthony Martinez, Cyril Cozier, John Jankowski, the victim's husband, Thomas Ganiear, Zinnie Miguez, Jorge Santiago, Joe Martinez, and Barry Gibb.  ANTHONY CARAVELLA was not on the list.

## B.    An Innocent Boy

49. On December 28, 1983, the same day that GUESS had requested guidance from the State Attorney's Office, Defendant MANTESTA went to

10

juvenile court to obtain a pick up order for ANTHONY CARAVELLA's arrest for purportedly failing to appear in court on an alleged charge of a bicycle theft.

50.   At about 11:00 p.m., on December 28, 1983, Defendants PIERSON and MANTESTA, as well as two to three other Miramar police officers went to the home of Dawn Simone, a school friend of ANTHONY CARAVELLA, for the purpose of arresting him for the alleged bicycle theft charge.

51.   At the time, ANTHONY CARAVELLA was a fifteen year old boy, of limited intelligence, understanding and judgment, testing in the mildly mentally challenged range with an I.Q. score of 67.  This was obvious and was known or should have been known by Defendants PIERSON, GUESS and MANTESTA.

52.   While at the Simone home, Defendants MANTESTA and PIERSON were extremely angry and aggressive with ANTHONY CARAVELLA, yelling and screaming at him, and pushing him around.  MANTESTA shoved him against a wall.  They asked Dawn's mother for a phone book.  They then took CARAVELLA into the garage where, from behind closed doors, Dawn thought she heard the sounds of them beating ANTHONY with the phone book.

53.   ANTHONY CARAVELLA was handcuffed and placed in the back of a patrol car.  Dawn Simone was also arrested for attempting to hide CARAVELLA.

54.   On the way to the station, Defendants PIERSON and MANTESTA informed ANTHONY CARAVELLA that they wanted a confession from him. Telling him to point out homes that he had burglarized, ANTHONY randomly

pointed out houses, then said he had burglarized the home of Defendant PIERSON's mother.

55.   Upon arriving at the police station, Defendant PIERSON immediately took ANTHONY CARAVELLA into an interrogation room to question him concerning the Jankowski murder.  Dawn Simone heard officers screaming at ANTHONY, and the sound of blows.  The next day, it was observed by an Assistant Public Defender that ANTHONY CARAVELLA's lips were blue and bleeding.

56.   Mr. CARAVELLA's mother was not present at the interrogation, and she had not been called.  ANTHONY CARAVELLA was not Mirandized and the interrogation was not recorded.

57.  Defendants PIERSON and MANTESTA told ANTHONY CARAVELLA that he could see Dawn privately and they would allow her to go home in return for CARAVELLA giving them a statement about the Jankowski homicide.  ANTHONY CARAVELLA, in an attempt to protect his friend Dawn, agreed to tell the Defendants whatever they wanted to hear.

58.   Thereafter, PIERSON and MANTESTA interrogated the mentally deficient juvenile, without his mother or an attorney present, without Mirandizing him, and without turning on the tape recorder.

59.   On December 29, 1983, having improperly coached him with crime scene details concerning the circumstances of the Jankowski murder, Defendants PIERSON and MANTESTA then contacted CARAVELLA's mother, and

thereafter, Mirandized him and took the first recorded statement of ANTHONY
CARAVELLA.  (Composite Exhibit B).

60.   Due to CARAVELLA's youth, lack of education and intellectual
limitations which were well known to both PIERSON and MANTESTA, he could
be easily led and manipulated.  It was for this reason, and because of their past
success in getting ANTHONY CARAVELLA to confess to crimes that he had not
committed, that PIERSON and MANTESTA selected CARAVELLA to close the
Jankowski investigation.

61.   Due to CARAVELLA's youth and mental disabilities, PIERSON and
MANTESTA had to lead and prompt CARAVELLA with the desired answers.
They prompted him with crime scene details, suggesting to him that the victim had
an English accent, had been hit over the head with a chair, strangled with wire,
stabbed with a steak knife, and that her clothes had only been partially pulled off,
with her bra pulled up above her breasts.

62.   Even after almost four hours of this highly coercive interrogation of the
fifteen year old boy, Defendants  PIERSON and MANTESTA failed to elicit a
"confession" from ANTHONY.  Instead, ANTHONY CARAVELLA gave them a
garbled version of the facts they had provided to him.

63.  On December 30, 1983, based upon false information provided by
Defendants PIERSON and MANTESTA, they obtained a court order which
allowed the Defendants to continue with their interrogation and have
CARAVELLA submit to a polygraph examination at the Broward County

Sheriff's office.

64.    On December 30, 1983, ANTHONY CARAVELLA was taken by Defendants PIERSON, GUESS and MANTESTA to the Broward County Sheriff's office, where Defendant FANTIGRASSI was to perform the polygraph.

65.    Defendant FANTIGRASSI had, at the time, become well known as one of the detectives who had successfully obtained a false confession from another mentally challenged man, Jerry Frank Townsend, for a number of high profile rape/homicides in Broward County.  FANTIGRASSI's tactics and interrogation techniques, done in conspiracy with other law enforcement officers, had resulted in a conviction and life sentence for this unfortunate man.  In June, 2001, Mr. Townsend was exonerated by DNA evidence and released after twenty-two (22) years of being wrongfully incarcerated for crimes which he did not commit.

66.    Defendants PIERSON, GUESS and MANTESTA provided FANTIGRASSI with a copy of CARAVELLA's coached statement, as well as the details of the Jankowski crime scene.  Thereafter, Defendant  FANTIGRASSI took ANTHONY CARAVELLA, alone, into a separate room, attaching the polygraph equipment to him and questioning him concerning the details of the Jankowski murder.

67.    ANTHONY CARAVELLA denied any involvement in the crime. The interrogation by Defendant FANTIGRASSI continued for over four hours. FANTIGRASSI was unable to elicit any confession from CARAVELLA.

68.     Thereafter, Defendant FANTIGRASSI had a meeting with Defendants PIERSON, MANTESTA and GUESS.  Following this meeting, FANTIGRASSI met with ANTHONY's mother, telling her that her son had confessed to participating in the killing of Ada Jankowski, and that the results of the polygraph showed that he was being truthful.  These were lies by Defendant FANTIGRASSI.

69.     Neither a recording of this alleged confession nor the alleged polygraph test printout were ever provided to ANTHONY CARAVELLA, his defense attorney, the prosecution or the courts.

70.     Although the court order required Defendants PIERSON, GUESS and MANTESTA to take CARAVELLA back to juvenile detention after the polygraph, PIERSON and GUESS took ANTHONY CARAVELLA to the crime scene, without his mother's knowledge or permission.  PIERSON and GUESS led CARAVELLA to the spot where the body had been found and questioned him further.  They also drove him to the Miramar Lounge and showed him the route from the bar to the crime scene. The questioning at the crime scene was not recorded.

71.     Having prompted ANTHONY with more information, PIERSON and GUESS then took him to the Miramar police station, where they took a second taped statement from CARAVELLA, wherein he incriminated himself as well as three others. (Composite Exhibit B).

72.  Although Defendant GUESS attempted to get CARAVELLA to say that

the victim had been strangled, CARAVELLA said that she was not.  Despite

Defendants GUESS and PIERSON's prompting about the victim's appearance and

age, CARAVELLA stated that Ms. Jankowski was a muscular six feet tall, not old,

and without any noticeable accent.  All of the statements were incorrect.

73.    Also arrested that night by Defendants PIERSON and GUESS was

Stephen Chappell, as another possible suspect of the Jankowski murder.

74.    Chappell had no alibi for the night of the murder and admitted that he

had told people in the neighborhood that he knew who had committed the crime,

but claimed he was just bragging.  Chappell was allegedly interrogated and

submitted to a polygraph examination by Defendant FANTIGRASSI, who

determined that he was being truthful when he denied any involvement in the

murder.  Neither a tape of the interrogation nor the polygraph test printout of

Chappell has ever been provided to ANTHONY CARAVELLA, his defense

attorney, the prosecution or the courts.

75.    Based solely on FANTIGRASSI's verbal report that Chappell had

passed the polygraph test, all investigation of Chappell as a possible suspect

ceased immediately.  A couple of hours later, PIERSON and Merritt "unarrested"

Chappell.

76.    Defendant FANTIGRASSI then falsely claimed that he had rechecked

CARAVELLA's polygraph test and found that the areas implicating Chappell in

the murder in fact showed deception, but that CARAVELLA was being truthful as

to his own involvement and that of the other two perpetrators, "Don" and an

16

unnamed blond boy.

77.    Thereafter, PIERSON, MANTESTA and GUESS went to juvenile detention, intent on interrogating ANTHONY CARAVELLA again.  They attempted without success to contact his mother.  Despite this, and an invocation preventing ANTHONY from talking to the police further, they had CARAVELLA brought to them so they could ask the fifteen year old mentally deficient boy to waive his Miranda rights.

78.    On January 3, 1984, at 9:37 a.m., Defendants MANTESTA and PIERSON had CARAVELLA sign a rights waiver form.  Throughout the rest of the day ANTHONY was interrogated without the benefit of a tape recorder.  It was not until 4:01, p.m. that a third taped statement was taken of CARAVELLA. (Composite Exhibit B).   Despite the coaching, ANTHONY CARAVELLA again was only able to provide a garbled version of his second statement, which again got most of the facts wrong.

79.    On January 4, 1984, Defendants PIERSON and MANTESTA, at a detention hearing regarding the alleged bicycle theft, used the opportunity to persuade the judge to issue an order releasing CARAVELLA to their custody for further questioning regarding the Jankowski homicide.

80.    On that same morning, ANTHONY CARAVELLA was again taken to the crime scene by Defendants MANTESTA and PIERSON.  They interrogated him in the car and at the crime scene for several hours, none of which was tape recorded, and persuaded CARAVELLA to change his story and say that he acted

alone.

81.    On January 4, 1984, a fourth tape recorded statement was taken at the police station.  (Composite Exhibit B).  Again, despite the coaching, ANTHONY CARAVELLA was unable to remember or repeat much of what they had told him and again got many of the material details completely wrong.  In response, Defendants PIERSON and MANTESTA fabricated an autopsy form by making marks that suggested stab wounds, which marks they alleged had been made by CARAVELLA.

82.    Following these fabrications, Defendant FANTIGRASSI, in this written report, falsely stated that ANTHONY CARAVELLA was deceptive when he said he did not have sex with the victim, truthful when he admitted beating and stabbing her, but inconclusive when he said that Steve, Don and the other boy also beat and stabbed her.

83.    After completing his fourth taped statement, CARAVELLA told Defendants PIERSON and MANTESTA that he wanted to make another taped statement with his mother present. When his mother returned and the tape recorder was started, ANTHONY CARAVELLA stated that he had not committed the murder.  The recording was never provided to CARAVELLA, his defense counsel, the prosecution or the courts.

