UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-61607-CIV-COHN/SELTZER

DONALD R. SPADARO, as Limited
Guardian for ANTHONY CARAVELLA,

     Plaintiff,

v.

CITY OF MIRAMAR, etc., et al.,

     Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

     **THIS CAUSE** is before the Court upon Defendants City of Miramar, George

Pierson ("Pierson"), William Mantesta ("Mantesta"), and William Guess's ("Guess")

(collectively "City Defendants") Motion for Summary Judgment [DE 213] ("City Motion")

and Defendants Scott Israel ("Israel")[1], Kenneth C. Jenne, II ("Jenne"), and Anthony

Fantigrassi's ("Fantigrassi") (collectively "BSO Defendants") Motion for Summary

Judgment [DE 239] ("BSO Motion") (collectively "Motions for Summary Judgment").

The Court has carefully reviewed the Motions for Summary Judgment, the City

Defendants' Memorandum of Law in Support of Motion for Summary Judgment [DE

214] ("City Mem."), Plaintiff's Response to the City Defendants' Motion for Summary

Judgment [DE 260] ("City Response"), Plaintiff's Response to the BSO Defendants'

Motion for Summary Judgment [DE 299] ("BSO Response"), the City Defendants' Reply

---

     [1]     Defendant Israel is being sued only in his official capacity as Sheriff of
Broward County. Defendant Israel was substituted for former Defendant Al Lamberti on
January 23, 2013. See DE 356.

[DE 342] ("City Reply"), the BSO Defendants' Reply [DE 346] ("BSO Reply"), all of the parties' submissions, the record in the case, and is otherwise fully advised in the premises.

## I. BACKGROUND

This case stems from the November 1983 rape and murder of Ada Jankowski and the subsequent arrest and conviction of Plaintiff Anthony Caravella ("Caravella") for this crime. On November 5, 1983, Ms. Jankowski was murdered. See City Defendants' Statement of Undisputed Facts in Support of Motion for Summary Judgment [DE 215] ("City Facts") ¶ 1; Plaintiff's Amended Response to City Defendants' Statement of Undisputed Facts [DE 326] ("City Response Facts") ¶ 1. Defendants Guess, Mantesta, and Pierson participated in the investigation of the crime scene. City Facts ¶ 2; City Response Facts ¶ 2.

At the time of the Jankowski murder, Caravella was fifteen years old and had an IQ of only 67, placing him in the mildly mentally deficient range. Plaintiff's Amended Statement of Additional Material Facts and Evidence [DE 336] ("Plaintiff's BSO Facts") ¶¶ 1, 16; Defendants Al Lamberti, Kenneth C. Jenne, II, and Anthony Fantigrassi's Reply to Plaintiff's Amended Response to Broward County Sheriff's Office Defendants' Statement of Undisputed Facts [DE 347] ("BSO Reply Facts") at 4 ¶ 1, 5 ¶ 16. On December 28, 1983, Defendants Pierson and Mantesta, and officer John Petrone executed a Pick-Up Order to arrest Caravella on grand theft charges relating to the theft of a bicycle at the home of Caravella's friend, Dawn Simone. City Facts ¶¶ 4-5; City Response Facts ¶¶ 4-5. Ms. Simone lied to the officers that Caravella was not present. City Facts ¶ 6; City Response Facts ¶ 6. Ms. Simone was taken to the police station for

2

attempting to hide Caravella. City Facts ¶ 10; City Response Facts ¶ 10. Caravella was also transported to the police station. City Facts ¶ 9; City Response Facts ¶ 9. At the police station, Caravella was immediately taken into an interrogation room and questioned by Defendant Pierson. City Facts ¶ 11; City Response Facts ¶ 11. At some point on December 28, 1983, Defendants Pierson and Mantesta discussed the Jankowski murder with Caravella. City Facts ¶ 16; City Response Facts ¶¶ 11, 16. Caravella was read his Miranda rights and then proceeded to give a taped statement which identified three individuals responsible for the Jankowski murder and himself as a witness. City Facts ¶¶ 19-20; City Response Facts ¶¶ 19-20. Caravella's mother, Lorraine Dees, was present when Caravella gave this sworn statement. First Caravella Statement [DE 218-2] at 1.

On December 30, 1983, Defendants obtained a court order which allowed the BSO to perform a polygraph examination on Caravella. City Facts ¶ 26; City Response Facts ¶¶ 24, 26. Defendant Fantigrassi performed the polygraph examination. Defendants Al Lamberti, Kenneth C. Jenne, II and Anthony Fantigrassi's Statement of Undisputed Facts [DE 235] ("BSO Facts") ¶ 3; Plaintiff's Amended Response to Al Lamberti, Kenneth C. Jenne, II, and Anthony Fantigrassi's Statement of Undisputed Facts [DE 336] ("BSO Response Facts") ¶ 3. Prior to administrating the polygraph, Defendant Fantigrassi spoke with Caravella. Plaintiff's Statement of Additional Material Facts and Evidence [DE 326] ("Plaintiff's City Facts") ¶ 15; 12/30/1983 Mantesta Report, Plaintiff's Exhibit 44 [DE 264-5] at 3. Defendant Fantigrassi later reported that Anthony Caravella had confessed to him. Plaintiff's City Facts ¶ 15; 12/30/1983 Mantesta Report, Plaintiff's Exhibit 44 [DE 264-5] at 3. After completing his

3

administration of the polygraph, Fantigrassi represented that Caravella was truthful in his statements implicating himself and three other individuals in the murder. BSO Facts ¶ 8; BSO Response Facts ¶¶ 3, 8.

Once the polygraph was completed, Defendants Pierson and Guess drove Caravella to the Miramar Lounge, where Ada Jankowski was seen prior to her murder, and to the location where her body was found. City Facts ¶ 31; City Response Facts ¶ 31. Also on December 30, 1983, Caravella was again read his Miranda rights and gave a second statement implicating himself and three others in the murder of Ms. Jankowski. City Facts ¶¶ 34, 36, 37; City Response Facts ¶¶ 34, 36, 37; Second Caravella Statement [DE 218-3].

On January 3, 1984, Defendants Mantesta and Pierson went to the juvenile detention facility where Caravella was being held to obtain a third, taped statement from Caravella regarding the murder. City Facts ¶ 38; City Response Facts ¶ 38. In his third statement, Caravella implicated himself and two other individuals in the murder, but indicated that another individual, Steve Chappell, was not involved. City Facts ¶ 42; City Response Facts ¶ 42; Third Caravella Statement [DE 218-7]. Caravella's mother was not present when he made the third statement. City Facts ¶ 43; City Response Facts ¶ 43. On January 4, 1983, Defendants Mantesta and Pierson obtained a court order which allowed them to drive Caravella around town, purportedly to allow him to point out where the other perpetrators lived. City Facts ¶ 44; City Response Facts ¶ 44. Later that same day, Caravella gave a fourth, taped statement regarding the murder. City Facts ¶ 49; City Response Facts ¶ 49. In this fourth statement, Caravella stated that he was solely responsible for Ms. Jankowski's rape and murder. City Facts ¶ 50;

4

City Response Facts ¶ 50; Fourth Caravella Statement [DE 218-8] at 37-38.

In addition to the four, taped statements he made to the police, on January 11, 1984, Caravella's mother testified to a grand jury that Caravella had confessed to her that he had committed the Jankowski murder. City Facts ¶ 58; Dees Grand Jury Testimony [DE 212-18] at 13:16-23. She also testified that he had called her the night before she testified and told her that he had committed the murder. City Facts ¶ 57; Dees Grand Jury Testimony at 17:12-23.

Caravella was indicted by a Broward County Grand Jury for the murder of Ada Jankowski in January 1984. BSO Facts ¶ 1; BSO Response Facts ¶ 1. Caravella's attorney at the time tried to suppress the four sworn statements he had given to the police. City Facts ¶ 62. The motion was denied as to the first, second, and fourth statements, but granted as to the third statement because it was taken when Caravella's mother was absent. City Facts ¶ 63; City Response Facts ¶ 63. Caravella's first, second, and fourth statements were read to the jury at his trial. City Facts ¶ 102. Caravella was found guilty of sexual battery and murder and sentenced to a prison term of life. BSO Facts ¶ 1; BSO Response Facts ¶ 1. Caravella's conviction, including denial of his motion to suppress the first, second, and fourth taped statements, was later affirmed on appeal. City Facts ¶ 64; City Response Facts ¶ 64.

In July 2001, at the request of the State Attorney, the BSO DNA lab tested evidence from the Jankowski murder. BSO Facts ¶ 13; BSO Response Facts ¶ 13. The BSO DNA lab reported that the samples did not provide any reliable DNA results. BSO Facts ¶ 13. In 2009, the evidence was sent to Forensic Science Associates, which eliminated Caravella as the donor of the DNA found in vaginal swabs taken from

5

Ms. Jankowski. BSO Facts ¶ 14; BSO Response Facts ¶ 14. In October 2009, Bode
Technology, a second laboratory, confirmed that Caravella was not the donor of sperm
found in Ms. Jankowski's body. BSO Facts ¶ 15; BSO Response Facts ¶ 15.
Thereafter, on March 25, 2010, the state court vacated and set aside Caravella's
judgment and sentence. State's Motion to Vacate and Set Aside the Defendant's
Judgments and Sentence and to Dismiss the Indictment [DE 212-40].

On June 28, 2011, Donald R. Spadaro, Esq., as limited guardian for Caravella,
filed suit against Defendants City of Miramar, Pierson, Mantesta, Guess, BSO,
Lamberti, Jenne, and Fantigrassi in the Seventeenth Judicial Circuit Court in and for
Broward County, alleging that the acts or practices of the Defendants had violated
Caravella's constitutional rights. Complaint [DE 1-3] ¶ 3. The City Defendants removed
the case to this Court on July 19, 2011. Notice of Removal [DE 1]. On August 17,
2012, Caravella filed his Third Amended Complaint. See DE 173. The Third Amended
Complaint brings claims against the various Defendants for intentional infliction of
emotional distress (Counts I-III, VIII), violations of 42 U.S.C. § 1983 (Counts IV, VII, IX,
X, XII), conspiracy (Count V), negligent hiring and supervision (Counts VI, XI), and
violations of the Florida Racketeer Influenced and Corrupt Organizations Act, Fla. Stat.
§ 772.103 (Counts XIII-XV). Defendants have now filed motions for summary
judgment.

## II. DISCUSSION

### A. Legal Standard.

The Court may grant summary judgment "if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there is no genuine issue as to

6

any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

As long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

The Court notes the voluminous record submitted by the parties on summary judgment in this matter. Caravella has submitted 29 volumes of exhibits in opposition

7

to the City Motion, see DE 262-283; 285-291, and 15 separate volumes of exhibits in

opposition to the BSO Motion. See DE 301, 303-316. Many of these exhibits are not

cited anywhere in Caravella's opposition briefs.

> [I]t is well established that a litigant on summary judgment cannot shift the
> burden to the court by inundating the record with voluminous exhibits, large
> portions of which are not addressed in his brief, with the expectation that the
> court will unearth any beneficial evidentiary nuggets that the filer may have
> neglected to mention. See, e.g., United States v. Dunkel, 927 F.2d 955, 956 (7th
> Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); Preis v.
> Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007) ("Parties may
> not, by the simple expedient of dumping a mass of evidentiary material into the
> record, shift to the Court the burden of identifying evidence supporting their
> respective positions."); Carolina Acquisition, LLC v. Double Billed, LLC, 627 F.
> Supp. 2d 1337 (S.D. Fla. 2009) ("Federal judges are not archaeologists.... We
> possess neither the luxury nor the inclination to sift through that mound of
> obfuscation in hopes of finding a genuine issue of material fact to deny summary
> judgment."). Accordingly, the Court will not squander scarce resources poring
> over uncited portions of this bloated record in search of evidence that might
> bolster one side or the other's position.

Boatwright v. Carney Realty, Inc., 08-0660-WS-B, 2009 WL 3615048, at *1 n.3 (S.D.

Ala. Oct. 29, 2009). Therefore, the Court will not consider any exhibits that Caravella

has submitted to the Court, but not cited in his briefs and with sufficient particularity in

his responses to the Defendants' statements of material facts.

### B. Whether Plaintiff's Claims are Supported by Competent Evidence.

The City Defendants first move for summary judgment on the ground that

Caravella has failed to offer competent evidence of any misconduct by the City

Defendants. City Mem. at 3. Specifically, the City Defendants contend that summary

judgment is appropriate for them because there is no competent evidence that the City

Officers coerced a confession from Caravella, that there was a lack of probable cause

against Caravella, or that the City Officers fabricated or withheld exculpatory evidence

8

from Caravella. Id. at 3-8. Caravella opposes summary judgment on this ground, arguing that the record is replete with competent evidence to show that the City Defendants coerced a confession from him, lacked probable cause, and fabricated or withheld exculpatory evidence. City Response at 5-13.

### 1. Coercion.

The City Defendants argue that there is no evidence that they employed physical force to coerce confessions from Caravella. City Mem. at 3-5. Caravella completely fails to address this argument in his response. Instead, Caravella focuses on whether the City Defendants violated Caravella's Fifth Amendment rights, "causing him to make involuntary, false and self-incriminating statements." City Response at 5. As the City Defendants point out, the sole evidence that supports Caravella's claim of physical force is (1) a statement, purportedly from Donna Simone Rigney, in a memorandum report from Al Smith, an investigator for the public defender, (2) the deposition testimony of Dawn Simone Herron, and (3) the testimony of Robin Siegel, a public defender at the July 23, 1984 motion to suppress hearing. City Mem. at 4. Because this evidence is sufficient to create a disputed issue of material fact as to whether physical force was used to coerce a confession from Caravella, summary judgment is inappropriate for the City Defendants on this issue.

