UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-61607-CIV-COHN/SELTZER

DONALD R. SPADARO, as Limited
Guardian for ANTHONY CARAVELLA,

    Plaintiff,

v.

CITY OF MIRAMAR, etc., et al.,

    Defendants.

_____/

## ORDER DENYING DEFENDANTS PIERSON AND MANTESTA'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL

**THIS CAUSE** is before the Court upon Defendants, Pierson's and Mantesta's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial [DE 448] ("Motion"). The Court has carefully reviewed the Motion, Plaintiff's Response [DE 460] ("Response"), Defendants Pierson and Mantesta's Reply [DE 475] ("Reply"), the record in the case, and is otherwise fully advised in the premises.

I. BACKGROUND[1]

On February 7, 2013, the Court granted in part and denied in part Defendants' motions for summary judgment. See February 7, 2013 Order. In the February 7, 2013 Order, the Court granted summary judgment for Defendants City of Miramar, George Pierson ("Pierson"), William Mantesta ("Mantesta"), and William Guess (collectively "City Defendants") on Anthony Caravella's ("Caravella") claim for negligent hiring (Count

---

[1] A full recitation of the background of this case may be found in the Court's Order Granting in Part and Denying in Part Defendants' Motions for Summary Judgment [DE 367] ("February 7, 2013 Order").

VI),[2] 42 U.S.C. § 1983 claim for failure to properly train, supervise, control, or otherwise screen employees (Count VII),[3] and violations of the Florida Racketeer Influenced and Corrupt Organizations Act, Fla. Stat. § 772.103 (Counts XIII, XIV, and XV).  The Court also granted summary judgment for Defendants Scott Israel ("Israel"), Kenneth C. Jenne, II, and Anthony Fantigrassi ("Fantigrassi") on a claim for supervisory liability pursuant to 42 U.S.C. § 1983 (Count X),[4] claim for negligent hiring (Count XI),[5] 42 U.S.C. § 1983 claim for failure to properly train, supervise, control, or otherwise screen its employees (Count XII),[6] and violations of the Florida Racketeer Influenced and Corrupt Organizations Act, Fla. Stat. § 772.103 (Counts XIII, XIV, and XV).  Because summary judgment was granted on all claims against Defendant Kenneth C. Jenne, II, the Court entered a final judgment in favor of him and against Caravella.  See DE 368.  All remaining claims proceeded to trial after the Court denied Caravella's motion for reconsideration.  See DE 389.

A jury trial commenced in this case on February 19, 2013.  See DE 401.  After 16 days of testimony, Caravella rested his case.  See DE 422.  Defendants then moved

---

[2]     This claim was against Defendant City of Miramar only.  The Court allowed the claim to proceed to the extent it was premised on theories of negligent supervision and/or retention.

[3]     This claim was against Defendant City of Miramar only.

[4]     This claim was against Defendant Kenneth C. Jenne, II only.

[5]     This claim was against Defendant Israel in his official capacity only.  The Court allowed the claim to proceed to the extent it was premised on theories of negligent supervision and/or retention.

[6]     This claim was brought against Defendant Israel in his official capacity only.

for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. The Court granted the City Defendants' Rule 50 motion as to Caravella's conspiracy claim brought pursuant to 42 U.S.C. § 1983 (Count V), denied the motion as to the 42 U.S.C. § 1983 claims brought under Brady and malicious prosecution theories (Count IV), and denied the motion as to the intentional infliction of emotional distress claims against Pierson, Mantesta, and Guess (Counts I, II, and III). See DE 422. The Court deferred ruling on the City of Miramar's Rule 50 motion as to the negligent retention and/or supervision claim (Count VI) until the next morning to allow Caravella to conduct further research on the issue. See id. The Court granted Defendants Israel and Fantigrassi's Rule 50 motion as to the conspiracy claim brought pursuant to 42 U.S.C. § 1983 (Count V), denied the motion as to the 42 U.S.C. § 1983 claims brought under Brady and malicious prosecution theories (Count IX), and denied the motion as to the intentional infliction of emotional distress claim against Fantigrassi (Counts VIII). See id. The Court also deferred ruling on Israel's Rule 50 motion as to the negligent retention and/or supervision claim (Count XI) until the next morning. See id.

