UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 11-61607-CIV-COHN/SELTZER

DONALD R. SPADARO, as Limited
Guardian for ANTHONY CARAVELLA,

    Plaintiff,

v.

CITY OF MIRAMAR, etc., et al.,

    Defendants.
_____/

## ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES AND COSTS

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Attorney Fees and Costs [DE 464] ("Motion"). The Court has carefully considered the Motion, Defendant Pierson and Mantesta's Response [DE 479] ("Response"), Plaintiff's Reply [DE 482] ("Reply"), the record in the case, and is otherwise advised in the premises.

### I. BACKGROUND[1]

On June 28, 2011, Donald R. Spadaro, Esq. ("Plaintiff"), as limited guardian for Anthony Caravella ("Caravella"), filed suit against Defendants City of Miramar, George Pierson ("Pierson"), William Mantesta ("Mantesta"), William Guess ("Guess"), Defendants Scott Israel ("Israel"), Kenneth C. Jenne, II ("Jenne"), and Anthony Fantigrassi ("Fantigrassi") in the Seventeenth Judicial Circuit Court in and for Broward County, alleging that the acts or practices of the Defendants had violated Caravella's constitutional

---

[1] A full recitation of the background of this case may be found in the Court's Order Granting in Part and Denying in Part Defendants' Motions for Summary Judgment [DE 367] ("February 7, 2013 Order").

rights.  Complaint [DE 1-3] ¶ 3.  The case was removed to this Court on July 19, 2011.  Notice of Removal [DE 1].  On August 17, 2012, Caravella filed his Third Amended Complaint.  See DE 173.  The Third Amended Complaint brought claims against the various Defendants for intentional infliction of emotional distress (Counts I-III, VIII), violations of 42 U.S.C. § 1983 (Counts IV, VII, IX, X, XII), conspiracy (Count V), negligent hiring and supervision (Counts VI, XI), and violations of the Florida Racketeer Influenced and Corrupt Organizations Act, Fla. Stat. § 772.103 (Counts XIII-XV).

On February 7, 2013, the Court granted in part and denied in part Defendants' motions for summary judgment.  See February 7, 2013 Order.  In the February 7, 2013 Order, the Court granted summary judgment for Defendants City of Miramar, Pierson, Mantesta, and Guess (collectively "City Defendants") on Caravella's claim for negligent hiring (Count VI),[2] 42 U.S.C. § 1983 claim for failure to properly train, supervise, control, or otherwise screen employees (Count VII),[3] and violations of the Florida Racketeer Influenced and Corrupt Organizations Act, Fla. Stat. § 772.103 (Counts XIII, XIV, and XV).  The Court also granted summary judgment for Defendants Israel, Jenne, and Fantigrassi on a claim for supervisory liability pursuant to 42 U.S.C. § 1983 (Count X),[4] claim for negligent hiring (Count XI),[5] 42 U.S.C. § 1983 claim for failure to properly train, supervise,

---

[2]   This claim was against Defendant City of Miramar only.  The Court allowed the claim to proceed to the extent it was premised on theories of negligent supervision and/or retention.

[3]   This claim was against Defendant City of Miramar only.

[4]   This claim was against Defendant Jenne only.

[5]   This claim was against Defendant Israel in his official capacity only.  The Court allowed the claim to proceed to the extent it was premised on theories of

control, or otherwise screen its employees (Count XII),[6] and violations of the Florida Racketeer Influenced and Corrupt Organizations Act, Fla. Stat. § 772.103 (Counts XIII, XIV, and XV).  Because summary judgment was granted on all claims against Defendant Jenne, the Court entered a final judgment in favor of him and against Caravella.  See DE 368.  All remaining claims proceeded to trial after the Court denied Caravella's motion for reconsideration.  See DE 389.