84.    Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI knew that ANTHONY CARAVELLA had not murdered Ada Jankowski. Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI all conspired

18

in fabricating and falsifying evidence in the form of false police reports, false taped statements of CARAVELLA, and by giving false testimony under oath in order to knowingly frame CARAVELLA, an innocent boy, for this crime.

85.    On January 30, 1984, the hair and fiber evidence, originally sent to the Broward Sheriff's crime laboratory and, from there to the FBI crime lab, were returned. <u>The results showed that head and pubic hair from the victim were on the shirt of Cyril Cozier</u>.

86.    On February 15, 1984, a second submission of head and pubic hair samples from Cozier and CARAVELLA were sent to the FBI for analysis. The result showed that <u>ANTHONY CARAVELLA was excluded as the donor of any of the hairs taken from the victim's clothing</u>.  However, the analysis showed that Cozier's head hair was found on the victim's clothing.

87.    On April 24, 1984, there was a third submission of hairs, fibers and particles sent to the FBI from the crime scene, victim's clothing, and various suspects' clothing.  Neither PIERSON, MANTESTA nor GUESS ever filed a supplementary report as to the results of this third analysis.  Further, the FBI reports regarding the third submission of hair, fibers and particles were withheld, concealed or destroyed to impair its availability in the criminal proceedings against CARAVELLA.

88.    Defendant MANTESTA falsely claimed in a report that CARAVELLA had telephoned him from the jail while awaiting trial and told him his fourth statement was truthful.  During said telephone conversation,  both PIERSON and

MANTESTA separately spoke to CARAVELLA, asking him for information about ANTHONY's conversation with his attorney, and continuing to prompt him with further crime scene details in order to coerce him into making additional self-incriminating statements.

89.     During the court proceedings, Defendants PIERSON and MANTESTA, contrary to the evidence, falsely claimed that the evidence obtained from Cozier's shirt had been contaminated with evidence from the victim.

90.     As a result of the conspiracy to fabricate and present false evidence, tamper with witnesses, and lie under oath by Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI, ANTHONY CARAVELLA was wrongfully convicted of murder and sentenced to life in prison.

91.     At all material times, the interrogation tactics engaged in by Defendants GUESS, PIERSON, MANTESTA, and FANTIGRASSI were in violation of state and federal law, as well as against accepted police practices within the United States.

92.     Based upon the coerced statements taken by Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI, as well as false statements, false affidavits and false reports given by said Defendants within the criminal courts, to the prosecutors, CARAVELLA's counsel, and the public, ANTHONY CARAVELLA was charged by indictment with the rape and murder of Ada Jankowski.

93.     From December 28, 1983 to January 4, 1984, Defendants PIERSON,

GUESS and MANTESTA engaged in and/or joined in a conspiracy with

FANTIGRASSI, to coerce, by intimidation and deception, ANTHONY

CARAVELLA, a mentally challenged child, into making self-incriminating

statements to a crime they knew or should have known he did not commit.

94.    Defendants PIERSON and MANTESTA, GUESS, in concert with

FANTIGRASSI, engaged in the following misconduct:

(A) Took the mentally challenged CARAVELLA to the crime scene

and then coached him with information and detailed facts of the crimes in order to

fabricate evidence by making and presenting a tape recorded document to a

criminal proceeding, knowing it to be false and misleading.

(B)  Withheld and/or concealed other evidence from the criminal

courts, the prosecutors, CARAVELLA's counsel and the public, that would have

negated the fabricated evidence created by said Defendants.

(C) Intentionally and/or incompetently failed to investigate or consider

other evidence which would have negated the fabricated evidence created by said

Defendants.

95.   In furtherance of this conspiracy to fabricate evidence, Defendants

PIERSON, MANTESTA, GUESS and FANTIGRASSI repeatedly filed false

affidavits and false reports and made false material statements under oath in official

proceedings that related to the prosecution of the CARAVELLA for a capital

felony.

96.    Said federal and state law, as well as accepted police practices at the

time of the CARAVELLA's arrest, and at the time of trial and post trial, provided "fair warning" to Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI that their conduct was improper, incompetent, illegal and in violation of the ANTHONY CARAVELLA's constitutional and state rights.

97.    Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI conspired to convict CARAVELLA of a crime that they knew he did not commit. In securing a conviction against ANTHONY CARAVELLA, Defendants obtained both financial and promotional benefits which they would not have obtained had they not arrested and participated in the criminal conviction of CARAVELLA.

98.    Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI had no probable cause to arrest ANTHONY CARAVELLA or to cause his prosecution.

99.    It was only as a result of the intentional misconduct and/or incompetence of Defendants PIERSON, MANTESTA, GUESS, and FANTIGRASSI that ANTHONY CARAVELLA was wrongfully arrested, indicted, prosecuted, convicted and incarcerated for more than twenty-five years.  Said arrest and prosecution would have failed had said Defendants provided the truth to the criminal courts, the prosecutors and the public concerning their conduct and fabrication.

100.   The wrongful actions of the Defendants  PIERSON, MANTESTA, GUESS, and FANTIGRASSI constitute false arrest, illegal detention, malicious prosecution, intentional infliction of emotional distress and unlawful search and

seizure under the laws of the State of Florida.  Defendants' actions also constitute criminal activities in violation of §772.103, Florida Statutes.

101.   Throughout his highly publicized trial, ANTHONY CARAVELLA, a 15 year old boy, was portrayed in the media as a rapist murderer.

## C.   The Long Road to Freedom

102.   On or about August 2, 1984, ANTHONY CARAVELLA was found guilty of the  murder of Ada Jankowski.  On September 20, 1984, ANTHONY was sentenced to life in prison.

103.   As a result of being falsely charged and convicted, ANTHONY CARAVELLA, a 16  year old mentally challenged boy, was subjected to constant media publicity which caused him unwarranted embarrassment, humiliation, and he was placed in constant fear for his life, suffering both mental and physical abuses during his more than twenty-five years of incarceration.

104.   Throughout his incarceration, ANTHONY CARAVELLA was classified as a maximum security and/or close custody prisoner requiring that any activity or movement by CARAVELLA could only be done while handcuffed and that all activities outside of his cell be extremely limited.

105.   As a result of his conviction, ANTHONY CARAVELLA was classified as a sex offender.

106.  In April, 2001, Assistant Public Defender Diane Cuddihy of the Broward County Public Defender's Office contacted the State Attorney's Office to request DNA testing in ANTHONY CARAVELLA's case.

107.   On October 18, 2001, a report from the  Broward County Sheriff's Office Crime Laboratory stated that they were unable to obtain a DNA profile from the slides or swabs submitted.

108.   On October 28, 2002, while reviewing the state's file in CARAVELLA's criminal case, Assistant State Attorney Carolyn McCann discovered an audio tape recorded a phone conversation of January 17, 1984, wherein Jorge Delgado admitted to Miramar Police Detective MANTESTA that he was involved in the Jankowski homicide.  Said audio tape had never provided to the defense during the criminal trial.

109.   In 2009, Assistant Public Defender Cuddihy and Assistant State Attorney McCann stipulated to DNA testing being done by Dr. Edward Blake of Forensic Science Associates.  The August 27, 2009 report from Forensic Science Associates found that the DNA evidence conclusively excluded ANTHONY CARAVELLA as the sperm donor.  The report also found that an unidentified female DNA had likely been introduced to the DNA evidence during the processing at the Broward County Florida crime lab in 2001.

110.   On or about September 10, 2009, the Broward State Attorney's office agreed to the temporary release of CARAVELLA from custody, requiring him to wear a GPS ankle monitor, pending the results of further DNA testing of the evidence by Bode Technology.

111.   On November 23, 2009, Bode Technology, the testing facility selected by the Broward County State Attorney's Office, provided their report,

confirming Dr. Blake's results.

112.   On March 25, 2010, the Criminal Court vacated  and set aside the ANTHONY CARAVELLA's judgments and sentence. (Exhibit C).

**D.**     **Pattern of Criminal Acts**

113.   Defendant JENNE, and other unnamed sheriffs, have failed to provide proper oversight of the Broward County Sheriff's Office, failed to rein in and/or follow the requirements of the United States Constitution and/or stop Defendant FANTIGRASSI, and other Broward County deputy sheriffs, who, as a continuous group, have caused false charges to be made against innocent persons, who have authored false reports about innocent persons, who have lied to prosecutors and on the witness stand to instigate and support false charges, thereby causing convictions on those charges, and who have done so as to ANTHONY CARAVELLA, thereby making Defendants liable to CARAVELLA.

114.   In violation of §§914.22 and 918.13, Florida Statutes, and/or 18 U.S.C. §1512(b)(3), Obstruction of Justice, which constitutes conduct proscribed by and in violation of Florida Statute §772.102(1)(a) and (b), Defendant JENNE has interfered with the due administration of justice, improperly terminated felony investigations, and secured indictments and verdicts based on false testimony and false evidence.

(A)  Said Defendant withheld, concealed and/or destroyed evidence and records pertaining to the illegal conduct of his agents against CARAVELLA and others.

25

(B) Said Defendant withheld or acted so as to make it foreseeable that others would withhold records, documents, or other evidence from official proceedings pertaining to the illegal conduct of their agents against CARAVELLA and others.

(C) His conduct hindered, prevented and/or delayed the communication of a federal offense, thereby causing additional and separate injuries to the business and/or property of CARAVELLA, and others.

(D) His conduct knowingly hindered, prevented and/or delayed the communication to a law enforcement officer or judge of the United States of information concerning the illegal conduct, thereby causing additional and separate injuries to CARAVELLA, and others.

(E) His conduct resulted in the continuing and ongoing injuries to CARAVELLA.

115. Defendants PIERSON, MANTESTA, GUESS, JENNE, and FANTIGRASSI conspired to commit and/or solicit another person to commit crimes chargeable by indictment or information as listed in various sections of §772.102, Florida Statutes.

116. Defendants JENNE and FANTIGRASSI had an interest in and/or acquired and/or maintained control over the Broward County Sheriff's Office (hereinafter referred to as "the enterprise") through a pattern of criminal activities, as set forth herein, in violation of §772.103(2), Florida Statutes.

117. Defendants JENNE and FANTIGRASSI, being associated with said

enterprise, conducted and/or participated in said enterprise's affairs through a pattern of criminal activities, in violation of §772.103 (3), Florida Statutes.

118. Defendants JENNE and FANTIGRASSI, in violation of §772.103(4), Florida Statutes, conspired to violate subsections (2) and (3) of §772.103, Florida Statutes, in furtherance of the affairs of the enterprise.

119. Defendant JENNE managed and conducted the affairs of the enterprise, aided and abetted the proscribed conduct of his employees, conspired to conceal and cover up such conduct and deliberately perpetuated the continuous pattern of criminal activities and ongoing obstruction of justice, which directly caused injuries to multiple victims including CARAVELLA, thus facilitating and furthering the affairs of the enterprise in violation of §772.103(4), Florida Statutes.