The unsworn statement in which Al Smith reports that Donna Simone Rigney told him that the police officers took one of her phone books to hit Caravella with and that Caravella looked "roughed up" when he was transported to jail is not competent evidence that the City Defendants used physical force to coerce a confession from Caravella. See October 5, 2005 Investigative Report from Al Smith to Diane Cuddihy,

9

Plaintiff's Exhibit 368 [DE 289-15] at 10. Even if the report itself would fall within an exception to the hearsay rule, the purported statements of Ms. Rigney detailed within the report would be inadmissible hearsay. See Fed. R. Evid. 805; City Reply at 3. Furthermore, at her deposition, Ms. Rigney testified, under oath, that she had never spoken with Mr. Smith. Deposition of Donna Simone Rigney [DE 217-8] at 21:19-22:16. Thus, this report cannot create a disputed issue of material fact as to whether the City Defendants utilized physical force to coerce a confession from Caravella. See Jones v. UPS Ground Freight, 683 F.3d 1283, 1294 (11th Cir. 2012) ("If . . . the declarant has given sworn testimony during the course of discovery that contradicts the hearsay statement, we may not consider the hearsay statement at the summary judgment phase. The possibility that the declarant might change his sworn deposition testimony and admit to the truth of the hearsay statement amounts only to 'a suggestion that admissible evidence might be found in the future,' which 'is not enough to defeat a motion for summary judgment.'").

The other evidence that Caravella has presented, however, could create a reasonable inference that the City Defendants employed physical force to coerce his confession. Ms. Herron's deposition testimony establishes that she heard yelling and banging while the police officers were in the garage with Caravella. Deposition of Dawn Simone Herron [DE 259-6] ("Herron Dep.") at 60:2-21. She could not recall whether Caravella looked physically hurt. Id. at 61:3-5. She later observed physical contact between Caravella and the City Defendants when she saw someone pushing him forward at the police station. Id. at 78:5-20. When coupled with the testimony of Robin Siegel at the July 23, 1984 motion to suppress hearing, Ms. Herron's testimony creates

10

a disputed issue of material fact as to whether the City Defendants utilized physical force to coerce a confession from Caravella. Ms. Siegel observed that Caravella's lips were blue and bleeding. Testimony of Robin Siegel at the 7/23/1984 Motion to Suppress Hearing, Plaintiff's Exhibit 373 [DE 290-3], at 505:2-11.[2] Although her concern was not that Caravella had been beaten, but that he was under the influence of drugs, a reasonable jury could infer that these injuries occurred at the hands of the City Defendants. Id. at 507:21-508:8. Accordingly, summary judgment is not appropriate on the issue of whether the City Defendants employed physical force to coerce a confession from Caravella.

Turning to the City Defendants' argument that there is no competent evidence that Caravella was otherwise coerced by the City Defendants into confessing, the Court finds that a disputed issue of material fact exists as to this issue. As Caravella argues in his response to the City Motion, a disputed issue of material fact exists as to whether the City Defendants coerced Plaintiff to make involuntary, false, and self-incriminating statements. See City Response at 5. By way of example, the testimony of Caravella's mother, Lorraine Dees, indicates that the City Defendants spoke with Caravella prior to her arrival at the police station or the reading of his Miranda rights on December 29, 1983. Deposition of Lorraine Dees, Plaintiff's Exhibit 369 [DE 289-16] ("Dees Dep.") at 11-12. Ms. Dees further testified at Caravella's trial that she was only present when the police officers put Caravella's statements on tape and that Caravella was questioned

---

<sup>2</sup> This pagination corresponds with the pagination of the original document rather than the pagination in CM/ECF. Throughout this Order, all citations will refer to a document's original pagination unless otherwise specified.

11

outside her presence. Trial Testimony of Lorraine Dees, Plaintiff's Exhibit 370 [DE 289-17] ("Dees Trial") at 1441:8-19 ("Q. You were not present when Detective Pierson– A. I was always there, only when they put it on tape. I was never present while they were questioning him. They always had him in another room. Then a detective would give me the story, then they would bring Anthony in.").

Defendant Mantesta's testimony also indicates that Defendant Pierson questioned Caravella before his mother's arrival in a non-tape recorded conversation. 1984 Deposition Testimony of William Mantesta, Plaintiff's Exhibit 219 [DE 285-4] at 11:6-16; 12:18-17; 13:8-13. Defendant Mantesta's trial testimony reveals that during his first statement, Caravella did not discuss elements of the crime such as the chair, the fact that the blade of the knife used on Ms. Jankowski was separated from the handle, and that the victim was strangled. Trial Testimony of William Mantesta, Plaintiff's Exhibit 209 [DE 283-4] at 1378-1383. Indeed, Defendant Mantesta conceded that there were inaccuracies between Caravella's first statement and the facts of the murder known to the police at the time the statement was taken. Id. at 1382:16-21 ("So at that time, although you had this statement from Anthony, isn't it true that some of the facts that you knew concerning this particular homicide, he was, at best, inaccurate? A. There was [sic] some inaccuracies at that point, yes, sir.").

The record further reflects that although Caravella had a signed invocation of his rights in place on December 29, 1983, Defendants Pierson and Mantesta allowed him to sign a waiver of rights form even though Caravella could not explain to them what evidence or an attorney were. First Caravella Statement [DE 218-2] at 1-2. Coupled with evidence of Caravella's limited IQ, these facts collectively serve to create a

12

disputed issue as to whether the City Defendants' coerced Caravella's confessions.
Plaintiff's Amended Statement of Additional Material Facts and Evidence [DE 336]
("Plaintiff's BSO Facts") ¶ 16; BSO Reply Facts at 5 ¶ 16. Accordingly, summary
judgment is not appropriate for the City Defendants on this issue.

### 2. Probable Cause.

The City Defendants next argue that Caravella cannot produce any competent
evidence that they lacked probable cause to charge Caravella. City Mem. at 6-7. The
City Defendants contend that ample evidence existed to charge Caravella separate and
apart from his statements to the police. Id. Caravella disputes this, arguing that the
City Defendants withheld or concealed evidence from the court. City Response at 9.
Caravella also argues that his arrest was predicated upon the City Defendants' false
reports and affidavits. Id. at 12.

Probable cause is defined as "facts and circumstances sufficient to warrant a
prudent man in believing that the suspect had committed or was committing an
offense." Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010) (quoting
Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (internal quotation marks omitted)). Here,
the Court finds that a disputed issue of material fact exists as to whether the City
Defendants had probable cause, apart from Caravella's own statements, for charging
him with Ms. Jankowski's murder. Much of the evidence cited by the City Defendants
for the proposition that probable cause existed could have resulted from their coercion
of Caravella. See City Mem. at 7. For example, Caravella could have learned
information regarding the crime—such as the direction of the Hetzel's car, that Ms.
Jankowski screamed, and that she was strangled—from the City Defendants themselves

13

when they interrogated him off-tape, outside the presence of his mother. Moreover, given Caravella's limited IQ, his independent confessions to his mother[3]–which only occurred after his arrest on the Pick-Up Order and encounter with the City Defendants–could have been the product of the City Defendants' coercion. See City Facts ¶ 30 (noting that Caravella first confessed to his mother before his polygraph examination, after he had already given his first sworn statement); Dees Grand Jury Testimony [DE 218-9] at 13:16-23; 17:12-23 (recounting other incidents after Caravella was arrested where he confessed to his mother). Additionally, at Caravella's trial, Ms. Dees testified that after his indictment, she had additional conversations with her son where he denied committing the murder and stated that he only confessed to tell the police what they wanted to hear. Dees Trial at 1459:16-1460:5. Caravella later told his mother that he only confessed to her so that the police officers would believe his confessions. Id. at 1460:15-19.[4]  Given that Caravella's confessions to his mother were admittedly "a key piece of evidence," Affidavit of Robert Carney [DE 220-4] ¶ 10, a disputed issue of material fact exists as to whether the City Defendants had probable cause. Accordingly, summary judgment will be denied as to this issue.

### 3. Fabrication of Evidence or Withholding of Exculpatory Evidence.

The City Defendants argue that Caravella has failed to present any competent

---

[3]      There is no basis in the record for Caravella's unsubstantiated statements that the City Defendants "brainwashed his mother." See City Response at 9.

[4]      Additionally, during her deposition, Ms. Dees testified that she did not believe that Caravella ever understood his rights and confessed to the police officers to tell them what they wanted to hear so that they would leave him alone. Dees Dep. at 28:12-22.

14

evidence that Defendants Pierson, Mantesta, and Guess fabricated evidence or

withheld exculpatory evidence. City Mem. at 8. In opposition, Caravella argues that

"[t]here is ample competent record evidence from which a jury could determine that

Defendants fabricated evidence, made false statements in reports and under oath and

concealed exculpatory evidence in order to manufacture the appearance of probable

cause and instigate and continue the criminal prosecution of Anthony Caravella." City

Response at 13. As discussed above, the Court has already found that a disputed

issue of material fact exists as to whether the City Defendants fabricated evidence, in

the form of coerced confessions, to support the arrest and conviction of Caravella.

Caravella also contends that other exculpatory evidence was withheld. For example,

Caravella argues that lead homicide prosecutor Robert Carney was not provided with a

number of documents including:

the eight FBI reports in response to the third submission of evidence on April 24, 1984 (Exh. 56A-G); the FBI's response to Pierson's letter of April 16, 1984 (Exh. 29); BSO crime lab's response to Mantesta's May 9, 1984 letter and submission of evidence for analysis (Exh. 57,57a); BSO crime lab's response to the submission of Steve Chappell's hair samples (Exh. 97A); the report and printout of GUESS's polygraph exam of Dale Patton; the supplementary reports by Defendant GUESS from November 9 to November 30, 1983 relating to the Jankowski homicide investigation. (Exh. 48; see also Exh. 374); and the note packs and polygraphs charts relative to the polygraphs of Anthony Caravella and Ray Chappell. (Exh. 388).

City Response Facts ¶ 91; see also City Response at 9. The City Defendants contend

that there is no record evidence to prove that these documents were (1) exculpatory,

(2) withheld from Mr. Carney, or (3) existed in 1984. City Defendant's Reply to

Plaintiff's Amended Response to Statement of Undisputed Facts and to Plaintiff's

Additional Material Facts and Evidence [DE 343] ("City Reply Facts") at 20 ¶ 91. The

15

Court disagrees and finds that a disputed issue of material fact exists as to this issue.

For example, during his trial testimony, Defendant Fantigrassi referred to notes he had taking during his interview with Caravella and had with him in court. Fantigrassi Trial Testimony, Plaintiff's Exhibit 274 [DE 288-3] ("Fantigrassi Trial") at 1404:13-22. Additionally, an April 16, 1984 letter from Pierson to the FBI references his review of reports produced by the FBI regarding its analysis of hair specimens. 4/16/2984 Pierson Letter, Plaintiff's Exhibit 29 [DE 263-7]. Some FBI reports still exist, see e.g.,1/24/1984 FBI Report, Plaintiff's Exhibit 124 [DE 268-9], 3/27/1984 FBI Report, Plaintiff's Exhibit 127 [DE 268-11], and others do not. Accordingly, because Caravella has produced some evidence that these documents existed at the time of his trial and were not turned over to the defense, a reasonable jury could infer that the documents were in fact exculpatory and intentionally withheld from the defense. Thus, summary judgment is not appropriate for the City Defendants on this issue. .

## C. Intentional Infliction of Emotional Distress (Counts I-III, VIII).

### 1. Caravella's Intentional Infliction of Emotional Distress Claims are Not Time Barred.

The City Defendants argue that Caravella's intentional infliction of emotional distress claims are time barred because Caravella knew "at the time of the investigation in 1983 and certainly by his criminal trial in 1984 that the officer's statements in their report were false and that the officers acted improperly." City Mem. at 9. The City Defendants also argue that the continuing torts doctrine does not save Caravella's claims because "it is evident [after completion of discovery] that no such reports or evidence that would exclude Caravella as the perpetrator exist." Id. at 10. Defendant Fantigrassi also argues that the intentional infliction of emotional distress claim against

16

him is time barred. BSO Motion at 7. Caravella disputes that his intentional infliction of emotional distress claims accrued at the time of his incarceration, arguing that he has provided ample evidence to support his allegations that the Defendants have "continued to the present day to withhold reports and evidence that would have excluded him as the murderer of Ada Jankowski." City Response at 22.

Florida law provides a four-year statute of limitations for intentional infliction of emotional distress claims. Fla Stat. § 95.11(3)(o). In Florida, a cause of action accrues "when the last element constituting the cause of action occurs." Fla. Stat. § 95.031(1). As the Court observed in its February 29, 2012 Order Granting in Part and Denying in Part Defendants Motions to Dismiss [DE 99] ("February 29, 2012 Order"), Florida recognizes the continuing torts doctrine. Pearson v. Ford Motor Co., 694 So. 2d 61, 68 (Fla. Dist. Ct. App. 1997). Under this doctrine, the limitations period runs to the date the tortious conduct ceases. Id. If the plaintiff has alleged some continuing conduct on the part of the defendants, a jury must decide whether a continuing tort has occurred. Id. (holding that the jury must decide whether a continuing tort occurred where the plaintiff alleged that the defendant continued to make false representations). A continuing tort is "established by continual tortious *acts*, not by continual harmful effects from an original, completed act." Suarez v. City of Tampa, 987 So. 2d 681, 686 (Fla. Dist. Ct. App. 2008) (internal citations and quotations omitted) (emphasis in original). "When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort." Id.