After further argument, the Court granted the City of Miramar's Rule 50 motion as to the negligent retention and/or supervision claim (Count VI) and Defendant Israel's Rule 50 motion as to the negligent retention and/or supervision claim (Count XI). See DE 424. Defendants Pierson, Mantesta, Guess, and Fantigrassi then presented their cases. See DE 424, 425.[7] Prior to submission of the case to the jury, Caravella elected to voluntary dismiss his intentional infliction of emotional distress claims

---

[7] At this time, no claims remained as to the City of Miramar and Israel.

3

(Counts I, II, III, VIII).  Thus, the only claims that remained to be submitted to the jury were Caravella's claims for violation of 42 U.S.C. § 1983 under malicious prosecution, Fifth Amendment and due process theories against Defendants Pierson, Mantesta, Guess, and Fantigrassi.  Following a charge conference, the parties presented their closing arguments and the case was submitted to the jury.  See DE 425.

Following three days of jury deliberation, the jury returned a verdict which found no liability for Defendants Guess and Fantigrassi and liability under all three theories as to Defendants Pierson and Manteta.  Special Interrogatory Verdict Form [DE 441].  The jury awarded Caravella $1,000,000 in compensatory damages against Pierson and $1,500,000 in compensatory damages against Mantesta.  Id. at 4.  The jury also awarded $2,000,000 in punitive damages as to Pierson and $2,500,000 in punitive damages as to Mantesta.  The Court entered a final judgment on March 27, 2013.  See DE 444.  Defendants Pierson and Mantesta have now renewed their motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b).  Alternatively, Pierson and Mantesta seek a new trial pursuant to Rule 59.  Caravella opposes the Motion.

## II. DISCUSSION

### A. Legal Standard.

Federal Rule of Civil Procedure 50(b) governs a motion for judgment as a matter of law.  When ruling on a 50(b) motion, the Court views all of the evidence adduced at trial and draws all reasonable inferences in the light most favorable to the non-moving party.  Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1192-93 (11th Cir. 2004).  "The trial judge may not re-weigh the evidence, make credibility determinations

or substitute its judgment for that of the jury." Hudson v. Chertoff, 473 F. Supp. 2d 1279, 1283 (S.D. Fla. 2007) (citing Montgomery v. Noga, 168 F.3d 1282, 1289 (11th Cir. 1999)).

On the other hand, to grant a motion for a new trial, "a trial judge must determine if in his opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984) (internal citations and quotations omitted). "[T]o assure that the judge does not simply substitute his judgment for that of the jury, . . . new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence." Id. (quoting Conway v. Chem. Leaman Tank Lines, Inc., 610 F.2d 360, 363 (5th Cir. 1980)). Moreover, a motion for a new trial is left to the discretion of the trial court. Hercaire Int'l, Inc. v. Argentina, 821 F.2d 559, 562 (11th Cir. 1987). The Court will not grant a motion for a new trial "merely because the losing party can probably present a better case on another trial." Hudson, 473 F. Supp. 2d at 1285.