     A jury trial commenced in this case on February 19, 2013.  See DE 401.  After 16 days of testimony, Caravella rested his case.  See DE 422.  Defendants then moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.  The Court granted the City Defendants' Rule 50 motion as to Caravella's conspiracy claim brought pursuant to 42 U.S.C. § 1983 (Count V), denied the motion as to the 42 U.S.C. § 1983 claims brought under Brady and malicious prosecution theories (Count IV), and denied the motion as to the intentional infliction of emotional distress claims against Pierson, Mantesta, and Guess (Counts I, II, and III).  See DE 422.  The Court deferred ruling on the City of Miramar's Rule 50 motion as to the negligent retention and/or supervision claim (Count VI) until the next morning to allow Caravella to conduct further research on the issue.  See id.  The Court granted Defendants Israel and Fantigrassi's Rule 50 motion as to the conspiracy claim brought pursuant to 42 U.S.C. § 1983 (Count V), denied the motion as to the  42 U.S.C. § 1983 claims brought under Brady and malicious prosecution theories (Count IX), and denied the motion as to the intentional infliction of emotional

---

negligent supervision and/or retention.

     [6]    This claim was brought against Defendant Israel in his official capacity only.

distress claim against Fantigrassi (Count VIII).  See id.  The Court also deferred ruling on Israel's Rule 50 motion as to the negligent retention and/or supervision claim (Count XI) until the next morning.  See id.

After further argument, the Court granted the City of Miramar's Rule 50 motion as to the negligent retention and/or supervision claim (Count VI) and Defendant Israel's Rule 50 motion as to the negligent retention and/or supervision claim (Count XI).  See DE 424.  Defendants Pierson, Mantesta, Guess, and Fantigrassi then presented their cases.  See DE 424, 425.[7]  Prior to submission of the case to the jury, Caravella elected to voluntary dismiss his intentional infliction of emotional distress claims (Counts I, II, III, VIII).  Thus, the only claims that remained to be submitted to the jury were Caravella's claims for violation of 42 U.S.C. § 1983 under malicious prosecution, Fifth Amendment and due process theories against Defendants Pierson, Mantesta, Guess, and Fantigrassi.  Following a charge conference, the parties presented their closing arguments and the case was submitted to the jury.  See DE 425.

Following three days of jury deliberation, the jury returned a verdict which found no liability for Defendants Guess and Fantigrassi and liability under all three theories as to Defendants Pierson and Mantesta.  Special Interrogatory Verdict Form [DE 441].  The jury awarded Caravella $1,000,000 in compensatory damages against Pierson and $1,500,000 in compensatory damages against Mantesta.  Id. at 4.  The jury also awarded $2,000,000 in punitive damages as to Pierson and $2,500,000 in punitive damages as to Mantesta.  The Court entered a final judgment on March 27, 2013.  See DE 444.

---

[7]  At this time, no claims remained as to the City of Miramar and Israel.

Following the entry of judgment, Defendants Pierson and Mantesta renewed their motion for judgment as a matter of law or for a new trial. See DE 448. The Court denied this motion on September 23, 2013. See DE 485. Currently pending before the Court is Plaintiff's motion for attorneys fees and costs pursuant to 42 U.S.C. § 1988, Federal Rule of Civil Procedure 54, and Local Rule 7.3. The Motion seeks $962,820.00 in attorneys fees and $138,206.07 in costs. Defendants Pierson and Mantesta oppose the Motion.

## II. DISCUSSION

### A. Legal Standard.

According to the Supreme Court, "[t]he Civil Rights Attorney's Fees Awards Act of 1976, 90 Stat. 2641, 42 U.S.C. § 1988, allows 'the prevailing party' in certain civil rights actions, including suits brought under § 1983, to recover 'a reasonable attorney's fee.' A plaintiff 'prevails,' we have held, 'when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.' Farrar v. Hobby, 506 U.S. 103, 111–112, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)." Lefemine v. Wideman, 133 S. Ct. 9, 11 (2012). "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge[.]" Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 558 (2010). To determine a reasonable attorney's fee, the Court must apply the lodestar approach: the number of hours reasonably expended on the case times a reasonable hourly rate. Gray v. Bostic, 625 F.3d 692, 714 (11th Cir. 2010).

The lodestar approach incorporates the twelve factors listed in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989), to calculate an appropriate fee. The twelve

5

<u>Johnson</u> factors are (1) the time and labor required to prosecute the suit; (2) the novelty and difficulty of the legal questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  <u>Johnson</u>, 488 F.2d at 718-19.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  <u>Gray</u>, 625 F.3d at 714-15 (quoting <u>Norman v. Hous. Auth. of the City of Montgomery</u>, 836 F.2d 1292, 1299 (11th Cir. 1988)).  A fee applicant bears the burden of demonstrating with satisfactory evidence that counsel's rates are reasonable:

> Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work. . . . [S]atisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.  Testimony that a given fee is reasonable is therefore unsatisfactory evidence of market rate.  Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence.