120. Defendant JENNE, and other unnamed sheriffs, have joined in and participated in maintaining and continuing the pattern of criminal conduct of the enterprise from 1979 to the present day.

121. The wrongful actions of Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE constitute criminal activities in violation of §772.103, Florida Statutes.

122. Individually and in collaboration with Defendant FANTIGRASSI, Defendants PIERSON, MANTESTA and GUESS, in violation of §918.13 and §914.22, Florida Statutes and/or 18 U.S.C. §1512(b)(3), Obstruction of Justice, fabricated evidence, concealed exculpatory evidence, tampered with witnesses, made and presented false reports and documents, lied on sworn affidavits, and

27

coerced a false confession by intimidation and deception from CARAVELLA, who they knew was a mentally challenged person.  As a direct result of these illegal actions by these Defendants, ANTHONY CARAVELLA was maliciously prosecuted, and falsely imprisoned for more than twenty-five years for a rape and murder he did not commit.

(A)  In violation of §914.22, Florida Statutes, Defendants FANTIGRASSI, PIERSON, MANTESTA and GUESS conspired with each other to deliberately and knowingly engage in misleading conduct towards other persons with the intent to cause said other persons to withhold testimony and/or testify untruthfully in an official investigation and/or proceeding.

(B) From December 28, 1983 to January 4, 1984, Defendants PIERSON, MANTESTA and GUESS repeatedly took CARAVELLA to the crime scene, along the route from the Miramar Lounge and around the surrounding neighborhood, for the purpose of creating the false appearance to other persons that, when CARAVELLA was giving his statements, he had some knowledge of the exact location and details of the murder after said Defendants had coached him with detailed information known only to themselves and the actual killer.

(C) Defendants PIERSON and MANTESTA, through deliberately misleading conduct, persuaded the medical examiner to reverse his prior findings and testify untruthfully in an official proceeding as to the principal cause of death and weapons involved in the homicide.

(D) Defendant MANTESTA received a telephone call from an

28

individual claiming to be involved in the Jankowski homicide.  MANTESTA

abruptly ended the telephone conversation, went to the person's home and, by

intimidation, threats or misleading conducted, induced the person to withhold his

testimony from the official investigation and/or proceeding.

(E) Defendant FANTIGRASSI, by engaging in knowingly misleading

conduct, tricked CARAVELLA's  mother into falsely believing that ANTHONY

CARAVELLA had admitted to him that he had committed the crime, which

caused her to repeat this falsehood when she testified under oath in an official

proceeding.

(F)  Said conduct of Defendants PIERSON, MANTESTA, GUESS

and FANTIGRASSI, in violation of 18 U.S.C. §1512(b)(3), knowingly hindered,

prevented and/or delayed the communication to a law enforcement officer or judge

of the United States of information relating to their illegal conduct.

123.  From December 28, 1983 to January 4, 1984, Defendants

FANTIGRASSI, PIERSON, MANTESTA and GUESS repeatedly prompted

CARAVELLA, a highly suggestible person, with details of the crime and

repeatedly corrected him when he made statements inconsistent with the crime, for

the purpose of fabricating a tape recorded confession that they knew to be false.

124.  From December 28, 1983 to January 4, 1984, Defendants

FANTIGRASSI, PIERSON, MANTESTA and GUESS  also showed

CARAVELLA photographs of the crime scene and had discussions with

ANTHONY to organize the facts in CARAVELLA's mind prior to taking his tape

recorded statements.

(A)   Thus, in violation of §918.13, Florida Statutes, Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI to make and present tape recorded documents to prosecutors for a criminal trial, which they knew or in reckless disregard for the truth, should have known to be false.

(B)   Also in violation of §918.13, Florida Statutes, Defendants PIERSON and MANTESTA fabricated and altered a false document in the form of an autopsy human form outline, on which they themselves marked the location of the victim's stab wounds.  Said Defendants presented said fabricated evidence in the criminal proceeding against CARAVELLA, knowing it to be false.

125.  Defendant JENNE has joined in and participated in maintaining and continuing the pattern of criminal conduct of the enterprise during his tenure as the Sheriff of Broward County, Florida.

126.  In or around July, 1984, Defendant PIERSON, along with Defendants FANTIGRASSI, MANTESTA and GUESS presented said fabricated tape recorded documents to prosecutors as evidence at a criminal trial which resulted in the wrongful imprisonment of CARAVELLA for a period of more than twenty-five years.

127.  From December 28, 1983 until the close of trial on or about August 3, 1984 and afterwards, Defendants FANTIGRASSI, PIERSON, MANTESTA and GUESS had access to numerous items of other evidence, much of which they

knew excluded CARAVELLA  as the perpetrator of the crime for which his confession was coerced.

(A)   In violation of §§914.22 and 918.13, Florida Statutes, and/or 18 U.S.C. §1512(b)(3) Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI withheld said evidence with the purpose of preventing its availability in a criminal proceeding and to hinder, delay or prevent information related to Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI underlying criminal and federal offenses against ANTHONY CARAVELLA being communicated to a judge or law enforcement agency of Florida or the United States.

128.  From November, 1983 onward, Defendants CITY OF MIRAMAR, PIERSON, MANTESTA, GUESS, FANTIGRASSI, JENNE and LAMBERTI, had available detailed reports and evidence which would have excluded the CARAVELLA as the murderer of Ada Jankowski. The evidence was either ignored by the Defendants or withheld from CARAVELLA, his counsel and the courts.

(A)   Defendant PIERSON continued to participate in the affairs of the enterprise, the City of Miramar Police Department, and continued to conceal his illegal conduct of himself and that of the other individual Defendants, until he retired on March 28, 2008.

(B)   Keith Dunn, the Defendant CITY OF MIRAMAR's police chief, has been employed continuously with the City of Miramar Police Department, one

of the enterprises, from 1980 to the present day.  Under Chief Dunn, employees of the Miramar Police Department continue to conceal and/or withhold evidence related to the instant case that would further expose the illegal conduct of the individual Defendants.  Thus, the enterprise still functions as a continuing unit, even though some members of the enterprise have left, some having been replaced by new members.

(C)  The interrelatedness of the two enterprises, the Broward County Sheriff's Office and the City of Miramar Police Department, has continued throughout all material times and continues to this day.  The association-in-fact enterprises between Defendants FANTIGRASSI and JENNE continued until at least 2005, as did that between Defendants FANTIGRASSI and PIERSON.

(D)  The predicate acts by said Defendants, listed herein, were also a series of related acts, with similar participants, purposes, methods of commission and victims, that took place over a substantial period of time, beginning no later than 1979, continuing beyond the first DNA exonerations in 2000 and 2001 of the victims of the interconnected enterprises, and beyond the filing of this lawsuit.

(E)  To date, former members of the enterprises, the individual Defendants, and current members of the enterprises, have continued to attempt to falsely incriminate ANTHONY CARAVELLA for the murder and rape of Ada Jankowski, alleging that ANTHONY was not fully exonerated. This, despite two reports dated June 2, 2010 and April 21, 2011, respectively, from Bode Technology, a laboratory that does DNA testing for law enforcement agencies, to

32

the City of Miramar Police Department which conclusively and without doubt confirm that ANTHONY CARAVELLA did not rape and murder Ada Jankowski. Said conduct has resulted in continued injuries to ANTHONY CARAVELLA to the present day.

(F)   In violation of §914.22, Florida Statutes, and/or 18 U.S.C. §1512(b)(3), from 2009 onwards, Chief Keith Dunn and/or Assistant Chief Ray Black directed the ongoing investigation into Anthony Caravella and the Ada Jankowski rape/homicide.  The purpose of the ongoing investigation is to evade liability and cover up the misconduct of Defendants PIERSON, MANTESTA and GUESS.  No tape recordings or written reports exist with respect to the ongoing investigation.  The ongoing investigation has failed to   examine the conduct of Defendants PIERSON, MANTESTA and GUESS with respect to Anthony Caravella, failed to examine the conduct  of Defendants PIERSON, MANTESTA and GUESS with respect to their investigation into the rape/homicide of Ada Jankowski and failed to examine obvious and known suspects.

(G) The Miramar Police Department, the enterprise, has an  ongoing and accepted practice of clearing unsolved criminal cases, without proper investigation and without any evidence, by its officers knowingly inducing or coercing false confessions from persons who they know did not commit the crimes in question.

129.   From December 28, 1983 through July 31, 1984, Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI,

as part of a common plan, to close this unsolved case file of a rape/murder by arranging to fabricate, tamper with and present documentary evidence in the form of tape recorded statements to prosecutors for the purpose of implicating CARAVELLA in a criminal trial for a capital felony when they knew that, not only was there no physical evidence to connect ANTHONY CARAVELLA to the crime and that there was other evidence which could exclude him from said crime.

130.   Defendant JENNE, and other unnamed sheriffs, engaged in or joined in the conspiracy to conceal the criminal conduct of their agents, including Defendant FANTIGRASSI, aided and abetted the concealment of criminal conduct, aided and abetted the furtherance of the criminal conduct, failed to report the criminal conduct of Defendant FANTIGRASSI and other deputies, and, in violation of 18 U.S.C. §1512(3)(b) and  §918.13 and §914.22, Florida Statutes, withheld, concealed and/or destroyed evidence and records pertaining to said illegal conduct against CARAVELLA and others, obstructed justice, obstructed a criminal investigation, evaded criminal and/or civil prosecution and liability, and prevented the communication and investigation into violations of 18 U.S.C. §242, Federal offenses in furtherance of the criminal conspiracy and enterprise.

131.   In furtherance of the affairs of the enterprise and as part of the conspiracy to cover up the illegal acts and federal offenses of Defendant FANTIGRASSI, and other deputies, from December, 2000 and, until he was forced to retire in September, 2007, Defendant JENNE, in violation of  §914.22, Florida Statutes, and 18 U.S.C. §1512(b)(3), continued to participate in the

34

ongoing obstruction of justice by intentionally failing to investigate the criminal actions of his agents, by withholding, concealing and/or destroying evidence and records pertaining to said illegal conduct against CARAVELLA and others, in order to hinder, delay or prevent the communication of said information to another law enforcement agency or judge of the state or of the United States and, instead of taking any disciplinary action whatsoever, had promoted Defendant FANTIGRASSI, and other deputies.

132.   During the tenure of Defendant JENNE, said Defendant had access to information that demonstrated the innocence of CARAVELLA.

133.   Despite evidence of coercive and illegal tactics utilized by deputy sheriffs, such as Defendant FANTIGRASSI, Defendant JENNE's response was to promote them, rather than discipline them, and, in particular, even after the proof of coerced false confessions, evidence tampering and false convictions in a number of cases, Defendant JENNE allowed Defendant FANTIGRASSI to maintain control over the originals of the very evidence and records pertaining to the false arrests and convictions of Jerry Frank Townsend, Frank Lee Smith, Timothy Brown, and others.