Caravella has failed to present any evidence of continuing tortious acts on the

17

part of Defendants Pierson, Mantesta, Guess, and Fantigrassi.[5] Florida law is clear that "[t]he question of whether [a defendant's] actions constituted continuing torts precludes the granting of summary judgment because [t]o what extent, if any, the concept applies to this case is an issue for the trier of fact to decide." Halkey-Roberts Corp. v. Mackal, 641 So. 2d 445, 447 (Fla. Dist. Ct. App. 1994). Here, however, Caravella has failed to present any competent evidence of tortious acts on the part of Defendants Pierson, Mantesta, Pierson, and Fantigrassi beyond Caravella's initial arrest and conviction. The record does not support that Defendants withheld or concealed exculpatory evidence from Caravella after his trial and conviction. Accordingly, the doctrine of continuing torts would not apply.

As noted in the February 29, 2012 Order, however, the Seventh Circuit has held that an intentional infliction of emotional distress claim premised on wrongful conviction does not accrue until after the state criminal proceeding has been successfully terminated in the plaintiff's favor. See Parish v. City of Elkhart, 614 F.3d 677, 683-84 (7th Cir. 2010) (finding that plaintiff's claim for intentional infliction of emotional distress based upon wrongful conviction did not accrue until plaintiff was exonerated because wrongful conviction was the crux of the claim); see also Gvozden v. Mill Run Tours, Inc., No. 10-CV-4595, 2011 WL 1118704, at *10 (N.D. Ill. Mar. 28, 2011) (intentional

---

<sup>5</sup> Indeed, Caravella's citation of City Response Facts ¶¶ 91-99 and Plaintiff's City Facts ¶¶ 19, 20, 22-32, and 34-37, does not support application of the doctrine of continuing torts. These purported facts to do not demonstrate conduct on the part of Defendants Pierson, Mantesta, Guess, and Fantigrassi beyond the time of Caravella's initial arrest and conviction. Additionally, Plaintiff's City Facts ¶¶ 34-37, concern the reopened City investigation into the Jankowski murder which did not involve any of these defendants. See Plaintiff's City Facts ¶¶ 34-37.

18

infliction of emotional distress claim not time barred because it was "inextricably
intertwined" with malicious prosecution claim); Hobley v. Burge, No. 03 C 3678, 2004
WL 1243929, at *9 (N.D. III. June 3, 2004) (finding that intentional infliction of emotional
distress claim did not accrue until plaintiff received a pardon). In Parish v. City of
Elkhart, the Seventh Circuit held that where the crux of the plaintiff's intentional infliction
of emotional distress claim against the defendants was that "the defendant officers
fabricated an entire case against him that led to his wrongful conviction," he "could not
have brought these claims until his conviction was disposed of in a manor favorable to
him." 614 F.3d at 684. The Court finds the reasoning of the Parish court highly
persuasive and adopts it herein. Caravella could not have brought his intentional
infliction of emotional distress claims which stem directly from his wrongful conviction
against Defendants Pierson, Mantesta, Guess, and Fantigrassi until he was
exonerated. Accordingly, Caravella's intentional infliction of emotional distress claims
are timely.

## 2. Defendants Pierson, Mantesta, Guess, and Fantigrassi are not Entitled to Summary Judgment on Caravella's Intentional Infliction of Emotional Distress Claims.

The City Defendants also argue that they are entitled to summary judgment on
Caravella's intentional infliction of emotional distress claims because he has "fail[ed] to
demonstrate any evidence that supports his claims." City Mem. at 15. Specifically, the
City Defendants contend that "Caravella has not established any facts that Pierson,
Mantesta, and Guess coerced confessions from Caravella." Id. at 16. They also argue
that even if they did coerce false confessions from Caravella, this is not sufficiently
outrageous conduct to establish a claim for intentional infliction of emotional distress.

19

Id. The BSO Defendants similarly argue that they are entitled to summary judgment on the intentional infliction of emotional distress claim against Fantigrassi because Fantigrassi's only involvement in the case was to administer a polygraph to Caravella. BSO Motion at 6. In opposition, Caravella argues that the evidence reflects that Pierson, Mantesta, and Guess coerced Caravella into making false, self-incriminating confessions. City Response at 18. Caravella also argues that his alleged confessions to his mother were the product of the Defendants' manipulation. Id. Regarding Defendant Fantigrassi, Caravella contends that the evidence supports that he falsified the polygraph results and falsely reported that Caravella had confessed to him, making his conduct extreme and outrageous. BSO Response at 12-13.

To state a claim for intentional infliction of emotional distress under Florida law, a plaintiff must allege: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe. Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007) (citing Dependable Life Ins. Co. v. Harris, 510 So. 2d 985, 986 (Fla. Dist. Ct. App. 1987)). Intentional infliction of emotional distress claims require behavior that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Id. (internal citations and quotations omitted). Courts evaluate conduct objectively "to determine whether it is atrocious, and utterly intolerable in a civilized community." Id. at 595 (internal citations and quotations omitted). "Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact." Id. (citations omitted).

Here, the Court finds that summary judgment is inappropriate for Defendants

Pierson, Mantesta, and Guess on Caravella's intentional infliction of emotional distress claims. As discussed in Section B supra, a disputed issue of material fact exists as to whether the City Defendants coerced a confession from Caravella, a mentally deficient 15-year-old boy, or otherwise fabricated evidence against him. If proven at trial, this conduct would be sufficiently extreme and outrageous to constitute intentional infliction of emotional distress. See Diaz-Martinez v. Miami-Dade Cnty., No. 07-20914-CIV, 2009 WL 2970468, at *14 (S.D. Fla. Sept. 10, 2009) (finding that plaintiff had sufficiently alleged extreme and outrageous conduct where defendants' conduct during photo array was alleged to have led to plaintiff's false imprisonment for over 20 years). Thus, the Court will deny the City Defendants' Motion as to these claims.

The record also establishes that Defendant Fantigrassi interviewed Caravella alone before he administered the polygraph examination. Fantigrassi Trial at 1403:14-19. This interview was not recorded. Id. at 1404:8-9. Defendant Fantigrassi later changed his interpretation of Caravella's polygraph based on new information provided to him by the City Defendants. See 12/30/1983 Pierson Report, Plaintiff's Exhibit 16 [DE 262-16] at 12 (reflecting that after taking and reviewing the polygraph of Steve Chappell, Fantigrassi determined that portions of the polygraph he took from Caravella now indicated that Caravella was deceptive when he implicated Chappell in the homicide).[6] Fantigrassi also received a commendation from the City of Miramar for his work on the case. See 1/12/1984 Letter from George Pierson, William Mantesta, and

---

[6]    Fantigrassi had previously stated in his report that it was inconclusive whether Caravella was truthful when he said that he, Steve, Don, and the other boy had beaten and stabbed Ms. Jankowski on November 5th. Fantigrassi Polygraph Report, Plaintiff's Exhibit 92 [DE 267-15] at 4.

R.V. Merritt to BSO Sheriff George Brescher, Plaintiff's Exhibit 224 [DE 304-9] at 1 ("Prior to submitting to a polygraph examination being administered by Sgt. Fantigrassi, the juvenile began to tell the truth and supplied the correct details that he had previously left out. Had it not been for Sgt. Fantigrassi, the case might not have had the same exact end results."). When coupled with Caravella's diminished mental capacity, this evidence demonstrates disputed issues of material fact as to whether Fantigrassi knowingly coerced confessions from Caravella and fabricated evidence against him in an effort to convict him of a crime he did not commit. If proven at trial, this conduct would be extreme and outrageous. Accordingly, the Court will deny the BSO Defendants' Motion as to this claim.

## D. Negligent Hiring, Supervision, and Retention (Counts VI, XI).

### 1. The Statute of Limitations Has Not Expired on Caravella's Claims for Negligent Hiring, Supervision, and Retention.

The BSO Defendants argue that the statute of limitations has expired on Caravella's claim for negligent hiring, supervision, and retention. BSO Motion at 11. Caravella contends that under Rowe v. City of Fort Lauderdale, 279 F.3d 1271 (11th Cir. 2002), his claims did not accrue until his conviction or sentence was overturned. BSO Motion at 11. Additionally, Caravella alleges that the doctrines of continuing torts, delayed discovery, and equitable estoppel apply. Id. at 12.

Florida law provides a four-year statute of limitations for any claim based on negligence. Fla Stat. § 95.11(3)(a). Caravella argues that the Court must follow the

22

Eleventh Circuit's holding in Rowe[7] and find that his claims for negligent hiring,

supervision, and retention did not accrue until his sentence was vacated. BSO

Response at 11. Defendants had previously argued, in conjunction with their motions

to dismiss, that Rowe was inapplicable. As the Court stated in the February 29, 2012

Order:

> [t]he Eleventh Circuit's reasoned application of the Steele holding to negligent
> hiring, supervision, and retention claims makes logical sense: a plaintiff should
> not be required to bring claims against those who have incarcerated him until he
> has won his release because "if a still-incarcerated convict sued claiming that
> negligent training and supervision by government agencies allowed social
> workers and prosecutors to secure his wrongful conviction, Florida law would
> deem 'the criminal defendant's own actions ... to be the proximate cause of the
> injury." Rowe, 279 F.3d at 1287 (quoting Steele, 747 So. 2d at 933).

February 29, 2012 Order at 12. Thus, the Court has previously found that the statute of

limitations does not bar Caravella's claims for negligent hiring, supervision, and

retention.[8]

---

[7] In Rowe, the Eleventh Circuit applied to negligent hiring, supervision, and retention claims the Florida Supreme Court's holding in Steele v. Kehoe, 747 So. 2d 931, 933 (Fla. 1999), which held that a plaintiff's legal malpractice claims against criminal defense attorneys accrue only after post-conviction relief has been obtained,. The Steele holding was based on the following public policy considerations: (1) without obtaining relief from the conviction or sentence, the criminal defendant's own actions must be presumed to be the proximate cause of the injury; (2) monetary remedies are inadequate to redress the harm to incarcerated criminal defendants; (3) appellate, postconviction, and habeas corpus remedies are available to address ineffective assistance of counsel; (4) requiring appellate or postconviction relief prerequisite to a malpractice claim will preserve judicial economy by avoiding the relitigation of supposedly settled matters; and (5) relief from the conviction or sentence provides a bright line for determining when the statute of limitations runs on the malpractice action. 747 So. 2d at 933.

[8] Indeed, this is one of the few claims in the February 29, 2012 Order for which the Court definitively stated that the statute of limitations had not expired.

23

2. Summary Judgment is Appropriate for the City of Miramar on the Issue of Whether it was Negligent in its Hiring of Defendants Pierson, Mantesta, and Guess, but a Disputed Issue of Material Fact Exists as to Whether it was Negligent in its Supervision/Retention of These Defendants.

The City Defendants have moved for summary judgment on Caravella's state law claim for negligent hiring, supervision, and/or retention against the City of Miramar (Count VI) on the basis that Caravella "cannot present any competent evidence supporting his claim." City Mem. at 16. Caravella rejects this contention, arguing that the record establishes that the City of Miramar improperly supervised its police officers. City Response at 19.

Florida recognizes a cause of action for negligent hiring, supervision, and/or retention. Green v. RJ Behar & Co., No. 09-62044-CIV, 2010 WL 1839262, at *3 (S.D. Fla. May 6, 2010). Negligent hiring and retention theories of liability permit an injured plaintiff to recover damages against an employer for the acts of an employee committed outside the scope and course of employment. Garcia v. Duffy, 492 So. 2d. 435, 438 (Fla. Dist. Ct. App. 1986). Under these liability theories, an employer may be held responsible for an employee's willful torts if the employer knew or should have known that the employee was a threat to others. Magill v. Bartlett Towing, Inc., 35 So. 3d 1017, 1020 (Fla. Dist. Ct. App. 2010) (citing Williams v. Feather Sound, Inc., 386 So. 2d 1238 (Fla. Dist. Ct. App. 1980)).

"Under Florida law, [t]he principal difference between negligent hiring and negligent retention as bases for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness. Negligent hiring occurs when the

24

employer knew or should have known of the employee's dangerousness or unfitness before hiring him." Ashley v. City of Hialeah, No. 11-20490-CIV, 2011 WL 3236051, at *5 (S.D. Fla. July 28, 2011) (internal citations and quotation marks omitted). "[N]egligent retention occurs when, during the course of employment, an employer becomes aware, or should have become aware, of an employee's unfitness and the employer fails to take further action such as investigating, discharge, or reassignment." Id. at *6 (internal citations and quotation marks omitted).

To establish a claim for negligent hiring, supervision and/or retention, a plaintiff must prove that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees. Magill, 35 So. 3d at 1020. For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that was reasonably foreseeable to the employer. Id. Accordingly, the plaintiff must "allege [and later prove] facts that would establish some relationship or nexus between the plaintiff and the tortfeasor's employment from which a legal duty would flow from the defendant-employer to that particular plaintiff." Id. at 1021. The plaintiff must then establish that the defendant-employer breached that duty and that the breach caused him damage. Hemmings v. Jenne, No. 10-61126-CIV, 2010 WL 4005333, at *5 (S.D. Fla. Oct. 12, 2010).

At the outset, the Court notes that Caravella's response is silent as to the issue of negligent hiring. See City Response at 19. The Court agrees with the City Defendants that Caravella has failed to produce any evidence that the City was aware that Defendants Pierson, Mantesta, and Guess were dangerous or unfit before hiring

25

them. See Ashley, 2011 WL 3236051, at *5. Thus, the City Defendants are entitled to summary judgment on the issue of negligent hiring.