### B. Fourth Amendment Malicious Prosecution Claim.

<u>1. Whether There was an Evidentiary Basis Supporting an Absence of Probable Cause.</u>

Defendants Pierson and Mantesta first contend that they are entitled to judgment as a matter of law on Caravella's section 1983 malicious prosecution claim because there was no legally sufficient evidentiary basis for a jury to find an absence of probable cause. Motion at 6. Specifically, Pierson and Mantesta argue that Caravella admitted to his involvement in the homicide at least two times outside the presence of Pierson

5

and Mantesta prior to confessing his involvement to them.  Id. at 7.  Pierson and Mantesta also argue that the results of the polygraph which found that Caravella's confession was truthful also establish probable cause.  Id. at 8.  Finally, Defendants Pierson and Mantesta point to other evidence adduced at trial which they contend establishes probable cause.  Id. at 8-9.  In opposition, Caravella points to "substantial evidence presented at trial from which the jury could reasonably conclude that the Defendants had targeted Anthony Caravella to frame him for this crime."  Response at 5.

To establish malicious prosecution under section 1983, a plaintiff must prove an absence of probable cause.  Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004).  Probable cause is defined as "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."  Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010) (quoting Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (internal quotation marks omitted)).  "It is well settled that in an action to recover damages for malicious prosecution where ... the evidence is in dispute, the existence or non-existence of malice and want of probable cause are questions of fact for the jury."  Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 947 (11th Cir. 2008) (quoting Kingsland, 382 F.3d at 1235 (internal quotation marks and citation omitted)).

At trial, Caravella had the burden of establishing his section 1983 malicious prosecution claim.  The jury found that Caravella had produced sufficient evidence to establish his section 1983 malicious prosecution claim, including an absence of probable cause.  The Court agrees with Caravella that the evidence presented at trial is

6

sufficient to support the jury's finding of an absence of probable cause. Both the evidence and the proper inferences to be drawn from the evidence were contested, and a reasonable jury could have resolved credibility disputes in favor of Caravella and found that Pierson and Mantesta lacked probable cause. Indeed, as Caravella points out, the jury could have credited evidence demonstrating that Pierson and Mantesta had off-tape, conversations, including trips to the crime scene, with Caravella outside the presence of his mother prior to his confessions to his mother and Fantigrassi. See Response at 5-7. Moreover, the mere fact that the jury found Fantigrassi not liable on Caravella's section 1983 claims does not mean that the jury accepted the results of the polygraph. See Motion at 8. This contention is mere speculation on the part of Pierson and Mantesta. See Response at 9. Finally, as Caravella indicates in his Response, the other evidence Pierson and Mantesta contend establishes probable cause is far from undisputed. See id. at 10-13. Accordingly, drawing all inferences in favor of the non-moving party, Caravella, Pierson and Mantesta's motion for judgment as a matter of law must be denied as to this issue. See Rankin v. Evans, 133 F.3d 1425,1435 (11th Cir. 1998).[8]

### 2. Whether There was an Evidentiary Basis Supporting that Pierson and Mantesta Were the Cause of Caravella's Criminal Prosecution.

Next, Pierson and Mantesta contend that there was no sufficient evidentiary

---

[8] In their Reply, Pierson and Mantesta assert that the Court should determine whether they had arguable probable cause for arresting Caravella. See Reply at 11-14. Although Pierson and Mantesta failed to raise the issue of arguable probable cause in their Motion, the Court nonetheless finds that the evidence adduced at trial is sufficient to establish that Pierson and Mantesta lacked arguable probable cause to arrest Caravella.

basis for a jury to find that they were the cause of Caravella's prosecution because the prosecutor and the grand jury actually made the decision to prosecute. Motion at 9. Caravella rejects this contention, arguing that the jury received evidence that Pierson and Mantesta "knowingly presented [ ] spurious statements to the state attorney's office, withheld exculpatory evidence, and by doing so, misled the prosecutor into pursing the criminal charges against Mr. Caravella which were presented to the courts." Response at 14. As this Court has previously noted, the Eleventh Circuit has held that a plaintiff establishes a section 1983 malicious prosecution claim where the police officer responsible for the plaintiff's arrest allegedly fabricated evidence against him. Williams, 297 F. App'x at 947. Thus, a plaintiff's section 1983 claim based upon the defendant's alleged fabrication of evidence, which resulted in the prosecutor being presented with false and misleading evidence, satisfies the requirement that the defendant was the legal cause of the original prosecution. Id. The Court finds that there was substantial evidence presented at trial from which a reasonable jury could conclude that Pierson and Mantesta presented fabricated evidence to the prosecutor. Thus, Pierson and Mantesta are not entitled to judgment as a matter of law on this claim.