<u>Norman</u>, 836 F.2d at 1299 (citations omitted).  "The court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."  <u>Id.</u> at 1303.

To allow the Court to determine the number of hours reasonably expended, fee

6

applicants must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." Norman, 836 F.2d at 1303. "[A] lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights." Id. at 1301. Thus, fee applicants must use "billing judgment." Id. In ascertaining the number of reasonable hours, a court must deduct "'excessive, redundant or otherwise unnecessary hours'" from those claimed. Id. (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). A court must also deduct time spent on discrete and unsuccessful claims. Id. at 1302. "Where all theories derive from a common nucleus of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours." Id.

### B. Reasonable Hourly Rate.

Plaintiff seeks attorney's fees at the rate of $600 per hour. Motion at 13. In support of this figure, Plaintiff has filed the affidavit of James Green who avers that the current hourly figures for attorneys of similar experience in civil rights litigation is between $450.00 to $625.00 per hour. Affidavit of James Green [DE 464-13] ¶ 12. Pierson and Mantesta contest that $600 an hour is a reasonable fee, arguing that Plaintiff has failed to present any evidence that any attorney in this district has ever charged $600 an hour for a case involving the same issues presented here. Response at 5. Instead, they contend that counsel is entitled to a fee of only $400 per hour. Id. at 6.

Upon review, the Court finds that the $600 per hour Plaintiff seeks is a reasonable hourly rate. In arriving at this rate, the Court has considered the complexity of this particular case, coupled with its contingent and protracted nature and the experience of

Plaintiff's counsel.  In particular, the Court notes that counsel has taught a civil rights workshop as an adjunct professor at Nova Southeastern University, Shepard Broad Law Center and authored a textbook on civil rights litigation.  Verification of Attorney's Fees By Barbara A. Heyer [DE 464-2] ¶ 8.  She has also lectured on civil rights litigation.  Id. ¶ 9.  In short, despite the genuine risk that she would never obtain compensation, counsel took this case on a contingency basis, and devoted herself to the extensive review of more than 25 year old documents and evidence.  Id. ¶ 13.  Given that she succeeded in obtaining an extraordinary monetary recovery for her client, the Court finds, in its experience, and based upon the affidavit of James Green, that counsel is entitled to attorney's fees at the rate of $600 per hour.

### C. Reasonable Hours Expended.

Pierson and Mantesta also challenge the reasonable hours Plaintiff expended in this case.  Pierson and Mantesta first argue that Plaintiff's Motion should be denied in its entirety or that the number of hours should be reduced due to "vague and imprecise descriptions" in Plaintiff's billing records.  Response at 6.  In this section of the Response, however, Pierson and Mantesta have failed to direct the Court to the time entries they believe are vague and imprecise.  This unsubstantiated challenge is insufficient to deny the Motion or to cut the number of hours expended.  See Valencia v. Affiliated Grp., Inc., 674 F. Supp. 2d 1300, 1309 (S.D. Fla. 2009) (quoting Norman, 836 F.2d at 1301) ("[J]ust 'as the district court must be reasonably precise in excluding hours thought to be unreasonable or unnecessary, so should the objections and proof from fee opponents.'").

Next, they contend that the Court should make an across the board reduction on the number of hours expended because Plaintiff failed to prevail on all the claims

8

presented in the Third Amended Complaint.  Response at 8.  While the Court generally agrees that Plaintiff is not entitled to fees related to discrete and unsuccessful claims, see Norman, 836 F.3d at 1302, in this section of the Motion, Pierson and Mantesta fail to identify examples of specific hours expended which are unrelated to the claims upon which the Plaintiff did prevail.  Accordingly, the Court once again rejects this blanket request to an across the board hours reduction.  See Valencia, 674 F. Supp. 2d at 1309.

Finally, Pierson and Mantesta raise specific challenges to certain hours for which Plaintiff seeks recovery.  Response at 11-23.  The Court will address each of these specific challenges individually below.