134.   As additional evidence of the continuing pattern and practice of the criminal activity of the enterprise, Defendants JENNE and LAMBERTI have deliberately maintained a written policy for "multiple case clearance," also maintained by Sheriffs Butterworth, Brescher, and Navarro, which is a virtual blueprint for coercing false confessions.  The policy includes specific details

prescribing taking the suspect to various crime scene locations, prior to taking a confession, to ensure that accurate information about the location, modus operandi, date and time of the crime, and other information "that only the suspect would know" is obtained.

135.    Additionally, Defendant JENNE had created a quota system for arrests and provided bonuses and other incentives for his agents to encourage "multiple case clearance" of cases.

136.    Thus, Defendant JENNE committed predicate acts in violation of 18 U.S.C. §1512(b)(3) and/or §914.22, Florida Statutes which were the proximate cause of CARAVELLA's ongoing and continuing injuries from December, 2000 onwards.

137.    Instead of fulfilling his responsibilities as sheriff, Defendant JENNE has managed, controlled and participated in the affairs of the enterprise through a pattern of criminal activities for the purpose of personal unlawful financial gain and other benefits and rewards.  (Exhibit D).

138.    Throughout the tenure of Defendant JENNE, and other unnamed sheriffs of Broward County, they have engaged in or joined in the conspiracy to conceal the criminal conduct of their agents, aided and abetted the concealment and furtherance of the criminal conduct, failed to report the criminal conduct of their agents, obstructed justice, obstructed criminal investigations, evaded criminal and/or civil prosecution and liability, in furtherance of the criminal conspiracy and enterprise.

(A) Long after 2001, when CARAVELLA's conviction was first called into question and when he could have been exonerated, Defendants FANTIGRASSI and JENNE continued to participate in the affairs of the enterprise, the Broward County Sheriff's Office, and cover up the illegal conduct of themselves and the other Defendants until they 'retired' in 2005 and 2007, respectively.

(B)   On November 16, 2007, Defendant JENNE was convicted of one count of Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. §371 and three counts of filing a false tax return, in violation of 26 U.S.C. §7206 (1).  The criminal conduct occurred while Defendant JENNE managed and conducted the affairs of the enterprise, the Broward County Sheriff's Office. (Exhibit D).

(C)   The failure of the Broward County Sheriff's Office Crime Laboratory to obtain a DNA profile from the vaginal swabs taken from the victim, Ada Jankowski, in October, 2001, was due to improper handling of the evidence. Said conduct occurred while Defendant JENNE managed and conducted the affairs of the enterprise, i.e., the Broward County Sheriff's Office, including the Broward County Sheriff's Crime Laboratory.  Said misconduct did not come to light until August 27, 2009, when an independent forensic facility determined that the DNA evidence conclusively excluded ANTHONY CARAVELLA as the donor.  This finding was confirmed on November 23, 2009 by Bode Technology, a testing facility selected by the Broward County State Attorney's Office.

(D)   While Defendant JENNE managed and conducted the affairs of

the enterprise, i.e., the Broward County Sheriff's Office, and to this day under Defendant LAMBERTI, members of the Broward County Sheriff's Office continue to conceal and cover up the misconduct of Defendant FANTIGRASSI, and other unnamed deputy sheriffs.

**E.    Defendant LAMBERTI- Pattern and Practice of Misconduct by the Broward County Sheriff's Office**

139.   Defendant LAMBERTI, being sued in his official capacity, is synonymous with the Broward County Sheriff's Office.

140.   At all times material hereto, the following persons held the office of Sheriff of Broward County: Edward Stack (1969-1979); Robert A. Butterworth (1979-1982); George A. Brescher (1983-1985); Nick Navarro (1985-1993); Ronald Cochran (1993-September 1997); Susan E. McCampbell (September 1997-December, 1997); Kenneth C. Jenne, II (January, 1998 to September 2007); Al Lamberti (September, 2007 to the present).

141.   Throughout the tenure of the above listed Sheriffs, there has existed a history of pattern and/or practice of misconduct as evidenced by, but not limited to, the following:

(A) Members of the Broward Sheriff's office knew that they would benefit in the form of promotions, merits, public applause, as well as, expansion of the Sheriff's Office by the prosecution of CARAVELLA and others.

(B) Members of the Broward Sheriff's office continued to target mentally challenged individuals as demonstrated by, but not limited to, the

prosecution of ANTHONY CARAVELLA, Jerry Frank Townsend, Frank Lee Smith and Timothy Brown .

(C)  There exists a pattern by deputy sheriffs of the Broward County Sheriff's Office of obtaining coerced and false confessions. These include but are not limited to ANTHONY CARAVELLA, Jerry Frank Townsend, Frank Lee Smith, Timothy Brown, John Wood, Peter Dallas.

(D)  Members of the Broward Sheriff's office intentionally and/or incompetently investigated certain capital crimes, resulting in the false arrest and malicious prosecution of innocent people such as, but not limited to, CARAVELLA, Jerry Frank Townsend, Frank Lee Smith, Carl Stephen Rosati, Peter Roussonicolos, Peter Dallas, and/or Timothy Brown.

(E) Members of the Broward Sheriff's office were intentionally and/or incompetently trained and/or, supervised and/or disciplined which was the moving force behind individual officers violating the constitutional rights of citizens.  Notice of such misconduct was provided to by at least two federal cases, Goad v. Navarro, U.S. District Court Case No. 86-6563-CIV-ROETTGER and Hill v. Navarro, U.S. District Court Case No. 86-6388-CIV-ZLOCH.

(F) Members of the Broward Sheriff's office intentionally and/or incompetently covered up the misconduct and/or incompetence by destroying and/or having destroyed records pertaining to investigations into police misconduct, as well as criminal investigations.

(G) Despite notice of findings of inadequate and/or incompetent

training and/or supervision and/or discipline, no checks and balances to hold deputy sheriffs accountable for their misconduct were instituted by the Broward County Sheriff's office.

(H)  There exists a de facto policy within the Broward County Sheriff's Office of covering up police misconduct by failing to properly investigate alleged misconduct, and/or by conducting investigations that were intentionally incompetent and/or by fabricating evidence to justify the misconduct. Said policy spans the tenure of all Sheriffs listed herein.

142.   Defendant LAMBERTI's failure to properly train, supervise and discipline deputy sheriffs under his command was the proximate cause of the deprivation of rights suffered by ANTHONY CARAVELLA.

143.   Defendant LAMBERTI had a duty to train, supervise, control or otherwise ensure that Defendant FANTIGRASSI, and other unnamed deputy sheriffs, did not violate the constitutional rights of persons such as ANTHONY CARAVELLA.

144.   Defendant LAMBERTI abdicated his policymaking and oversight responsibilities, thereby allowing the incident involving CARAVELLA to occur.

**F.   Defendant CITY OF MIRAMAR- Pattern and Practice of Misconduct by members of the City of  Miramar Police Department**

145.  At all times material hereto, the following persons held the office of Chief of Police for the CITY OF MIRAMAR: Ben Galante (1979-1983); Ed Werder (1983-1985); Roy McLaren (1985-1989); Ben Galante (1989-1993);

George Atkinson (1993-1999); Gwendolyn Boyd (1999-2000); Steven Frazer (interim) (April, 2000-July, 2000); Mel Standley (2000-2009); Keith Dunn (2009 to the present).

146. Throughout the tenure of the above listed Police Chiefs, Defendant CITY OF MIRAMAR has engaged in a pattern and/or practice of misconduct, corruption and cover up as evidenced by, but not limited to, the following:

(A)   There existed at all times material hereto a de facto policy within the CITY OF MIRAMAR of covering up police misconduct by failing to properly investigate alleged misconduct, and/or by conducting investigations that were intentionally incompetent and/or by fabricating evidence to justify the misconduct. Said policy spans the tenure of all Police Chiefs listed herein.

(B)   Throughout his more than twenty-five years of incarceration and continuing on to the present day, evidence of CARAVELLA's innocence has been withheld and/or destroyed and/or lost.

(C)   To date, physical evidence which would determine if Anthony Martinez, the actual culprit of the Jankowski rape/homicide, had an accomplice has still not been tested against potential suspects such as John Jankowski, Ray Steven Chappell, Dale Patton, Scott Patterson and Cyril Cozier.

(D)   Said Defendant covered up police misconduct by doing intentionally incompetent investigations into misconduct, as well as incompetent investigations into criminal activities as demonstrated, but not limited to the Ada Jankowski rape/homicide.

41

(E)  There exists a pattern and practice of engaging in false arrests, imprisonment, false prosecution, excessive use of force, as evidenced by, but not limited to, incidents involving ANTHONY CARAVELLA, Ian Kissoonial, Chiquita Hammonds, Cornelius Green and Macquerita Quire.

(F)  Despite knowledge and acknowledgment of the misconduct within the Miramar Police Department, Defendant CITY OF MIRAMAR has, to date, failed to properly correct the obvious deficiencies which caused the injuries to CARAVELLA and the above listed individuals, thereby allowing said misconduct to be repeated, and causing and allowing further injuries to be inflicted on unknowing and innocent citizens.

(G)  Said Defendant had a number of homicides which remained unsolved through the incompetent or negligent investigation by its police officers. Since it has long been the custom or practice of Defendant CITY OF MIRAMAR to tolerate condone and cover up such constitutional violations by its police officers, which custom continues to this day, Defendants GUESS, PIERSON  and MANTESTA knew they could falsely arrest and frame  ANTHONY CARAVELLA with tape recordings of coerced false confessions and conceal exculpatory evidence, without fear of disciplinary action.

(H)  Said Defendant knew or should have known that their officers would benefit in the form of promotions, merits and public applause by the prosecution of ANTHONY CARAVELLA.

147.  Defendant CITY OF MIRAMAR's failure to properly train and/or

supervise and/or discipline officers of the Miramar Police Department was the proximate cause of the deprivation of rights suffered by ANTHONY CARAVELLA.

148.  Defendant CITY OF MIRAMAR had a duty to train, supervise, control or otherwise ensure that Defendants GUESS, PIERSON, MANTESTA, and other unnamed police officers, did not violate the constitutional rights of persons such as ANTHONY CARAVELLA.

149.  Defendant CITY OF MIRAMAR abdicated its policymaking and oversight responsibilities, thereby making the incident involving ANTHONY CARAVELLA foreseeable.

G**.**  **Damages to ANTHONY CARAVELLA**

150.  The above acts and omissions of each of the Defendants constitute a course of conduct and failure to act amounting to deliberate indifference to the rights, health, safety and welfare of CARAVELLA and those similarly situated, resulting in the deprivation of CARAVELLA's constitutional rights under state and federal law.

151.  The actions of the Defendants violated the clearly established and well settled federal constitutional right of ANTHONY CARAVELLA to be free from unreasonable seizure of his person.

152.  At no time during the events described herein had ANTHONY CARAVELLA committed any of the cited criminal offenses for which he was charged.