However, the Court finds that summary judgment is inappropriate for the City of Miramar on the issue of whether it was negligent in its supervision and retention of Pierson, Mantesta, and Guess. Negligent supervision "requires that, during the course of employment, the employer became aware or should have become aware of problems with an employee that indicated his unfitness for the job." Kroll v. Lamberti, 2010 WL 3119204, at *5 (S.D. Fla. Aug. 6, 2010) (citing Dep't of Envtl. Prot. v. Hardy, 907 So. 2d 655, 660 (Fla. Dist. Ct. App. 2005)). Here, the evidence Caravella has adduced regarding the City Defendants' coercion of confessions from Caravella and mishandling of physical evidence related to the Jankowski murder, see Mantesta Trial Testimony, Plaintiff's Exhibit 221 [DE 285-6] at 1144-77; 1180-86, creates a disputed issue of material fact regarding whether the City of Miramar should have known of their unfitness to investigate this homicide. The Court also rejects that the City of Miramar's contention that its negligence was not the cause of Caravella's injuries. See City Mem. at 17. As stated throughout this Order, a disputed issue of material fact exists as to whether Defendants Pierson, Mantesta, and Guess's coercion caused Caravella's confessions both to them and to his mother. Accordingly, summary judgment will be denied as to Caravella's claim for negligent retention/supervision.

26

3. Summary Judgment is Appropriate for Defendant Israel on the Issue of Whether He was Negligent in the Hiring of Defendant Fantigrassi, but a Disputed Issue of Material Fact Exists as to Whether He was Negligent in His Supervision/Retention of Fantigrassi.

The BSO Defendants also move for summary judgment on the negligent hiring, supervision, and retention claim against Israel. The BSO Defendants argue that there is no evidence that Fantigrassi was an unacceptable detective in 1983 and that there is no causal link between his performance of a polygraph and Caravella's conviction and detention. BSO Motion at 11. In opposition, Caravella argues that evidence supports his claim that Israel knew or should have known about a pattern of misconduct by Fantigrassi. BSO Response at 25. Accordingly, he contends that his claim for negligent supervision and retention should proceed. Id.

Once again, Caravella has conceded that a claim for negligent hiring is not appropriate. See id. Thus, Israel is entitled to summary judgment on any claim for the negligent hiring of Fantigrassi. As discussed in relation to Caravella's intentional infliction of emotional distress claim against Fantigrassi, Fantigrassi interviewed Caravella off-tape without his mother present. Fantigrassi Trial at 1403:14-19; 1404:8-9. Defendant Fantigrassi later changed his interpretation of Caravella's polygraph based on new information provided to him by the City Defendants, Pierson Report 12/30/1983, Plaintiff's Exhibit 16 [DE 262-16] at 12, and received a commendation from the City of Miramar lauding his work on the case. See 1/12/1984 Letter from George Pierson, William Mantesta, and R.V. Merritt to Sheriff George Brescher, Plaintiff's Exhibit 224 [DE 304-9]. Accordingly, a disputed issue of material fact exists as to whether Israel should have known of Fantigrassi's unfitness to administer polygraph

examinations or otherwise participate in the Jankowski murder investigation and whether Fantigrassi's polygraph caused Caravella's wrongful conviction.  Summary judgment will thus be denied on Caravella's claim for negligent supervision/retention against Israel.

## E. Section 1983 Claims.

### 1. The City Defendants are Not Entitled to Summary Judgment on the Section 1983 Claim against Defendants Pierson, Mantesta, and Guess (Count IV).

The City Defendants contend that Caravella's section 1983 malicious prosecution claim against Defendants Pierson, Mantesta, and Guess must be dismissed because Caravella cannot establish all the elements of malicious prosecution.  Namely, they argue that he cannot establish that the City Defendants were the legal cause of his prosecution, that there was an absence of probable cause, and that they acted with malice.  City Mem. at 22.[9]  In response, Caravella argues that the fact that a grand jury indicted Caravella "does not insulate Defendants from liability." City Response at 13.  He also argues that "[t]here is ample competent record evidence from which a jury could determine that Defendants fabricated evidence, made false statements in reports and under oath and concealed exculpatory evidence in order to manufacture the appearance of probable cause and instigate and continue the criminal prosecution of Anthony Caravella."  Id.

To plead a claim for malicious prosecution under section 1983, a plaintiff must

_____

[9]     Because the City Defendants do not contest the other elements of a malicious prosecution claim, the Court does not address them here.

28

establish (1) the elements of the common law tort of malicious prosecution and (2) a

violation of his Fourth Amendment right to be free from unreasonable seizures.

Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). Under Florida law, a

malicious prosecution plaintiff must show that (1) an original judicial proceeding was

commenced or continued against him; (2) the defendants involved were the legal cause

of the proceeding; (3) the termination of the original proceeding constituted a bona fide

termination of that proceeding in the plaintiff's favor; (4) there was an absence of

probable cause for the original proceeding; (5) there was malice on the part of the

defendants; and (6) the plaintiff suffered damages as a result of the original proceeding.

Id. (citing Durkin v. Davis, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002)). "It is well

settled that in an action to recover damages for malicious prosecution where ... the

evidence is in dispute, the existence or non-existence of malice and want of probable

cause are questions of fact for the jury." Williams v. Miami-Dade Police Dep't, 297 F.

App'x 941, 947 (11th Cir. 2008) (quoting Kingsland, 382 F.3d at 1235 (internal quotation

marks and citation omitted)). "Therefore, where the legitimacy of the evidence is

challenged, 'the fourth and fifth elements for the common law tort of malicious

prosecution are rightly reserved for the jury.'" Id. (quoting Kingsland, 382 F.3d at

1235).

The City Defendants first argue that Defendants Pierson, Mantesta, and Guess

were not the legal cause of the original criminal proceedings against Caravella because

they had nothing to do with the decision to prosecute. City Mem. at 23. The Eleventh

Circuit has held that a plaintiff establishes a section 1983 malicious prosecution claim

where the police officer responsible for the plaintiff's arrest allegedly fabricated evidence against him. Williams, 297 F. App'x at 947. Thus, a plaintiff's section 1983 claim based upon the defendant's alleged fabrication of evidence, which resulted in the prosecutor being presented with false and misleading evidence, satisfies the requirement that the defendant was the legal cause of the original prosecution. Id. Although the City Defendants concede this general principle, here, they contend that Caravella has not presented any evidence that they misled the prosecutor or grand jury. City Mem. at 23. The Court disagrees. As discussed in Section B, supra, Caravella has presented sufficient evidence to create a disputed issue of material fact as to whether the City Defendants coerced confessions from Caravella or otherwise fabricated evidence against him. Additionally, any confessions by a mentally-limited Caravella to his mother, all of which occurred after Caravella's first encounter with the City Defendants, could have resulted from the City Defendants' coercion.[10] Accordingly, the City Defendants are not entitled to summary judgment on this ground.

---

[10] The Court agrees with the City Defendants, however, that they would be entitled to absolute immunity for alleged false testimony before the grand jury. See City Mem. at 23 n.18. The Eleventh Circuit has held, and the Supreme Court has confirmed, that absolute immunity applies in such circumstances. Rehberg v. Paulk, 611 F.3d 828, 839 (11th Cir. 2010), aff'd, 132 S. Ct. 1497 (2012). Caravella does not appear to dispute this, instead arguing that his claim is premised on the City Defendants' pre-grand jury testimony conduct. See City Response at 14.

The City Defendants do not explicitly assert that they are entitled to qualified immunity so the Court does not address it here. However, as the Court observed in the February 29, 2012 Order, qualified immunity would be improper in this case because Caravella's allegations of willful and illegal actions on the part of the City Defendants would fall outside the scope of their discretionary duties. See February 28, 2012 Order at 29.

The City Defendants next argue that they are entitled to summary judgment

because Caravella has failed to demonstrate an absence of probable cause or malice.

City Mem. at 24. The Court disagrees and will allow the jury to resolve these issues.

The Eleventh Circuit has held that an arrest without probable cause is an unreasonable

seizure that violates the Fourth Amendment. Grider, 618 F.3d at 1256. As discussed

in Section B, supra, a disputed issue of material fact exists as to whether the City

Defendants had probable cause to arrest Caravella for the Jankowski murder if the

arrest was based on coerced confessions and fabricated evidence. See Buckley v.

Fitzsimmons, 509 U.S. 259, 287-88 (1993) (Scalia, J., concurring) ("If the false

evidence or coerced confession served as the basis for the third party's determination

of probable cause, as was alleged here, it is difficult to fathom why securing such a

fraudulent determination transmogrifies unprotected conduct into protected conduct.").

Accordingly, the Court will allow the jury to resolve this issue.

The Court also rejects the City Defendants' argument that Caravella cannot

assert that their investigation of the Jankowski murder was "shoddy." As the Eleventh

Circuit held in Kingsland, a lack of probable cause may be demonstrated by the

arresting officer's failure to conduct a reasonable investigation. 382 F.3d at 1231. "[A]n

officer may not choose to ignore information that has been offered to him or her . . . .

Nor may the officer conduct an investigation in a biased fashion or elect not to obtain

easily discoverable facts." Id. at 1230. Here, Caravella has presented evidence from

which a jury could conclude that the City Defendants unreasonably failed to investigate

other potential suspects to the Jankowski murder such as Cyril Cozier, Anthony

31

Martinez, and Steve Chappell. See, e.g., Plaintiff's City Facts ¶¶ 22, 23, 26; see also Kingsland, 382 F.3d at 1231 (denying summary judgment for the defendants on false arrest claim "[b]ecause . . . there are genuine issues of material fact [in dispute] as to whether the defendants (1) manufactured probable cause, (2) failed to conduct a reasonable investigation, and (3) ignored certain facts within their knowledge, we cannot conclude as a matter of law that probable cause existed to arrest [plaintiff] Kingsland."). Finally because the existence of malice may be inferred from an absence of probable cause, the Court will allow a jury to resolve the issue of whether the City Defendants acted with malice. See Brown v. Benefield, 757 F. Supp. 2d 1165, 1181 (M.D. Ala. 2010); Williams, 297 F. App'x at 947.

Finally, the City Defendants assert summary judgment is appropriate to the extent that Caravella's claim is premised upon a violation of Brady v. Maryland, 373 U.S. 83 (1963). City Mem. at 26. According to the City Defendants, there cannot be a Brady violation related to any coerced confessions from Caravella because Caravella would have been aware of the fabricated confession. Id. at 27. Caravella does not specifically address this issue in his response.

Brady protects "the defendant's right to a fair trial mandated by the Due Process Clause of the [Fourteenth] Amendment to the Constitution." Porter v. White, 483 F.3d 1294, 1303 n.4 (11th Cir. 2007) (quoting United States v. Agurs, 427 U.S. 97, 107 (1976)). "A former criminal defendant who was denied his due process right to a fair trial as a result of withholding of exculpatory evidence may have a due process claim for money damages against a police officer under § 1983." Barber v. Doe, No. 09-

32

60635-Civ-MORENO, 2010 WL 3384766, at *6 (S.D. Fla. Aug. 5, 2010) (citing Porter, 483 F.3d at 1294; McMillian v. Johnson, 88 F.3d 1554 (11th Cir. 1996)). To establish a Brady violation on the part of a police officer, the plaintiff must establish more than "mere negligence or inadvertence on the part of a law enforcement official in failing to turn over Brady material to the prosecution." Porter, 483 F.3d at 1307.

Count IV of the Third Amended Complaint asserts that it is bringing a claim for a violation of the Fourteenth Amendment. 3d Am. Compl. ¶ 173. It also incorporates by reference Paragraph 122 of the Third Amended Complaint, which alleges that Defendants Pierson, Mantesta, Guess, and Fantigrassi concealed exculpatory evidence. Id. ¶ 122. The Court thus finds that Caravella states a section 1983 claim for violation of Brady in his Third Amended Complaint. In their Motion for Summary Judgment, the City Defendants cite cases for the proposition that Caravella's alleged coerced confessions cannot create a Brady violation because Caravella would have known that the confessions were coerced. City Mem. at 27. They also argue that the failure to provide the transcript of a call from Jorge Delgado to the defense cannot be considered a Brady violation because this evidence was presented to the prosecutor and deemed non-exculpatory. Id. The Court does not dispute that if the City Defendants turned over the Delgado evidence to the prosecution, they would not be liable under Brady. But, as discussed in Section B, supra, a disputed issue of material fact exists as to whether the City Defendants withheld *other* exculpatory evidence from the prosecution. Accordingly, summary judgment is improper for the City Defendants to the extent Count IV asserts a claim against them for violation of Brady.

33

## 2. Section 1983 Claim against City of Miramar (Count VII).

### a. Caravella's Section 1983 Claim Against the City of Miramar Cannot be Dismissed Based on the Expiration of the Statute of Limitations.

The City Defendants contend that Caravella's section 1983 claim against the City of Miramar is barred by the statute of limitations because Caravella "certainly was immediately aware that he was wrongly arrested (in 1983) and convicted (in 1984). City Mem. at 11. In opposition, Caravella states that "this Court already determined that the doctrine of continuing torts might apply . . . in that Plaintiff has alleged that Defendant CITY has continued to the present day to withhold reports and evidence that would have excluded him as the murderer of Ada Jankowski." City Response at 23. Caravella also argues that his allegation that the City of Miramar's failure to discipline and supervise its employees led to false prosecutions means that this claim is not time barred under Heck v. Humphrey, 512 U.S. 477 (1994). Id.

The statute of limitations for section 1983 actions is the same as the statute of limitations for personal injury torts in the state in which the cause of action arose. Wallace v. Kato, 549 U.S. 384, 387 (2007). Here, Florida law provides a four-year statute of limitations. Fla Stat. § 95.11(3). Federal law determines when the claim accrues. See Brown v. Ga. Bd. of Pardons & Paroles, 335 F.3d 1259, 1261 (11th Cir. 2003). Under section 1983, a claim accrues when "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." Id. at 1261 (quoting Rozar v. Mullis, 85 F.3d 556, 561-62 (11th Cir. 1996)).