### C. Fifth Amendment Claim.

1. Whether Pierson and Mantesta are Entitled to Qualified Immunity on This Claim.

Pierson and Mantesta also claim that they are entitled to judgment as a matter of law on Caravella's section 1983 Fifth Amendment claim because they are entitled to qualified immunity regarding any claims that they coached Caravella or threatened him regarding Dawn Simone Herron, there was no evidence that Caravella was physically

coerced into confessing, and there was no evidence that Caravella's statements were involuntary. Motion at 10-19. In opposition, Caravella contends "[t]here was abundant evidence presented at trial to support the jury's determination that Anthony Caravella's self-incriminating statements were the product of the illegal and unconstitutional interrogation tactics by the Defendants." Response at 15.

Qualified immunity "offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (internal citations and quotations omitted). Qualified immunity is intended "to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. Once an official establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to overcome the privilege of qualified immunity. See Case v. Eslinger, 555 F.3d 1317, 1325-26 (11th Cir. 2009). To do so, the plaintiff must prove: (1) that the defendant violated a constitutional right and (2) that this right was clearly established at the time. See id.

"The Fifth Amendment, made applicable to the States by the Fourteenth Amendment, Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), requires that '[n]o person ... shall be compelled *in any criminal case* to be a *witness* against himself.'" Chavez v. Martinez, 538 U.S. 760, 766 (2003) (citing U.S. Const. amend. V) (emphases in original)). It was well-established in 1983 that a defendant's conviction could not be based on an involuntary confession, Malloy, 378 U.S. at 6 ("We

hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States."), and that use of fabricated evidence and perjured testimony violated due process. Mooney v. Holohan, 294 U.S. 103, 112-13 (1935). In Sparado v. Boone, a case where a plaintiff brought a similar civil suit after he was exonerated for a crime he did not commit, the Eleventh Circuit affirmed the lower court's denial of the defendants' motion to dismiss the plaintiff's Fifth Amendment claim, where the defendants had argued on appeal that they were entitled to qualified immunity because it was not clearly established in 1982 that use of a coerced confession violated the Fifth Amendment. 212 F. App'x 831, 832 (11th Cir. 2006).

Pierson and Mantesta argue they are entitled to qualified immunity on this claim because alleged threats to Caravella regarding prosecution of his friend Dawn Simone Herron were not improper in 1983 or 1984 as the police had probable cause to charge Herron for hiding Caravella. Motion at 11-12. They also argue that there was insufficient evidence presented at trial to support that Caravella was coached by Pierson and Mantesta and that it was not clearly established in 1983 and 1984 that such tactics were unconstitutional. Id. at 13. The Court disagrees that Pierson and Mantesta are entitled to qualified immunity on this claim. As discussed above, it was clearly established in 1983 and 1984 that police officers could not coerce false confessions from criminal defendants. There was extensive evidence presented at trial regarding Caravella's mental deficiencies, the defendants' knowledge of these deficiencies, and that the officers held off-tape conversations with Caravella where they may have fed him details of the crime. See Response at 16. Moreover, testimony was

presented that Caravella was told that he could see Dawn Simone Herron and that she would not get in trouble if he gave a statement.  Id. at 17.  Finally, there was evidence presented at trial which suggested that Caravella had been subjected to physical coercion before his first statement.  Id.  Viewing this evidence in the light most favorable to Caravella, the Court declines to find that Pierson and Mantesta are entitled to qualified immunity on this claim.