### 1. Hours Related to Claims Against the City of Miramar.

Pierson and Mantesta argue that Plaintiff should be precluded from recovering any fees related to the 91.6 hours counsel spent on claims related solely to the City of Miramar.  Response at 11.  According to Pierson and Mantesta, none of the hours described in Section V of counsel's affidavit relate to the prevailing claims against Pierson and Mantesta.  Id.  Instead, these hours relate solely to hours expended on the Monell claims against the City of Miramar or the investigation into the Jankowski homicide post-2009, which the Court ruled was inadmissible.  Id.  In opposition, Plaintiff contends that these hours cannot be distinguished as relating solely to unsuccessful claims against the City of Miramar.  Reply at 5.  Additionally, Plaintiff points out that he voluntarily reduced these hours by 25 percent to account for the fact that they included unsuccessful claims against the City of Miramar.  Id. at 6.

Upon review of the contested hours, the Court finds that Plaintiff has failed to meet his burden of demonstrating that these hours were reasonably related to the § 1983

9

claims upon which he prevailed.  The time descriptions are replete with hours that relate solely to dismissed claims against the City of Miramar.  For example, on April 28 and 29, 2012, counsel spent 3 hours drafting a response to a motion to dismiss Counts XIII through XIV.  Attorney Hours of Barbara A. Heyer, Esq. [DE 464-3] ("Heyer Hours") at 32.  These RICO counts did not survive summary judgment and involved a distinct legal theory.  On November 24, 2012 and January 15, 2013, counsel also expended 7 hours conducting Monell research.  Id. at 34.  Again, the Monell claims were solely against the City of Miramar and BSO and did not survive summary judgment.  Plaintiff also seeks compensation for 8.5 hours related to his motion for reconsideration of the Court's summary judgment order.  Heyer Hours at 34.  The motion for reconsideration related solely to the Monell claims against the City of Miramar and the BSO.  See DE 389.  Thus, this last minute challenge to the Court's well-reasoned summary judgment order in no way "involved a common core of facts" and "related legal theories" to the claims upon which Plaintiff prevailed at trial.  See Reply at 5.  Finally, because the descriptions in the time entries are insufficient for the Court to determine how the tasks performed related to Plaintiff's success on the § 1983 claims against Pierson and Mantesta, the Court will disallow the entire 91.6 hours.

   2. Hours Related to Discovery Requests From the City of Miramar or Guess.

Next, Pierson and Mantesta contest the 17.3 hours spent responding to discovery propounded by the City of Miramar and Guess.  Response at 12.  In response, Plaintiff contends that these hours were necessary and benefitted the case as a whole.  Reply at 6.  The Court fails to see how the time Plaintiff expended responding to discovery propounded by the City of Miramar and Guess to the Plaintiff contributed to Plaintiff's

10

success at trial on claims against Pierson and Mantesta. Because it was Plaintiff who prepared these discovery responses, these hours did not advance his claims against Pierson and Mantesta. Accordingly, the Court will disallow these 17.3 hours.

### 3. Hours Related to Ed Werder's Deposition.

Pierson and Mantesta also seek to exclude 18 hours counsel expended related to the deposition of former City of Miramar Police Chief Edward Werder because he did not participate in the investigation or have any dealings with Pierson and Mantesta. Response at 13. Plaintiff contends that this deposition did not relate solely to the unsuccessful negligent supervision claim against the City of Miramar, but also provided evidence that Pierson and Mantesta "were the ultimate arbitrators of what went into their reports." Reply at 6. Here, the record reflects that Ed Werder was the Miramar police chief during the time of the Jankowski homicide investigation. Thus, it was reasonable for Plaintiff, during the course of discovery, to spend time traveling to, preparing for, and taking Mr. Werder's deposition to determine whether he possessed information that advanced Plaintiff's § 1983 claims against Pierson and Mantesta.

### 4. Hours Related to RICO claims.

Next, Pierson and Mantesta contend that Plaintiff should not be entitled to any fees for 8.0 hours that relate solely to his RICO claims. Response at 13. Plaintiff does not appear to have specifically addressed the challenge to these hours in his Reply. The Court agrees with Pierson and Mantesta that Plaintiff is not entitled to fees that relate solely to the Second and Third Amended Complaints. These amended complaints were necessitated by the Court's orders regarding motions to dismiss of the RICO claims. Because Plaintiff failed to prevail on these claims and they involved distinct legal theories,

11

the Court will discount these 8.0 hours.