153.  The applicable statutes of limitation are tolled because the Defendants CITY OF MIRAMAR, GUESS, PIERSON, MANTESTA, FANTIGRASSI, JENNE and LAMBERTI fraudulently concealed their misconduct.  As a result of said Defendants' misconduct, ANTHONY CARAVELLA was unable to discover the wrongfulness of said misconduct until independent DNA testing exonerated ANTHONY CARAVELLA of all charges brought against him by the Defendants.

154.  Pursuant to federal law, the applicable statute of limitations for a civil rights claim does not begin to run until March 25, 2010, when all criminal charges against ANTHONY CARAVELLA were dismissed by the criminal courts. (Exhibit C).

155.  ANTHONY CARAVELLA suffered irreparable damages and personal injury in the deprivation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, having been wrongfully tried for a capital felony and having been wrongfully incarcerated for a period of more than twenty five years as a foreseeable result of the continuing pattern and practice of illegal activities as set forth herein.

156.  ANTHONY CARAVELLA was also injured in his business and property in the form of lost employment, employment opportunities, wages and other compensation, as well as actual physical harm, as a direct result of this continuing pattern and practice of illegal activities as set forth herein.

157.  As a direct and proximate result of the acts of Defendants CITY OF

MIRAMAR and/or GUESS and/or PIERSON and/or MANTESTA and/or

FANTIGRASSI and/or JENNE and/or LAMBERTI, ANTHONY CARAVELLA

suffered the following injuries and damages:

    a.   Violation of his constitutional rights under the  Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution;

    b.   Loss of his physical liberty;

    c.   Loss of earning capacity;

    d.   Permanent physical and emotional injuries, humiliation and embarrassment and damage to his  reputation, all of which continue to this day and  are likely to continue into the future, and which  require the expenditure of money for treatment.

## COUNT I
## STATE TORT CLAIM AGAINST DEFENDANT PIERSON
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

158. The Plaintiff realleges paragraphs 1-9, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147, and 150-157.

159.  Defendant PIERSON's conduct was extreme and outrageous, and was intentional and/or done recklessly.

160.  The above-mentioned acts were beyond the bounds of human decency, let alone the confines of the law, and were virtually certain to and did in fact result in emotional distress to ANTHONY CARAVELLA.

161.  As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional

injuries, and loss of enjoyment of life as heretofore alleged.

(A)  At all times relevant hereto, Defendant PIERSON was acting outside the scope of his authority, and in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, rendering him individually liable.

(B)  Plaintiff  has provided Defendants and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28 and has satisfied all conditions precedent to maintaining this action.  (Exhibit A).

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA demands compensatory and punitive damages against Defendant PIERSON, costs and trial by jury on all issues so triable by right.

## COUNT II
## STATE TORT CLAIM AGAINST DEFENDANT MANTESTA
## FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

162.  The Plaintiff realleges paragraphs 1-8, 10, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147, and 150-157.

163.  Defendant MANTESTA's conduct was extreme and outrageous and was intentional and/or done recklessly.

164.  The above-mentioned acts were beyond the bounds of  human decency, let alone the confines of the law, and were virtually certain to and did in

fact result in emotional distress to ANTHONY CARAVELLA.

165.  As a result of Defendant MANTESTA's conduct, ANTHONY CARAVELLA experienced and continues to experience severe emotional distress resulting in bodily harm.

166. As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A)  At all times relevant hereto, Defendant MANTESTA was acting outside the scope of his authority, and in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, rendering him individually liable.

(B)  Plaintiff has provided Defendants and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28 and has satisfied all conditions precedent to maintaining this action.  (Exhibit A).

**WHEREFORE**, the Plaintiff  DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands compensatory and punitive damages against Defendant MANTESTA, costs and trial by jury on all issues so triable by right.

<u>COUNT III</u>
**<u>STATE TORT CLAIM AGAINST DEFENDANT GUESS</u>**
**<u>FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**

167.  The Plaintiff realleges paragraphs 1-8,  11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147 and 150-157.

168.  Defendant GUESS's conduct was extreme and outrageous and was intentional and/or done recklessly.

169.  The above-mentioned acts were beyond the bounds of human decency, let alone the confines of the law, and were virtually certain to and did in fact result in emotional distress to ANTHONY CARAVELLA.

170.  As a result of Defendant GUESS's conduct, ANTHONY CARAVELLA  experienced and continues to experience severe emotional distress resulting in bodily harm.

171. As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A) At all times relevant hereto, Defendant GUESS was acting outside the scope of his authority, and in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, rendering him individually liable.

(B)  Plaintiff  has provided Defendants and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28 and has satisfied all conditions precedent to maintaining this action.  (Exhibit A).

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands compensatory and punitive damages against Defendant GUESS, costs and trial by jury on all issues so triable by right.

**COUNT IV**
**42 U.S.C. §1983 CLAIM AGAINST DEFENDANTS**
**PIERSON, MANTESTA, GUESS**

172.  The Plaintiff realleges paragraphs 1-11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 147,150-157, 159-161, 163-166 and 168-171.

173.  While Defendants PIERSON, MANTESTA, and GUESS were acting under color of state and federal law as police officers for the CITY OF MIRAMAR, they subjected ANTHONY CARAVELLA to the deprivation of rights and privileges secured to him under Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

174.  The actions and conduct of Defendants PIERSON, MANTESTA and GUESS violated the rights of ANTHONY CARAVELLA to due process of law under the Fifth Amendment, to a fair trial under the Sixth Amendment, and to be free from unreasonable detention, search and seizure under the Fourth Amendment to the United States Constitution.

175.  Defendants PIERSON, MANTESTA and GUESS caused the prosecution to be continued against ANTHONY CARAVELLA when they knew or should have known that said prosecution was without probable cause.  The matters known to them prior to and at the time they continued the prosecution would not have warranted a reasonable law enforcement officer to believe ANTHONY CARAVELLA had committed the alleged crimes.

176.  Defendants PIERSON, MANTESTA and GUESS instituted and

49

continued the interrogation of CARAVELLA when they knew or should have known that CARAVELLA did not understand his constitutional rights and that their coercive and illegal interrogation tactics would induce ANTHONY CARAVELLA to make false statements.  No prosecution would have occurred but for the actions of these Defendants.

177.  The prosecution was instigated and continued as a result of Defendants PIERSON, MANTESTA and GUESS intentional acts of providing false information, false sworn affidavits, false documents, false reports and false evidence to the criminal courts, the prosecutors, CARAVELLA's criminal defense counsel, and the public, thereby knowingly or recklessly disregarding the rights of ANTHONY CARAVELLA.

178.  As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

179.  42 U.S.C. §1983 provides a remedy for violation of these rights.

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands compensatory and punitive damages against Defendants PIERSON, MANTESTA and GUESS, attorney fees, costs and trial by jury for all issues so triable by right.

## COUNT V
### CONSPIRACY CLAIM AGAINST DEFENDANTS PIERSON, MANTESTA, GUESS AND FANTIGRASSI TO VIOLATE CARAVELLA'S CONSTITUTIONAL RIGHTS

180. The Plaintiff realleges paragraphs 1-11, 14-17, 20-113, 115, 121-

124, 126-129, 141, 143, 147, and 150-157.

181.  In addition to the acts alleged above, Defendants PIERSON, MANTESTA, and GUESS conspired together and with other unnamed police officers under the control and supervision of Defendant CITY OF MIRAMAR, along with Defendant FANTIGRASSI, of the Broward County Sheriff's office, for the purpose of depriving ANTHONY CARAVELLA of equal protection under the law, due process of law, the right to privacy, the right to be free from unlawful search and seizure.

182.  The above stated actions by the Defendants were overt actions in furtherance of the conspiracy to deprive ANTHONY CARAVELLA of his constitutional rights.

183.  Each of the Defendants understood, accepted, and either explicitly or implicitly knew that his overt actions would result in the deprivation of ANTHONY CARAVELLA's rights as alleged herein.

184.  As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

185.  42 U.S.C. §1983 provides a remedy for violation of these rights.

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands compensatory and punitive damages against Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI, attorney fees, costs and trial by jury for all issues so triable by

right.

## COUNT VI
## STATE TORT CLAIM AGAINST DEFENDANT CITY OF MIRAMAR

186.  The Plaintiff realleges paragraphs 1-11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 145-157, 159-161, 163-166, 168-171, 173-170 and 181-185.

187.  At all times material hereto, Defendant CITY OF MIRAMAR acted by and through his agents, employees and/or police officers.

188.  At all times material hereto, individuals employed by the CITY OF MIRAMAR acted within the course and scope of their employment with said Defendant.

189. Defendant CITY OF MIRAMAR has a common law duty to protect others from the result of the negligent hiring, supervision and/or retention of its police officers, whose negligent or intentional acts, due to their positions as police officers, can foreseeably cause injuries to third parties.

190.  Defendant CITY knew or should have known that Defendants PIERSON, MANTESTA and GUESS were unfit to be hired and/or retained as a police officers.

191.  Having negligently selected and hired PIERSON, MANTESTA and GUESS, it was unreasonable for the Defendant CITY to have failed to adequately supervise and/or discipline them.

192.  It was foreseeable that Defendants would use their position,

employed as police officers by Defendant CITY, to injure a third person.

193.  ANTHONY CARAVELLA was placed in the zone of risk created by Defendant CITY's negligence in hiring and/or supervising and/or retention of Defendants PIERSON, MANTESTA and GUESS.

194.  As a direct and proximate result of the negligence of the agents, employees and/or officers of Defendant CITY OF MIRAMAR, ANTHONY CARAVELLA sustained injuries, for which said Defendant is vicariously liable as a matter of law.

195.  As a direct and proximate result of Defendant CITY's negligent hiring and/or supervision and/or retention of Defendants PIERSON, MANTESTA, and GUESS, ANTHONY CARAVELLA sustained injuries for which Defendant CITY is liable as a matter of law.

196.  As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A)  At all times relevant hereto, Defendants PIERSON, MANTESTA and GUESS were acting within the scope of their authority and acting as agents of Defendant CITY OF MIRAMAR, pursuant to §768.28 and §30.07, Florida Statutes, rendering Defendant CITY OF MIRAMAR liable in its official capacity.

(B)  Plaintiff  has provided Defendants and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28, and has satisfied all conditions precedent to maintaining this action. (Exhibit A).

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA demands compensatory damages against Defendant CITY OF MIRAMAR, costs and trial by jury on all issues so triable by right.

**COUNT VII**
**42 U.S.C. §1983 CLAIM AGAINST DEFENDANT CITY OF MIRAMAR**

197.  The Plaintiff realleges paragraphs 1-11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 145-157, 159-161, 163-166, 168-171, 173-179 and 181-185.

198.  At all times material hereto, Defendant CITY OF MIRAMAR, through its officers and agents, was charged with the responsibility of hiring, screening, training, supervising, disciplining and controlling officers of the City of Miramar Police Department.