34

First, Caravella's belief that the Court's February 29, 2012 Order held that the

doctrine of continuing torts and Heck applied to this claim is incorrect. The Court

actually stated that:

Caravella argues that his section 1983 claims against the City of Miramar,
Jenne, and Lamberti are actually claims for malicious prosecution which did not
accrue until after his conviction was vacated. City Response at 8-9; BSO
Response at 4. The City disputes that the section 1983 claim against the City of
Miramar is for malicious prosecution because this count asserts a claim against
the City for a pattern and practice of "illegal false arrests, detentions and/or
prosecutions." City Reply at 6 (quoting Am. Compl. ¶ 202). The Court similarly
reads the claims against these defendants as section 1983 claims for failure to
train, supervise, and or discipline. It is thus unclear, to the Court, at this time,
whether these claims would fall under Heck's purview. Nonetheless, because the
Court finds, that another doctrine, namely the continuing torts doctrine, may
apply to Caravella's case, the parties are free to make more precise arguments
regarding when the statute of limitations accrued on these section 1983 claims in
any future dispositive motions.

February 29, 2012 Order at 14 n.4. Thus, the Court did not definitively find that the

doctrine of continuing torts or Heck applied, but instead invited the parties to make

more precise arguments regarding the statute of limitations in motions for summary

judgment after they had the benefit of discovery.

The City's reliance on Wallace v. Kato, 549 U.S. 384 (2007), for the proposition

that Caravella's section 1983 claim against the City of Miramar is time barred is

misplaced. In Wallace, the Supreme Court "expressly limited [their] grant of certiorari to

the Fourth Amendment false-arrest claim." 549 U.S. at 387 n.1. The City of Chicago

was no longer a party to the litigation when it reached the Supreme Court. Id.[11]

_____

[11]    The Court has also reviewed the Seventh Circuit's opinion, and there is no
discussion of a section 1983 claim for failure to train, supervise, or discipline.

35

Additionally, Tillman v. Beary, No. 6:09-cv-1667-Orl-31DAB, 2011 WL 740459, at *1 (M.D. Fla. Feb. 24, 2011), a favorite case of the City Defendants, did not involve any section 1983 claims against a municipality. Rowe v. City of Fort Lauderdale, 8 F. Supp. 2d 1369 (S.D. Fla. 1998), is also inapposite because the plaintiff's Fourth Amendment claim involved allegations of an unreasonable search and/or false arrest, and his Eighth Amendment claim involved denial of right to bail. Id. at 1373.[12] The issue here is whether Caravella's claim against the City of Miramar "necessarily implicate[s] the validity of any subsequent conviction." Id. at 1373 n.4. If so, Caravella's claim would be timely under Heck.

In Heck, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by the actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called in question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. According to the Supreme Court, "the statute of limitations poses no difficulty while the state challenges are being pursued, since the § 1983 claim has not yet arisen . . . until the conviction or sentence is invalidated." Id.

See Wallace v. City of Chi., 440 F.3d 421 (7th Cir. 2006).

[12]      The remainder of the cases cited by the City Defendants likewise do not involve section 1983 claims against a municipality for failure to supervise, train, or discipline. See City Mem. at 12.

36

at 489-90. In McCarty v. Gilchrist, the Tenth Circuit, applying Heck, held that section 1983 claims for municipal liability for failure to train or supervise and supervisor liability for failure to train or supervise did not accrue until after the plaintiff's conviction was overturned. 646 F.3d 1281, 1289 (10th Cir. 2011). The Court finds this case persuasive. Caravella's section 1983 claim against the City of Miramar is premised on the fact that the City failed to properly hire, screen, train, supervise, discipline, and control its officers, resulting in illegal false arrests, detentions, and prosecutions. 3d Am. Compl. ¶¶ 197-207. This claim necessarily depends on whether Caravella was actually convicted due to the actions of improperly hired/trained/supervised/disciplined City officers. Therefore, Caravella's section 1983 claim against the City of Miramar did not accrue until his conviction was first overturned.

**b. The City Defendants are Entitled to Summary Judgment on this Claim.**

The City Defendants contend that they are entitled to summary judgment on Caravella's section 1983 claim against the City of Miramar for failure to properly train, supervise, control, or otherwise screen its employees because he "he has not asserted any official City policy that caused his damages." City Mem. at 19. Additionally, the City of Miramar argues that because there is no evidence that the City needed to train, supervise, or otherwise control these particular officers, the City is not liable as a matter of law. Id. According to Caravella, he has presented competent evidence to support this claim. City Response at 25. Caravella contends that the record reflects that (1) Defendants Pierson, Mantesta, and Guess lied and fabricated evidence; (2) they

37

were not supervised; and (3) it was City of Miramar policy in 1983-84 and today to cover up the misconduct of police officers. Id. at 26.

A municipality cannot be held liable under section 1983 for the acts of its employees on a theory of respondeat superior. Scala v. City of Winter Park, 116 F.3d 1396, 1399 (11th Cir. 1997) (citing Monnell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). To impose section 1983 liability on a municipality, a plaintiff must identify a municipal policy or custom that caused his injuries. Gomez v. Lozano, 759 F. Supp. 2d 1335, 1338 (S.D. Fla. 2011). A court may hold the municipality liable only if its custom or policy caused the municipal "employees to violate a citizen's constitutional rights." Id. (quoting Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998)). To establish section 1983 liability against a municipality based on custom, "a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." Griffin v. City of Opa-Locka, 261 F.3d 1295, 1308 (11th Cir. 2001) (internal citations and quotations omitted). A municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy "if the municipality tacitly authorizes these actions or displays deliberate indifference" towards the misconduct. Id. However, "municipal liability may be imposed for a single decision by municipal *policymakers* under appropriate circumstances." Scala, 116 F.3d at 1399 (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986)) (emphasis in original). Thus, a municipality may be liable "for constitutional deprivations resulting from governmental custom, even where such custom has not

38

received formal approval through official decision-making channels." Hornstein v.
Miami-Dade Cnty., No. 0521521CIV-HUCK, 2005 WL 3890636, at *3 (S.D. Fla. Sept. 9,
2005).

Inadequate police training may create liability for a municipality if the inadequate
training arises from deliberate indifference to those with whom the police interact.
Gomez, 759 F. Supp. 2d at 1338. Deliberate indifference "is a stringent standard of
fault, requiring proof that a municipal actor disregarded a known or obvious
consequence of his action." Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011)
(citations and internal quotation marks omitted). To establish deliberate indifference, a
plaintiff must show a pattern of improper training and that the municipality was aware of
its training program's deficiencies. Id. (citing Skop v. City of Atlanta, 485 F.3d 1130,
1145 (11th Cir. 2007)). A municipality may similarly be liable under section 1983 for
failure to supervise. Diaz-Martinez, 2009 WL 2970468, at *12.

In Count VII of the Third Amended Complaint, Caravella alleges that the City of
Miramar was "deliberately indifferent" to the necessary training of its officers, the rights
of the public, and to ensuring that its police officers did not violate citizens'
constitutional and statutory rights. 3d Am. Compl. ¶¶ 199-201. After examining the
record, the Court agrees with the City Defendants that Caravella has failed to present
evidence which establishes deliberate indifference. The only evidence Caravella has
adduced regarding police misconduct is related solely to how Pierson, Mantesta, and
Guess handled the investigation of the Jankowski murder. Caravella points to a 2009
incident where a communications supervisor completed a FDLE certification course on

39

behalf of other employees and a 2002 interview between Detective Marc Ganow and Shawn Prince as evidence of a pattern and practice of the City of Miramar failing to discipline and/or covering up the misconduct of its police officers. But, neither of these incidents is sufficiently similar or close enough in time to demonstrate a City of Miramar custom or policy. See City Response at 28; City Reply at 12-13.

Caravella's argument that the FDLE certification incident represents that the City of Miramar does not adequately punish misconduct because the individual at issue received only a demotion resulting a 5% reduction in salary, see City Response at 27-28, is without merit. Even if Caravella does not believe that this punishment was severe enough, the fact remains that a punishment was imposed and this incident had nothing to do with coercing confessions or fabricating evidence. See City Reply at 12-13; Plaintiff's Exhibit 384 [DE 291-3]. Moreover, this incident also occurred 25 years after Caravella was convicted. Thus, it cannot serve as evidence that the City of Miramar was aware of training or supervision deficiencies that existed in 1983-84. See Maestrini v. City & Cnty. of S.F., No. C 07–2941 PJH, 2009 WL 814510, at *11 (N.D. Cal. Mar. 26, 2009) (granting summary judgment on municipal liability claim because "the City's response to incidents that occurred after the October 29, 2006 incident could not have been the moving force behind any constitutional deprivation that plaintiff may have suffered. The incidents that form the basis of three of the cited complaints occurred after the incident that forms the basis of the present action, and are therefore irrelevant.").

Likewise, Caravella's allegation that Marc Ganow employed coercive

40

investigative techniques against Shaun Prince in 2002, even if true, is not evidence that a custom and practice of coercion and fabrication of evidence was in place in the City of Miramar in 1983.  Additionally, Caravella does not dispute the City Defendants' representation that Mr. Prince was never arrested for any matter other than the theft of items from a police car that he confessed to.  See City Facts ¶ 107; City Response Facts ¶ 107; Plaintiff's City Facts ¶ 38.

The Court also finds that the alleged misconduct of Defendants Pierson, Mantesta, and Guess in 1983-84 is insufficient to establish that the City of Miramar had a custom or policy of failing to supervise and discipline its officers.  Both the Supreme Court and Eleventh Circuit are clear that a single incident of constitutional violations is not sufficient to establish deliberate indifference.  See Connick, 131 S. Ct. at 1360; City of Canton v. Harris, 489 U.S. 378, 399 (1989) (O'Connor, J., concurring in part and dissenting in part) ("Allowing an inadequate training claim such as this one to go to the jury based upon a single incident would only invite jury nullification of Monell."); Craig v. Floyd Cnty., Ga., 643 F.3d 1306, 1311-12 (11th Cir. 2011) (finding that where plaintiff failed to present evidence that same practices were employed for other detainees, "evidence falls short of proving a policy or custom of constitutional violations so persistent and widespread as to be 'deemed authorized by the policymaking officials because they must have known about it but failed to stop it'").  Because Caravella has not presented any evidence other than what occurred in his own case which meets the stringent standard of proof necessary to establish deliberate indifference, summary judgment is appropriate for the City of Miramar on this claim.

41

### 3. Disputed Issues of Material Fact Preclude Summary Judgment on Caravella's Section 1983 Claim Against Defendant Fantigrassi (Count IX).

The BSO Defendants move for summary judgment on Caravella's claim pursuant to section 1983 against Defendant Fantigrassi. BSO Motion at 7-11. In support of this argument, the BSO Defendants contend that the Fifth Amendment has no application to this case and that there are no factual allegations which support that Fantigrassi violated the Sixth Amendment. Id. at 7. They also argue that the Fourth Amendment does not apply because "Fantigrassi did not arrest or otherwise seize Caravella." Id. at 8. The BSO Defendants further contend that a malicious prosecution claim against Fantigrassi cannot stand because he was not the legal cause of Caravella's prosecution and that Fantigrassi is entitled to qualified immunity based on allegations that he lied regarding the results of the polygraph examination. Id. Finally, they argue that it was not clearly established in 1983 that police officers could not lie to suspects to obtain confessions. Id. at 9-10. In opposition, Caravella argues that he has established a section 1983 malicious prosecution claim against Fantigrassi because he "has provided evidence that Defendant FANTIGRASSI personally participated in and aided and abetted in the continued detention and malicious prosecution of Anthony Caravella." BSO Response at 18.

As an initial matter, the Court agrees with the BSO Defendants that the Fifth Amendment is inapplicable to Caravella's section 1983 claim against Fantigrassi. Although Caravella asserts in his response that his Fifth Amendment claim is one for a violation of the Fifth Amendment's self-incrimination clause, BSO Response at 17, this

42

is contradicted by the language of the Third Amended Complaint itself. The Third

Amended Complaint states that it brings a claim against Fantigrassi for violation of

Caravella's rights to "due process of law under the Fifth Amendment." 3d Am. Compl. ¶

215. Thus, Count IX does not bring a claim for violation of the Fifth Amendment's self-

incrimination clause, as Caravella purports to argue in his response. The Court agrees

with the BSO Defendants that any claim for a violation of due process must be brought

under the Fourteenth Amendment, not the Fifth. See Ambrose v. City of New York, 623

F. Supp. 2d 454, 466 (S.D.N.Y. 2009) ("Because Plaintiff's lawsuit does not allege any

deprivation of his rights by the federal government, any due process claim he has

against the City is properly brought under the Due Process Clause of the Fourteenth

Amendment, not under that of the Fifth Amendment."); see also Porter, 483 F.3d at

1297 n.1.

    Turning to the BSO Defendants' argument regarding applicability of the Sixth

Amendment, Caravella has alleged that Fantigrassi violated his right to a fair trial. "A

claim under § 1983 for violation of the right to a fair trial lies where a police officer

'creates false information likely to influence a jury's decision and forwards that

information to prosecutors.'" Brandon v. City of New York, 705 F. Supp. 2d 261, 276

(S.D.N.Y. 2010) (quoting Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d

Cir.1997)). In Count IX of the Third Amended Complaint, Caravella alleges that

Defendant Fantigrassi violated his right "to a fair trial under the Sixth Amendment." 3d

Am. Compl. ¶ 215. This count incorporates by reference factual allegations that

Fantigrassi fabricated the results of Caravella's polygraph examination, coerced a

confession from him, and withheld exculpatory evidence, all of which contributed to

Caravella's conviction for a crime he did not commit. Id. ¶¶ 68-69, 74-76, 82, 84, 94.

These factual allegations support a section 1983 claim for violation of Caravella's Sixth

Amendment right to a fair trial. Accordingly, summary judgment will be denied as to this

issue.