### 2. Whether There was an Evidentiary Basis Supporting that Caravella was Physically Coerced into Confessing.

Pierson and Mantesta also contend that there was insufficient evidence to support that Caravella was physically coerced into confessing because Caravella only testified that he confessed to protect Dawn Simone Herron.  Motion at 13.  At the outset, the Court notes that physical coercion is just one factor that the jury could have believed made Caravella's confessions involuntary.  As Caravella points out, whether a confession is voluntary or not is based upon the totality of the circumstances.  Colorado v. Connelly, 479 U.S. 157, 176 (1986); Response at 19.  Thus, because it is entirely possible that the jury credited Caravella's other evidence regarding the involuntariness of his confessions, Pierson and Mantesta would not be entitled to judgment as a matter of law on the Fifth Amendment claim based solely on this narrow issue.  Nonetheless, there was sufficient evidence of physical coercion presented to the jury.  Dawn Simone Herron testified that she heard banging in her garage prior to Caravella's arrest and later at the Miramar Police Department.  See Response at 17. Mr. Caravella's public defender, Robin Siegel Sorkin, also testified that she observed Caravella's lips were blue, dry, and bleeding and that he seemed agitated and distressed.  Id. at 18.  Drawing

all reasonable inferences in favor of Caravella, the Court cannot conclude that Pierson and Mantesta are entitled to judgment as a matter of law on the Fifth Amendment claim.

### 3. Whether There was Other Evidence Supporting that Caravella's Statements were Involuntary.

Finally, Pierson and Mantesta argue that they are entitled to judgment as a matter of law on the Fifth Amendment claim because Caravella presented insufficient evidence that his confessions were involuntary to support the jury's verdict.  Motion at 15.  Specifically, they argue that the "Your Rights" form signed by Caravella and his mother for three out of the four statements demonstrates that Caravella was not subjected to any pressure.  Id.  Caravella argues that evidence was presented at trial "that Defendants had physically and mentally coerced Caravella into mak[ing] self-incriminating statements at the very outset of their custodial interrogation of him and prior to any Miranda warnings."  Response at 18.  Caravella also argues that the two cases Pierson and Mantesta rely on for the proposition that his confessions were voluntary, Paxton v. Jarvis, 735 F.2d 1306 (11th Cir. 1984) and Hall v. Thomas, 611 F.3d 1259 (11th Cir. 2010), actually support his position because in this case, the totality of the circumstances establishes that Caravella's confessions were involuntary.

As discussed above, the jury was presented with evidence of threats, physical coercion and coaching which occurred outside the presence of Caravella's mother and prior to the administration of Miranda warnings.  Thus, unlike Paxton and Hall, the jury was presented with sufficient evidence to conclude that Caravella's confessions were involuntary under the totality of the circumstances.  Accordingly, the Court agrees with

Caravella that Pierson and Mantesta are not entitled to judgment as a matter of law on this claim.

### D. Fourteenth Amendment *Brady* Claim.

#### 1. Whether Pierson and Mantesta are Entitled to Judgement as a Matter of Law Regarding the Alleged Coerced Confessions.

Pierson and Mantesta first argue that they are entitled to judgment as a matter of law on Caravella's Fourteenth Amendment claim brought pursuant to Brady v. Maryland, 373 U.S. 83 (1963), for withholding of exculpatory evidence because coerced confessions alone cannot constitute a Brady violation. Motion at 19. In his Response, Caravella does not dispute this fact. Response at 21. Brady protects "the defendant's right to a fair trial mandated by the Due Process Clause of the [Fourteenth] Amendment to the Constitution." Porter v. White, 483 F.3d 1294, 1303 n.4 (11th Cir. 2007) (quoting United States v. Agurs, 427 U.S. 97, 107 (1976)). "A former criminal defendant who was denied his due process right to a fair trial as a result of withholding of exculpatory evidence may have a due process claim for money damages against a police officer under § 1983." Barber v. Doe, No. 09-60635-Civ-MORENO, 2010 WL 3384766, at *6 (S.D. Fla. Aug. 5, 2010) (citing Porter, 483 F.3d at 1294; McMillian v. Johnson, 88 F.3d 1554 (11th Cir. 1996)). To establish a Brady violation on the part of a police officer, the plaintiff must establish more than "mere negligence or inadvertence on the part of a law enforcement official in failing to turn over Brady material to the prosecution." Porter, 483 F.3d at 1307.