### 5. Cost Motions Filed by Prevailing Parties.

Pierson and Mantesta further challenge 17.5 hours Plaintiff spent responding to motions for costs filed by the BSO, Fantigrassi, the City of Miramar, and Guess. Response at 14. In opposition, Plaintiff contends that he is entitled to these fees because a prevailing party is entitled to compensation for litigating a § 1988 award. Reply at 9. While the Plaintiff recites for this proposition is generally correct, Plaintiff ignores that he was not a prevailing party as to the BSO, Fantigrassi, the City of Miramar, and Guess. Plaintiff should not be allowed to recover fees from Mantesta and Pierson related to opposing motions for costs filed by these prevailing parties. Accordingly, the Court will reduce the fees sought in this regard from 17.5 hours to 3.5 hours. The Court finds that two of the time entries, 2.0 hours for research related to § 1920 and § 1988 on May 14, 2013, and 1.5 hours on May 17, 2013, would be relevant to Plaintiff's motions against Pierson and Mantesta and is thus compensable.[8]

### 6. Alan Keel and Edward Blake.

Pierson and Mantesta also contest 54.4 hours counsel spent meeting with Alan Keel and Edward Blake. Response at 14. According to Pierson and Mantesta, the majority of Mr. Keel's expert opinion related solely to the manner in which the BSO performed DNA testing in 2001. Id. Plaintiff counters that the testimony of Mr. Keel was critical to allow the jury to understand the DNA evidence at issue in the case. Reply at 6-

---

[8] The Court has not credited Plaintiff for the 1.0 hours spent on May 17, 2013, for "additional research" because the Court cannot discern from the entry what this research was for.

7.  Upon review, the Court find that these hours were reasonably expended.  At issue during trial–and directly relevant to the claims upon which Plaintiff prevailed–was whether Caravella was exonerated.  The DNA evidence Mr. Keel discussed at trial was thus directly relevant to an issue presented at trial.  Counsel's travel time to meet with Messrs. Keel and Blake was also appropriate.  Accordingly, the Court will allow Plaintiff to be compensated for these hours.

### 7. Bruce McCord and BSO Personnel.

Pierson and Mantesta contend that Plaintiff is not entitled to fees related to 20.4 hours spent deposing BSO fact witnesses regarding the handling and testing of DNA evidence in 2001 and BSO's expert witness, Bruce McCord.  Response at 16.  Plaintiff argues that these hours were beneficial to the successful prosecution of the case because McCord tried to discredit the findings of Bode Technology and Forensic Analytical Sciences.  Reply at 5.  The record reflects that McCord testified at trial regarding the DNA evidence in this case.  As discussed above, the issue of whether Caravella was exonerated was at issue during trial and relevant to the § 1983 claims upon which Pierson and Mantesta were found liable.  Accordingly, the Court finds that Plaintiff should be compensated for the time spent deposing McCord and Tsingelis and preparing to cross examine McCord.

### 8. Opposition to BSO Motion for Summary Judgment.

Pierson and Mantesta also argue that Plaintiff cannot be compensated for 7.5 hours spent responding to the BSO's motion for summary judgment.  Response at 17.  The entries objected to include 1.0 hours researching the Florida record retention schedule, 3.3 hours researching qualified immunity, and 3.5 hours reviewing the

13

depositions of Fantigrassi and Tsingelis.  It is not apparent to the Court that these entries relate solely to the Plaintiff's response to the BSO's motion for summary judgment.  As Plaintiff points out in his Reply, research related to Florida's retention schedule and qualified immunity does not relate solely to claims brought against BSO and/or Fantigrassi.  See Reply at 5.  Review of the Fantigrassi and Tsingelis depositions also would not relate solely to claims against the BSO and Fantigrassi.  Accordingly, Plaintiff is entitled to fees for these hours.

### 9. Fees Incurred Prior to the Litigation.

Pierson and Mantesta challenge 64.9 of 179 hours that Plaintiff spent prior to the initiation of this lawsuit.  Response at 17.  They contend that the amount of time spent researching and drafting the Complaint is unreasonable in light of the fact that Plaintiff did not prevail on any claims against the City of Miramar, Guess, Fantigrassi, Jenne, and the BSO.  Id.  Thus, they argue that an across the board, fifty percent reduction is warranted.  Id. at 18.  They also contend that time spent discussing Caravella's living situation, work ability, and psychological evaluation should not be compensable.  Id. at 18-19.