199.  At all times material hereto, Defendant CITY OF MIRAMAR, through its officers and agents, was deliberately indifferent in that the department either expressly or impliedly acknowledged and assented to the failure to train and/or supervise and/or control and/or otherwise screen employees of the Miramar Police Department including, but not limited to, Defendants PIERSON, MANTESTA, and GUESS for dangerous propensities, lack of training and/or skill or other characteristics making said officers unfit to perform their duties.

200.  At all times material hereto, Defendant CITY OF  MIRAMAR,

through its officers and agents, was deliberately indifferent to the rights of the public, including ANTHONY CARAVELLA, in that it failed to determine whether members of the City of Miramar Police Department, including Defendants PIERSON, MANTESTA, and GUESS, posed a threat to the public as a result of their propensity to commit unlawful acts.

201.  At all times material hereto, Defendant CITY OF MIRAMAR, through its deliberate indifference, failed to ensure that the police officers of the City of Miramar Police Department did not violate the constitutional and statutory rights of citizens of the State of Florida, including ANTHONY CARAVELLA, while said officers were acting under color of state law for the City of Miramar Police Department.

202.  At all times material hereto, Defendant CITY OF MIRAMAR permitted and tolerated the above described acts and thereby caused a pattern and practice of unjustified, unreasonable and illegal false arrests, detentions and/or prosecutions by police officers of the Miramar Police Department against members of the public, including ANTHONY CARAVELLA, which violated their Fourth, Fifth, Sixth and Fourteenth Amendment rights.  Although such acts were improper, police officers involved were not prosecuted, and/or disciplined and/or subjected to retraining, and some of said incidents were, in fact, covered up with official claims that their acts were justified and proper.  As a result, police officers, including Defendants PIERSON, MANTESTA and GUESS, were encouraged to believe that members of the public could be subjected to illegal arrests, detentions

and/or prosecutions, and that said illegal arrests, detentions and/or prosecutions would be permitted by Defendant CITY OF MIRAMAR.

203.   Defendant CITY OF MIRAMAR, through its officers or agents, has maintained a long-standing, widespread history of failure to properly hire and/or train and/or supervise and/or discipline its officers for, among other things, unlawful detentions and/or arrests and/or prosecutions, even though they had notice of such unlawful conduct by employees.

204.   The foregoing acts, omissions, policies or customs of Defendant CITY OF MIRAMAR caused officers, including Defendants  PIERSON, MANTESTA, GUESS, to believe that acts such as unlawful seizures and/or detentions, and/or arrests and/or prosecutions, among other things, would not be properly investigated, with the foreseeable result that officers, including Defendants PIERSON, MANTESTA and GUESS, were more likely to make unlawful seizures and/or detentions and/or arrests and/or prosecutions and/or commit criminal acts.

205.   ANTHONY CARAVELLA has been a victim of said abuses of lawful authority, and said illegal acts were the foreseeable result of the previously described acts, omissions, policies or customs of said Defendant.

206.   As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

207.  42 U.S.C. §1983 provides a remedy for violation of  these rights.

56

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands compensatory damages against Defendant CITY OF MIRAMAR, attorney fees, costs and trial by jury on all issues so triable by right.

**COUNT VIII**
**STATE TORT CLAIM AGAINST DEFENDANT FANTIGRASSI**
**FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

208.  The Plaintiff realleges paragraphs 1-7, 14, 16-17, 21, 23-112, 115-118, 121-124, 126-129, 131-4, 138, 141-3,  and 150-157.

209.  Defendant FANTIGRASSI's conduct was extreme and outrageous and was intentional and/or done recklessly.

210. The above-mentioned acts were beyond the bounds of  human decency, let alone the confines of the law, and were virtually certain to and did in fact result in emotional distress to ANTHONY CARAVELLA.

211.  As a result of Defendant FANTIGRASSI's conduct, ANTHONY CARAVELLA experienced and continues to experience severe emotional distress resulting in bodily harm.

212.  As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A) At all times relevant hereto, Defendant FANTIGRASSI was

acting outside the scope of his authority, and in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, rendering him individually liable.

(B) Plaintiff has provided Defendants and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28 and has satisfied all conditions precedent to maintaining this action. (Exhibit A).

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands compensatory and punitive damages against Defendant FANTIGRASSI, costs and trial by jury on all issues so triable by right.

## COUNT IX
## 42 U.S.C. §1983 CLAIM AGAINST DEFENDANT FANTIGRASSI

213. The Plaintiff realleges paragraphs 1-7, 14, 16-17, 21, 23-112, 115-118, 121-124, 126-129, 131-4, 138, 141-3, 150-157 and 209-212.

214. While Defendant FANTIGRASSI was acting under color of state and federal law as a deputy sheriff for the Broward County Sheriff's Office/Defendant LAMBERTI, he subjected ANTHONY CARAVELLA to the deprivation of rights and privileges secured to him under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

215. The actions and conduct of Defendant FANTIGRASSI violated the rights of ANTHONY CARAVELLA to due process of law under the Fifth

Amendment, to a fair trial under the Sixth Amendment, and to be free from unreasonable detention, search and seizure under the Fourth Amendment to the United States Constitution.

216.  Defendant FANTIGRASSI caused the prosecution to be continued against CARAVELLA when he knew or should have known that said prosecution was without probable cause.  The matters known to him prior to and at the time he continued the prosecution would not have warranted a reasonable law enforcement officer to believe ANTHONY CARAVELLA had committed the alleged crimes.

217.  Defendant FANTIGRASSI instituted and continued the interrogation of CARAVELLA when he knew or should have known that CARAVELLA did not understand his constitutional rights and that his coercive and illegal interrogation tactics would induce ANTHONY CARAVELLA to make false statements.

218.  Defendant FANTIGRASSI acted under color of state law and with malice in aiding and abetting the continuation of the prosecution.  Said prosecution was only able to continue as a result of his intentional acts providing false information, false sworn affidavits, false documents, false reports and false evidence to the criminal courts, the prosecutors, CARAVELLA's criminal defense counsel, and the public.

219.  As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

220.  42 U.S.C. §1983 provides a remedy for violation of these rights.

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands compensatory and punitive damages against Defendant FANTIGRASSI attorney fees, costs and trial by jury for all issues so triable by right.

## COUNT X
### 42 U.S.C. §1983 CLAIM AGAINST DEFENDANT JENNE

221.  The Plaintiff realleges paragraphs 1-7, 13-14, 16-18, 21-138, 140-141, 150-157, 181-185, 209-212, and 214-220.

222.  At all times material hereto, Defendant JENNE was responsible for adopting and implementing the rules and regulations in regard to hiring, screening, training, supervising, controlling, disciplining and assigning deputies and/or employees to their duties within the Broward County Sheriff's Office, including the Broward County Sheriff's Crime Laboratory.

223.  Defendant JENNE was deliberately indifferent to his duties in that he either expressly or impliedly acknowledged and assented to the failure to train, supervise, control, discipline or otherwise screen employees of the Broward County Sheriff's Office including, but not limited to, Defendant FANTIGRASSI, for dangerous propensities, lack of training and/or skill or other characteristics making said officers and employees unfit to perform their duties.

224.  Defendant JENNE knew or should have known of the history of widespread abuses existing with respect to the hiring and/or training and/or

supervision and/or discipline within the Broward County Sheriff's Office.

225.  The conduct of Defendant JENNE in his failure to properly screen, select, train, supervise and/or discipline his deputy sheriffs and/or agents and/or employees, was deliberately indifferent to the constitutional rights of all persons, including ANTHONY CARAVELLA.

226.  Defendant JENNE abdicated his policymaking and oversight responsibilities, thereby allowing the deputy sheriffs and/or agents and/or employees to ignore the requirements of law and the policies of the Broward County Sheriff's Office.

227.   The above acts and omissions of Defendant JENNE constitute a course of conduct and failure to act amounting to deliberate indifference to the rights, health, safety and welfare of ANTHONY CARAVELLA and those similarly situated, resulting in the deprivation of the ANTHONY CARAVELLA's constitutional rights under state and federal law.

228.  As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

229.  42 U.S.C. §1983 provides a remedy for violation of these rights.

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands compensatory and punitive damages against Defendant JENNE, attorneys fees, costs and trial by jury for all

issues so triable by right.

## COUNT XI
## STATE TORT CLAIM AGAINST DEFENDANT LAMBERTI

230.  The Plaintiff  realleges paragraphs 1-7, 12-14, 16-18, 21-141, 150-157.

231.  At all times material hereto, Defendant LAMBERTI acted by and through his agents, employees and/or deputy sheriffs.

232.  At all times material hereto, individuals employed by Defendant LAMBERTI acted within the course and scope of their employment with said Defendant.

233.  Defendant LAMBERTI has a common law duty to protect others from the result of the negligent hiring, supervision and/or retention of its police officers, whose negligent or intentional acts, due to their positions as police officers, can foreseeably cause injuries to third parties.

234.  Defendant LAMBERTI knew or should have known that Defendant FANTIGRASSI was unfit to be hired as a deputy sheriff.

235.  It was foreseeable that Defendant FANTIGRASSI would use his position, employed as a deputy sheriff by Defendant LAMBERTI, to injure a third person.

236.  ANTHONY CARAVELLA was placed in the zone of risk created by Defendant LAMBERTI's negligence in hiring and/or supervising and/or retaining Defendant FANTIGRASSI.

237.  As a direct and proximate result of the negligence of the agents, employees and/or deputy sheriffs of Defendant LAMBERTI, ANTHONY CARAVELLA sustained injuries, for which said Defendant is vicariously liable as a matter of law.

238.  As a direct and proximate result of Defendant LAMBERTI's negligent hiring and/or supervision and/or retention of Defendant FANTIGRASSI, ANTHONY CARAVELLA sustained injuries for which Defendant CITY is liable as a matter of law.

239.  As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

(A) At all times relevant hereto, Defendant FANTIGRASSI was acting within the scope of his authority and acting as agent of Defendant LAMBERTI, pursuant to §768.28 and §30.07, Florida Statutes, rendering Defendant LAMBERTI liable in his official capacity.

(B)  Plaintiff  has provided Defendant and the Florida Department of Insurance with notice pursuant to Florida Statute Section 768.28 and has satisfied all conditions precedent to maintaining this action. (Exhibit A).

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands compensatory damages against Defendant LAMBERTI, costs and trial by jury on all issues so triable by

right.

## COUNT XII
## 42 U.S.C. §1983 CLAIM AGAINST DEFENDANT LAMBERTI

240.  The Plaintiff realleges paragraphs 1-7, 12, 14, 16-8, 27-112, 113-124, 126-131, 134, 138-144, 150-157, 214-220, 222-229 and 231-239.

241.  At all times material hereto, Defendant LAMBERTI, as Sheriff for Broward County, was charged with the responsibility of hiring, screening, training, supervising, disciplining and controlling officers of the Broward County Sheriff's Office.