The Court also rejects the BSO Defendant's argument that the Fourth

Amendment is inapplicable to Fantigrassi's conduct. See BSO Motion at 8. Caravella

has pointed to evidence that establishes a disputed issue of material fact as to whether

Fantigrassi helped cause his prosecution. A plaintiff establishes a section 1983

malicious prosecution claim where the police officer responsible for the plaintiff's arrest

allegedly fabricated evidence against him. Williams, 297 F. App'x at 947. Caravella

has provided evidence that the interview Fantigrassi conducted alone with the mentally

deficient Caravella prior to the administration of the polygraph led to the second of

Caravella's coerced confessions. Fantigrassi Trial at 1403:14-19. It is undisputed that

this second confession was read to the jury at Caravella's criminal trial. City Facts ¶

102. Additionally, Fantigrassi received a commendation from the City of Miramar for his

work on the case which stated that without his participation in the investigation, "the

case might not have had the same exact end results." See 1/12/1984 Letter from

George Pierson, William Mantesta, and R.V. Merritt to BSO Sheriff George Brescher,

Plaintiff's Exhibit 224 [DE 304-9]. Caravella has also presented evidence that

Fantigrassi later changed his interpretation of Caravella's polygraph based on new

information provided to him by the City Defendants in order to eliminate Steve Chappell

44

as a suspect. See 12/30/1983 Pierson Report, Plaintiff's Exhibit 16 [DE 262-16] at 12.

Taken together, a jury could conclude that Fantigrassi's conduct caused Caravella's

prosecution.

The BSO Defendants next argue that Fantigrassi is entitled to qualified immunity

based on allegations that he lied regarding the results of Caravella's polygraph. BSO

Motion at 8. The BSO Defendants argue that Fantigrassi did not violate any of

Caravella's rights. Id. at 9. They also argue it was not clearly established in 1983 that

law enforcement officers could not lie to suspects regarding the results of polygraph

examinations. Id. at 9-10. In response, Caravella argues that "[n]o reasonable officer

at the time would have believed that lying and fabricating evidence in order to convict

someone of a crime they did not [commit] entitles them to qualified immunity." BSO

Response at 19. Accordingly, Caravella argues that Fantigrassi is not entitled to

qualified immunity "for any false statements made or false information given to

prosecutors, defense counsel, witnesses or the public that took place outside of the

judicial proceedings." Id. at 20.

Qualified immunity "offers complete protection for government officials sued in

their individual capacities if their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." Wood v.

Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (internal citations and quotations omitted).

Qualified immunity is intended "to allow government officials to carry out their

discretionary duties without the fear of personal liability or harassing litigation,

protecting from suit all but the plainly incompetent or one who is knowingly violating the

45

federal law." Id. Once an official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to overcome the privilege of qualified immunity. See Case v. Eslinger, 555 F.3d 1317, 1325-26 (11th Cir. 2009). To do so, the plaintiff must prove: (1) that the defendant violated a constitutional right and (2) that this right was clearly established at the time. See id.

As discussed above, Caravella has adduced evidence that Fantigrassi's conduct violated his constitutional rights under the Fourth and Sixth Amendments by fabricating evidence such as the results of Caravella's polygraph examination and coercing a false confession from him. See Ricciuti, 124 F.3d at 130 (denying qualified immunity where defendants forwarded a known false confession to prosecutors). Caravella has also presented evidence that Fantigrassi withheld exculpatory evidence in violation of his due process rights under the Fourteenth Amendment. See, e.g., City Response Facts ¶ 91. Thus, a disputed issue of material fact exists as to whether Defendant Fantigrassi violated Caravella's constitutional rights.

The Court also finds that it was clearly established in 1983 that police officers could not coerce confessions, fabricate evidence, or otherwise withhold exculpatory evidence. The cases the BSO Defendants rely upon for the proposition that police officers were allowed to lie regarding polygraph results to obtain confessions in 1983, Frazier v. Cupp, 394 U.S. 731, 739 (1969) and Burch v. State, 343 So. 2d 831, 833 (Fla. 1977), are too narrow. The issue, here however, is not whether Fantigrassi lied regarding the results of Caravella's polygraph examination to cause him to confess, but whether he deliberately coerced a confession from a mentally deficient 15-year-old boy

46

and then lied about the results of Unthe polygraph examination to substantiate the confession. See 3d Am. Compl. ¶¶ 66-68. It was clearly established in 1983 that police officers could not fabricate evidence against or otherwise withhold exculpatory evidence from suspects. See City Response at 14 (citing Schneider v. Estelle, 552 F.2d 593, 595 (5th Cir. 1977) (where conviction based on police officer's false testimony, disputed issue existed as to whether defendant's due process right to fair trial violated);[13] Napue v. Illinois, 360 U.S. 264, 268-70 (1959) (conviction obtained through false evidence violates due process right to fair trial); Pyle v. Kansas, 317 U.S. 213, 216 (1942) (where conviction resulted from use of perjured testimony and suppression of exculpatory evidence, there was sufficient allegation of deprivation of constitutional rights)); see also Donnelly v. DeChristoforo, 416 U.S. 637, 646 (1974) ("A long series of decisions of this Court, of course, had established the proposition that the 'Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence.'") (footnote and citations omitted); Jackson v. Denno, 378 U.S. 368, 384 n.11 (1964) ("(R)eliance on a coerced confession vitiates a conviction because such a confession combines the persuasiveness of apparent conclusiveness with what judicial experience shows to be illusory and deceptive evidence. A beaten confession is a false foundation for any conviction, while evidence obtained by illegal search and seizure, wire-tapping, or larceny may be and often is of the utmost verity. Such police lawlessness therefore may not void state convictions while forced confessions will do

---

[13]     The decisions of the former United States Court of Appeals for the Fifth Circuit issued before September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

so.") (quotations omitted)); Blackburn v. Alabama, 361 U.S. 199, 206-07 (1960) ("[I]n cases involving involuntary confessions, this Court enforces the strongly felt attitude of our society that important human values are sacrificed where an agency of the government, in the course of securing a conviction, wrings a confession out of an accused against his will."). Accordingly, the Court finds that Fantigrassi is not entitled to qualified immunity.

### 4. Summary Judgment is Appropriate for the BSO Defendants on the Section 1983 Claim against Defendant Jenne (Count X).

The BSO Defendants also seek summary judgment on the section 1983 claim brought against Defendant Jenne in his individual capacity. BSO Motion at 10-11. The BSO Defendants argue that the section 1983 claim against Jenne is "unsupportable" because he was not part of the BSO until 15 years after Caravella's arrest. Id. at 10. They claim that "there is no evidence that Jenne knew Fantigrassi acted in an unconstitutional fashion or violated Caravella's rights." Id. They also argue that to the extent the claim is premised on the BSO DNA lab's alleged failure to properly test evidence, the record does not demonstrate that the testing protocols employed were inappropriate or that Jenne knew of that insufficiency. Id. In response, Caravella contends that "the evidence demonstrates that it was Defendant JENNE's personal participation which caused the Plaintiff's continuing and ongoing damages by concealing and covering up the illegal and unconstitutional conduct of his agents, including Defendant FANTIGRASSI." BSO Response at 20. Caravella also argues that the DNA testing performed by the BSO lab "was either incompetent or intentional." Id. at 21.

Supervisory liability under section 1983 is appropriate "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation." Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (internal quotations and citations omitted). "[A] causal connection may be established when: 1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." McCreary v. Parker, 456 F. App'x 790, 793 (11th Cir. 2012) (quoting Valdes v. Crosby, 450 F.3d 1231, 1237 (11th Cir. 2006)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." West v. Tillman, 496 F.3d 1321, 1329 (11th Cir. 2007) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir.1999)).

The Court finds that Defendant Jenne is entitled to summary judgment on this claim. First, Caravella has failed to establish a disputed issue of material fact regarding whether Fantigrassi committed any violations of Caravella's constitutional rights after 1984 that Jenne, as his supervisor, can be held liable for. Although Caravella asserts that Fantigrassi was "hands on" with the BSO DNA lab in his position as Major of Criminal Investigations, Plaintiff's BSO Facts ¶ 59, Caravella has failed to produce any evidence that Fantigrassi tampered with the DNA testing performed in 2001. Caravella

49

has not adduced any evidence that Fantigrassi concealed and covered up his illegal and unconstitutional conduct towards Caravella during the tenure of Jenne. See BSO Response at 20. Caravella's citation of the Jerry Frank Townsend case and others where Jenne allegedly "allowed FANTIGRASSI to maintain control over the very evidence and records pertaining to the false arrest and convictions," BSO Response at 21, fails to establish that Fantigrassi caused any additional constitutional violation to Caravella during Jenne's tenure as Sheriff. Because Caravella has failed to present any evidence that Fantigrassi committed a constitutional violation against him during the period from 1998-2007 when Jenne served as Sheriff, supervisory liability against Jenne pursuant to section 1983 would be improper. BSO Facts ¶ 16; BSO Response Facts ¶ 16; see Beshers v. Harrison, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) (supervisory liability inappropriate where there is no underlying constitutional violation).

To the extent Caravella alleges more generally that Jenne should be held liable as supervisor of the BSO DNA lab for its failure to properly conduct DNA testing in 2001, Caravella has failed to establish any facts which would establish a claim against Jenne in his individual capacity. The record evidence Caravella cites for this proposition, Plaintiff's BSO Facts ¶¶ 46-48, 60, does not establish that the BSO DNA lab deliberately tampered with the 2001 DNA testing results to deprive Caravella of his constitutional rights. Even if the BSO DNA lab was negligent or incompetent in performing the 2001 DNA testing, Caravella has failed to demonstrate a causal connection between this alleged misconduct and *Jenne's* role as Sheriff. The record simply does not support that Jenne, merely because he was the BSO Sheriff at the time, should have been aware of alleged testing errors committed by the BSO lab in

2001.[14]  See Barr v. Gee, 437 F. App'x 865, 875 (11th Cir. 2011) ("A supervisor cannot be held liable under § 1983 for mere negligence in the training or supervision of his employees."). Accordingly, summary judgment will be granted for Defendant Jenne as to Count X.

### 5. Summary Judgment is Appropriate for the BSO Defendants on the Section 1983 Claim against Defendant Israel (Count XII).

The BSO Defendants also move to dismiss the section 1983 claim brought against Defendant Israel in his official capacity. BSO Motion at 12-14.  According to the BSO Defendants, summary judgment is appropriate on this claim because (1) the Fourth, Fifth, and Sixth Amendments do not apply; (2) the crime was investigated by the City of Miramar, not the BSO; and (3) the record does not support a custom or policy causing constitutional injury to Caravella.  Id. at 12.  In opposition, Caravella argues that this claim is premised upon the BSO's failure to retain and supervise deputy sheriffs rather than a failure to train.  BSO Response at 26.[15]  He also contends that "[t]he evidence demonstrates that the Broward County Sheriff's Office had a long-standing and widespread pattern of constitutional violations, as well as illegal conduct by its

---

[14]      The evidence cited by Caravella in support of this claim, Plaintiff's BSO Facts ¶¶ 46-48, does not establish that Jenne should have been aware of alleged testing errors and contamination at the lab.  For example, Caravella has not cited any other case where the DNA lab was previously negligent in its testing of potentially exonerating DNA evidence.  Nor has he cited any other case where the BSO DNA lab deliberately tampered with DNA test results to prevent a conviction from being overturned.

[15]      This is contradicted by the language of the Third Amended Complaint itself which states that the claim is premised on "failure to *train* and/or supervise and/or control and/or otherwise screen employees of the Broward County Sheriff's Office."  3d Am. Compl. ¶ 242 (emphasis added).

51

officers, including FANTIGRASSI, due to its failure to supervise and discipline its officers and its de facto policy of failing to investigate and covering up the misconduct of its deputy sheriffs." Id. at 26-27.

The standard for municipal liability is set forth in Section E.2 above. First, as discussed in Section E.3, supra, Caravella's claim that Defendant Fantigrassi violated his constitutional rights under the Fourth, Sixth, and Fourteenth Amendments will proceed to the jury. Accordingly, the Court rejects the BSO Defendants' arguments that these amendments do not apply to this case.[16] See BSO Motion at 12. The Court also rejects the BSO Defendants' argument that liability is improper because this crime was investigated by Miramar detectives. See id. As discussed above, Caravella has presented sufficient evidence that Defendant Fantigrassi violated his constitutional rights under the Fourth, Sixth, and Fourteenth Amendments. Thus, summary judgment is improper for the BSO Defendants on the grounds that "there was no constitutional violation by Fantigrassi." See BSO Motion at 14.

Finally, regarding whether Caravella has presented record evidence of an unconstitutional BSO policy or custom, the Court finds that Caravella has failed to create a disputed issue of material fact as to this issue. According to Caravella, the BSO has a "long-standing policy and custom of coercing false confessions, fabricating evidence and withholding and/or concealing exculpatory evidence." Plaintiff's BSO

---

[16]    The Court also held in Section E.3, supra, that because Count IX alleged a claim against Fantigrassi for violation of Caravella's Fifth Amendment right to due process, the Fifth Amendment would not apply. Count XII does not similarly limit the claim to the Fifth Amendment's due process clause. Accordingly, the Fifth Amendment would apply to the extent the claim is not premised solely on due process violations.