Here, there is no indication that the jury premised their finding of liability on the Brady claim upon the alleged coerced confessions. Moreover, as discussed below,

13

there was other evidence presented to the jury regarding Pierson and Mantesta's withholding of exculpatory evidence. Thus, this argument cannot serve as a basis for granting Pierson and Mantesta judgment as a matter of law on the Brady claim.

### 2. Whether Pierson and Mantesta are Entitled to Judgement as a Matter of Law Regarding FBI Testing Evidence.

Next, Pierson and Mantesta argue that judgment as a matter of law is appropriate on this claim because the alleged FBI letters withheld from Caravella were signed by Mantesta, not Pierson. Motion at 20. Additionally, they argue that there is no evidence that the FBI tested items identified in Plaintiff's Exhibit 56, documents related to such testing existed, the missing documents contained exculpatory evidence, Mantesta or Pierson concealed such documents from the prosecution, or that such documents would have altered the prosecution's decision to prosecute Caravella. Id. at 20-21. In opposition, Caravella argues that there was evidence produced at trial that the evidence to be sent to the FBI was gathered and packaged by Mantesta and Carolyn Carter. Response at 22. Caravella also contends that the jury could reasonably infer that the reports did exist and contained information exculpatory to Caravella. Id. at 23. Moreover, Caravella argues that there was other evidence presented at trial regarding the fabrication and withholding of evidence beyond the FBI reports which did involve Pierson. Id. For example, Caravella cites the drawing Pierson created during the initial interrogation of Caravella and the drawing Caravella created during the December 29, 1983 interrogation. Id. Caravella also argues that the verdict was not based upon an unsupported piling of inferences because jury verdicts may be based upon circumstantial evidence. Id. at 24.

The Court agrees with Caravella that Pierson and Mantesta are not entitled to judgment as a matter of law on this issue. As Caravella points out, Defendants focus solely on the FBI reports, but there was other evidence introduced at trial which a jury could have believed was withheld from both the prosecution and Caravella and was exculpatory for Caravella. See Response at 23. The Court also agrees with Caravella that the jury's finding of liability is not premised upon impermissible bundling of inferences. In fact, in Daniels v. Twin Oaks Nursing Home, 692 F.2d 1321 (11th Cir. 1982), one of the cases cited by Pierson and Mantesta, the Eleventh Circuit held that:

> Under the modern case law applying a federal standard, a verdict based on circumstantial evidence is not infirm simply because the evidence supports an equally probable inference to the contrary. It is the jury that chooses among allowable inferences. The standard for determining whether an inference is allowable is generally whether it is a reasonable one, that is, whether it is one that "reasonable and fair-minded men in the exercise of impartial judgment" might draw from the evidence. Boeing Company v. Shipman, supra, 411 F.2d at 375. An inference is not unreasonable simply because it is based in part on conjecture, for an inference by definition is at least partially conjectural. Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841, 851 (5th Cir.1967), cert. denied, 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968).

Id. at 1326. Pierson and Mantesta have failed to establish that the jury's inferences regarding the Brady material were unreasonable or otherwise unsupported by the evidence presented at trial.

### 3. Whether Pierson and Manstesta are Entitled to Judgment as a Matter of Law Because There was No Brady Violation regarding the Delgado Tape.