First, the Court agrees with Pierson and Mantesta that some of the time spent drafting the Complaint should be reduced to account for the fact that Plaintiff did not prevail on claims against the other defendants.  However, the Court believes that the fifty percent reduction that Pierson and Mantesta seek is too great.  Because of the factual overlap between the various causes of action, the Court finds that only a ten percent reduction is warranted.  Second, the Court disagrees that time counsel spent discussing Caravella's living situation, work ability, and psychological evaluation is not compensable.  Caravella's mental status was at issue during this case.  Moreover, his living and work

situation was integral to the damages Plaintiff sought at trial. In fact, the jury heard testimony regarding both Caravella's mental condition and living and work situation. Thus, the Court will deduct only 17.9 hours from Plaintiff's pre-litigation time.

### 10. Motion for Protective Order Related to Caravella's Deposition.

Pierson and Mantesta maintain that Plaintiff is not entitled to any fees for the 16.6 hours spent seeking a protective order to prevent defendants from deposing Caravella. Response at 20. According to Pierson and Mantesta, Plaintiff should not recover any fees related to the motion or motion for reconsideration because Plaintiff was unsuccessful in obtaining the relief sought. Id. The Court does not believe that Plaintiff's lack of success alone is a basis to deny Plaintiff these fees. Plaintiff's counsel was acting as a zealous advocate for her client when she sought a protective order from the Court. Thus, the Court will allow Plaintiff to recover these fees.

### 11. Motion to Recuse Magistrate Judge Seltzer.

Next, Pierson and Mantesta contend that Plaintiff should not recover any fees for the 9.3 hours spent attempting to recuse Magistrate Judge Seltzer. Response at 21. The Court agrees. Unlike the motion for protective order regarding Caravella's deposition where counsel had a good faith basis to believe that the deposition was not in her client's best interest, counsel had no basis to seek recusal of Judge Seltzer after he recused himself from hearing one discrete discovery motion. Plaintiff also lacked any good faith basis to appeal the denial of the motion to the undersigned. Accordingly, the Court will disallow the 9.3 hours counsel spent pursuing Judge Seltzer's recusal.

### 12. Order Compelling Plaintiff to Properly Respond to Interrogatories.

Pierson and Mantesta also contend that Plaintiff should not be allowed to recover fees for 23.3 hours spent opposing the Defendants' motions to compel and appealing Judge Seltzer's order to the undersigned. Response at 21. The Court agrees. Plaintiff's expenditure of this time was unreasonable in light of the fact that it was necessitated by his own deficient discovery responses. Moreover, once the motion to compel was granted, Plaintiff did not have legitimate grounds to appeal the order to the undersigned. Thus, the Court will disallow the 23.3 hours spent litigating this issue.

### 13. Plaintiff's Violation of Local Rule 56.1.

Finally, Pierson and Mantesta argue that Plaintiff is not entitled to fees for 9.1 hours spent defending against the City Defendants' motion to strike te Plaintiff's Response to the City Defendant's Statement of Undisputed Facts and Plaintiff's Statement of Additional Facts and Evidence. Response at 22. Because the Court found that Plaintiff had failed to comply with Local Rule 56.1, the Court agrees that Plaintiff is not entitled to recover fees for these hours. See DE 319.

### 14. Summary.

In sum, the Court has excluded 190.5 hours from the time for which Plaintiff seeks compensation. Thus, the Court has determined that Plaintiff is entitled to compensation for 1414.2 hours. Multiplying these hours by counsel's rate of $600 per hour yields a total fee award of $848,520.00.

## D. Litigation Expenses.

Pierson and Mantesta also challenge certain litigation expenses for which Plaintiff seeks recovery. The Court will address each of these challenges individually below.

### 1. Service of Process Fees.

Pierson and Mantesta first contend that Plaintiff is not entitled to $300 for service of process fees.  Response at 23.  This includes, $50 for two additional service attempts on James Ongly, $50 for Petros Tsingilis and Bruce McCord, and $200 for rush service.  Id.  Because Plaintiff has not provided any explanation for the multiple attempts to serve James Ongly or the $200 for rush service, the Court will disallow these costs.  Consistent with the Court's above ruling on attorney's fees, however, the Court will allow the $50 to serve Petros Tsingilis and Bruce McCord.