242.  At all times material hereto, Defendant LAMBERTI was deliberately indifferent in that he either expressly or impliedly acknowledged and assented to the failure to train and/or supervise and/or control and/or otherwise screen employees of the Broward County Sheriff's Office including, but not limited to, Defendant FANTIGRASSI, for dangerous propensities, lack of training and/or skill or other characteristics making said deputy sheriffs unfit to perform their duties, in that:

(A)  Defendant LAMBERTI knew or should have known of the history of widespread abuses existing with respect to the hiring and/or training and/or supervision within the Broward County Sheriff's Office.

(B)   The conduct of Defendant LAMBERTI in his failure to properly screen, select, train, supervise and/or discipline his deputy sheriffs and/or agents and/or employees, was deliberately indifferent to the constitutional rights of all

persons, including ANTHONY CARAVELLA.

(C)   Defendant LAMBERTI abdicated his policymaking and oversight responsibilities, thereby allowing the deputy sheriffs and/or agents and/or employees to ignore the requirements of law and the policies of the Broward County Sheriff's Office.

243.   At all times material hereto, Defendant LAMBERTI was deliberately indifferent to the rights of the public, including ANTHONY CARAVELLA, in that he failed to determine whether members of the Broward Sheriff's Office, including Defendant FANTIGRASSI,  posed a threat to the public as a result of their propensity to commit unlawful acts.

244.   At all times material hereto, Defendant LAMBERTI, through his deliberate indifference, failed to ensure that deputy sheriffs of Broward County Sheriff's Office did not violate the constitutional and statutory rights of citizens of the State of Florida, including ANTHONY CARAVELLA, while said deputy sheriffs were acting under color of state law for the Broward County Sheriff's Office.

245.   At all times material hereto, Defendant LAMBERTI permitted and tolerated the above described acts and thereby caused a pattern and practice of unjustified, unreasonable and illegal false arrests, detentions and/or prosecutions by deputy sheriffs of the Broward County Sheriff's Office against members of the public, including ANTHONY CARAVELLA, which violated their Fourth, Fifth, Sixth and Fourteenth Amendment rights.  Although such acts were improper,

deputy sheriffs involved were not prosecuted, and/or disciplined and/or subjected to retraining, and some of said incidents were, in fact, covered up with official claims that their acts were justified and proper.  As a result, Broward County deputy sheriffs, including Defendant FANTIGRASSI, were encouraged to believe that members of the public could be subjected to illegal arrests, detentions and/or prosecutions, and that said illegal arrests, detentions and/or prosecutions would be permitted by Defendant LAMBERTI.

246.  Defendant LAMBERTI has maintained a system of review of incidents of abuse of lawful authority such as illegal and unlawful detentions and/or arrests and/or prosecutions, among other things, by deputy sheriffs, and complaints thereof, which has failed to identify the unlawful seizures by deputy sheriffs, and has failed to subject deputy sheriffs who employed such acts to appropriate discipline, and/or closer supervision and/or retraining, to the extent that it has become the de facto policy and custom of the Broward County Sheriff's Office to tolerate such acts by its deputy sheriffs.

247.  The foregoing acts, omissions, policies or customs of Defendant LAMBERTI caused deputy sheriffs, including Defendant FANTIGRASSI, to believe that acts such as unlawful seizures and/or detentions, and/or arrests and/or prosecutions, among other things, would not be properly investigated, with the foreseeable result that deputy sheriffs, including Defendant FANTIGRASSI, were more likely to make unlawful seizures and/or detentions and/or arrests and/or prosecutions.

248.  ANTHONY CARAVELLA has been a victim of said abuses of lawful authority, and said illegal acts were the foreseeable result of the previously described acts, omissions, policies or customs of said Defendant.

249.  As a direct and proximate cause of the acts described above, ANTHONY CARAVELLA has suffered severe physical, mental and emotional injuries, and loss of enjoyment of life as heretofore alleged.

250.  42 U.S.C. §1983 provides a remedy for violation of  these rights.

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands compensatory damages against Defendant LAMBERTI, attorney fees, costs and trial by jury for all issues so triable by right.


<u>**COUNT XIII**</u>
<u>**VIOLATION OF §772.103(4), F.S. CLAIM AGAINST**</u>
<u>**DEFENDANTS PIERSON, MANTESTA, GUESS, FANTIGRASSI  AND**</u>
<u>**JENNE**</u>

251.  The Plaintiff, as to Defendant PIERSON, realleges paragraphs 1-9, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 146-147, and 150-157; as to Defendant MANTESTA realleges paragraphs 1-8, 10, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 146-147, and 150-157; as to Defendant GUESS, realleges paragraphs 1-8, 11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 146-147 and 150-157; as to Defendant FANTIGRASSI realleges paragraphs 1-7, 14, 16-18, 21, 23-112, 115-118, 121-124, 126-129, 131-4, 138, 141-3, and 150-157; as to

Defendant JENNE realleges paragraphs 1-7, 13-14, 16-18, 21-138, 140-141, 150-157.

252. Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE are persons under §1.01, F.S..

253.   The Broward Sheriff's Office and the Miramar Police Department are enterprises within the meaning of §772.102(3), Florida Statutes.  The relationship between Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE constitutes an enterprise under §772.102(3), Florida Statutes, and the above-named persons have engaged in a pattern of conspiracy and criminal activities in violation of §772.103 et. seq, F.S..

254.   The relationship between Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE constitutes an association-in-fact enterprise under §772.102(3), F.S. and the above named persons have engaged in a pattern of conspiracy and criminal activities in violation of §772.103, F.S..

255.   In violation of §772.103(4), F.S., Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI in an agreement, the objective of which was in substantive violation of violation of §772.103(2) and (3), F.S., with an awareness of the essential nature and scope of the enterprise and with an intent to participate in it.

256.   Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI agreed to enter into a conspiracy to violate the provision of §772.103(2) and (3), F.S. as described herein.  As evidence of this agreement, Defendants conspired to

fabricate, tamper with, and conceal evidence, and tamper with witnesses, in furtherance of this conspiracy in violation of §914.22 and §918.13, F.S. and/or 18 U.S.C. 1512(b)(3), for the purpose of corruptly influencing the due administration of justice and knowingly hindering, delaying, or preventing the communication to a law enforcement officer or judge of the State of Florida and/or the United States of information relating to the commission of a criminal offense and/or a Federal offense in violation of 18 U.S.C. §242.

257. In furtherance of this conspiracy to fabricate and tamper with evidence, Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI to knowingly make and present false sworn affidavits, false documents, false reports and other false evidence which caused the indictment against ANTHONY CARAVELLA to be entered on January 11, 1984, in Broward County, Florida.

(A) Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI knew that CARAVELLA was a mentally challenged juvenile and therefore not intellectually capable of understanding his Miranda rights or the consequences of abandoning such rights, yet they falsely testified under oath in the prosecution of a capital felony that they did not know CARAVELLA was mentally challenged. These false statements were part of a plan to ensure that CARAVELLA's tape recorded statement, in the form of a coerced false confession, and the only evidence against him, would be admissible in court.

(B) Defendants PIERSON, MANTESTA, GUESS, and

69

FANTIGRASSI  further falsely testified that CARAVELLA had made a free and deliberate choice to waive his rights and make said statement, when in fact they knew that said confession was coerced by intimidation and deception and therefore inadmissible.

(C) Defendants MANTESTA, GUESS, PIERSON and FANTIGRASSI repeatedly interrogated ANTHONY CARAVELLA and/or took him to the crime scene while further interrogating him, mentally and physically wearing CARAVELLA down.

(D) On January 11, 1984 and from May 14, 1984 to July 16, 1984 and from July 25, 1984 to August 3, 1984, Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI further gave false testimony as to alleged material facts and statements allegedly made by CARAVELLA.

(E)  On January 11, 1984 and from May 14, 1984 to July 16, 1984 and from July 25, 1984 to August 3, 1984, Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI conspired to continue to make false statements under oath when they knew or should have known that CARAVELLA was not the perpetrator of the crimes for which he was charged.

258.  Defendant JENNE conspired to violate provisions of §772.103(2) and (3), F.S. by interfering with the due administration of justice, improperly terminating felony investigations, securing indictments and verdicts based on false testimony and false evidence, and, in violation of §914.22 and §918.13, F.S. and/or 18 U.S.C. §1512(b)(3), withholding, concealing or destroying evidence and

records pertaining to the illegal conduct of his agents that was also in violation of

18 U.S.C. §242, against ANTHONY CARAVELLA and others, thereby hindering,

delaying, or preventing the communication to a law enforcement officer or judge

of the State of Florida and/or the United States of information relating to the

commission of a criminal and/or a Federal offense and  causing additional and

separate injuries to CARAVELLA and others, in violation of §772.103(2) and (3).

259.   Defendant JENNE conspired to violate provisions of  §772.103, et.

seq., F.S.by aiding and abetting the proscribed conduct of his employees,

conspired to conceal and cover up such conduct, and failed to report the criminal

conduct of his employees, in violation of §914.22, F.S. and/or 18 U.S.C.

1512(b)(3) and deliberately perpetuated the continuous pattern of criminal

activities and ongoing obstruction of justice, which directly caused injuries to

multiple victims including CARAVELLA, thus facilitating and furthering the

affairs of the enterprise in violation of  §772.103(4), F.S..

260.  Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI, in

concert with each other and with the intent to conceal and defraud, conspired and

came to a meeting of the minds whereby they would conceal the wrongdoing of

said Defendants' conduct against CARAVELLA.

261.  As detailed more fully herein, Defendants PIERSON, MANTESTA,

GUESS, FANTIGRASSI and JENNE, for the purpose of financial gain and

expansion of the enterprises, i.e., City of Miramar Police Department and the

Broward County Sheriff's Office, have engaged in a conspiracy to further and

facilitate the affairs of the enterprise conducted through a pattern of criminal activity, of which CARAVELLA is but one victim, which have a common theme with similar purposes, results, and/or methods of commission, the continuity of which is evidenced herein and threatens to continue into the future.

262.  Defendants have joined in and participated in maintaining and continuing the ongoing pattern of criminal conduct of the enterprise from 1983 to the present day.

263.  ANTHONY CARAVELLA  suffered irreparable damages and personal injury in the deprivation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, having been wrongfully tried for a capital felony and having been wrongfully incarcerated for a period of more than twenty-five years as a direct result of the continuing pattern and practice of illegal activities as listed above.

264.  ANTHONY CARAVELLA was injured in his business and property in the form of lost employment, employment opportunities, wages and other compensation, as well as personal injuries and actual physical harm, as a direct result of the predicate acts involved in this continuing pattern and practice of illegal activities as listed above and by reason of the above violation of §772.103(4), F.S..

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands judgment against Defendants PIERSON,

MANTESTA, GUESS, FANTIGRASSI and JENNE, individually, jointly and severally, in an amount that is adjudged as fair and reasonable, treble damages, plus costs, disbursements, reasonable attorney's fees, interest, and whatever other relief the Court deems just and equitable and trial by jury for all issues so triable by right.