Facts ¶ 50. Specifically, Caravella cites cases involving Jerry Frank Townsend, Frank
Lee Smith, Timothy Brown, Peter Roussonicolos, and John Wood as evidence of this
BSO policy or custom. Id. On December 18, 2012, the Court entered an Order
Granting the City Defendant's Motion to Strike [DE 319] ("December 18, 2012 Order").[17]
In the December 18, 2012 Order, "the Court strongly urge[d] Plaintiff to reconsider and
refrain from any long string cites which are applicable to entire paragraphs of his
response." December 18, 2012 Order at 3. The Court stated that "Plaintiff's citation to
this record should be as specific as possible, even if that necessitates multiple citations
per sentence." Id. Despite being given this specific directive from the Court and
permitted another opportunity to comply with Local Rule 56.1, Caravella has still
substantially failed to comply. Paragraph 51 is supported by a string cite which
supposedly has information regarding each of the other individuals that Caravella
references. However, Caravella has failed to include pinpoint citations or otherwise
alleviate the burden on the Court to discover how these documents support his
allegations. For example, as pointed out by the BSO Defendants, DE 307 and DE 314,
cited by Caravella, are comprised of 10 and 9 separate exhibits respectively. See BSO
Reply Facts at 8 ¶ 50. Additionally, DE 308-10 is a 33-page transcript from an
evidentiary hearing. Caravella has failed to provide any pinpoint citations to direct the
Court to testimony which specifically reflects a BSO practice and custom of coercing

_____

[17]      The Motion to Strike was necessitated by Caravella's initial failure to
comply with Local Rule 56.1 when responding to the City Defendants' Statement of
Undisputed Facts. The Court thereafter granted Plaintiff an extension of time to also
amend her response to the BSO Defendants' Statement of Undisputed Facts. See DE
322.

false confessions, fabricating evidence, and withholding exculpatory evidence. As this Court stated in the beginning of this Order, it is Caravella's burden, not the Court's, to demonstrate the existence of disputed issues of material fact which preclude summary judgment. Accordingly, the Court declines to sift through these exhibits to find support for Caravella's contention that a pattern or custom existed at the BSO. See Melton v. Nat'l Dairy LLC, 705 F. Supp. 2d 1303, 1323 (M.D. Ala. 2010) ("Again, it is not this Court's job to cull through the voluminous record in this case for specific examples and Plaintiff gave no pin point cites to identify relevant matters for the Court.").

Even if the Court were to undertake the laborious task of determining how each of these cited exhibits supports Caravella's allegation that a BSO policy or practice of false confessions and fabricated evidence existed, summary judgment would still be appropriate for the BSO Defendants. Caravella also contends that the BSO had a written policy "which is a virtual blueprint for coercing false confessions," Plaintiff's BSO Facts ¶ 52, and a policy of purging officer records dealing with complaints or misconduct. Id. ¶ 51. The record, however, does not establish whether any complaints were ever made regarding Fantigrassi's conduct prior to his participation in the Caravella matter. Moreover, it does not appear that the written policy that Caravella describes as a "virtual blueprint for coercing false confessions," even if it existed in 1983, would apply to this case where the arrest was made by the City of Miramar and Fantigrassi was brought in to conduct a polygraph examination. See id. ¶ 52 n.1.

Caravella has similarly failed to demonstrate a policy or practice regarding problems with the BSO DNA lab. As discussed in relation to his claim for supervisory

liability against Defendant Jenne, Caravella has not cited any other case where the DNA lab was previously negligent in its testing of potentially exonerating DNA evidence. Nor has he cited any other case where the BSO DNA lab deliberately tampered with DNA test results to prevent a conviction from being overturned. Thus, the record simply does not support Caravella's claims that the BSO was deliberately indifferent to known testing or contamination problems at the laboratory.

## F. Summary Judgment is Not Appropriate for Defendants Pierson, Mantesta, Guess, and Fantigrassi on Caravella's Section 1983 Conspiracy Claim (Count V).

The City Defendants seek summary judgment on Caravella's section 1983 conspiracy claim because "the existence of probable cause precludes Caravella's claim for conspiracy." City Mem. at 28. The City Defendants also argue that summary judgment would also be appropriate because "Caravella has no evidence that Pierson, Mantesta, Guess and Fantigrassi reached any specific type of agreement to violate Caravella's rights." Id. They further argue that any claim for a conspiracy between Pierson, Manetesta, and Guess is barred by the intracorporate conspiracy doctrine. Id. at 29. The BSO Defendants similarly move for summary judgment as to this claim because "there is no evidence of a conspiracy between Fantigrassi and the Miramar detectives." BSO Motion at 5. In response, Caravella contends that his "evidence clearly shows that Defendants PIERSON, MANTESTA, and GUESS conspired with Defendant FANTIGRASSI to illegally interrogate Caravella, make false statements on reports and under oath, and to fabricate false evidence against him in order to cause the malicious prosecution and his resulting criminal conviction." City Response at 15; see also BSO Response at 9.

To state a section 1983 claim for conspiracy, a plaintiff must allege a conspiracy that resulted in the actual denial of some underlying constitutional rights. Grider, 618 F.3d at 1260. The plaintiff must show that the parties "reached an understanding to deny the plaintiff his or her rights." Id. (quoting Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990)). Additionally, the plaintiff must establish that the conspiratorial acts impinge upon the federal right. Bendiburg, 909 F.2d at 468. To prove conspiracy under section 1983, a plaintiff must show (1) that the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) an actionable wrong to support the conspiracy. Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla., 956 F.2d 1112, 1122 (11th Cir.1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication." Id. "For a conspiracy claim to survive a motion for summary judgment '[a] mere 'scintilla' of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'" Rowe, 279 F.3d at 1284 (quoting Walker, 911 F.2d at 1577). The existence of a conspiracy may be inferred from circumstantial evidence. See Am. Fed'n of Labor & Congress of Indus. Orgs. v. City of Miami, 637 F.3d 1178, 1191 (11th Cir. 2011) (citations omitted).

Here, the Court finds that Caravella has adduced sufficient circumstantial evidence that a conspiracy existed between Defendants Pierson, Mantesta, Guess, and Fantigrassi to defeat the Defendants' Motions for Summary Judgment. The record reflects that prior to conducting the polygraph, Defendant Fantigrassi spoke to Defendant Pierson and one other detective. 1984 Fantigrassi Deposition, Plaintiff's Exhibit 272 [DE 288-1] at 8:5-15. The detectives provided Fantigrassi with Caravella's statement and a description of the crime scene. Id. Defendant Fantigrassi thereafter

56

interviewed Caravella alone before he administered the polygraph examination.

Fantigrassi Trial at 1403:14-19. Additionally, Defendant Fantigrassi later changed his

interpretation of Caravella's polygraph examination based on new information provided

to him by the City Defendants. See 12/30/1983 Pierson Report, Plaintiff's Exhibit 16

[DE 262-16] at 12 (reflecting that after taking and reviewing the polygraph of Steve

Chappell, Fantigrassi determined that portions of the polygraph he took from Caravella

now indicated that Caravella was deceptive when he implicated Chappell in the

homicide). Fantigrassi also received a commendation from the City of Miramar for his

work on the case. See 1/12/1984 Letter from George Pierson, William Mantesta, and

R.V. Merritt to BSO Sheriff George Brescher, Plaintiff's Exhibit 224 [DE 304-9] (noting

that "[p]rior to submitting to a polygraph examination being administered by Sgt.

Fantigrassi, the juvenile began to tell the truth and supplied the correct details that he

had previously left out. Had it not been for Sgt. Fantigrassi, the case might not have

had the same exact end results.").[18] An agreement may be inferred "from the

relationship of the parties, their overt acts and concert of action, and the totality of their

conduct." City of Miami, 637 F.3d at 1192. Here, a jury may infer from the above

evidence that Defendant Fantigrassi engaged in a conspiracy with Defendants Pierson,

---

[18]     In their reply, the City Defendants assert that "Caravella does not address
the fact that this alleged agreement that included Fantigrassi, happened after the City
Officers' alleged bad acts occurred (e.g. the arrest and alleged coercion of Caravella
before or during his first sworn statement)." City Reply at 10. This argument is without
merit. During his first statement, Caravella admitted to being present during Ms.
Jankowski's murder, but denied participation. First Caravella Statement [DE 218-2].
Thus, it is entirely feasible that Defendants Pierson, Mantesta, and Guess entered into
an agreement with Defendant Fantigrassi to coerce a confession from Caravella during
the polygraph examination to establish his actual participation in the rape and murder.

Mantesta, and Guess to coerce a false confession from Caravella in order to convict him of Ms. Jankowski's murder.[19]

## G. RICO Claims (Counts XIII-XV).

### 1. The RICO Claims Cannot Be Dismissed Based on the Expiration of the Statute of Limitations.

Defendants contend that Caravella's claims under the Florida RICO statute are time barred. The BSO Defendants argue that Caravella suffered damage from the alleged RICO violations no later than 1984. BSO Motion at 17. The BSO Defendants also argue that equitable tolling would not apply because "the statute of limitations cannot be tolled unless Caravella was unaware of his injury, which he certainly was, the injury was complete at the time, and there is no evidence of fraudulent concealment by Fantigrassi or Jenne." Id. The City Defendants posit that Caravella's RICO claims accrued in 1984 because Caravella knew his injuries as soon as he was incarcerated for a crime he claims he did not commit. City Mem. at 13. For the same reason, the City Defendants also argue that equitable tolling does not apply to Caravella's RICO claims. Id. at 14-15. Caravella argues that evidence demonstrates that the Defendants concealed their misconduct. City Response at 24. He also contends that he could not have brought his RICO claims until his conviction was invalidated because the illegal acts "would necessarily imply the invalidity of his conviction." Id. (citing Abella v. Rubino, 63 F.3d 1063, 1065 (11th Cir. 1995)).

---

[19]     Because the Court has concluded that Caravella has presented sufficient evidence regarding a conspiracy between the City Defendants and Defendant Fantigrassi to defeat Defendants' Motions for Summary Judgment, the Court does not address the City Defendants' argument regarding applicability of the intracorporate conspiracy doctrine. See City Mem. at 29.

58

The statute of limitations for Florida RICO claims is five years. Fla. Stat.

§ 772.17. Unless tolled, the statute of limitations for RICO actions runs from the date

the plaintiff knew he was injured. Pac. Harbor Capital, Inc. v. Barnett Bank, N.A., 252

F.3d 1246, 1251 (11th Cir. 2001). In the February 29, 2012 Order, the Court did not

address whether Heck extends to civil RICO claims. The Eleventh Circuit has not

addressed the applicability of Heck to civil RICO claims. See Harrison v. Grand Jurors,

No. 3:05CV348/MCR/MD, 2006 WL 354218, at *2 (N.D. Fla. Feb. 13, 2006). Other

courts, however, have concluded that Heck applies. See Gibbs v. United States, 865 F.

Supp. 2d 1127, 1156-57 (M.D. Fla. 2012) (citing King v. Farris, No. 5:08-CV-186(CAR),

2008 WL 5115062 (M.D. Ga. Dec. 3, 2008) (dismissing RICO claim where Plaintiff did

not claim any injury apart from his conviction); Harrison, 2006 WL 354218, at *3 ( "Heck

applies equally to civil RICO actions where the RICO claim collaterally attacks a

criminal conviction."); Williams v. Hill, 878 F. Supp. 269 (D.D.C. 1995), aff'd, 74 F.3d

1339 (D.C. Cir. 1996) (concluding that Heck was applicable to civil RICO action);

Hermansen v. Chandler, 211 F.3d 1269 (Table), 2000 WL 554058, at *2 (6th Cir. 2000)

(unpublished opinion) ("This court has consistently applied the [ Heck ] princip[le] to civil

actions under RICO ....") (citing other unpublished Sixth Circuit cases); but see Hunter

v. Gates, No. CV99-12811, 2001 WL 837697, at *3-4 (C.D. Cal. Apr. 16, 2001) (holding

the Heck rule does not apply to civil RICO claims)). The Court finds the rationale of

these courts persuasive and concludes that Heck applies to civil RICO claims.[20]

---

[20]     Even though Heck is a Supreme Court case, Florida's RICO law "is
informed by case law interpreting the federal RICO statute ... on which Chapter 772 is
patterned." Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004)
(quoting Jones v. Childers, 18 F.3d 899, 910 (11th Cir.1994) (internal citation omitted)).

Additionally, the Court finds that Heck applies to Caravella's RICO claims. These claims are premised on allegations that the Defendants conspired to fabricate and tamper with evidence to cause Caravella's conviction. 3d Am. Compl. ¶¶ 257, 268, 273. Because these claims "necessarily imply the invalidity of his conviction," Heck, 512 U.S. at 487, Caravella could not bring them until after his conviction was invalidated. Accordingly, the statute of limitations does not bar Caravella's RICO claims.

### 2. Defendants are Entitled to Summary Judgment on Caravella's RICO Claims.

Caravella brings RICO claims pursuant to Fla Stat. § 772.103 (2)-(4) against Defendants Pierson, Mantesta, Guess, Fantigrassi, and Jenne.[21] The City Defendants have moved for summary judgment on these claims asserting that (1) Caravella has not demonstrated an association-in-fact enterprise; and (2) Caravella has not established either open-ended or closed-ended continuity. City Mem. at 29-33. The BSO Defendants similarly move for summary judgment on these claims, arguing that

---

Because "Florida courts often look to the Federal RICO decisions for guidance in interpreting and applying the act[,] Fla. Software Sys., Inc. v. Columbia/HCA Healthcare Corp., 46 F. Supp. 2d 1276, 1284 (M.D. Fla.1999), the analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims." Jackson, 372 F.3d at 1263-64 (internal quotation marks omitted); see also All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc., 135 F.3d 740, 745 (11th Cir.1998) ("Florida's RICO statutes have consistently been interpreted using federal RICO claim cases."); Bortell v. White Mountains Ins. Grp., Ltd., 2 So. 3d 1041, 1047 (Fla. Dist. Ct. App. 2009) ("Because the Florida RICO Act is patterned after the federal act, Florida looks to federal authorities in construing its own RICO statute."). Accordingly, the Court finds it is appropriate to apply Heck to the Florida RICO statute. Because the Court concludes that Heck applies, the Court does not address the Defendants' arguments regarding the applicability of equitable tolling to this case.