Finally, Pierson and Mantesta argue that they are entitled to judgment as a matter of law because there was no Brady violation regarding the Delgado tape which was presented to the prosecutor and was not exculpatory. Motion at 22. Pierson and Mantesta have failed to cite to any trial testimony where Caravella asserted that the

15

Delgado tape was withheld from the prosecution and his defense attorney. Moreover, in his Response, Caravella does not assert that this is an item of exculpatory evidence withheld in violation of Brady. See Response at 23. Accordingly, this cannot serve as a basis for judgment as a matter of law on the Brady claim.

### E. Request for New Trial.

Alternatively, Pierson and Mantesta move this Court for a new trial pursuant to Federal Rule of Civil Procedure 59. Motion at 22-25. They assert that a new trial is warranted based upon the following prejudicial evidentiary rulings: (1) admission of testimony of Al Smith regarding a conversation he had with Guess that related to Mantesta; (2) admission of testimony of Pierson and Mantesta from the criminal proceedings against Caravella; and (3) admission of DNA reports from 2009 onwards. Id. at 23. Caravella opposes the request for a new trial. See Response at 25-30. The Court agrees and will deny the request.

Regarding the admission of Al Smith's testimony as to the statement Guess made, the Court found by a preponderance of the evidence that a conspiracy existed. Thus, the Court properly admitted the statement as a statement of a co-conspirator pursuant to Federal Rule of Evidence 801(d)(2)(E). Although the Court ultimately found that Caravella's section 1983 conspiracy claim was barred by the intracorporate conspiracy doctrine, the Court's finding that a conspiracy existed made the admission of this testimony appropriate. Accordingly, this cannot serve as a basis for awarding Pierson and Mantesta a new trial.

Pierson and Mantesta are also not entitled to a new trial based upon the admission of some of their former testimony. As Caravella's response reflects, Pierson

and Mantesta failed to timely object to the admission of this testimony on absolute immunity grounds until after some of the testimony had previously been admitted. See Response at 8 (citing Trial Testimony of William Mantesta [DE 457-3] at 515). Once an objection was made on the grounds of absolute immunity, the Court ruled that the admission of any further prior testimony was improper. Thus, Pierson and Mantesta waived any objection to the admission of the former testimony. See Wilson v. Attaway, 757 F.2d 1227, 1242 (11th Cir. 1985) ("objections to the admission of evidence ... are preserved only if they are timely and state the specific ground of objection, if the specific ground was not apparent from the context") (citations and internal quotations omitted).

Finally, Pierson and Mantesta are not entitled to a new trial based on the admission of the 2009 and later DNA reports. As Caravella points out, Pierson and Mantesta maintained that Caravella had actually committed the homicide of Ada Jankowski. Accordingly the 2009 and later DNA evidence which further exonerated Caravella and implicated Anthony Martinez was relevant and admissible despite Pierson and Mantesta's stipulation that Caravella was exonerated.[9] The Court also disagrees that Pierson and Mantesta were prejudiced by not being allowed to call or present documentary evidence from the State Attorney regarding the reason that Caravella's sentence was vacated. A court should not take judicial notice of the accuracy of factual allegations in the documents of other courts. Fireman v. Travelers

---

[9] Indeed, in this very Motion, Pierson and Mantesta assert in favor of their argument that Caravella failed to demonstrate an absence of probable cause that Caravella, to this date, has still failed to provide an alibi for the night of the murder. See Motion at 8.

17

Cas. & Sur. Co. of Am., No. 10-81564-CIV, 2011 WL 4527405, at *4 (S.D. Fla. Sept. 21, 2011) (citing United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) and Thompson v. Fla. Bar, 526 F. Supp. 2d 1265, 1274 n.11 (S.D. Fla. 2007)).  This is essentially what Defendants asked the Court to do by admitting the State's Motion to Vacate Caravella's sentence.  The Court properly held that whether Caravella was exonerated was a factual issue that the parties could argue to the jury.  Thus, Pierson and Mantesta are not entitled to a new trial on this basis.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendants, Pierson's and Mantesta's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial [DE 448] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 23rd day of September, 2013.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.