### 2. Fees for Julie Aitken.

Next, Pierson and Mantesta argue that the fees Plaintiff seeks for the work of Julie Aitken, a non-attorney, should be reduced by at least 152.8 hours.  Response at 23.  According to Pierson and Mantesta, Ms. Aitken's time descriptions are vague.  Id.  Moreover, they challenge her hours related to specific tasks.  Of the time entries to which Pierson and Mantesta launch specific objections, the Court finds that 128.4 hours must be excluded, consistent with the Court's earlier rulings on Pierson and Mantesta's objections to counsel's time.  Thus, the Court will disallow $3852.00 for Ms. Aitken's services.

### 3. Fees for Alan Keel.

Pierson and Mantesta also object to costs incurred related to Alan Keel.  Response at 25.  For the reasons discussed in Section C, the Court finds that Plaintiff is entitled to these costs.

### 4. Fees for Dr. Trudy Block-Garfield.

Pierson and Mantesta oppose $1,050 in costs related to Dr. Trudy Block-Garfield's testing and evaluation of Caravella in October 2009 and January 2010.  Response at 26.  According to Pierson and Mantesta, these costs were incurred 18 months prior to this

lawsuit being filed and were related to obtaining a guardian for Caravella.  Id.  Pierson and Mantesta also challenge the $400 Plaintiff seeks related to Dr. Block-Garfield's trial testimony because she was never qualified as an expert in this case.  Id.  Obtaining a guardian for Caravella was a prerequisite to the filing of the instant lawsuit.  Moreover, Dr. Block-Garfield's evaluation of Caravella became relevant when she testified as a witness at trial.  Accordingly, the Court finds that Plaintiff is entitled to the $1,050 in testing and evaluation costs.  However, the Court agrees that the $400 related to Dr. Block-Garfield's trial testimony is not compensable.  As Pierson and Mantesta point out, Dr. Block-Garfield was never qualified as an expert witness.  The Court is not aware of any authority which would allow Plaintiff to receive compensation for a lay witness.  Thus, the Court will disallow this $400 in costs.

### 5. Fees for Dr. Lori Butts.

Pierson and Mantesta object that 46 hours Plaintiff's expert Lori Butts spent after completion of her expert report is excessive and should not be awarded.  Response at 26.  According to Plaintiff, however, Dr. Butts had to review many documents to prepare for her trial testimony.  Reply at 10.  Given that Dr. Butts testified at trial, the Court finds that the costs sought related to Dr. Lori Butts are proper.

### 6. Fees for Melvin Tucker.

Finally, Pierson and Mantesta contend that because Plaintiff's expert Melvin Tucker testified for only a half day, Plaintiff should be entitled to only $1,500 for his trial testimony and only one day of lodging and food.  Response at 26-27.  In opposition, Plaintiff notes that Mr. Tucker had originally been scheduled to testify on March 11, 2013, but was unable to testify until March 12, 2013, due to the illness of a juror.  Reply at 10.  The Court

finds that it is unreasonable for Mantesta and Pierson to pay for two full days of Mr. Tucker's testimony when he only testified at trial for a half day.  Accordingly, the Court will reduce the costs Plaintiff may collect related to Mr. Tucker's testimony to $1,500.  The Court will, however, allow the $900 for Mr. Tucker's food and lodging.  Mr. Tucker traveled to Fort Lauderdale prepared to testify for March 11, 2013.  He did not complete his testimony until March 12, 2013.  Accordingly, three days food and lodging is reasonable.

### 7. Summary.

The Court has disallowed costs in the amount of $9,002.00.  Subtracting this amount from the $138,206.07 in costs that Plaintiff seeks, Plaintiff is entitled to a total cost award of $129,204.07.

### III. CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Attorney Fees and Costs [DE 464] is **GRANTED IN PART**.  Plaintiff shall recover from Defendants Pierson and Mantesta $848,520.00 in attorney's fees and $129,204.07 in costs, plus interest thereon at the rate of 0.12% per annum, from March 27, 2013, for which let execution issue.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 14th day of February, 2014.

_____
JAMES I. COHN
United States District Judge

Copies provided to counsel of record via CM/ECF.