### COUNT XIV
### VIOLATION OF §772.103(2), F.S. CLAIM
### AGAINST DEFENDANTS PIERSON, MANTESTA, GUESS AND
### FANTIGRASSI

265.  The Plaintiff, as to Defendant PIERSON realleges paragraphs1-9, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 146-147, and 150-157; as to Defendant MANTESTA realleges paragraphs 1-8, 10, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 146-147, and 150-157; as to Defendant GUESS, realleges paragraphs 1-8,  11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 146-147 and 150-157; as to Defendant FANTIGRASSI realleges paragraphs 1-7, 14, 16-18, 21, 23-112, 115-118, 121-124, 126-129, 131-4, 138, 141-3, and 150-157.

266.  In violation of §772.103(2), F.S., Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI to maintain an interest in and/or control of an enterprise through a pattern of criminal activity, the activities of which enterprise affect interstate commerce.

267.  In violation of 18 U.S.C. §1512(b)(3) and/or §914.22 and §918.13, F.S.,  relating to tampering with witnesses and evidence and/or the obstruction of justice from December 28, 1983 through the end of trial on or about August 3,

1984, Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI, utilizing the state and interstate telephone system in furtherance of a continuing pattern and practice of criminal activities with the purpose of concealing their deliberate violation of ANTHONY CARAVELLA's constitutional rights, an offense under 18 U.S.C. §242, and to corruptly obstruct the due administration of justice and defraud the legal system.

268.  In violation of §772.103(2), F.S. and/or 18 U.S.C. §1512, relating to the obstruction of justice, from December 28, 1983 through the end of trial on or about August 3, 1984, Defendants PIERSON, MANTESTA and GUESS conspired with Defendant FANTIGRASSI, to corruptly and deliberately frame and convict CARAVELLA for a crime he did not commit.

(A) From December 28, 1983 to September 20, 1984, in violation of §918.13, F.S.,  Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI conspired with each other and/or the above named persons to fabricate, tamper with and conceal evidence as detailed herein for the purpose of concealing exculpatory evidence and presenting false evidence, false reports and false affidavits to the prosecutors, the courts and the public.

(B) From December 28, 1983 to September 20, 1984, in violation of §914.22, F.S., said Defendants knowingly engaged in misleading conduct towards other persons to induce them to testify untruthfully in an official proceeding and to prevent the communication of information relating to the commission of an offense to a judge of the State of Florida.

(C) From January 11, 1984 to July 16, 1984 and from July 25, 1984 to August 3, 1984, in furtherance of this conspiracy to fabricate and tamper with evidence,  Defendants PIERSON, MANTESTA, GUESS and FANTIGRASSI conspired with each other and/or the above named persons to make false statements under oath in an official proceeding relating to the prosecution of a capital felony, as detailed herein, for the purpose of corruptly influencing the due administration of justice.

(D) From December 28, 1983 to the present  day, in violation of 18 U.S.C. §1512(b)(3), said Defendants have knowingly hindered, delayed, or prevented the communication to a law enforcement officer or judge of the United States of information relating to their illegal conduct.

269.   ANTHONY CARAVELLA suffered irreparable damages and personal injury in the deprivation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, having been wrongfully tried for a capital felony and having been wrongfully incarcerated for a period of twenty-five years as a direct result of the continuing pattern and practice of illegal activities as listed above.

270.   ANTHONY CARAVELLA was injured in his business and property in the form of lost employment, employment opportunities, wages and other compensation, as well as personal injuries and actual physical harm, as a direct result of the predicate acts involved in this continuing pattern and practice of illegal activities as listed above and by reason of the above violation of Florida Statute §772.103(2).

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands judgment against Defendants, individually, jointly and severally, in an amount that is adjudged as fair and reasonable, treble damages, plus costs, disbursements, reasonable attorney's fees, interest, and whatever other relief the Court deems just and equitable and trial by jury for all issues so triable by right.

**COUNT XV**
**VIOLATION OF §772.103(3), F.S.**
**CLAIM AGAINST DEFENDANTS PIERSON, MANTESTA, GUESS,**
**FANTIGRASSI AND JENNE**

271.  The Plaintiff, as to Defendant PIERSON realleges paragraphs1-9, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 146-147, and 150-157; as to Defendant MANTESTA realleges paragraphs 1-8, 10, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 146-147, and 150-157; as to Defendant GUESS realleges paragraphs 1-8,  11, 15, 17, 19-20, 22, 24-112, 115, 121-124, 126-129, 146-147 and 150-157; as to Defendant FANTIGRASSI realleges paragraphs 1-7, 14, 16-18, 21, 23-112, 115-118, 121-124, 126-129, 131-4, 138, 141-3, and 150-157; as to Defendant JENNE realleges paragraphs 1-7, 13-14, 16-18, 21-138, 140-141, 150-157.

272.  The relationship between Defendants PIERSON, MANTESTA and GUESS, FANTIGRASSI, and JENNE constitutes an association-in-fact enterprise under §772.102(3), F.S., and the above named persons have engaged in a pattern of conspiracy and criminal activities in violation of §772.103, F.S..

273.   In violation of §772.103(3), F.S., Defendants PIERSON, MANTESTA, and GUESS conspired with Defendant FANTIGRASSI to participate in the affairs of the enterprises through a pattern of criminal activity and predicate acts as herein described.  The persons named above aided and abetted each other, conducted and participated directly or indirectly in the conduct and affairs of the enterprises and/or associated themselves with the enterprises through a pattern of criminal activity by the predicate acts listed herein.  Those specific acts included racketeering and conspiracy, and were of an ongoing nature continuing into the future.

(A)   Defendants FANTIGRASSI and JENNE continued to participate in the affairs of the enterprise, the Broward County Sheriff's Office, and cover up the illegal conduct of themselves and the other Defendants until they retired in 2005 and 2007, respectively.

(B)   Defendant PIERSON continued to participate in the affairs of the enterprise, the City of Miramar Police Department, and continued to conceal the said illegal conduct of himself and the other individual Defendants until he retired on March 28, 2008.

( C)   The City of Miramar Chief of Police, Keith Dunn has been employed continuously with the Miramar Police Department, one of the enterprises, from 1980 to the present day.  Under Chief Dunn, employees of the Miramar Police Department continue to conceal and/or withhold evidence related to the instant case that would further expose the illegal conduct of the individual

Defendants.  Thus, the enterprise still functions as a continuing unit, despite some members of the enterprise having left and been replaced by new members.

(D)   The interrelatedness of the two enterprises, the Broward Sheriff's Office and the City of Miramar Police Department, has continued throughout all material times, and still continues.  The association-in-fact enterprises between Defendants FANTIGRASSI and JENNE continued until at least 2005, if not later, as did that between Defendants FANTIGRASSI and PIERSON.

(E)   The predicate acts by said Defendants, listed herein, were also a series of related acts, with similar participants, purposes, methods of commission and victims that took place over a closed but substantial period of time, beginning no later than 1979, continuing through the first DNA exonerations in 2000 and 2001 of the victims of the interconnected enterprises, through and beyond today.

(F)   Additionally, both the former members of the enterprises, the individual Defendants, and the current members of the enterprises continue to attempt to find some way of falsely incriminating CARAVELLA again, in order to cover up the illegal conduct of the individual Defendants.

274.  Defendant JENNE was part of the conspiracy and the enterprise at all times material herein.

275.  As detailed more fully herein, in violation of §772.103(3), Florida Statutes, Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI, and JENNE, for the purpose of financial gain and expansion of the City of Miramar Police Department, and the Broward County Sheriff's Office, have committed

various proscribed acts of obstruction of justice and engaged in a pattern of criminal activity, of which ANTHONY CARAVELLA is but one victim, which have a common theme with similar purposes, results, and/or methods of commission, the continuity of which is evidenced herein and threatens to continue into the future.

276.  Defendants PIERSON, MANTESTA, GUESS, FANTIGRASSI and JENNE have joined in and participated in maintaining and continuing the pattern of criminal conduct of the enterprise from 1983 to the present day.

277. ANTHONY CARAVELLA suffered irreparable damages and personal injury in the deprivation of his Fourth, Fifth, Sixth and Fourteenth Amendment rights, having been wrongfully tried for a capital felony and having been wrongfully incarcerated for a period of twenty-five years as a direct result of the continuing pattern and practice of illegal activities as listed above.

278.  ANTHONY CARAVELLA was injured in his business and property in the form of lost employment, employment opportunities, wages and other compensation, as well as personal injuries and actual physical harm, as a direct result of the predicate acts involved in this continuing pattern and practice of illegal activities as listed above and by reason of the above violation of §772.103(3), F.S..

**WHEREFORE**, the Plaintiff DONALD SPADARO, as Limited Guardian for ANTHONY CARAVELLA, demands judgment against Defendants

PIERSON, MANTESTA, GUESS, FANTIGRASSI, and JENNE, individually,

jointly and severally, in an amount that is adjudged as fair and reasonable, treble

damages, plus costs, disbursements, reasonable attorney's fees, interest, and

whatever other relief the Court deems just and equitable and trial by jury for all

issues so triable by right.


    **I HEREBY CERTIFY** that on this 17th day of August, 2012, I
electronically filed the foregoing document with the Clerk of the Court using
CM/ECF.  I also certify that the foregoing document is being served this day on all
counsel of record identified on the following Service List in the manner specified,
via transmission of Notices of Electronic Filing generated by CM/ECF.


                s/BARBARA A. HEYER
                BARBARA A. HEYER
                BAR NO.  346691
                email: civilrtslaw@hotmail.com
                HEYER & ASSOCIATES, P.A.
                1311 SE 4th Avenue
                Fort Lauderdale, FL   33316
                (954) 522-4922 /Fax: (954) 522-4955
                Attorneys for Plaintiff

## Service List

Matthew Mandel, Esq.
Email: mmandel@wsh-law.com
Weiss, Serota, Helfman, et al.
200 E. Broward Boulevard, Suite 1900
Fort Lauderdale, FL   33301
(954) 763-4242/ Fax: (954) 764-7770
Counsel for Miramar Defendants

Jamie A. Cole, Esq.
Email: jcole@wsh-law.com
Weiss, Serota, Helfman, et al.
200 E. Broward Boulevard, Suite 1900
Fort Lauderdale, FL  33301
(954) 763-4242 / Fax: (954) 764-7770
Counsel for Miramar Defendants

Adrian J. Alvarez, Esq.
Email: aalvarez@wsh-law.com
Weiss, Serota, Helfman, et al.
200 E. Broward Boulevard, Suite 1900
Fort Lauderdale, FL  33301
(954) 763-4242 / Fax: (954) 764-7770
Counsel for Miramar Defendants

Gregg A. Toomey, Esq.
email: gat@bunnellwoulfe.com
Bunnell & Woulfe, P.A.
1625 Hendry Street, Suite 203
Fort Myers, FL 33901
(239) 337-1630/ Fax: (239) 337-0307
Counsel for BSO Defendants