[21]     Count XIV, a claim brought pursuant Fla. Stat. § 772.103(2), is against Defendants Pierson, Mantesta, Guess, and Fantigrassi only.

(1) there is no evidence of an association-in-fact enterprise; (2) there is no evidence of continuing racketeering activity; and (3) the record does not support a closed-ended or open-ended pattern of racketeering activity. BSO Motion at 16.

In response, Caravella contends that the Court has already ruled that the BSO and the City of Miramar are enterprises and that the relationship between the individual Defendants constitutes an association-in-fact enterprise. City Response at 20. Caravella also argues that he has produced "competent evidence" of an ongoing pattern of racketeering activity. Id. at 21. According to Caravella, the purpose of the racketeering activity was not to wrongfully convict Caravella and keep him in prison, but rather to enjoy "financial gain and expansion of the enterprises, i.e. the City of Miramar Police Department and the Broward County Sheriff's Office." BSO Response at 30. Caravella argues that evidence demonstrates that "the Defendants did achieve the promotions and financial benefits that was their common purpose in coercing false confessions from Caravella and others and, in the course of doing so, were able to close cases without investigation." Id.

Fla. Stat. § 772.103 provides that:

It is unlawful for any person:

. . .

(2) Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(3) Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

(4) To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

61

Fla. Stat. § 772.103. To successfully bring a RICO claim, a plaintiff must establish a RICO enterprise and a "pattern of racketeering activity." Jackson, 372 F.3d at 1264. A RICO enterprise exists "where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." Id. (quoting United States v. Hewes, 729 F.2d 1302, 1311 (11th Cir.1984)). To sufficently allege a pattern of racketeering activity, a plaintiff must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature. Id. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 242 (1989)). "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." Cigna Corp., 605 F.3d at 1293 (quoting Republic of Pan. v. BCCI Holdings (Lux.) S.A., 119 F.3d 935, 950 (11th Cir.1997)). A plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy "may be inferred from the conduct of the participants." Id. (quoting Republic of Pan., 119 F.3d at 950).

The Florida RICO statute defines "enterprise" as "any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of

individuals associated in fact although not a legal entity; and the term includes illicit as well as licit enterprises and governmental, as well as other, entities." Fla. Stat. § 772.102(3). "[T]he existence of an enterprise is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1284 (11th Cir. 2006) (quotations omitted). "[T]he definitive factor in determining the existence of a RICO enterprise is the existence of an association of individual entities, however loose or informal, that furnishes a vehicle for the commission of two or more predicate acts." Id.

Both the BSO and City Defendants challenge whether Caravella has presented sufficient evidence of an association-in-fact enterprise between Defendants Pierson, Mantesta, Guess, Fantigrassi, and Jenne, as alleged in the Third Amended Complaint. See 3d Am. Compl. ¶¶ 254, 272.[22] While Caravella is correct that the Court found that he had sufficiently alleged an association-in-fact enterprise to survive Defendants' Motions to Dismiss, this ruling was premised on the Court's acceptance of all allegations in the First Amended Complaint as true. Accordingly, the Court's ruling in the February 29, 2012 Order and the July 24, 2012 Order Granting Defendants Pierson, Mantesta, and Guess' Motion to Dismiss Counts XIII, XIV, and XV of Second Amended Complaint [DE 154] does not establish that Caravella has presented sufficient evidence to survive Defendants' Motions for Summary Judgment. After review of the record, the

---

[22]     Caravella also asserts an association-in-fact enterprise consisting of Defendants Fantigrassi and Jenne in Count XV. See 3d Am. Compl. ¶ 273(D).

Courts finds that Caravella has failed to establish the existence of an association-in-fact enterprise between these Defendants. To survive Defendants' Motions for Summary Judgment, Caravella must come forward with evidence demonstrating that the association-in-fact enterprise "function[s] as a continuing unit." Mohawk Indus., Inc., 465 F.3d at 1284. Caravella has failed to produce any evidence regarding any continued organization between Defendants Pierson, Mantesta, Guess, and Fantigrassi beyond 1984. Caravella also has not adduced any evidence regarding any association between Defendants Pierson, Mantesta, Guess, and Jenne, who did not become BSO Sheriff until 1998, or between Defendants Fantigrassi and Jenne. Thus, Caravella's RICO claims fail to the extent they are premised on the existence of an association-in-fact enterprise between the Defendants.[23]

The City and BSO Defendants also contend that they are entitled to summary judgment because Caravella has failed to establish a pattern of racketeering activity. See City Mem. at 17; BSO Motion at 16. For the reasons discussed below, the Court agrees and will grant summary judgment as to all RICO claims. The Eleventh Circuit has observed that with RICO claims:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. . . . Often a RICO action

---

[23]    As the Court has previously found, the City of Miramar Police Department and the Broward Sheriff's Office may be considered enterprises under the statute. See February 29, 2012 Order at 49. Accordingly, the Court will address the Defendants' other arguments which they contend warrant summary judgment on the RICO claims.

> will be brought before continuity can be established in this way. In such cases,
> liability depends on whether the threat of continuity is demonstrated.

Jackson, 372 F.3d at 1265 (quoting H.J. Inc., 492 U.S. at 241-42). Where RICO

allegations concern only "a single scheme with a discrete goal," courts have refused to

find a closed-ended pattern of racketeering. Id. at 1267 (citing cases). To establish

open-ended continuity, a plaintiff must establish that the predicate acts were the

enterprise's "regular way of doing business" or threaten repetition in the future. Id. at

1265. Caravella contends that he has presented competent evidence of an ongoing

pattern of racketeering activity within the City of Miramar which continues to the

present. City Response at 21. However, as discussed in conjunction with Caravella's

section 1983 claim against the City of Miramar, Caravella has failed to establish any

conduct related to fabrication of evidence, coercion of confessions, and concealment of

exculpatory evidence, other than what occurred in his own case. Thus, Caravella

cannot establish open-ended continuity because he cannot demonstrate that coerced

confessions, fabrication of evidence, and concealment of evidence was the City of

Miramar's regular way of doing business or threaten repetition in the future.

See Jackson, 372 F.3d at 1265. Caravella also cannot establish close-ended continuity

because the record evidence presents only "a single scheme with a discrete goal."

See id. at 1267. Accordingly, because Caravella has failed to establish either a closed-

ended or open-ended pattern of continuity on the part of the City Defendants, summary

judgment will be granted on the RICO claims.[24]

---

[24]      As discussed by the City Defendants, Caravella's allegations in the Third
Amended Complaint regarding Ian Kissoonial, Chiquita Hammonds, Cornelius Green,

65

Caravella has similarly failed to establish a pattern of racketeering activity on the part of the BSO Defendants. First, the Court notes that there is absolutely no record evidence that Defendant Jenne ever participated in a scheme to falsify reports and conceal exculpatory evidence regarding Caravella or any other individual. As discussed regarding the municipal liability claim against Defendant Israel, there is zero evidence that the so called "exceptional clearance policy" would apply to this case where the City of Miramar, not the BSO, arrested Caravella. See BSO Response at 30; BSO Reply at 9.[25] Moreover, Caravella has failed to establish that Defendants Jenne and Fantigrassi benefitted financially from the alleged predicate acts.[26] Given that Caravella brings this RICO claim solely against Defendants Jenne and Fantigrassi, who both are no longer with the BSO, Caravella cannot establish an open-ended pattern of racketeering activity because no threat of repetition exists. As the Supreme Court has stated:

---

and Macquerita Quire, 3d Am. Compl. ¶ 146(E), do not establish false arrests, imprisonment, false prosecution, or excessive use of force within the City of Miramar Police Department. See City Mem. at 32.

[25]     For the same reason, the quota arrest system Caravella references would also be inapplicable to this case. See Plaintiff's BSO Facts ¶ 58.

[26]     Paragraph 62 of Plaintiff's BSO Facts purports to assert that Jenne used clearance numbers to persuade other municipalities to join the BSO, used a grant to remodel his office, and formed a for-profit corporation while Sheriff. Plaintiff's BSO Facts ¶ 62. None of these purported financial benefits establish that Jenne participated in a RICO enterprise based on coerced confessions, fabrication of evidence, and withholding of exculpatory evidence.

Caravella has also failed to establish any connection between the alleged predicate acts and Fantigrassi's financial and professional gains. See Plaintiff's BSO Facts ¶ 54. The fact that Defendant Fantigrassi received promotions and an increased salary during his years of service at the BSO, standing alone, does not establish that he engaged in the alleged predicate acts for his own financial and professional gain.

66

In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. . . . The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, **_proof of one does not necessarily establish the other_**. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.

United States v. Turkette, 452 U.S. 576, 583 (1981) (footnote omitted) (emphasis added). Thus, the mere fact that the BSO, the enterprise, continues does not establish the liability of Defendants Fantigrassi and Jenne for continued acts of an enterprise they are no longer part of. See Shepard v. Lustig, – F. Supp. 2d –, No. 11-cv-7601, 2012 WL 6567794, at *7 (N.D. Ill. Dec. 13, 2012) (holding that plaintiffs were unable to allege that open-ended continuity existed where defendants were not presently members of the alleged enterprise's board of directors).[27]

    Caravella has also failed to demonstrate a closed-ended pattern of continuity

---

[27]      Notably, Caravella has failed to name any current members of the enterprise as defendants in this action.  Thus, the Court cannot agree that merely because the enterprise itself still exists, an open-ended pattern of continuity has been established.  Moreover, the limited number of cases Caravella cites which purportedly involved coerced confessions, fabrication of evidence. and withholding of exculpatory evidence, see Plaintiff's BSO Facts ¶ 50, does not indicate that this was the BSO's regular way of doing business. See Moon v. Harrison Piping Supply, 465 F.3d 719, 727-28 (6th Cir. 2006) ("'Regular' means 'usual; normal; customary.' Random House Unabridged Dictionary 1624 (2d ed.1993). . . . Drawing all reasonable inferences in [plaintiff] Moon's favor may lead us to conclude that several instances of similar conduct have occurred, but they do not support a systematic threat of ongoing fraud.").

67

with regards to Defendant Fantigrassi. Although Caravella purports to cite cases involving Jerry Frank Townsend, Frank Lee Smith, Timothy Brown, Peter Roussonicolos, and John Wood, as examples of the BSO's alleged "long-standing policy and custom of coercing false confessions, fabricating evidence, presenting false evidence, and withholding and/or concealing exculpatory evidence by BSO deputies," Plaintiff's BSO Facts ¶ 50, he has failed to identify dates and descriptions of each case which would allow the Court to conclude that a closed-ended pattern exists.[28]

Furthermore, RICO claims must be established through the violations of predicate statutes. The Third Amended Complaint alleges that Defendant Fantigrassi's conduct violated Fla. Stat. §§ 914.22 and 918.13 and 18 U.S.C. § 1512(b)(3). 3d Am. Compl. ¶ 122. Even if the Court were to undertake the task of wading through this cumbersome record, the documents Caravella cites fail to establish how Defendant Fantigrassi's conduct in these additional cases violated any of these statutes.[29]

See Republic of Pan., 119 F.3d at 948-49 ("[A] RICO plaintiff [must] establish that a defendant could be convicted for violating any of its predicate statutes. Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 486-88, 105 S.Ct. 3275, 3280, 87 L.Ed.2d

---

[28]     Additionally, as discussed in Section E.5, Caravella has string cited multiple documents without any descriptions of which documents relate to each individual or pinpoint citations. From this record, the Court cannot tell how and why a pattern of racketeering activity exists.

[29]     Indeed, Caravella only discusses the Jerry Frank Townsend case in any detail. See BSO Additional Facts ¶¶ 52-53. Caravella has provided the Court with documents that establish that Mr. Townsend falsely confessed, but not that Defendant Fantigrassi coerced his confession or otherwise withheld exculpatory evidence. He has not established how the elements of the alleged predicate acts were established in the Townsend case or any of the other cases he cites.

346 (1985) . . . . Therefore, in order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts. See Central Distributors of Beer, Inc. v. Conn, 5 F.3d 181, 183-84 (6th Cir.1993) (affirming grant of summary judgment), cert. denied, 512 U.S. 1207, 114 S.Ct. 2678, 129 L.Ed.2d 812 (1994)."). Without establishing predicate acts involving any other individual, Caravella has simply produced evidence indicating "a single scheme with a discrete goal," which is insufficient to establish a closed-ended pattern of racketeering. Jackson, 372 F.3d at 1267. Accordingly, summary judgment will also be granted to Defendants Jenne and Fantigrassi on Caravella's RICO claims.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants City of Miramar, George Pierson, William Mantesta, and William Guess' Motion for Summary Judgment [DE 213] is **GRANTED IN PART AND DENIED IN PART** as outlined below:

    a.  The Motion is **GRANTED** as to Count VI to the extent this claim is premised on a theory of negligent hiring only, Count VII, and Counts XIII, XIV, and XV; and

    b.  The Motion is **DENIED** in all other respects;

2.  Defendants Scott Israel, Kenneth C. Jenne, II, and Anthony Fantigrassi's Motion for Summary Judgment [DE 239] is **GRANTED IN PART AND DENIED IN PART** as outlined below:

a.   The Motion is **GRANTED** as to Count X, Count XI to the extent this claim

is premised on a theory of negligent hiring only, Count XII, and Counts

XIII, XIV, and XV; and

b.   The Motion is **DENIED** in all other respects;

3.   Because summary judgment has been granted on all claims against Defendant

Kenneth C. Jenne, II, he is hereby **DISMISSED** from this action; and

4.   The Court will enter a separate judgment as to Defendant Jenne only.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this _7_ th day of February, 2013.

James I. Cohn

**JAMES I. COHN**
**United States District Judge**

Copies provided to counsel of record via CM/ECF.